**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

_____

| | | |
|---|---|---|
| Crystal Long | * | |
| | * | |
| Plaintiff, | * | Case No.: 8:17-cv-01955-GJH |
| | * | |
| v. | * | |
| | * | |
| Pendrick Capital Partners II, LLC, et al. | * | |
| | * | |
| Defendants. | * | |
| | * | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1

**STATEMENT OF MATERIAL FACTS** ........................................................................... 2

   **I.**   **Crystal Long's Background** ............................................................................ 2

   **II.**   **Initial Debt Collection Efforts** ...................................................................... 3

   **III.**   **Plaintiff's Direct Dispute** .............................................................................. 4

   **IV.**   **Credit Reporting and Disputes** ..................................................................... 5

   **V.**   **Procedural Background** ................................................................................. 8

**STANDARD OF REVIEW** ............................................................................................... 8

**ARGUMENT** .................................................................................................................... 9

   **I.**   **Ability Violated the FCRA** ............................................................................ 9

     A.   Ability Received Notice of Plaintiff's Disputes .......................................... 9

     B.   Ability Reported Inaccurate Information .................................................. 10

     C.   Ability Failed to Reasonably Reinvestigate Plaintiff's Disputes ........................ 11

     D.   Ability's' Actions Were Willful ............................................................... 14

   **II.**   **Defendants Violated the FDCPA** ................................................................ 15

     A.   Plaintiff Is A Consumer ........................................................................ 16

     B.   Defendants Are Debt Collectors Engaged in Debt Collection .......................... 16

       1.   Ability's Principal Purpose Is Collection of Debts on Behalf of Others ............. 17

       2.   Pendrick's Principal Purpose Is the Collection of Debts ............................... 17

     C.   Defendants Violated FDCPA § 1692(f) .................................................. 18

     E.   Defendants Violated FDCPA § 1692e .................................................... 20

**CONCLUSION** .............................................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492 10 (D. Md. 2004) ...................9, 16

*Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 U.S. Dist. LEXIS 115074 (D. Md. Aug. 26, 2016)........................................................................................... 9, 13, 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................................9

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) ................8

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp.2d 719 (D. Md. 2011).........................16

*Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) ..............17, 21

*Davenport v. Sallie Mae, Inc.*, No. PJM 12-1475, 2013 U.S. Dist. LEXIS 111510 (D. Md. Aug. 2, 2013)............................................................................................................... 10

*Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 926 (E.D. Cal. 2014)...............19, 20

*Dikun v. Streich*, 369 F. Supp. 2d. 781, 784-85 (E.D. Va. 2005) ...........................................16

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009) ............10, 11

*Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016)...................12

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) ............18

*Johnson v. Bullhead Investments, LLC*, No. 1:09CV639, 2010 WL 118274, at *6 (M.D.N.C. Jan. 11, 2010) ......................................................................................... 19

*Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004) ...............................13

*Loginter S.A. Y Parque Indus. Agua Profunda S.A. Ute v. M/V NOBILITY*, 177 F. Supp. 2d 411, 414 (D. Md. 2001)..........................................................................................9

*Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 405 (3d Cir. 2000)..................................18

*Richardson v. Rosenberg & Assocs. LLC*, No. CIV. WDQ-13-0822, 2014 WL 823655, at *5 (D. Md. Feb. 27, 2014)....................................................................................... 18

*Robertson v. J.C. Penney Co.*, No. 2:06cv3KS-MTP, 2008 U.S. Dist. LEXIS 17159, at *23-24 (S.D. Miss. Mar. 4, 2008) ............................................................................... 14

*Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 394 (4th Cir. 2014). ................ 20

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ....................................................... 14, 15

*Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008) ........................ 10

*Scott v. Harris*, 550 U.S. 372, 378 (2007) ............................................................................. 9

*Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) ................................................ 10

*United States v. Nat'l Fin. Servs.*, Inc., 98 F.3d 131, 136 (4th Cir.1996) ....................... 20, 21

*Wood v. Credit One Bank*, Civil Action No. 3:15cv594, 2017 U.S. Dist. LEXIS 154468, at *56-57 (E.D. Va. Sep. 21, 2017) .................................................................................. 13

## STATUTES

15 U.S.C. § 1681i(a)(2 ............................................................................................................. 10

15 U.S.C. § 1681s-2(b) ........................................................................................................... 9, 12

15 U.S.C. § 1692a(5) ............................................................................................................... 16

15 U.S.C. § 1692e ..................................................................................................................... 20

15 U.S.C. § 1692f(1) ................................................................................................................ 18

## RULES

Fed. R. Civ. P. 56 .................................................................................................................... 1, 8

Plaintiff Crystal Long ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 hereby moves this Court for partial summary judgment and in support thereof, states:

## INTRODUCTION

Defendants Ability Recovery Services, LLC ("Ability") and Pendrick Capital Partners II, LLC ("Pendrick") have adopted a "shoot first, ask questions later" system of debt collection and credit reporting. Such obliviousness mistaken identity concerns would be problematic on its own. But Ability makes no effort to ask questions even after the fact. Defendants here pursued Plaintiff for a debt that did not belong to her, based solely on a common name and a skip-traced address. When presented with evidence that Plaintiff's identifying information did not match that associated with the debt, Defendants persevered, reporting and then verifying on three separate occasions derogatory credit information on Plaintiff's credit report.

