**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| Crystal Long | * | |
| | * | |
| Plaintiff, | * | Case No.: 8:17-cv-01955-GJH |
| | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| Ability Recovery Services, LLC, et al. | * | |
| | * | |
| Defendants. | * | |
| | * | |

## DEFENDANT, ABILITY RECOVERY SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COMES Defendant, Ability Recovery Services, LLC ("Ability"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 respectfully moves this Honorable Court for an Order granting summary judgment in its favor as to all claims advanced by Plaintiff, Crystal Long ("Long") against Ability in her Amended Complaint and denying Long's Motion for Partial Summary Judgment regarding Counts I and III in the Amended Complaint. Defendant also seeks an Order from the Court limiting Long's damages to statutory damages for her claims pursuant to the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.*, the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201, *et seq.* and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-301, *et seq.* In support of its Motion for Summary Judgment and in opposition to Long's Motion for Partial

Summary Judgment, Ability respectfully submits this Memorandum of Law and Statement of Undisputed Facts and Opposition to Long's Statement of Material Facts, averring as follows.

## I.    INTRODUCTION

On July 13, 2017 Long filed her First Amended Complaint alleging that Ability violated the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Practices Act ("MCDCPA"), the Maryland Consumer Protection Act ("MDCPA") and advancing a claim of defamation regarding Ability's attempts to collect two debt obligations that she allegedly did not owe.  (See ECF 2).  The record that has been established in this matter shows that there is no genuine issue of material fact regarding each of Plaintiff's claims, whereby summary judgment should be granted in favor of Ability and denied as to Plaintiff's Motion for Partial Summary Judgment on Counts I and III of her Amended Complaint.

Plaintiff alleges in Count I of her Amended Complaint that Ability willfully and/or negligently violated the FCRA by allegedly failing to conduct reasonable investigations after being notified by the consumer reporting agencies ("CRAs") that Plaintiff disputed the remaining debt that Ability was attempting to recover.  (ECF 2, ¶¶ 30, 31).  However, the FCRA does not provide consumers such as Long with a private right of action regarding furnishing alleged false information and Long has not meet her burden of providing sufficient evidence to show that the investigations performed by Ability upon the receipt of the disputes from the CRAs were unreasonable.

In Count II of her Amended Complaint, Long advances a claim of defamation against Ability, alleging that in reporting an alleged false debt to the CRAs, Ability knowingly or negligently made false and defamatory statements about her to third parties.  (ECF 2, ¶¶ 44-47). A consumer can only maintain a common law claim for defamation if there is sufficient evidence

to show that the information was furnished with malice or willful intent, which did not occur in this instance.

In Count III of her Amended Complaint, Long alleges that Ability violated the FDCPA by allegedly using false representations and deceptive means during its collection attempts. The record in this matter shows that within thirty (30) days of Ability's sending of initial collection letter to Plaintiff regarding debt obligations owed to Pendrick, Long did not send a written dispute to Ability regarding the debts. After having a conversation with Plaintiff on November 22, 2017, Ability ceased all collection activity on the first Pendrick account, internally marked the second Pendrick account as disputed and did not place any telephone calls or send any additional letters regarding the second account. Also, Ability properly and consistently notified the CRAs that Plaintiff disputed owing a debt to Pendrick. Ability's notice of Long's disputes was reflected in Long's credit reports.

Count IV and Count V of Plaintiff's Amended Complaint alleges that Ability violated the MCDCA and the MCPA by allegedly threatening to report a false debt to the CRAs, by allegedly refusing to stop reporting the debt to the CRAs and by allegedly making false and misleading statements regarding the furnishing of tradeline information to the CRAs. Contrary to Plaintiff's allegations, the record for this matter shows that Ability did not make any threats to Plaintiff and, in fact, directed Plaintiff to dispute the debt obligations at issue with the CRAs. Ability did not act with knowledge that the debts at issue were invalid or with reckless disregard for the validity of the debts, nor did it receive any documentation from Long to show that the debts were invalid.

It is Ability's position that Long has failed to raise any triable issues of fact regarding the claims in her Amended Complaint and that Long has also failed to establish that she suffered actual damages, whereby Ability is entitled to summary judgment as to each of Plaintiff's claims

against it in the Amended Complaint and, if applicable, Long's damages are limited to statutory damages under the FDCPA, MCDCA and the MCPA.

## II.   STATEMENT OF UNDISPUTED FACTS AND OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. In November of 2017 Pendrick engaged Ability to attempt to recover two debt obligations owed by Crystal Long, accounts ending in 2446 and 2448.   (See the Declaration of Kim Nanfeldt, ¶4 which is attached hereto as Exhibit 1).

2. Ability sent initial collection letters regarding the debts dated November 14, 2016 to Crystal Long, 12706 Fairwood Parkway, Bowie MD 20720-6032.  (See Ability's initial collection letters regarding Pendrick accounts ending in 2446 and 2448 which are attached hereto as Exhibits 2 and 3).

3. The initial collection letters included the disclosures required under the Section

4. (a) of the FDCPA informing Long that she could dispute the debts and request documentation to verify the validity of the debts by sending writings regarding each debt to Ability within 30 days of her receipt of the initial collection letters.  (See Exhibit 6, ¶5; See also Exhibits 2 and 3).

5. On November 22, 2017 Long placed a call to Ability and verbally disputed owing the two Pendrick debts.  (See the transcript of the deposition of Crystal Long, pg. 26, ¶¶ 10, 11 which is attached hereto as Exhibit 4).

6. During the November 22, 2017 telephone call with Long, Ability's representative, Mark Carlson, informed Long that Ability would not furnish any tradeline information regarding the debts to the credit bureaus for a period of 30 days, giving Long the opportunity to provide written disputes to Ability regarding the debts.  (See Exhibit 4, pg.

28, ¶¶ 7-28; See also the transcript of Ability's Collection Manager, Kim Nanfeldt, pg. 40, ¶¶ 18-21, pg. 41, ¶¶ 1-3 which is attached hereto as Exhibit 5).

7. During the November 22, 2017 telephone call with Long, Mark Carlson also directed Long to dispute the Pendrick debts with the CRAs.