Ability engages in all manner of buck-passing, but it cannot escape the hard evidence that Plaintiff did not owe the debt in question and the reporting and reinvestigation requirements imposed on it by the Fair Credit Reporting Act ("FCRA"). Ability failed to apply even basic information-matching protocols, compounding repeatedly its abdication of responsibility that can only be classified as willful.

Similarly, both Defendants, directly or vicariously, used the threat of credit reporting as a coercive, abusive, and deceptive means of attempting to collect a debt from Plaintiff that was not hers. The Fair Debt Collection Practices Act ("FDCPA") specifically contemplates and prohibits precisely this type of behavior.

The facts of this case, replete with admissions from Defendants, are straightforward and indisputable.  Accordingly, Plaintiff respectfully requests that this Court granted her Motion for Partial Summary Judgment as to her claims under the FCRA and FDCPA.

## STATEMENT OF MATERIAL FACTS

**I.      Crystal Long's Background**

Plaintiff lives at 12704 Fairwood Parkway in Bowie Maryland. She has lived there for five years, and she has no children or dependents. Long Deposition Transcript, attached as Exh. A to the Declaration of Ingmar Goldson ("Goldson Decl."), at 8:2-17. Her date of birth is ▮▮▮▮▮▮▮▮▮, and her Social Security number ends in ▮▮▮. January 31, 2017 Dispute Letters, attached as Exh. B to the Goldson Decl.; Affidavit of Crystal Long, attached as Exh. C to the Goldson Decl. C, at ¶¶ 3-4.  Plaintiff has a master's degree in Business and currently works at Trusted Health Plans as the director of health plan accounting, where she runs the finance department. Goldson Decl. Exh. A, at 9:10, 10:12-11:16. Plaintiff reports directly to the chief financial officer of Trusted Health Plans, and handles millions of dollars in transactions on a regular basis. *Id.* at 12:10, 22:3-9.  Because of the financial responsibility involved in her job, Plaintiff's position requires a high level of trust.  Goldson Decl. Exh. A, at 22:20-23:4.  Accordingly, when Plaintiff applied for a position at Trusted Health Plans, she signed a document giving her employer permission to check her credit. Goldson Decl. Exh. A, at 15:1-3, 22:20-23:24. Plaintiff has never worked for the Department of Corrections.  Goldson Decl. Exh. C, at ¶ 5.

2

## II.      Initial Debt Collection Efforts

Pendrick has stated that the principal purpose of its business is to purchase delinquent accounts from physician groups, hospitals and ambulance companies. Pendrick's Discovery Responses, attached as Exh. D to the Goldson Decl., at Interrogatory Nos. 22, 23. Without exception, Pendrick places each account with collections agencies to collect the debt on its behalf.  *Id.* at Interrogatory Nos. 17, 24, Request for Admission No. 11.

During a conference with the Court on January 25, 2018, Ability stipulated that it is a debt collector.  Goldson Decl. ¶ 3.   Ability's website uses the tagline, "The Collection Agency with a Sense of Urgency."  Home Page, Ability Recovery Services, LLC, *at http://abilityrecoveryservices.com/* (March 26, 2018).   Ability is registered with the State of Maryland as a collection agency with license # 04-6393.  Ability collects "about 500,000" different debt accounts on behalf of Pendrick. Nanfeldt Deposition Transcript, attached as Exh. E. to the Goldson Decl., at 15:4.   Of Ability's 37 employees, 30 are debt collectors.  *Id.* at 9:8-11.  To effectuate its collections, Ability used a program called "Debt Master," which automatically pulls personal identification information such as Social Security number, date of birth, address, phone numbers, and skip tracing information when the consumer calls. Carlson Deposition Transcript, attached as Exh. F to the Goldson Decl., at 11:5, 13:1-7, 18:12.