8. At no time did Long send a writing to Ability disputing the debts or requesting validation of the debts.  (See Exhibit 1, ¶ 7; See Exhibit 4, pg. 28, ¶¶ 4-18; See Ability's internal collection record for the Pendrick account ending in 2448 which is attached hereto as exhibit 6; See also the transcript of the deposition of Ability's collector, Mark Carlson, pg. 32, ¶¶ 13-21, pg. 33, ¶¶ 1-11, which is attached hereto as Exhibit 7).

9. After the November 22, 2017 conversation with Long, Ability ceased all collection activity on the Pendrick account ending in 2446, updated its internal records to reflect that Plaintiff disputed the Pendrick account ending in 2448 and did not send any additional letters or place any telephone calls to Long regarding the Pendrick account ending in 2448.[1]  (See Exhibit 1, ¶ 7; Exhibit 4, pg. 42, ¶¶ 3-10; Exhibit 7, pg. 32, ¶¶ 9-21, pg. 33, ¶¶ 1-11).

10. After not receiving a written dispute from Long within thirty days of sending an initial collection regarding the debt, Ability furnished tradeline information to the CRAs regarding the debt under a disputed status.  (See Exhibit 1, ¶ 9).

11. At all times when Ability received notices from the CRAs that Long disputed the debt, Ability reported back to the CRAs that the debt was disputed and timely responded to the CRAs' inquiries, when requested to do so.  (Exhibit 6).

---

[1] The Pendrick account ending in 2448 is the operative account in this matter and will be hereafter referred to as "the debt."

12. In June of 2017 Ability made requests to the CRAs to delete all tradeline information that was furnished regarding the debt, whereby all tradeline information regarding the debt was then removed from Plaintiff's credit reports. (See Exhibit 5, pg. 44, ¶¶ 6-12; Exhibit 6).

13. Long began employment at Trusted Health Plans, Inc. in September of 2016 as a Senior Account Manager, was promoted in July of 2017 to Acting Controller and was promoted in September of 2017 to Director or Health Plan Accounting.  (See Plaintiff's Answers and Objections to Ability's First Set of Interrogatories, pages 9-10, which is attached hereto as Exhibit 8).

14. Long's promotions were accompanied by salary increases. (See Exhibit 4, pg. 47, ¶¶ 2-9).

15. Upon commencement of her employment Long gave consent to her employer, Trusted Health Plans, Inc. to perform a "background check."  (Exhibit 4, pg. 17, ¶¶ 18-22).

16. Long was not aware of the "background check" performed by her employer, Trusted Health Plans, Inc. including a review of her credit history.  (Exhibit 4, pg. 18, ¶¶ 1-7).

17. Long was not aware of her employer reviewing her credit score at any time during her employment.  (Exhibit 4, pg. 14, ¶¶ 21-22, pg. 15, ¶¶ 1-22, pg. 16, ¶¶ 1-18, pg. 61, ¶¶ 14-18).

18. Long never discussed her credit history with her employer, her employer never questioned her credit or financial history and her employer never discussed with her the tradeline information that was furnished by Ability to the credit bureaus regarding the debt. (Exhibit 4, pg. 23, ¶¶ 5-10, pg. 24, ¶¶ 14-17, pg. 35, ¶¶ 5-9, pg. 49, ¶¶ 11-15).

19. From November of 2016 through May of 2017 Long was not denied any credit opportunities, as she did not make any applications for credit and did not seek any type of financing during this time. (See Exhibit 4, pg. 35, ¶¶ 10-22, pg. 56, ¶¶ 4-9).

## III.   STANDARD OF REVIEW

A Court shall enter summary judgment if the movant shows that there is not genuine dispute as to any material fact, whereby the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Alston v. Orion Portfolio Servs., LLC*, 2018 U.S. Dist. LEXIS 63171, *8 (D. Md. Apr. 12, 2018).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

## IV.   ARGUMENT

### 1.   Summary Judgment Should Be Granted In Favor of Ability as to Plaintiff's FCRA Claims And Plaintiff's Motion for Summary Judgment on Her FCRA Claims Should Be Denied.

#### A.   There is no private right of action under 15 U.S.C. § 1681s-2(a).

Section 1681s-2(d) of the FCRA states that the provisions of law described in paragraphs 1 through 3 of subsection c of the Section shall only be enforced by Federal agencies and officials and certain State officials identified in Section 1681s of the statute.  *See* 15 U.S.C. § 1681s-2(d).  There is no private cause of action under § 1681s-2(a) for furnishing false information to the CRAs.  *See Damiani v. Fargo*, 2018 U.S. Dist. LEXIS 60548, *20 (D.N.J.

Apr. 10, 2018) ("The statute requires entities that furnish data to consumer reporting agencies to provide accurate information, there is no private right of action for consumers to enforce this duty against furnishers of information. Thus, Plaintiffs cannot pursue a claim under 1681s-2(a).") See also *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3rd Cir. 2011) (No private right of action exists under § 1681s-2(a)).  *See also Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255 (M.D. Ala. 2007) (There is no private right of action for violations of § 1681s-2(a)).

To the extent that Long's claims in Count I of her Amended Complaint pertain to Ability's furnishing of false or inaccurate information to the CRAs regarding the debt, summary judgment should be granted in Ability's favor, as the FCRA does not provide a private right of action regarding the furnishing of false or inaccurate information to the CRAs.

### B. Long has not provided evidence to show that Ability failed to conduct reasonable investigations of her disputes of the debt.

Long alleges in her Amended Complaint that Ability violated Section 1681s-2(b) of the FCRA by allegedly failing to perform reasonable investigations into her to disputes regarding the debt and continuing to report the alleged inaccurate information.  (ECF 2, ¶ 30).  However, Plaintiff has not provided any evidence to show that the investigations that Ability performed upon receiving disputes from the CRAs regarding the debt were unreasonable.

First, Long bears the burden of showing that the investigation was unreasonable.  *See Alston*, 2018 U.S. Dist. LEXIS 63171, * 14 citing *Alston v. United Collections Bureau, Inc.*, 2014 U.S. Dist. LEXIS 27124, *6 (D. Md. Mar. 4. 2014).  Second, Long has not provided any evidence to show that any procedures utilized by Ability to investigate the disputes were unreasonable.  Long merely states repetitively in her Amended Complaint and Motion for Partial Summary Judgment that Ability reported to the CRAs that she was liable for a debt that did not belong to her and that her information that was verbally provided to Ability did not match the

furnished information. (ECF 2, pg. 5, ¶¶ 19-20); (ECF 46, pgs. 14-15).  Long also vaguely states in her Motion that Ability was attempting to shift the blame to the CRAs without any evidence to support her assertion.  (ECF 46, pg. 16).  Further, Long argues that Ability did not take any steps to determine that the account did not belong to her.  (ECF 46, pg. 16).