In or before November 2016, Pendrick purchased medical debt from EmCare-Randall Emergency Physicians belonging to a "Crystal Long" who lived at 5126 Sekots Road, Baltimore, Maryland ("EmCare debt"). Goldson Decl. Exh. D, at Interrogatory No. 13.  That "Crystal Long" was born on ███████, had a Social Security number ending

in ██, worked at the Department of Corrections, and may have received medical care at EmCare on August 26, 2014.  Northwest Hospital Summary, attached as Exh. G to the Goldson Decl.  A search for the name Crystal Long turned up 14 people in Maryland alone.  Search Results for Crystal Long,Whitepages.com, *at* https://www.whitepages.com/name/Crystal-Long/Maryland/2?l=Maryland&q=Crystal+Long (March 26, 2018).  Pendrick placed the debt with Ability to collect on November 7, 2016, and transmitted the debtor's address and date of birth.  November 22, 2016 Call Recording, attached as Exh. H to the Goldson Decl.; Debtor History Report, attached as Exh. I to the Goldson Decl.; Goldston Decl. Exh. D, at Interrogatory No.10. Ability did not, initially, have Social Security information for the EmCare debt.  *Id.*  Ability used a skip tracer, which provided the Plaintiff's address to Ability. Goldson Decl. Exh. E, at 33:1-5.  Plaintiff has never received any services from EmCare.  Goldson Decl. Exh. C, at ¶ 6_; Exh. H.  The EmCare debt has no connection to Plaintiff other than a common name and an address added by Ability.

Ability testified that it has never known whether Plaintiff owes the EmCare debt Goldson Decl. Exh. E, at 17: 20-18:14, 26:8.  Nonetheless, in November  2016, Ability sent Plaintiff two collection letters on behalf of Pendrick, dated November 14, 2016.  Collection Letters, attached as Exh. J to the Goldson Decl..  The letters sent to Plaintiff state that Ability is a debt collector attempting to collect a debt.  *Id.*

## III.    Plaintiff's Direct Dispute

On November 22, 2016, Plaintiff called Ability to inform it that the EmCare debt did not belong to her. Goldson Decl. Exh. A, at 29:3, Exh. E at 41:6, Exh. H.   Plaintiff spoke to Ability employee Mark Carlson on that call. Goldson Decl. Exh. F, at 25:13-15.

During the phone call, Plaintiff confirmed to Carlson that purported debtor's Social Security number, date of birth, and number of dependent did not match hers. Goldson Decl. Exh. A at 29:5, 17-18, Exh. H.  Nonetheless, Carlson indicates that the debt would be reported to the consumer reporting agencies ("CRAs") and that Plaintiff's sole recourse was to dispute the debt through the CRAs *after* it was reported. Goldson Decl. Exh. A, at 29:19-20-30:3-4; Exh. F, at 26:20- 27:5, Exh. H.

At the time of the call between Plaintiff and Carlson, Ability had not yet reported the alleged debt to any CRA. Goldson Decl. Exh. A, at 32:13-16.  Though Ability's representative indicates that it waits for the 30-day statutory validation period to expire before reporting a debt, Carlson testified that he has no power within that time period to prevent credit reporting.  Goldson Decl. Exh. F, at 23:8-18; Exh. E, at 30:17- 31:9.  *See also* Goldson Decl. Exh. H.  Ability's representative indicates that such reporting is "built in" and uploaded from the information that it has in its collection software.  Goldson Decl. Exh. E, at 18:9-20:5, 28:3-18.  No matter what a consumer says when she calls, Carlson indicated that he does not have the ability to determine whether or not that consumer actually owes the debt, regardless of the information she provides, nor does he know who can make that determination. Goldson Decl. Exh. F, at. 24:1-13.  Notably, Carlson has recently been promoted to "supervisor." *Id.* at 8:1-5.

## IV.    Credit Reporting and Disputes

Ability has admitted that, at the time it reported the debt to the CRAs, it did not know whether the Plaintiff actually owed it. Goldson Decl. Exh. E, at 18:2-2017, 26:4-8 On December 17, 2016, however, Plaintiff received an alert from a credit reporting monitoring service stating that there was "new activity" on her credit report. Goldson

5

Decl. Exh. A, at 43:3-8; Trusted ID Alert, attached as Exh. K to the Goldson Decl.  Upon reviewing her credit report, she saw a new derogatory trade line from Ability, indicating that she was delinquent on a $1,125 debt. Goldson Decl. Exh. A, at 43:3-8; December 17, 2016 Dispute, attached as Exh. L to the Goldson Decl.  Though Plaintiff has received collection letters for two alleged debts, only the larger of the two appeared on her report. *Id.*; Goldson Decl. Exh. J.

Plaintiff disputed the debt through Equifax Information Services, LLC.'s ("Equifax") online credit reporting dispute protocol on December 17, 2016.  Goldson Decl. Exh. L. Notwithstanding the mismatch between Plaintiff's identifying information and that associated with the EmCare debt, Ability verified the online credit reporting dispute as accurate. Goldson Decl. Exh. I; Equifax Interrogatory Responses, attached as Exh. M to the Goldson Decl. at No. 6.