Where a plaintiff fails to raise a genuine issue of material fact that an investigation was unreasonable, and there is no evidence that procedures employed to investigate the reported disputes were unreasonable, judgment is warranted in favor of the furnisher.  *Ware v. Bank of America Corp.*, 9 F.Supp. 3d 1329, 1339 (N.D. Ga. 2014); *Alston*, 2018 U.S. Dist. LEXIS 63171, **15-16 (Plaintiff did not meet his burden of showing that the collector's investigation was unreasonable, as he only provided a letter that he had sent to Trans Union or the collector and failed to provide any other evidence to show that the collector's investigation was unreasonable.")        Long has not provided any evidence to show that the investigation process employed by Ability is, in any way, unreasonable.  Long merely argues that the procedures utilized by Ability were unreasonable, without providing any documentation or testimony to support her arguments.

Because Long has failed to meet her burden to show that Ability's investigation into the disputes regarding the debt were unreasonable, she cannot raise a genuine issue as to the reasonableness of Ability's investigations, whereby summary judgment should be entered in favor of Ability and should be denied as to Long regarding Count I of Plaintiff's Amended Complaint.

### C.  Ability's investigations of the disputes received from the CRAs regarding the debt were reasonable.

Section 1681s-2(b) of the FRCA requires that furnishers of tradeline information engage in reasonable investigations upon receipt of notices of disputes from the CRAs.  Count I of Long's Amended Complaint and Long's Motion for Partial Summary Judgment both advance

theories that Ability's investigations regarding disputes received from the CRAs pertaining to the debt were unreasonable.  The facts and evidence in this matter show that Ability's investigations regarding Long's disputes to the credit bureaus were reasonable.

Section 1681s-2(b) requires that furnishers of credit information, upon being provided with a dispute regarding the accuracy of the information provided to a CRA, (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the CRA; (C) report the results of the investigation to the CRA; and (D) report any incomplete or inaccurate information that is discovered to all other credit reporting agencies to which if furnished the original information.  *See Green v. Rosenberg & Assocs., LLC*, 2018 U.S. Dist. LEXIS 37021, **13-14 (D. Md. Mar. 7, 2018).  To advance a claim pursuant to Section 1692s-2(b), a plaintiff must show that that she notified the CRA of a dispute, the CRA notified the furnisher of the dispute, and that the furnisher failed to adequately investigate the dispute.  *Id.* citing *Craighead v. Nissan Motor Acceptance Corp.*, 2010 U.S. Dist. LEXIS 132123, *4 (E.D. Va. Dec. 14, 2010) aff'd 425 F. App'x 197 (4th Cir. 2011); *Ausar El v. Barclay Bank Delaware*, 2012 U.S. Dist. LEXIS 106572, *3 (D. Md. July 31, 2012).  The facts and evidence that have been developed in this matter show that Ability's handling of the disputes received from the CRAs was reasonable and that Plaintiff is unable to meet her burden to show otherwise.

An investigation constitutes a detailed inquiry or systematic examination involving some degree of careful inquiry by creditors.  *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004).  Upon receipt of a consumer's dispute, a furnisher's investigation must include a reasonable investigation of their records to determine whether the disputed information can be verified.  A reasonable investigation can consist of verifying the name, address and social

security number of the consumer.  *Meaney v. Nationstar Mortg.*, 2018 U.S. Dist. LEXIS 28364, *35 (D. Md. Feb. 21, 2018) citing *Alston*, 2014 U.S. Dist. LEXIS 27124, *8.

In the current matter, on four occasions, Ability received notifications from the CRAs that Long had disputed the debt.  Long notified the CRAs that she did not owe the debt, which was communicated by the CRAs to Ability as "not his/hers."  (See the automated consumer debt verification ("ACDV") responses which were timely provided by Ability to the CRAs upon receipt of notice of Long's disputes which are attached hereto as Exhibit 9).  Upon receipt of each notification from the CRAs, following its policies and procedures, Ability reviewed the information provided in the notice of dispute, reviewed all documentation that it had on file for the account and reported the information back to the CRAs via the sending of ACDVs.  (Exhibit 5, pg. 22, ¶¶ 9-12 ("That means that the e-Oscar dispute came in and they took a look at it, they reviewed the Debt Master and they verified the information that we had on file.); Exhibit 5, pg. 30, ¶¶ 4-9 (Q – "When Ability Recovery Services received credit disputes from the credit reporting agencies about plaintiff's account, was Ability Recovery Services' response consistent with its credit reporting reinvestigation policies and procedures? A – "Yes.").  Importantly, as stated previously in this memorandum, Long has failed to provide any evidence to the contrary and has also failed to provide any evidence to show that Ability's investigation process was unreasonable.

Take, for instance, the matter of *Phillips v. Trans Union, LLC*, 2017 U.S. Dist. LEXIS 144232 (W.D. Va. Sept. 6, 2017) where plaintiff sought summary judgment regarding the alleged unreasonableness of an investigation of a dispute performed by the defendant, Specialized Loan Servicing, LLC ("SLS").  In arguing that its investigation into the dispute received from Trans Union was reasonable, SLS represented that its investigation consisted of its

operator reviewing the received dispute form from the CRA, checking SLS' records regarding the disputed information and responding accordingly. *Id.* at *16. This process consisted of SLS' operators reviewing the substance of the dispute, checking SLS' internal records regarding the alleged reporting error and responding accordingly. *Id.* In denying plaintiff's motion for summary judgment regarding the reasonableness of the investigation, the Court found that, although the description of the investigation was short, it described a process that a jury could find reasonable. The Court also found that plaintiff provided no evidence to demonstrate that SLS' process was unreasonable.