On January 31, 2017Plaintiff wrote a dispute letter to Experian Information Solutions, Inc. ("Experian"), Equifax, and TransUnion  disputing the Ability trade line. Goldson Decl. Exh. B.  Those letters included her date of birth, her Social Security number, and her current address.  *Id.* In response to all three CRAs, Ability again verified the tradeline as accurate. Goldson Decl. Exh. I; Exh. M, at No. 6; Experian Interrogatory Responses, attached as Exh. Exh. N  to the Goldson Decl, at Nos. 10-11; Automated Consumer Dispute Verification ("ACDV") forms, attached as Exh. O  to the Goldson Decl.; February 2017 Reinvestigation Report Excerpts, attached as Exh. P to the Goldson Decl.

In letters dated May 5, 2017, Plaintiff disputed the tradeline yet again to Experian and TransUnion.  Goldson Decl. Exh. Q.  Ability again verified the tradeline as accurate. Goldson Decl. Exhs. M, O; May 2017 Reinvestigation Report Excerpts, attached as Exhibit R to the Goldson Decl.  Following each of the Plaintiff's disputes, the CRAs timely sent Automated Consumer Data Verification forms ("ACDVs") to Ability containing Plaintiff's address, Social Security number, and dates of birth.  Goldson Decl. Exh. O.

Ability made no effort at contact.  Goldson Decl. Exh. E, at 30:10-13;.  Ability's representative testified that its reinvestigation procedure here involved only looking at the ACDV dispute information then reviewing the account in their "Debt Master" system, and that its response was consistent with its procedures. Exh. E, at 22:6-16, 30:4-13.[1] Ability has produced no additional information or documents regarding its reinvestigation procedures.  Ability Discovery Responses, attached as Exh. S to the Goldson Decl., at Interrogatory No. 11, Requests for Production 12-13.  Ability's representative testified that the credit bureaus bear sole responsibility for how the information it provides is reported.  Goldson Decl. Exh. E, at 28:03-18.  She further testified that Ability had satisfied its obligation by reporting incomplete information regarding the EmCare debt. *Id.* at 16-18, 29:4-9.  Following the filing of this lawsuit, the Ability tradeline was removed from Plaintiff's credit report. Goldson Decl. Exh. A, at 44:10-12; Exh. I.

---

[1] In its  Interrogatory Responses, Ability stated that it did review information from Pendrick. Goldson Decl. Exh. S, at No. 11.  Ability's subsequent testimony and account notes conflict with that statement.  Goldson Decl. Exh. E, at 30:10-13; Exh. I. It is not, ultimately, material to the outcome of this Motion.

V.      **Procedural Background**

Plaintiff filed the instant suit on May 19, 2017 against Defendants, as well as

Equifax Information Systems, LLC, and Experian Information Solutions, Inc., in the

Prince George's County Circuit Court.  Plaintiff filed an Amended Complaint on June 12,

2017.  Defendants removed the action to this Court.  The Amended Complaint alleges

violations of the FCRA, the FDCPA, the Maryland Consumer Debt Collection Act, and

the Maryland Consumer Protection Act, as well as common law claims for defamation

and declaratory judgment.  All parties answered the Complaint and engaged in discovery,

which ended on February 22, 2018.  Plaintiff settled with and subsequently dismissed

Equifax and Experian.  She now brings this Motion for Partial Summary Judgment.


<u>**STANDARD OF REVIEW**</u>

Under Federal Rule of Civil Procedure 56(a), summary judgment should be

granted "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party

opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of his pleadings, but rather must set forth specific facts showing

that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*,

346 F.3d 514, 522 (4th Cir. 2003) (alterations and quotation marks omitted) The court

must "view the facts and draw reasonable inferences in the light most favorable to the

party opposing the summary judgment motion," but a factual issue must be both genuine

and material in order to defeat a motion, with materiality determined by substantive law.

*Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration and quotation marks omitted)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "When both parties file

motions for summary judgment, the court applies the same standards of review." *Loginter S.A. Y Parque Indus. Agua Profunda S.A. Ute v. M/V NOBILITY*, 177 F. Supp. 2d 411, 414 (D. Md. 2001) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## <u>ARGUMENT</u>

### I.     Ability Violated the FCRA

The FCRA provides a private cause of action for consumers against furnishers of credit information.  15 U.S.C. § 1681s-2(b); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 509-10 (D. Md. 2004) (confirming private right of action).  Ability falls squarely within the purview of the FCRA as a furnisher. *Akalwadi*, 336 F. Supp. 2d at 508 ("a debt collector . . .is covered by the FCRA if it furnishes information to credit reporting agencies").   To prove a violation of the FCRA, Plaintiff must show (1) that she notified the credit reporting agencies of her dispute; (2) that Ability received notice from the agencies of Plaintiff's dispute; (3) that the disputed information was inaccurate; and (4) that Ability did not conduct a reasonable investigation of the dispute and modify inaccurate information.  *See Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 U.S. Dist. LEXIS 115074, at *19 (D. Md. Aug. 26, 2016); *Davenport v. Sallie Mae, Inc.*, No. PJM 12-1475, 2013 U.S. Dist. LEXIS 111510, at *8 (D. Md. Aug. 2, 2013). The evidence in the record leaves little question that Plaintiff has shown each element.