Here, the record shows that, upon Ability's receipt of notices from the CRAs that Long disputed the debt ("not his/hers") its representatives read the notices of disputes, compared the information in the notices with Ability's file for Long and the debt, and timely reported the findings back to the CRAs. (Exhibit 9). This is the exact investigative process that constitutes a reasonable investigation under the FCRA and a process which a jury could find reasonable. This process follows the policies and procedures that Ability has in place regarding investigating disputes. (Exhibit 5, pg. 44, ¶¶ 6-19). Moreover, Long has not provided any evidence to show that Ability's investigation of her disputes or Ability's policies and procedures regarding the handling of disputes were unreasonable. Therefore, there is no genuine issue of material fact as to Long's § 1681s-2(b) claim, whereby summary judgment should be entered in favor of Ability and denied as to Long regarding Count I of Plaintiff's Amended Complaint.

### D. Long's claim for a negligent violation of the FCRA fails as she has not provided any evidence of actual damages.

Long alleges in Count I of her Amended Complaint that Ability negligently violated the FCRA by failing to reasonably investigate her disputes to the CRAs regarding the debt. (ECF 2, pg. 6). Pursuant to the FCRA, plaintiffs can only claim actual damages for negligent violations

of the FCRA.  See 15 U.S.C. § 1681o.  A failure to establish actual damages warrants summary judgment in favor of a defendant.  *Davenport v. Sallie Mae, Inc.*, 124 F.Supp. 3d 574, *581 (D. Md. June 5, 2015) citing *Spector v. Experian Info. Servs. Inc.*, 321 F. Supp. 2d 348, 356 (D. Conn. 2004) ("In order to survive a summary judgment motion on a claim of negligent violation of the FCRA, a plaintiff must provide some evidence from which a reasonable fact-finder could conclude that she suffered actual damages because of defendant's actions.")  The record established in this matter shows that Long did not suffer any actual damages resulting from Ability's investigation into her disputes, whereby Long's claim for a negligent violation of Section 1692s-2(b) of the FRCA against Ability fails.

Regarding actual damages, Long alleges in her Amended Complaint that, because of Ability's furnishing of tradeline information to the credit bureaus regarding the debt and its failure to reasonably investigate her disputes to the CRAs regarding the debt, she was held out of the credit market, could possibly be wrongfully denied employment or promotions and suffered emotional distress and other physical symptoms.  (ECF 2, pgs. 3,5,9,11).  The record in this matter, including Plaintiff's deposition testimony and discovery responses, show that Plaintiff did not suffer any actual damages as a result of Ability's collection activities.

Regarding Long's claim that she was held out of the credit market due to Ability's collection activities, when asked during her deposition if she had been denied any credit opportunities between November of 2016 and May of 2017, Long responded by testifying as follows:

> "At that point I can't say that I applied for any credit,
> but I didn't go out of my way to make any decisions
> relating to my credit at that time because I believed that
> it was something small that we'd eventually get past
> and it wouldn't be an issue."

(Exhibit 4, pg. 36, ¶¶ 2-7)

Plaintiff has not provided any documentation, information or testimony to show that she had been either denied credit or offered unfavorable financing terms during the applicable time period.

Regarding Long's claim that she could possibly be wrongfully denied employment or promotions because of Ability's collection activities, the record for this matter shows that from November of 2016 to June of 2017 Long did not apply for any additional employment positions nor was she denied advancement in her employment.   In September of 2016 Long began her employment at Trusted Health Plans, Inc. as a Senior Account Manager, was promoted in July of 2017 to Acting Controller and was promoted in September of 2017 to Director or Health Plan Accounting.  (Exhibit 8, pages 9-10).  Each of Long's promotions at Trusted Health Plans, Inc. was accompanied by a salary increase.  (Exhibit 4, pg. 47, ¶¶ 2-9).  Long has never been reprimanded by her employer for any reason, including her personal financial responsibility. (Exhibit 4, pg. 34, ¶¶ 11-15).  As such, contrary to Plaintiff's assertions that she suffered actual damages in the form of being wrongfully denied employment or promotions, during the time period in which Ability furnished tradeline information to the credit bureaus regarding her debt, Long was promoted by her employer and received salary increases.

Although Plaintiff claims that her employer required her to provide personal identifiers to perform a "background check" at the commencement of her employment, Plaintiff did not know if the "background check" included a review of her credit score or personal financial background.  (Exhibit 4, pg. 17, ¶¶15-22, pg. 18, ¶¶ 1-7).  Plaintiff further testified at her deposition that between November of 2016 and May of 2017 she did not have any discussions

with anyone at Trusted Health Plans, Inc. regarding her credit history.  (Exhibit 4, pg. 35, ¶¶ 5-9).  Plaintiff has not provided any documentation, information or testimony to show that she had could have possibly be wrongfully denied employment or promotions because of Ability's collection activities.

Regarding Plaintiff's claim in her Amended Complaint that she suffered emotional distress and physical symptoms because of Ability's collection activity, an award for emotional distress damages requires evidence establishing that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated.  *Davenport*, 124 F.Supp. 3d, 574, 583.  The record for this matter is void of any evidence of Plaintiff suffering any emotional distress or physical symptoms because of Ability's collection activity.   In response to Ability's Interrogatory asking Long to describe in detail the damages that she allegedly suffered because of Ability's attempts to recover the debt, Plaintiff responded by stating that she "experienced emotional distress, anxiety, sleepless nights and embarrassment."  (Exhibit 8, pg. 11).  However, Plaintiff did not provide any specifics regarding her damages including dates in which the alleged harm occurred, details of the alleged harm, receiving medical treatment for the alleged harm or whether the harm was a proximate cause of Ability's collection activity.  When asked during her deposition when she was unable to sleep and suffered from anxiety from collection activities, Long stated that she experienced sleeplessness and anxiety the night before her deposition but was not able to articulate any times prior to the deposition in which she experienced sleeplessness or anxiety, particularly in the context of relating her sleeplessness and anxiety to Ability's collection activities or furnishing of tradeline information to the CRAs.  (Exhibit 4, pg. 56, ¶ 22, pg. 57, ¶ 1-8).  Plaintiff has not provided any documentation,

information or testimony to show that she suffered emotional distress or physical symptoms because of Ability's collection activities.

Because Long can only recover actual damages from Ability for a negligent violation of the FCRA and because Long cannot establish that she suffered any actual damages due to a lack of evidence, summary judgment as to Count I of Long's Amended Complaint should be granted in favor of Ability and Long's Motion for Partial Summary Judgment as to Count I of her Amended Complaint should be denied.