### A.     Ability Received Notice of Plaintiff's Disputes

The notice element requires little discussion here.  Plaintiff disputed Ability's reporting to the CRAs on multiple occasions: a December 17, 2016 online dispute to

Equifax, January 31, 2017 letters to all three CRAs, and May 5, 2017 letters to Experian and TransUnion.   Goldson Decl. Exhs. B, L, Q.   The CRAs, in turn, sent Ability ACDVs timely notifying them of each dispute.  Goldson Decl. Exh. O.    The ACDVs included Plaintiff's address, date of birth, and Social Security number, as well as a code indicating the substance of Plaintiff's dispute, that the debt did not belong to her.  *Id*. Plaintiff has, therefore, satisfied the notice requirement of 15 U.S.C. § 1681i(a)(2), and is entitled to summary judgment on this element of her FCRA claim.

### B.      Ability Reported Inaccurate Information

"The purpose of [15 U.S.C] § 1681s-2(b) is to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs after a consumer has objected to the information in his [or her] file." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009) (citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)). Specifically, "a credit report is not accurate under [the] FCRA if it provides information in such a manner as to create a materially misleading impression," whether through omissions or affirmative misrepresentations. *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008).  *See also Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) ("It is not seriously debated, however, that factually incorrect information is 'inaccurate' for purposes of [the] FCRA.").

Here, Ability repeatedly reported to the CRAs that Plaintiff was liable for and delinquent on a debt that *did not belong to her*.  Neither the birthdate nor the Social Security number matched the information on the EmCare debt.  Goldson Decl. Exh. G. The sole connection with Plaintiff was a common name and an address, found through

Ability's skip tracer, that did not match the address on the debt placement.  Goldson Decl. Exh. E, at 33:1-5.  Indeed, Plaintiff has lived at the same address for the last five yeas, a period that encompassed the time that the alleged debt arose.  Goldson Decl Exh. A, at 8:2-17; Exh. G.  Erroneous attribution of an account epitomizes inaccuracy on a report.  The tradeline simply had no place on Plaintiff's credit report.

The mere existence of the Ability tradeline on Plaintiff's report "can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).  Nonetheless, Ability confirmed the EmCare tradeline as accurate.  Goldson Decl. Exhs. P, R.  Even if, as Ability's representative testified, it merely provided incomplete information, the FCRA imposes liability.  There can be no genuine dispute that the presence and persistence of the Ability tradeline on Plaintiff's report is at best misleadingly incomplete, at worst, blatantly false.  Plaintiff is, accordingly, entitled to summary judgment as to the inaccuracy of Ability's reporting.

### C.    Ability Failed to Reasonably Reinvestigate Plaintiff's Disputes

The FCRA imposes a clear duty on Ability to reinvestigate Plaintiff's disputes and to delete, modify, or permanently block any information "found to be inaccurate or incomplete or cannot be verified."  15 U.S.C. § 1681s-2(b).  Yet Ability, by its own admission, took no steps to investigate Plaintiff's dispute nor to remove the information from her credit report.  Goldson Decl. Exh. E, at _22:6-16, 35:16-36:6 (verification was "saying that the information we sent over was correct").  Ability has, variously, stated that it believed the account to be accurate and verified it as such, and that it never knew

11

whether the debt belonged to Plaintiff and "verified" incomplete information.  *Id.* at 18:11-20, 35:16-36:6  Under either scenario, Ability violated the FCRA.

To the extent Ability purported to verify the account as "unknown," the plain language of the statute specifically contemplates unverifiable information and, in those instances, requires deletion. Assessing the plain and legal meanings of "verification," the Eleventh Circuit held that "when a furnisher does not already possess evidence establishing that an item of disputed information is true, § HYPERLINK " requires the furnisher to seek out and obtain such evidence before reporting the information as 'verified.'"  *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016). Quite simply, there is no such thing as "verified as unknown" under the terms of the FCRA.  Instead, Ability abdicates all responsibility for the accuracy of its report, shifting the blame to the CRAs.  Goldson Decl. Exh. E, at 28:17-18, 31:17-32:3.  The FCRA, however, imposes an independent investigative duty on furnishers like Ability.  *See Hinkle*, 827 F.3d at 1303.  It was incumbent upon Ability, by the terms of the FCRA, to do more than mindlessly provide data.  Where it had insufficient data to conclusively determine that Plaintiff owed the debt, it was *required* to direct the CRAs to delete the trade line.

Even if there were, from Plaintiff's first direct dispute through all of her disputes via the CRAs, Ability *did* know that, at minimum, Plaintiff's date of birth did not match that associated with the debt at issue.  Even a cursory review of Pendrick's information would have shown a complete mismatch, had Ability done so.  Goldson Decl. Exh. G. Accordingly, Ability had no basis to report the tradeline as accurate.  Ability took no meaningful steps to affirmatively determine that the account did not belong to Plaintiff.