### E. Ability's investigations of the disputes received from the CRAs cannot constitute a willful violation of the FCRA.

It is Ability's position that its investigation into the notices of disputes received from the CRAs regarding Long's debt was reasonable.  It is also Ability's position that its actions in investigating the disputes were not willful, whereby an award of punitive damages is unavailable to Long.  "Willfulness" under the FCRA means acting with "reckless disregard" of one's obligations under the statute which can constitute repeatedly ignoring warning signs that a violation of the law is occurring and failing to take corrective action to prevent future violations. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 Fed. Appx. 246 (4th Cir. July 26, 2017) citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007); *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 85 (4th Cir. 2009)  As a matter of law, a party that relies on a reasonable but erroneous interpretation of the FCRA cannot be found to have acted recklessly or willfully.  Id.; *Safeco*, 551 U.S. at 69-70.  To be found in willful noncompliance, a defendant must have knowingly and intentionally committed an act in conscious disregard for the rights of others.  *Stevenson v. TRW, Inc.*, 987 F.2d 288, *293 (5th Cir. 1993).  The defendant must act with

a "culpable state of mind." *Vecchione v. Bay Area Credit Serv.,* 2014 U.S. Dist. LEXIS 169982, *9 (M.D. N.C. Dec. 9, 2014).

In the current matter, on November 22, 2016 Ability's representative, Mark Carlson received a call from Long in which Long verbally disputed the two Pendrick debts. (Exhibit 7, pg. 26, ¶¶ 5-6). Mr. Carlson then updated Ability's internal records to reflect that Long had disputed the accounts. (Exhibit 7, pg. 32, ¶¶ 4-12). At no time did Long provide Ability with any documentation disputing the debts or providing evidence that she was not responsible for the debts. (Exhibit 4, pg. 28, ¶¶ 7-13). In December of 2016 Ability first received notice from the CRAs that Long was disputing the debt. (Exhibit 6). Upon receipt of each notice of dispute that was received from the CRAs, Ability's representatives reviewed the disputes, analyzed the information in its file, compared it to the information provided in the disputes and timely reported the findings of its investigations back to the CRAs. (Exhibit 5, pg. 22, ¶¶ 9-12, pg. 30, ¶¶ 4-9pg. 35, ¶¶ 2-4). Ability's investigation process is reasonable. However, if it is found that the investigation process is unreasonable, the process does not involve any knowing or intentional acts that are in conscious disregard for any consumer. Ability's policies and procedures regarding investigating disputes complies with the FCRA, as did the investigation that was performed on Long's disputes. And, again, Long has not provided any evidence to show that Ability's investigative procedures or activities in investigating her disputes was willful. Long merely insinuates that Ability should have known that she did not owe the debts. Ability, therefore, should be granted summary judgment on Count I of Plaintiff's Amended Complaint pertaining to willfully violating the FCRA and Plaintiff's Motion for Partial Summary Judgment on willfulness should be denied.

**2. Summary Judgment Should Be Granted In Favor of Ability as to Plaintiff's Common Law Defamation Claim.**

A claim for common law defamation pertaining to inaccurate credit reporting requires a showing that the alleged furnishing of inaccurate information was done with malice or willful intent.  *See Jackson v. Warning*, 2016 U.S. LEXIS 172589, *25 (D. Md. Dec. 13, 2016); *Beuster v. Equifax Information Services*, 435 F. Supp. 2d 471 (D. Md. Jun. 15, 2006).  Maryland has adopted the Supreme Court's definition of malice in the context of defamation, whereby malice can be established by evidence showing the defendant made a false statement "with knowledge that it was false or with reckless disregard of whether it was false or not."  *Beachley v. PNC Bank, N.A.*, 2011 U.S. Dist. 94236, *11 (D. Md. Aug. 23, 2011) citing *Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445 A.2d 1038, 1043-45 (Md. 1982); *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

In this matter, the information that Ability furnished to the CRAs regarding the debt that it was attempting to recover was the information that it had in its possession upon receipt of the account from Pendrick and from engaging in "skip tracing" to obtain the consumer's most accurate and current telephone number and address.  (Exhibit 1, ¶ 10) (Exhibit 5, pg. 23, ¶¶ 3-17).  At no time did Long provide Ability with any documentation showing that she was not responsible for the debt, and the record for the matter does not contain any documentation sufficient to show that Long was not responsible for the debt at the time when Ability first furnished tradeline information to the CRAs regarding the debt.  (Exhibit 4, pg. 28, ¶¶ 7-19).  Moreover, when the debt was first reported by Ability to the CRAs is was done so under a disputed status.  (Exhibit 4, pg. 19, ¶¶ 4-14).  The record for this matter is void of any evidence to show that Ability knowingly furnished false tradeline information to the credit bureaus or did so with reckless disregard for whether the information was false or not.  To the contrary, the evidence shows that Ability followed its policies and procedures by not furnishing tradeline

information to the credit bureaus for 30 days from the commencement of collection activity to give Long an opportunity to provide a writing disputing the debt and requesting validation of the debt.  (Exhibit 5, pg. 30, ¶¶ 14-21, pg. 31, ¶¶ 1-9).  Ability did not receive any additional information or documentation from Long to show that she did not owe the debt, whereby Ability then furnished information that it had in its possession to the credit bureaus regarding the debt under a disputed status.  (*Id.*, pg. 19, ¶¶ 4-14).

Ability, therefore, should be granted summary judgment on Count II of Plaintiff's Amended Complaint as the record for this matter shows that Ability did not furnish any inaccurate information to the CRAs regarding the debt with malice or willful intent.

**3. Summary Judgment Should Be Granted In Favor of Ability as to Plaintiff's FDCPA Claims And Plaintiff's Motion for Partial Summary Judgment on Her FDCPA Claims Should Be Denied.**

**A. Long's 15 U.S.C. § 1692f claim against Ability fails as a matter of law because it is covered by her § 1692e(10) claim.**

In her Amended Complaint Long alleges that Ability violated § 1692f(1) of the FDCPA by allegedly attempting to collect an amount from her that was not expressly authorized by the agreement creating the debt or permitted by law.  (ECF 2, pg. 9, ¶ 54).  Long seeks summary judgment on her § 1692f(1) claim against Ability.  (ECF 46, pgs. 18-20).  In her Amended Complaint, Long also advances a claim against Ability pursuant to § 1692e(10) of the FDCPA, alleging that Ability allegedly used false representations or deceptive means to collect the debts. (ECF 2, pg. 9, ¶ 56).  Long also seeks summary judgment on her § 1692e(10) claim against Ability.