"[T]he plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004). "[S]uperficial, *un*reasonable inquiries" will not suffice. *Id.* at 430-31. Indeed, this case parallels the Fourth Circuit's decision in *Johnson*. There, as here, the furnisher received notice of the plaintiff's assertion that she was not responsible for the debt. There, as here, the furnisher limited its "investigation" to the face of the ACDV. *Johnson* 357 F.3d at 431. *See also Wood v. Credit One Bank*, Civil Action No. 3:15cv594, 2017 U.S. Dist. LEXIS 154468, at *56-57 (E.D. Va. Sep. 21, 2017) (finding that it was "unreasonable for Credit One to simply match [the plaintiff's] personal identifiers with those associated with the Account when Wood continued to dispute the Account for years."). *Cf. Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 U.S. Dist. LEXIS 115074, at *22-23 (D. Md. Aug. 26, 2016) (denying motion to dismiss where plaintiff alleged failure to conduct a reasonable investigation).

Ability purported to conduct the same type of superficial investigation specifically eschewed in *Johnson*. It is doubtful, however, that even such a subpar investigation occurred: even the face of the ACDV here should have indicated a mismatch in identifying information, or insufficient information to verify. Ability's corporate representative testified that it "the information was unknown was our accurate response." Goldson Decl. Exh. E, at 20:1-17. It made no effort to contact Pendrick to verify the debt information; if it had, the error would have been obvious. *Id.* at 30:10-13. Likewise, in spite of multiple specific requests, it has produced no evidence of any procedures that it has in place to investigate credit disputes. Goldson Decl. Exh. S at Interrogatory 11, Requests for Production Nos. 12-13.

Though the reasonableness of an investigation is typically a fact question, Ability has admitted that, at best, it used the type of investigation already held to be inadequate. Even more compelling, all evidence indicates that Ability has conducted *no investigation whatsoever*.  Under such clear-cut circumstances, summary judgment for Plaintiff is appropriate.  *See Robertson v. J.C. Penney Co.*, No. 2:06cv3KS-MTP, 2008 U.S. Dist. LEXIS 17159, at *23-24 (S.D. Miss. Mar. 4, 2008) (granting summary judgment to plaintiff where no investigation occurred).

### D.      Ability's' Actions Were Willful

The Supreme Court held that willfulness under the FCRA may be either intentional or reckless behavior, "entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

The entirety of Ability's handling of Plaintiff's debt displays stunning levels of such recklessness.  Ability has indicated that, in the first instance, it did not know if Plaintiff owed the debt it sought to collect from her.  Goldson Decl. Exh. E, 18:4-20.  Yet it made no effort to confirm the attribution of the debt to her before reporting it to the CRAs.  Notably, Ability did not report the alleged debt to the CRAs until *after* Plaintiff had put the company on notice that the debt did not belong to her.  Goldson Decl. Exh. A, 32:13-33:5. Even such explicit notice did not prompt even a pause of Ability's automatic credit reporting process.  Goldson Decl. Exh. E, at 28:3-18 (credit reporting "built in" to Ability's debt collection software); 31:5-9 ("whatever the next credit repoting cycle would fall after that 30-day [validation] period is when the account would go over").  Indeed, Ability's representative and employee testified that *nothing* can stop its automatic

14

credit reporting. *Id;* Exh. F, at 23:19-24:13. Ability, however, does appear to have prevented the reporting of the second account, rendering its reporting of the larger account even more egregious. Notably, it only updated its reporting on that account *after* Plaintiff filed this lawsuit.

This Court has found that " a willful violation claim can be based on an unreasonable investigation, which is tantamount to a failure to investigate." *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 U.S. Dist. LEXIS 115074, at *22-23 (D. Md. Aug. 26, 2016). The *Safeco* Court found that willfulness may arise where a furnisher "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

Ability completely abdicated its investigation responsibility, "verifying" the account as unknown rather than meet even the minimal requirements of confirming a Social Security number and birth date. In contravention of the FCRA's clear terms, Ability has renounced any responsibility for its credit reporting, purporting to shift the blame for its inaccuracies and information deficiencies to the CRAs. The FCRA allows no such out, and Ability's practice of evading responsibility can be nothing other than a reckless disregard for the statutes requirements. Such a failure can be considered nothing less than total disregard for the requirements of the statute.

As with the question of the reasonableness of Ability's investigation, willfulness is typically a question of fact. The record here, however, is replete with indisputable evidence of Ability's stunning dereliction of all statutory responsibility, and summary judgment is appropriate here.