Section 1692f of the FDCPA is in place to cover debt collection practices that are not expressly addressed in other sections of the statute.  *Finley v. Ocwen Loan Servicing, LLC*, 2018

U.S. LEXIS 59920, *13 (N.D. Ohio Apr. 9, 2018) citing *Sexton v. Bank of New York Mellon*, 2016 U.S. Dist. LEXIS 98435, *8 (E.D. Ky. Jul. 28, 2016) citing *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio Mar. 22, 2007).  A claim fails were plaintiff does not identify conduct that would not be covered by a different FDCPA provision. *Id.* citing *Sexton*, 2016 U.S. Dist. LEXIS 98435 at *8; *Newton v. Portfolio Recovery Assoc., LLC*, 2014 U.S. Dist. LEXIS 11490, *10 (S.D. Ohio Jan. 30, 2014) ("[A] § 1692f claim fails [when] Plaintiff has not identified any conduct that would not be covered by a different FDCPA provision.  Section 1692f serves as a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d and 1692e.'").

Here, Long has not provided any evidence to show that her § 1692f(1) claim is not covered by her claim against Ability under to § 1692e(10).  Long merely alleges in her Amended Complaint that Ability used unfair and unconscionable means to attempt to recover the debts without an explanation or providing evidence to show how her § 1692f(1) claim differs in any way from her claim that Ability violated § 1692e(10) by allegedly using false and deceptive means to attempt to recover the debts.  Long's § 1692f(1) claim against Ability is repetitive of her § 1692e(10) claim as it covers the same provision of the FDCPA - §1692e.  As Long has not provided any evidence to show that her § 1692f(1) claim shows conduct on the part of Ability that is not covered by her § 1692e(10) claim against Ability, her § 1692f(1) fails as a matter of law.  There is no genuine dispute as to any material fact regarding Long's § 1692f(1) claim against Ability whereby summary judgment on the claim should be granted in favor of Ability and denied as to Long.

**B. Summary judgment should be granted in favor of Ability on Long's 15 U.S.C. § 1692e(10) claim because Ability did not use any false, deceptive or misleading statements during its attempts to recover the debts.**

15 U.S.C. § 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. *Alston*, 2014 U.S. Dist. LEXIS 27124 at *13.  In her Amended Complaint, Long alleges that Ability violated § 1692e(10) by allegedly sending letters to her and furnishing credit information to the CRAs regarding her when Ability allegedly knew that she did not owe the debts and by allegedly refusing to stop furnishing alleged false information.  The record in this matter shows otherwise.

In *Alston*, the Court found that plaintiff was not able to advance a claim pursuant to § 1692e(10) against the collector, United Collection Bureau, Inc. ("UCB") because plaintiff did not provide any reasoning or evidence as to how UCB used false representations or deceptive means to attempt to collect a debt.  *Id.* at *14 citing *Mavilla v. Absolute Collection Service, Inc.*, 539 Fed. Appx 202, 2013 WL 4799313, at *4 (4th Cir. 2013) (Appellants have failed to identify the exact conduct that violated 15 U.S.C. § 1692e(10) and similarly have failed to present any evidence in support of the claims.).  Naked assertions that a defendant knew that the debt was false all along does not give rise to an actionable conduct under the FDCPA.  *Id.* citing *Baptiste v. Capital One Bank (USA), N.A.*, No. JKB-11-3535, 2012 U.S. Dist. LEXIS 65901, *2 (D. Md. May 10, 2012) (where a claim under § 1692e(10) failed because plaintiff only alleged that a law firm sent her something in writing demanding payment on a debt, which she refers to as 'non-existent', the law firm was not considered to have used any false, deceptive or misleading representations or means in connection with collection of the debt.).

Long alleges that Ability violated § 1692e(10) by allegedly sending her two letters without knowing if the debts belonged to her, by allegedly reporting and verifying a debt from the wrong person and by allegedly telling her that it could not stop its credit reporting.  (ECF 2, pg. 9, ¶ 56, pg. 10, ¶ 56; ECF 46, pg. 20).  It is well settled that a collector, such as Ability, can

rely on the information provided by the creditor in commencing collection activity.  *See Slanina v. United Recovery Sys., LP*, 2011 U.S. Dist. LEXIS 121, *8 (M.D. Pa. 2011) ("Requiring debt collectors to investigate and verify a debt before collection would create an additional duty not found in the statute's plain language.  It would also render 1692g(a)(4) superfluous.).

At the time when Ability sent Long the initial collection letters dated November 14, 2016, it had no way of knowing that Long was not the consumer responsible for the Pendrick debts.  The first and only communication that Ability had with Long was a telephone conversation between Long and Ability's representative, Mark Carlson on November 22, 2016.  (See Exhibit 1, ¶ 11; Exhibit 6).  During this conversation, Mr. Carlson directed Long to dispute the debts with the credit bureaus and informed Long that it would not furnish any tradeline information to the CRAs for 30 days.  (See the recording of the November 22, 2016 conversation between Long and Mark Carlson which is being provided as Exhibit 10).  Contrary to Plaintiff's allegations and pleadings, at no time during this conversation – the only conversation between Long and Ability – did Mr. Carlson state to Long that Ability had no way to stop the false credit reporting.  (Exhibit 10).  This attempted use of the conversation by Long as evidence of the alleged § 1692e(10) fails, as the evidence is being misinterpreted by Long.