## II.      Defendants Violated the FDCPA

"The FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability." *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 500 (D. Md. 2004). *See also Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp.2d 719, 725 (D. Md. 2011). In order to establish a violation, Plaintiff need only show that (1) she is a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt; (2) defendants are "debt collectors" as defined by the Act; and (3) the defendants have engaged in any act or omission in violation of the prohibitions or requirements of the FDCPA. *See Dikun v. Streic*h, 369 F. Supp. 2d. 781, 784-85 (E.D. Va. 2005). Though both Pendrick and Ability are liable for the FDCPA violations here, Ability's actions triggered the FDCPA violations.

### A.     Plaintiff Is A Consumer

Plaintiff's status as a consumer within the meaning of the FDCPA is hardly in dispute. Medical debt falls under the rubric of "consumer debt" under the FDCPA. . 15 U.S.C.A. § 1692a(5); *Creighton v. Emporia Credit Serv., Inc*., 981 F. Supp. 411, 414 (E.D. Va. 1997) (plaintiff was a consumer because medical debt at issue falls under the definition in 15 U.S.C. § 1692a(5)). Summary judgment is thus appropriate here.

### B.     Defendants Are Debt Collectors Engaged in Debt Collection

Defendants' status as debt collectors is equally indisputable. A "debt collector" under the FDCPA may be either: (1) a person whose "principal purpose… is the collection of any debts"; or (2) any person who "regularly" collects debts "owed or due another." Pendrick falls under the first definition; Ability satisfies both.

### 1. *Ability's Principal Purpose Is Collection of Debts on Behalf of Others*

During a call with the Court on January 25, 2018, Ability stipulated to its debt collector status. Even absent such a stipulation, however, the record provides ample evidence.  Ability's website uses the tagline, "The Collection Agency with a Sense of Urgency."  Home Page, Ability Recovery Services, LLC, *at http://abilityrecoveryservices.com/* (March 26, 2018). Likewise, the letters sent to Plaintiff state that Ability is a debt collector attempting to collect a debt.  Goldson Decl. Exh. j.  Ability's corporate designee testified that Ability has 30 of the 37 employees of the company are collectors, and they are collecting on 500,000 different accounts on behalf of Pendrick.  Goldson Decl. Exh. E, at 9:8-11, 15:4..  Ability also identified itself as a debt collector attempting to collect a debt in the collection letters sent to Plaintiff.  Goldson Decl. Exh. J.  Ability is registered with the State of Maryland as a collection agency with license # 04-6393.

### 2. *Pendrick's Principal Purpose Is the Collection of Debts*

Pendrick's debt collector status, though less direct, is no less clear.  Pendrick purchases delinquent consumer medical debts then places those consumer debts with collection agencies. Goldson Decl. Exh. D, at Interrogatory Nos. 22, 23.  Pendrick does not resell any of these accounts, but rather places every account on its books with collections agencies, with the intent of the allowing those collection agencies to collect consumer debt on its behalf.  *Id.* at Interrogatory Nos. 17, 24.

As a debt collector in its own right, Pendrick assumes vicarious liability for the collection actions of its agent, Ability. *See Janetos v. Fulton Friedman & Gullace, LLP*,

825 F.3d 317, 325 (7th Cir. 2016) ( "A debt collector should not be able to avoid liability

for unlawful debt collection practices simply by contracting with another company to do

what the law does not allow it to do itself."); *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d

379, 405 (3d Cir. 2000) ("[A]an entity that is itself a debt collector—and hence subject to

the FDCPA—should bear the burden of monitoring the activities of those it enlists to

collect debts on its behalf.")(internal citations omitted); *Richardson v. Rosenberg &*

*Assocs. LLC*, No. CIV. WDQ-13-0822, 2014 WL 823655, at *5 (D. Md. Feb. 27, 2014)

(debt collector may be held vicariously liable for the FDCPA violations of its attorneys

who were collecting on its behalf*).*

### C.    Defendants Violated FDCPA § 1692f

Quite simply, Ability violated the FDCPA in attempting to collect a debt from the

Plaintiff that she does not owe.   15 U.S.C. § 1692f(1).  "Congress clearly intended to

protect people subject to harassment by debt collectors as a result of mistaken identity."

*See Johnson v. Bullhead Investments, LLC*, No. 1:09CV639, 2010 WL 118274, at *6

(M.D.N.C. Jan. 11, 2010) (citing S.Rep. No. 95–382, at 4 (1997), reprinted in 1977

U.S.C.C.A.N. 1695, 1699).  *See also Davis v. Midland Funding, LLC*, 41 F. Supp. 3d

919, 926 (E.D. Cal. 2014) ("Because dunning the wrong person is among the most unfair

of debt collection practices, the FDCPA should be interpreted in a manner that

incentivizes debt collectors to ensure that they direct their efforts at the right person.")