Each of the initial collection letters that were sent to Long contained the disclosures required under § 1692g(a) of the FDCPA, providing Long with the right to send writings to Ability disputing the debts and requesting validation of the debts.  (Exhibits 2 and 3).  However, Long testified at her deposition that she never sent any writings to Ability regarding the debts.  (Exhibit 4, pg. 28, ¶ 7, "I sent no letters to Ability.").  Without a valid dispute, Ability had no way of confirming that the person that it spoke with on November 22, 2016 was not responsible for the debts.  However, after the November 22, 2016 conversation it ceased all collection

activity on the Pendrick account ending in 2446, marked its internal records for account ending in 2448 as disputed and did not place any telephone calls or send any additional letters regarding the account ending in 2448.  (Exhibit 7, pg. 32, ¶¶ 9-12).  After the 30-day dispute and validation period passed without receipt of a written dispute from Plaintiff, Ability furnished tradeline information to the credit bureaus regarding Pendrick debt ending in 2448, reporting the debt in a disputed status.  (Exhibit 5, pg. 19, ¶¶ 4-8).  Upon receipt of notices of disputes from the credit bureaus regarding the debt, Ability followed its policies and procedures in engaging in a reasonable investigation and reporting the results.  (Exhibit 5, pg. 22, ¶¶ 9-12).  The evidence in this matter clearly shows that Ability did not use any false representations or deceptive means to attempt to recover the debts.

To support her contention that she is entitled to summary judgment on her § 1692e(10) claim, the only evidence offered by Long is a misinterpretation of the deposition testimony of Ability's collection manager, Kim Nanfeldt and an attempt to add language to the November 22, 2016 conversation between Long and Ability's representative, Mark Carlson.  Long offers no evidence of how Ability allegedly did not know that she was not responsible for the debt prior to engaging in collection activities, was not aware that she was not responsible for the debt (other than through her own verbal admission, and not in compliance with § 1692g(a)) or that Ability refused to stop furnishing alleged fraudulent information to the credit bureaus.

Long's naked assertions that Ability violated § 1692e(10), her misrepresentation of deposition testimony and improper attempt to add language to the November 22, 2016 conversation does not constitute valid evidence to warrant summary judgment in her favor. However, the evidence in this matter shows that Ability did not use any false representations or

misleading means in its collection attempts, whereby there is no genuine issue of material fact as to Long's § 1692e(10) claim, and summary judgment should be granted in favor of Ability.

###### 4. Summary Judgment Should Be Granted In Favor of Ability as to Plaintiff's MCDCA Claims.

**Long's MCDCA §§ 14-202(3) and 14-202(8) claims against Ability fail because Ability possessed a right to collect the debts and did not have actual knowledge or a reckless disregard of lacking the right to do so.**

In her Amended Complaint, Long alleges that Ability violated MCDCA §§ 14-202(3) and 14-202(8) by allegedly knowingly pursuing a false debt and disclosing known false information to the credit bureaus. (ECF 2, pg. 10, ¶¶ 61-62, pg. 11, ¶¶ 63-68). MCDCA § 14-202(3) prohibits collectors from disclosing false information about a debtor's credit worthiness with knowledge that the information is false. *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. Dec. 16, 1999). The term "knowledge" in the Act does not immunize debt collectors from liability for mistakes of law. *Id.* citing *Hopkins v. State*, 193 Md. 489, 498, 69 A.2d 456, 460 (1950). A violation can occur where the collector discloses information or threatens to enforce a right with actual knowledge or reckless disregard as to the falsity of the information or the existence of the right. Under MCDCA § 14-202(8), a debt collector may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist. To state a claim under § 14-202(8), a plaintiff must show (1) that the defendant did not possess the right to collect the amount of the debt sought, and (2) that the defendant attempted to collect the debt knowing that they lacked the right to do so. *Price v. Murdy*, 2018 U.S. Dist. LEXIS 55887, \*\*27-28 (D. Md. Mar. 30, 2018) citing *Lewis v. McCabe, Weisberg & Conway, LLC*, 2014 U.S. Dist. LEXIS 106220, 2014, \*6 (D. Md. Aug. 4, 2014); *Lembach v. Bierman*, 528 F.App'x 297, 304 (4th Cir. 2013) (quoting *Shah v. Collecto, Inc.*, 2005 U.S. Dist. LEXIS 19938, \*11 (D. Md. Sept. 12, 2005)); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F.Supp.2d 492, 511 (D.Md. 2004)

(explaining that the plaintiff must show the defendant acted with actual knowledge or reckless disregard as to the falsity of the information to be liable under the MCDCA).

The record that has been established in this matter shows that not only did Ability have the right to collect the debts but it also did not have actual knowledge or a reckless disregard of knowing that it was not able to collect the debts or that the tradeline information that it furnished to the credit bureaus was false.

In November of 2016 Pendrick engaged Ability to attempt to recover two debt obligations owed by Crystal Long to Pendrick. (Exhibit 1, ¶ 4). Upon receipt of the accounts from Pendrick, Ability engaged in "skip tracing" to obtain a current address and telephone number for Crystal Long. (Exhibit 1, ¶ 10); (Exhibit 5, pg. 23, ¶¶ 3-17). Ability then sent two initial collection letters to Crystal Long dated November 14, 2016 to an address for Crystal Long that was obtained through the skip tracing procedures. (Exhibit 1, ¶ 11); (Exhibits 2 and 3). The letters contained the disclosures required under 15 U.S.C. § 1692g(a) directing Plaintiff to dispute the debts and request validation of the debts in writing within 30 days of her receipt of the letters. (Exhibits 2-3). During the time of this collection activity, Ability was permitted to rely on the information provided by Pendrick in attempting to contact the consumer to recover the debts. *Slanina*, 2011 U.S. Dist. LEXIS 121, at *8. On November 22, 2016 Ability received a telephone call from Long who verbally disputed owing the debts. (Exhibit 7, pg. 26, ¶¶ 5-6). After the call, Ability ceased all collection activity on one of the Pendrick accounts and updated its internal records on the other Pendrick account to reflect that Plaintiff disputed the account. (Exhibit 7, pg. 32, ¶¶ 9-12); (Exhibit 6). Through her own testimony, Long confirmed that at no time did she send any writings to Ability, including any writings disputing or requesting validation of the debts. (Exhibit 1, ¶ 7); (Exhibit 4, pg. 28, ¶¶ 4-7). After a 30-day period

elapsed, and a written dispute was not received from Long, information regarding the debt was furnished to the credit bureaus under a disputed status.  (Exhibit 5, pg. 19, ¶¶ 4-8).

In relying on the information provided by Pendrick, Ability had the right to attempt to recover the debts at issue.  Moreover, the evidence shows that at no time did Long provide any documentation to Ability disputing the debts, requesting validation of the debts or providing documentation showing that she was not responsible for the debts.  The evidence shows that Ability followed valid policies and procedures in providing initial letters containing the disclosures required under 15 U.S.C. § 1692g(a), directing Long to notify the credit bureaus of her disputes and furnishing information regarding the debt to the credit bureaus under a disputed status.  The record does not show that Ability had knowledge that it did not have a right to collect the debts and does not show that Ability had actual knowledge or a reckless disregard of the falsity of the debt or its collection activity.