Here, Ability admitted that it *never* knew whether the Plaintiff owed the debt that

it was attempting to collect. Goldson Decl. Exh. E, at 18:11-20; 26:4-8.  It nonetheless

blindly sent out collection letters in the hope of finding the right person—or convincing

the wrong person to pay.  Goldson Decl. Exh. J.  Moreover, Ability treated the validation

period as merely a waiting period before credit reporting, irrespective of any disputes in the interim.  Goldson Decl. Exh. E, at 31:5-9; Exh. H.  Such behavior confirms the need for the FDCPA's protection against "unscrupulous debt collectors, and particularly buyers of junk debt who cannot verify the accuracy of the debts or the identities of the debtors" pushing forward  "against all persons having a similar name as the debtor, on the chance that one of the named defendants is the true debtor, or that one of the named defendants will simply pay the debt allegedly owed." *Johnson*, 2010 WL 118274, at \*6.

Neither Defendant has offered any evidence that the Plaintiff owed the debt, despite numerous requests.  Goldson Decl. Exh. D, at Request for Production No. 1 Interrogatory No. 8; Exh. E, at 17: 20-18:14, 26:8;Exh. G; Exh. S, at Interrogatory Nos. 6, 15.  To the contrary, they have produced debt information with someone else's identifiers—or no identifiers at all.  Goldson Decl. Exhs. G, H, I.  Though it should have recognized its lack of information before making *any* collection attempts, Ability was on notice as of November 22, 2016 that Plaintiff did not owe the EmCare debt and that none of the personal identifiers in its system, other than her common name and skip-traced address, matched the debtor's information.[2]  This clear indication of mistaken identity did not, however, keep Ability from reporting derogatory information about Plaintiff to the CRAs and repeatedly confirming that same information.

"It is difficult to conceive of a more unfair debt collection practice than dunning the wrong person." *Davis*, 41 F. Supp. 3d at 925.  By pursuing consumers with such little

---

[2] Plaintiff's date of birth did not match the one Mr. Carlson indicated was associated with the debt. Goldston Decl. Exh. H.  Likewise, Plaintiff's address did not match that provided by Pendrick to Ability.  Goldson Decl. Exh. D, at Interrogatory Nos. 11-13.  None of Plaintiff's information, including her Social Security number, matched the underlying debt information.  Goldson Decl. Exh. G.

regard for accurate targeting or accurate credit reporting, the Defendants' actions present

a clear violation of Section 1692f, ripe for summary judgment.

###    E.    Defendants Violated FDCPA § 1692e

Under the statute, debt collectors may not use any "false, deceptive, or

misleading" statements in the course of their collection activities.  15 U.S.C. § 1692e(10).

"[T]he test is the capacity for the statement to mislead; evidence of actual deception is

unnecessary." *National Financial Services*, 98 F.3d at 139 (4th Cir.1996) . Whether a

communication is false, misleading, or deceptive in violation of § 1692e is determined

from the vantage of the "least sophisticated consumer." *United States v. Nat'l Fin. Servs*.,

Inc., 98 F.3d 131, 136 (4th Cir.1996).  *See also Russell v. Absolute Collection Servs.,*

*Inc.,* 763 F.3d 385, 394 (4th Cir. 2014).

Ability sent two dunning letters to Plaintiff without, by its own admission,

knowing if the debts at issue belonged to her.  Goldson Decl. Exh. E, at 17: 20-18:14,

26:8.  Yet the letters betrayed no such uncertainty in their demand for payment.

Likewise, as discussed above, Ability also repeatedly reported and verified a debt for the

wrong person, putting into the public eye information it knew or should have known to be

false.  Moreover, Ability's employee told Plaintiff that it had no way to stop the false

credit reporting, a statement that, if true, runs afoul of its obligations under the FCRA,

and if false, smacks of coercion. Goldson Decl. Exh. H.  *See Nat'l Fin. Servs., Inc.*, 98

F.3d 131 (upholding summary judgment ruling for violation of Section 1692e(10)

because the "notices falsely threatened legal action").

Ability's use of misleading dunning letters and credit reporting, both in substance and in process, is precisely the sort of activity targeted by Section 1692e.  *See Creighton* 981 F. Supp. at 416 (granting summary judgment on a Section 1692e(10) claim because the collection notices were "substantively false and deceptive.")  Summary judgment is, therefore, appropriate here.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that her Motion for Partial Summary Judgment be granted as to her FCRA and FDCPA claims.

Dated: March 27, 2018

Respectfully submitted,

*/s/ Courtney L. Weiner*
 Courtney L. Weiner (#19463)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com


/s/ Ingmar Goldson
Ingmar Goldson
The Goldson Law Office
1734 Elton Road, Suite 210
Silver Spring, MD 20903
Phone: 240-780-8829
igoldson@goldsonlawoffice.com


*Attorneys for Plaintiffs*

21

### <u>CERTIFICATE OF SERVICE</u>

I certify that on March 27, 2018, a copy of the foregoing Motion for Summary Judgment, along with the Memorandum of Law in Support thereof, and all exhibits, were served via ECF and U.S. Mail to all counsel of record.

*<u>/s/ Ingmar Goldson</u>*