As there is no genuine issue of material facts as to whether Ability did not possess the right to collect the debts, that Ability attempted to collect the debts knowing that it lacked the right to do so or that it knowingly furnished false information regarding Long to the CRAs, summary judgment should be granted in Ability's favor regarding Long's MCDCA §§ 14-202(3) and 14-202(8) claims.

## 5.  **Summary Judgment Should Be Granted In Favor of Ability as to Plaintiff's MCPA Claim.**

**Long's MCPA claim against Ability fails because Ability did not violate the MCDCA and Ability's collector, Mark Carlson, did not tell Long that Ability was not going to report the debt to the CRAs.**

In her Amended Complaint, Long alleges that Ability's alleged violation of the MCDCA constitutes a violation of the MCPA and that Ability violated the MCDCA by falsely informing Plaintiff that it was not going to report the debt to the CRAs.  (ECF 2, pg. 12, ¶¶ 72-73).  As stated in the above section, the record in this matter shows that it did not violate the MCDCA as Ability did not have knowledge that it did not have a right to collect the debts and did not have actual knowledge or a reckless disregard of the falsity of the debt or its collection activity. Moreover, contrary to the allegations in paragraph 72 of Plaintiff's Amended Complaint, at no time during the conversation between Long and Ability's collector, Mark Carlson (the only communication that took place between Long and Ability) did Mr. Carlson tell Long that it was not going to report the debt to the CRAs.  (Exhibit 10).  As there is no genuine issue of material fact as to whether Ability violated the MCDCA, thereby violating the MCPA, or that Ability's representative told Long that Ability was not going to report the debt to the CRAs, summary judgment should be granted in favor of Ability on Plaintiff's MCDCA claim.

6. **Any Damages Awarded to Long For Violations Of the FDCPA, MCDCA or MCPA should be limited to Statutory Damages.**

**Long has failed to sufficiently articulate non-economic damages.**

A plaintiff seeking actual damages or compensatory damages in support of her claim for emotional distress must produce sufficient evidence of the damages.  *Alston*, 2018 U.S. Dist. LEXIS 63171 at \*\*11-12 citing *Davenport*, 124 F. Supp. 3d 574 at 583 (D. Md. 2015) ("[A]n award of compensatory emotional distress damages requires evidence establishing that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated. That is, a plaintiff's own conclusory allegations that he felt embarrassed,' degraded,' or 'devastated,' and

suffered a loss of self-esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress."); *See also Doe v. Chao*, 306 F.3d 170, 179-82 (4th Cir. 2002) (a "plaintiff must produce a showing of evidence that is sufficiently articulated, not conclusory.")

In *Alston*, the Court granted summary judgment in favor of the defendant collector on the issue of limiting plaintiff's damages to statutory damages, finding that plaintiff had not produced sufficient evidence of actual or compensatory damages in support of his claim for emotional distress. *Alston*, 2018 U.S. Dist. LEXIS 63171 at *12. The Court found that plaintiff's deposition testimony and discovery responses regarding his non-economic damages were evasive and that he did not produce documents, including medical records, sufficient to support his claim for damages. *Id.* at *9-12. Here, Long testified at her deposition that she did not apply for credit during the time when Ability was attempting to recover the debt, whereby she was not denied any credit opportunities nor was she held out of the credit market because of Ability's activities. (Exhibit 4, pg. 36, ¶¶ 2-7). Long has not provided any documentation, information or testimony to show that she had been either denied credit or offered unfavorable financing terms during the applicable time period.

Long was not wrongfully denied employment or promotions because of Ability's collection activities, as the record for this matter shows that from November of 2016 to June of 2017 Long did not apply for any additional employment positions nor was she denied advancement in her employment. In fact, from the beginning of her employment with Trusted Health Plans, Inc. in September of 2017 to the present, Long received two promotions, with the promotions being accompanied by salary increases. (Exhibit 8, pages 9-10); (Exhibit 4, pg. 47, ¶¶ 2-9). Long has never been reprimanded by her employer for any reason, including her

personal financial responsibility.  (Exhibit 4, pg. 34, ¶¶ 11-15).  Long did not know if her employer's "background check" included a review of her credit score or personal financial background.  (Exhibit 4, pg. 17, ¶¶15-22, pg. 18, ¶¶ 1-7).  Long has not provided any documentation, information or testimony to show that she had could have possibly be wrongfully denied employment or promotions because of Ability's collection activities or credit reporting. Long has not provided any specifics regarding her damages of suffering from anxiety, sleeplessness or humiliation, including failing to provide dates in which the harm allegedly occurred, specifics of the alleged harm, receiving medical treatment for the alleged harm or whether the harm was a proximate cause of Ability's collection activity.

Because Long has failed to establish any emotional distress or other damages, summary judgment should be granted in favor of Ability on Long's claims for actual damages and Long's damages for her FDCPA, MCDCA and MCPA claims should be limited to statutory damages.

[*Intentionally Left Blank*]

## V.     <u>CONCLUSION</u>

WHEREFORE, Defendant, Ability Recovery Services, LLC respectfully requests that this Honorable Court grant its Motion for Summary Judgment, granting summary judgment in its favor regarding all Counts in Plaintiff's Amended Complaint and denying Plaintiff's Motion for Partial Summary Judgment, denying summary judgment in favor of Plaintiff on Counts I and III of her Amended Complaint.

**STRADLEY RONON STEVENS & YOUNG**

By:      */s/ Thomas F. Lucchesi*
Thomas F. Lucchesi, Esquire
1250 Connecticut Ave, NW, Suite 500
Washington, DC 20036
(202) 507-6401/(202) 822 0140 (fax)
tlucchesi@stradley.com
Attorneys for Defendant
Ability Recovery Services, LLC

**MARGOLIS EDELSTEIN**

By:      */s/ Ronald M. Metcho*
RONALD M. METCHO
220 Penn Avenue, Suite 305
Scranton, PA 18503
(570) 220-2091
rmetcho@margolisedelstein.com
Attorneys for Defendant
Ability Recovery Services, LLC