**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Crystal Long, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:17-cv-01955-GJH |
| | ) | |
| Ability Recovery Services, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PENDRICK
CAPITAL PARTNERS II, LLC'S MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES defendant Pendrick Capital Partners II, LLC ("Pendrick"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby opposes plaintiff's motion for summary judgment, and moves this Court to enter summary judgment in favor of Pendrick and against plaintiff.  In support, Pendrick states as follows:

**I.      Introduction**

As plaintiff concedes in her motion for partial summary judgment, Pendrick's *only* activity in this case involved the placing of two defaulted accounts for collections with Ability on November 7, 2016.  Those accounts had been purchased earlier by Pendrick from the original creditor, Emcare Randall Emergency Physicians ("Emcare").

It is undisputed that Pendrick never sent any written correspondence to the plaintiff, plaintiff never sent any written correspondence to Pendrick, and plaintiff never communicated with Pendrick by phone or in any other way.  To be clear, Pendrick did not credit report the account at issue, nor was it made aware, until the filing of the lawsuit, that plaintiff had disputed the debts.  Other than placing the two accounts with Ability, Pendrick played no role in

corresponding with plaintiff, with attempting to actually collect the debt from plaintiff, or with the credit reporting of the debts.  Because Pendrick never communicated with, or attempted to collect a debt from her, plaintiff is unable to establish that Pendrick violated the FDCPA in any way.  Moreover, plaintiff has failed to show that Pendrick is vicariously liable under the FDCPA for any conduct of Ability.  Accordingly, judgment should be entered in Pendrick's favor and against the plaintiff on her FDCPA claim.

## II.    Procedural History

Plaintiff filed this lawsuit bringing the following claims:

(1) Alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, ("FCRA") against Ability Recovery Services, LLC ("Ability"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax");

(2) common law defamation against Ability, Experian, Equifax and Pendrick;

(3) alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") against Pendrick and Ability;

(4) alleged violations of the Maryland Consumer Debt Collection Act, § 14-201 *et seq.*, ("MCDCA") against Pendrick and Ability;

(5) alleged violations of the Maryland Consumer Protection Act, § 13-301, *et seq.* ("MCPA") against Pendrick and Ability; and

(6) for declaratory relief against all defendants.

In plaintiff's motion for partial summary judgment (Dkt. 46), she only addresses the claim under the FCRA as to Ability, and the claim under the FDCPA as to Pendrick and Ability. For the purposes of Pendrick's Motion, and its Response to the plaintiff's motion for partial summary judgment, each of the claims as to Pendrick asserted in plaintiff's operative complaint

(Dkt. 2) shall be addressed in turn.  And for the reasons stated in greater detail below, each of those claims against Pendrick fails as a matter of law, and judgment should be entered in favor of Pendrick.

Initially, while plaintiff has not asserted any claim against Pendrick under the FCRA, to be very clear, Pendrick is not a furnisher within the purview of the FCRA, as it does not provide any information to the credit reporting agencies.  To the extent that plaintiff makes any inference in her motion for partial summary judgment that Pendrick should be vicariously liable for Ability's alleged credit reporting, there is no statutory or judicial authority to impose vicarious liability upon a creditor that places an account with its independent contractor for collection purposes.  Plaintiff appears to concede such, as, aside from blending the alleged actions of Pendrick and Ability in her motion for partial summary judgment, she has not asserted a direct claim, or claim for vicarious liability, under the FCRA as to Pendrick.  To the extent that any claim is made as to Pendrick under the FCRA, judgment should clearly be entered in favor of Pendrick.

As to plaintiff's claims under the FDCPA as to Pendrick and Ability, plaintiff's allegations against both defendants are identical, and plaintiff has not even attempted to distinguish her theory of liability against one defendant from another.[1]  Plaintiff concedes that there was no communication directly with Pendrick at any point to support any direct liability under the FDCPA.  On that basis, plaintiff appears to rely entirely upon a claim for vicarious liability as to Pendrick.  However, the evidence presented establishes (1) that Pendrick is not a

---

[1] On page 1 of the plaintiff's memorandum in support of her motion for partial summary judgment, she consistently references the "Defendants" collectively (*see* pg. 1, Dkt. 45); however, she fails to assert any affirmative act by Pendrick other than the placement of two accounts with Ability that included plaintiff's location information – information that was distinct from that obtained by Ability.  Aside from attempting to lump the alleged actions of Ability and Pendrick, plaintiff has provided no evidence whatsoever to support either direct, or vicarious, liability as to Pendrick.

debt collector within the provisions of the FDCPA, and (2) that Pendrick is not vicariously liable for Ability's alleged acts under the FDCPA.

As to plaintiff's state law claims for (1) defamation, (2) under the MCDCA, and (3) under the MCPA, those claims fail as well because they are either preempted under the FCRA, there is no actual claim as against Pendrick, or because Pendrick cannot be held vicarious liable for the same reasons stated with regard to plaintiff's FDCPA claims.[2]

As to the defamation claim as to Pendrick, it fails for a multitude of reasons, including: (1) that Pendrick did not make any statement about the plaintiff whatsoever, (2) Pendrick did not furnish any information to the credit reporting agencies regarding the plaintiff, and perhaps most importantly, (3) plaintiff's claims for defamation are preempted under § 1681h(e) of the FCRA. Plaintiff's claims under the MCDCA and MCPA fail for similar reasons, as those claims are predicated upon alleged violations of the FCRA, and, on that basis those claims are preempted under the FCRA.

In shortest from, plaintiff has failed to provide any support for her claims against Pendrick. Pendrick's *sole* involvement was placing two accounts with Ability with the information of a third party. Plaintiff effectively seeks to impose liability against Pendrick simply because it owns two debts that Ability was seeking to collect despite the fact that Pendrick did not take *any* act or have *any* involvement in that attempted collection. Indeed, this reality is most readily explained by the fact that plaintiff chose to not even conduct a deposition of Pendrick's corporate representative, likely knowing that Pendrick's response would be that, other than placement of the two accounts with Ability, it had no knowledge whatsoever that

---

[2] As to plaintiff's claim under Count VI for "declaratory" and "injunctive" relief, Pendrick will stipulate that it will refrain from any collection of the accounts at issue in the lawsuit with regard to the plaintiff.  Upon information and belief, and as plaintiff concedes in her motion for partial summary judgment, the tradeline at issue was removed from plaintiff's credit report after the filing of the lawsuit on request <u>from Ability</u> directed to the three credit reporting agencies.

plaintiff disputed the debt until the filing of the lawsuit.  Without something more, simply placing accounts with independent collection agencies does not expose Pendrick for any putative liability of those agencies.  The claims against Pendrick must be dismissed and judgment should enter in favor of Pendrick on all claims.[3]

## III.    Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). *Celotex* established that in cases where the non-moving party will bear the burden of proof at trial, it is not necessary for the movant to introduce any evidence in order to prevail on summary judgment. In such a case, "the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him." 10A Charles A. Wright, et al., Federal Practice and Procedure § 2727 (3d ed.); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167-69 (7th Cir. 2013) ("the movant's initial burden 'may be discharged by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case.' . . . Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'") (*quoting Celotex,* 477 U.S. at 325).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the pleadings. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). If

---

[3] As to the claims against Ability, Pendrick incorporates Ability's memorandum in support of summary judgment by reference under Federal Rule of Civil Procedure 10(c) with regard to the merits, or lack thereof, of plaintiff's claims under the FDCPA and FCRA.

the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252. The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Id.* at 248-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.*

Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247-48. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## IV.    Statement of Undisputed Facts[4]

---

[4] As to plaintiff's alleged statement of facts, Pendrick asserts the following in pertinent part: (1) Plaintiff asserts that when she "applied for a position at Trusted Health Plans, she signed a document giving her employer permission to check her credit." (*see* p. 2). Plaintiff fails to note that she admits that she applied for the job in June 2016, and started her employment on September 12, 2016, well prior to when Ability contacted her or credit reported the account. *See* **Exhibit D**, at 65:9-18; *see* **Ex. B**, pp. 8-9.

On November 7, 2016, Pendrick placed two accounts that it purchased from Emcare Randall Emergency Physicians in the name of Crystal Long with Ability for collection. **Exhibit A – Declaration of Anthony Albanese**, ¶ 3. The two accounts related to services provided at ███████████████████████████████████████████████████████████████, and had outstanding balances of $1,125 and $74, respectively. *Id.* ¶ 4. The information provided by Emcare to Pendrick related to a Crystal Long residing at ███████████████████████ ███████████. *Id.* ¶ 5.[5]

On November 22, 2016, Ability notified Pendrick that the address of 12706 Fairwood Parkway in Bowie, Maryland, 20720 was not a good address for the debtor. *Id.* ¶ 8. On June 6, 2017, Ability notified Pendrick that a telephone number had been identified as a good contact for the debtor. *Id.* ¶ 9. Other than that information, Pendrick was provided no information regarding the plaintiff, the debtor or the possible relationship between the two. *Id.* ¶ 10; *see* **Exhibit B – Plaintiff's Discovery Responses**, p. 1, ¶¶ 1-4; **Exhibit E – Deposition of Kim Nanfeldt**, p. 30:10-13, pp. 32-33, p. 43:14-17. Pendrick never sent any written correspondence to plaintiff, nor did Pendrick receive any written correspondence from plaintiff. *Id.* ¶ 11; **Ex. B,** p. 1, ¶¶ 1-4; **Ex. D**, p. 70:12-22-71:1-11. Pendrick never spoke with plaintiff, nor did Pendrick receive a phone call from plaintiff. *Id.* ¶ 12; **Ex. B,** p. 1, ¶¶ 1-4; **Ex. D**, p. 70:12-22-71:1-11. Pendrick never reported the debts to any credit reporting agency. *Id.* ¶ 13. Upon the filing of the lawsuit, Pendrick was first made aware of plaintiff's dispute of the validity of the debts. *Id.* ¶ 14; *see* **Ex. E**, p. 40:2-4.

---

[5] For the account with the $1,125 balance, Emcare did not provide a social security number, and, for that reason, the account was placed with Ability with a social security number of 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. *Id.* ¶ 6. For medical accounts purchased by Pendrick that involve emergency care, the accounts generally do not contain social security numbers, given the urgent nature of the services provided. *Id.* ¶ 7.

Pendrick and Ability entered into a Contract for Services dated November 5, 2015, where Ability was retained, as an independent contractor, to collect accounts placed by Pendrick. *Id.* ¶ 15. Pursuant to the Contract for Services, Pendrick "authorizes [Ability] to report to credit reporting bureaus all assigned collection account information provided under this Agreement." *Id.* ¶ 16.

Pendrick maintains rigorous requirements for its retained collection agencies provided for in its Agency Audit Procedure and the Pendrick Capital Partners Agency Requirements and Standard Operating Procedure dated January 25, 2016. *Id.* ¶ 17. Pursuant to those procedures, Pendrick again granted "the authority to its agencies to report the accounts placed with them for collections." *Id.* ¶ 18. While the agencies are granted exclusive authority to report accounts, Pendrick maintains procedures for its agencies to avoid errors in collection on accounts, including where disputes are lodged, or wrong parties are reached. *Id.* ¶ 19.

## V.      Plaintiff's FCRA Claims, if any, against Pendrick Fail as a Matter of Law

Plaintiff does not assert any affirmative claim against Pendrick for alleged violations of the FCRA in her operative complaint, nor does she appear to assert any such claim in her motion for partial summary judgment. However, what plaintiff does do is blend her allegations against Pendrick and Ability. Therefore, out of an abundance of caution, Pendrick seeks summary judgment on any FCRA claim because Pendrick is not a furnisher within the provisions of the FCRA, participated in no credit reporting of the accounts, and Pendrick is not vicariously liable for the alleged acts of Ability. *See* **Ex. A** ¶ 13.[6]

---

[6] The FCRA "imposes civil liability on any 'person' (which includes any corporation or other entity, 15 U.S.C. § 1681a(b)) who willfully, § 1681n, or negligently, § 1681o, fails to 'comply with any requirement imposed' under the Act." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899–900 (4th Cir. 2003); *see* 15 U.S.C. §§ 1681n, o. Pendrick is not a furnisher of information to the credit reporting agencies, and, on that basis alone, is not subject to the FCRA. "The FCRA itself does not impose additional dispute resolution duties beyond the furnisher itself or otherwise provide for vicarious liability. Plaintiff's only citations are to cases which conclude that vicarious liability should be imposed on a furnisher when one of its own employees violates the FCRA in some manner, usually by

8

While "*an employer* can be held vicariously liable [under the FCRA] for the actions of their employees under various situations," *Owens v. Dixie Motor Co.*, No. 5:12-CV-389-FL, 2014 WL 12703392, at *9 (E.D.N.C. Mar. 31, 2014) (emphasis added), no such relief applies in the context of a debt buyer like Pendrick and a debt collector like Ability under the FCRA, especially where Pendrick is not a furnisher of information to the credit reporting agencies. Plaintiff has provided no evidence whatsoever that an employer-employee relationship existed between Ability and Pendrick, and, indeed, no such relationship exists, as Ability was acting as an independent contractor pursuant to the terms of the Contract for Services dated November 5, 2015 between Ability and Pendrick. **Ex. A** ¶ 15. Moreover, pursuant to Pendrick's Agency Requirements and Standard Operating Procedures, dated January 25, 2016, Pendrick "granted the authority to its agencies to report the accounts placed with them for collections." *Id.* ¶ 18.

Again, while it appears that plaintiff concedes this truth by not alleging claims against Pendrick under the FCRA, for the purposes of this Motion for Summary Judgment, to the extent that any claims are asserted against Pendrick under the FCRA, either directly or vicariously, then entry of judgment against Plaintiff, and in favor of Pendrick, is proper on that claim.

## VI. Plaintiff's FDCPA Claim against Pendrick Fails as a Matter of Fact and Law

As reflected above, Pendrick's only involvement in this case was placing two accounts with Ability for collection that were owed by Crystal Long. Solely based upon that act, plaintiff seeks to impose liability upon Pendrick. Pendrick did not communicate in any way with the plaintiff, nor did Pendrick have any knowledge of plaintiff's dispute until *after* the filing of plaintiff's lawsuit. Lacking any evidence of any direct liability, plaintiff's entire FDCPA claim

---

obtaining someone's credit information for an improper purpose. *Strohbehn v. Access Group, et al.*, 2017 WL 5468757, *8 (E.D. Wis. Nov. 14, 2017) (citing *Owens v. Dixie Motor Co.*, No. 5:12-CV-389-FL, 2014 WL 12703392, at *9 (E.D.N.C. Mar. 31, 2014)).

against Pendrick is one predicated upon alleged vicarious liability.  The failure of plaintiff's theory is twofold: (1) Pendrick is not a debt collector subject to the provisions of the FDCPA; and (2), even assuming, *arguendo*, that Pendrick is subject to the provisions of the FDPCA, it cannot be vicariously liable for Ability's alleged acts.

Plaintiff asserts in her motion for partial summary judgment that the "Defendants here pursued Plaintiff for a debt that did not belong to her, based solely on a common name and a skip-traced address…" and that "[w]hen presented with evidence that Plaintiff's identifying information did not match that associated with the debt, Defendants persevered, reporting and then verifying on three separate occasions derogatory credit information on Plaintiff's credit report."  *See* p. 1, Dkt. 46-1.  Plaintiff goes on to assert that "both Defendants, directly or vicariously, used the threat of credit reporting as a coercive, abusive, and deceptive means of attempting to collect a debt from Plaintiff that was not hers."  *Id.*

What it is clear is that plaintiff has zero evidentiary basis to support any of the shot-gun assertions in either paragraph as to Pendrick, aside from her conclusory assertions of liability. What is more readily apparent is that plaintiff *acknowledges* (1) that she never communicated in any way with Pendrick, and (2) that Ability did not contact Pendrick in connection with the plaintiff's disputes (*see* Plaintiff's Motion for Partial Summary Judgment, Dkt. 46, p. 2.). Despite the lack of an evidentiary basis of her claims as to Pendrick, plaintiff simply lumps the alleged acts of Ability with that of Pendrick.  As was the case in plaintiff's operative complaint (*see* Dkt. 2-1, pp. 4-5, 10), plaintiff has failed to distinguish the alleged acts of Pendrick and Ability, and simply points to Ability's acts as a basis to impose liability.  However, plaintiff fails to identify *any* misconduct allegedly attributed to Pendrick, aside from the initial placement of the two accounts with Ability for collection in the name of Crystal Long.

10

To the extent plaintiff seeks to impose vicarious liability upon Pendrick for Ability's alleged violations of the FDCPA, as suggested *supra*, the Court must evaluate two guideposts:[7] whether (1) Pendrick is a debt collector subject to the provisions of the FDCPA, and (2), whether Pendrick is vicariously liable for Ability's alleged acts.

1. <u>Pendrick is not a Debt Collector Within the Provisions of the FDCPA</u>

Critical to establishing that Pendrick is liable under the FDCPA, plaintiff must prove that Pendrick is a debt collector as defined by, and subject to, that Act.  Plaintiff seeks to clear that hurdle by resting upon two discovery responses by Pendrick along with the 7th Circuit's decision in *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).  Plaintiff's efforts fall short of the hurdle.

"In order for [a defendant] to be liable for FDCPA violations, they must qualify as 'debt collectors' under the FDCPA."  *Fontell v. Hassett*, 870 F. Supp. 2d 395, 402 (D. Md. 2012).  "A 'debt collector' is defined [in the FDCPA] as 'any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or *due another*.'"  *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (quoting 15 U.S.C. § 1692a(6)) (emphasis added).  Conversely, a "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed…" 15 U.S.C. § 1692a(4).

Here, there is no dispute that Pendrick does not collect debt owed to third parties, as it simply purchases accounts, and places them with third parties for collection purposes.  Pendrick is, therefore, attempting to collect a debt owed or due to itself when placing accounts with its

---

[7] This all first assumes that plaintiff must *prove* a violation of the FDCPA as against Ability.  As suggested *supra*, Pendrick incorporates herein Ability's defenses with regard to the *merits* of plaintiff's FDCPA claim which demonstrates that plaintiff is unable to clear that predicate hurdle.

agencies for collection purposes. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721–22, 198 L. Ed. 2d 177 (2017) ("All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another." And given that, it would seem a debt purchaser like Santander may indeed collect debts for its own account without triggering the statutory definition in dispute, just as the Fourth Circuit explained.").

The statutory definition makes clear that there are 2 means in which an entity can be considered an FDCPA debt collector: first, an entity that has as a principal purpose the collection of debts, or second, an entity collecting debts on behalf of another.

It cannot reasonably be claimed that Pendrick is a debt collector under the second prong of the definition, as Pendrick never "collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or *due another*."  *See* 15 U.S.C. § 1692a(6).  All of the debts are owned by Pendrick.  *See* **Exhibit C – Pendrick's Discovery Responses**, p. 5, ¶¶ 5-6, 9-12.

Plaintiff seeks refuge in the first prong of the definition however, arguing that Pendrick's principal purpose is the collection of debts.  Plaintiff's argument is too narrow and short sighted, as it is not the principal purpose of Pendrick's business to actually *collect* debts, but, rather, to *purchase* debts.  This distinction is perhaps best articulated by Judge Matthew F. Kennelly in *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1078–79 (N.D. Ill. 2014)(emphasis added):

> The scenarios presented in *Schlosser* and *McKinney* are different from the situation here. OPS acquired an existing debt in default, as did the defendants in those cases, but then it hired another party (Trident) to collect the debt. And unlike the situation in *Ruth*, Kasalo alleges no action on the part of OPS other than hiring Trident; Kasalo does not allege that OPS drafted anything that was sent to Kasalo or took any action toward him. Neither party, in fact, offers a case with a factual scenario like this one, in which a party alleged to be a "debt collector" hired a third party to collect a debt it acquired post-default but did not take any actions itself toward the debtor. Case law on this scenario is admittedly sparse, although some district courts have addressed it briefly. *See, e.g., Kloth v.*

*Citibank (S.D.),* 33 F.Supp.2d 115, 119 (D.Conn.1998) ("Citibank is not a 'debt collector' under the FDCPA merely because it retains a collection agency to collect its debts."); *see also Grier v. Simmons & Clark Jewelers,* Civ. Action No. 11–cv–14247, 2012 WL 1247171, at *5 (E.D.Mich. Feb. 17, 2012) (same); *Challenger v. Experian Info Solutions, Inc.,* Civ. No. 06–5263, 2007 WL 895774, at *2 (D.N.J. Mar. 22, 2007) (same).

OPS may be a debt collector in one literal sense of the term; it purchases debts that people owe, such as the one in this case, and it does so for the purpose of making money on the debts by hiring others to collect. The FDCPA, however, has its own definition of the term. As the Court has indicated, a debt collector under the FDCPA is one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* The statute governs interactions between debt collectors and consumers and seeks "to eliminate abusive debt collection practices by debt collectors." *Id.* § 1692(a). <u>An entity that acquires a consumer's debt hoping to collect it but that does not have any interaction with the consumer itself does not necessarily undertake activities that fall within this purview</u>.

Kasalo has not shown there is a genuine dispute of fact about whether OPS "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). Although OPS purchased Kasalo's debt when it was in default, <u>OPS has not undertaken any collection activity, as required to fit the definition of "collector"</u> as discussed or presumed of the defendants in the cases Kasalo cites. OPS does not "attempt[ ] to collect," as Kasalo argues. Pl.'s Mem. at 10. It hires others to so do, as evidenced by the fact that all of Kasalo's interactions in this case were with Trident. OPS's name was on the letter Trident sent to Kasalo, but OPS did not send the letter or any other letters or notices, nor did it make any phone calls to Kasalo. The Court therefore concludes that no reasonable jury could find in favor of Kasalo on his FDCPA claims against OPS, which require a determination that OPS is a "debt collector" within the meaning of the statute.

Here, plaintiff attempts to peg liability on Pendrick simply because it, like OPS in *Kasalo*, owns the two accounts that Ability was seeking to collect.  But like OPS in *Kasalo*, Pendrick did "not have any interaction with" plaintiff and "has not undertaken any collection activity."  Like OPS, the principal purpose of Pendrick's business is not "the collection of any

debts", and plaintiff has provided this Court absolutely no evidence that Pendrick engaged in any activity directed at plaintiff aside from placing the two accounts with Ability for collection.

As the 7th Circuit noted in *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003):

> As the district court recognized, the FDCPA distinguishes between "debt collectors" and "creditors." Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *See id.* In general, a creditor is broadly defined as one who "offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4), whereas a debt collector is one who attempts to collect debts "owed or due or asserted to be owed or due another." *Id.* § 1692a(6). *For purposes of applying the Act to a particular debt, these two categories—debt collectors and creditors—are mutually exclusive.*

(emphasis added); *see also Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) ("We note, as other circuits have, that "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."").  For the purposes of the FDCPA, Pendrick is a creditor, as it is a person "to whom a debt is owed" pursuant to 15 U.S.C. § 1692a(4), and not a debt collector, because it made no attempts to actually collect any debt.

### 2. Pendrick is not Vicariously Liable for Ability's Alleged Acts

Given that Pendrick is not a debt collector, there is no basis to find Pendrick vicariously liable for any putative FDCPA violations that may have been committed by Ability.  However, to be comprehensive and because of plaintiff's shot-gun pleading approach against "Defendants", *see footnote 1*, plaintiff's argument attempting to impose vicarious liability against Pendrick will be addressed in turn.

The 4th Circuit has not specifically addressed the possible application of vicarious liability under the FDCPA. *See Richardson v. Rosenberg & Assocs. LLC*, No. CIV. WDQ-13-0822, 2014 WL 823655, at *5 (D. Md. Feb. 27, 2014). However, a significant number of courts have come to the conclusion that, to be vicariously liable for the acts of another party under the FDCPA, that party must first be a "debt collector". As the 6th Circuit noted in *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir. 1996) when faced with a similar question:

> If attorney Leikin and his firm were "debt collectors," and if they violated § 1692i by bringing the collection actions in Southfield, did they thereby subject Credit Acceptance to vicarious liability under § 1692k even though Credit Acceptance, as we have seen, was not a "debt collector?" Citing *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507 (9th Cir.1994), the plaintiffs argue that we should answer this question in the affirmative. In *Fox,* however, the court was not prepared to say that Citicorp Credit Services-the counterpart of Credit Acceptance here-was not itself a "debt collector." If Citicorp was a debt collector, it would appear to accord with the intent of Congress for Citicorp to be held directly liable to a consumer whom Citicorp sued in the wrong judicial district. See *Fox,* 15 F.3d at 1516, pointing out that under the pre-1986 version of the Act, which contained an exemption for attorneys, § 1692i would have been superfluous if debt collectors could not be held vicariously liable for the actions of their attorneys.
>
> We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a "debt collector." Section 1692k imposes liability only on a "*debt collector* who fails to comply with [a] provision of this subchapter...." 15 U.S.C. § 1692k(a) (emphasis supplied). The plaintiffs would have us impose liability on non-debt collectors too. This we decline to do.

(Emphasis in original); *see also Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 405 (3d Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

Moreover, even assuming, *arguendo*, that Pendrick is deemed to be a debt collector under the FDCPA, plaintiff has provided zero evidence that Pendrick exerted any control over Ability's alleged actions or credit reporting of the account. "Under general principles of agency—which

15

form the basis of vicarious liability under the FDCPA, *see Newman v. Checkrite California,* 912 F.Supp. 1354, 1370 (E.D.Cal.1995)—to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (quoting *Restatement (Second) of Agency* § 1 (1958)) (declining to impose vicarious liability where no evidence of control); *see also Mitchell Rubenstein & Assocs., P.C. v. Sunrise Credit Servs., Inc.,* No. CV PX 16-2497, 2017 WL 57214, at *5 (D. Md. Jan. 5, 2017) ("Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.'") (quoting 1 Restatement (Third) of Agency § 1.01, Comment *f* (2005)).

Finally, and perhaps most importantly, a court in this very district has ruled that vicarious liability does not apply "where an employer's independent contractor commits the torts." *Fontell v. Hassett*, No. 10-CV-01472-AW, 2012 WL 1409390, at *6 (D. Md. Apr. 20, 2012) (J. Alexander Williams, Jr.) ("An employer is vicariously liable for the torts of its employee when the employee is acting within the scope of a master-servant relationship….This rule does not apply, however, where an employer's independent contractor commits the torts."). "An independent contractor is one 'who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result.'" *Id.*

Here, plaintiff has provided no evidence to support any vicarious liability as to Pendrick. Plaintiff supports her entire argument on the limited basis that Pendrick placed two accounts with Ability in the name of Crystal Long; however, she has provided zero evidence that Pendrick exercised any level of *control* over Ability's credit reporting of accounts.  Indeed, plaintiff elected to not even depose a Pendrick representative, instead, relying solely on the conclusory

16

position that Pendrick should be deemed a debt collector, and, on that basis alone, should be vicariously liable for Ability's alleged actions.   Such a tortured reading of the FDCPA's provisions does not benefit consumers in any material way, and simply seeks to impose liability on a party predicated solely on the basis that they owned the two accounts.  The FDCPA, and existing case law, requires more than simply alleging vicarious liability grounded upon nothing more than conclusory allegations of liability.

   3.  Plaintiff is not a Consumer Under Section 1692e of the FDCPA

   While it is anticipated that Ability will focus its motion for summary judgment more directly on the merits of plaintiff's FDCPA claim, it should be noted that plaintiff, as a non-debtor, has no claim under § 1692e, as she is not a "consumer".  Judge Jane Magnus-Stinson of the Southern District of Indiana articulated this best:

> One purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The provision of the FDCPA on which Ms. Hill relies for her claims against Bayside Woods and EMP—15 U.S.C. § 1692e— "forbids a debt collector to 'use any false, deceptive, or misleading representation or means in connection with the collection of any debt.' " *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) (quoting 15 U.S.C. § 1692e). This includes the false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2). The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).
>
> Construing the same FDCPA provision on which Ms. Hill relies for her claims against Bayside Woods and EMP, the Seventh Circuit Court of Appeals concluded that "when read in light of the Act's purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (citing 15 U.S.C. § 1692 ("The Act is meant 'to protect consumers against debt collection abuses.' ")). The term "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Seventh Circuit emphasized that because the purpose of the FDCPA is to

17

protect consumers, "[n]aturally we have used that understanding of the Act to interpret § 1692e, holding that to be actionable a misleading statement must have the ability to influence a *consumer's* decision." *O'Rourke*, 635 F.3d at 942 (original emphasis). The Seventh Circuit concluded that § 1692e "does not extend its protection beyond the consumer; there is no reference to anyone else in the process who may have a consequential, let alone extremely consequential role in the debt-collection process." *Id.* at 943. "Thus, the Act is limited to protecting consumers and those who have a special relationship with the consumer—such that the Act is still protecting the consumer—from statements that would mislead these consumers. The Act is not similarly interested in protecting third parties." *Id.*

Based on the applicable language in *O'Rourke*, the Court must conclude that Ms. Hill's FDCPA claim against Bayside Woods and EMP based on 15 U.S.C. § 1692e fails as a matter of law because there is no dispute that Ms. Hill was not the "consumer" for purposes of the debt at issue.

*Hill v. Bayside Woods, Hoa Inc.*, No. 116CV00916JMSDKL, 2016 WL 5792684, at *5 (S.D. Ind. Oct. 4, 2016).

Plaintiff contends that the determination of whether plaintiff falls within the definition of a consumer is a simple one (*see* p. 16, Dkt. 46-1).  However, the case that plaintiff cites does not support the proposition that plaintiff here is a "consumer" under every section of the FDCPA.  Rather, *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997) concludes that plaintiff was a consumer "within the meaning of 15 U.S.C. 1692a(3), specifically because she was "obligated to pay a debt to Southside Regional Hospital for services."  In *Creighton*, unlike this case apparently, the plaintiff *owed* the debt at issue, so she clearly fell within the definition of a consumer under § 1692a(3).  Here, on the contrary, plaintiff asserts that she is not obligated on the underlying accounts and therefore is not n FDCPA consumer.

Plaintiff appears to allege a violation of § 1692e(10) in her motion in making a misguided argument that there is a viable FDCPA claim here.  (*see* p. 20, Dkt. 46-1).  Section 1692e(10) of the FDCPA provides the following:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
>> (10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning *a consumer*.

15 U.S.C § 1692e(10)(emphasis added).

Given that plaintiff is not a "consumer" under the FDCPA, plaintiff's § 1692e(10) claim fails on that basis alone, and judgment should be entered in favor of Pendrick (and Ability) on that claim.[8]

## VII.   Plaintiff's Claim against Pendrick for Common Law Defamation, under the Maryland Consumer Debt Collection Act and under the Maryland Consumer Protection Act, Fail as a Matter of Fact and Law

It is not a surprise that plaintiff did not move for summary judgment on her claims under Maryland state law, given that her attorneys were continually advised that such claims were either preempted under the FCRA, or without any merit.  However, plaintiff has apparently refused to abandon those claims.  Regardless, Pendrick is entitled to summary judgment on each claims.

1.  <u>Plaintiff's Defamation Claim is Preempted by her FCRA Claim and Fails as a Matter of Law and Fact</u>

Initially, plaintiff's state law claims are preempted by her claims under the FCRA. "In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the factfinder: '(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered

---

[8] Similarly, plaintiff has failed to argue, let alone prove that Pendrick did anything other than place two accounts in the name of Crystal Long with Ability.  How this states a *prima facie* FDCPA claim as to Pendrick remains unclear.

harm.'" *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 268 (D. Md. 2015) (citing *Piscatelli v. Van Smith,* 424 Md. 294, 35 A.3d 1140, 1147 (2012) (quoting *Indep. Newspapers, Inc. v. Brodie,* 407 Md. 415, 966 A.2d 432, 448 (2009)). "The FCRA preempts state law causes of action for defamation invasion of privacy, or negligence with respect to a CRAs reporting of consumer credit information except when the CRA acted with malice or willful intent." *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *13 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007). Section 15 U.S.C. 1681h(e) of the FCRA provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

*Id.*

Given that plaintiff's theory of liability as to Pendrick relies, exclusively, on a theory of vicarious liability, her alleged defamation claims must fail, as that claim is predicated upon her credit reporting claims as to Ability. Even getting beyond that issue poses additional fatal obstacles for plaintiff, as she can point to no statement that Pendrick made to anyone, nor has she proven any harm from Ability's credit reporting on her account. For those reasons, plaintiff's claims for defamation as to Pendrick must be dismissed, and judgment should enter in favor of Pendrick on those claims.

2. Plaintiff's Maryland State Law Claims are Preempted by her FCRA Claim and Fail as a Matter of Law and Fact

As with plaintiff's defamation claim, her claims under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act both fail for the same reason – as they are clearly preempted under the FCRA. *See White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867, 872 (D. Md. 2015) ("Because Counts I and II constitute claims arising under Maryland statutes and relate to Green Tree's furnishing of credit information to credit reporting agencies, they run "into the teeth of the FCRA preemption provision," as noted by the Fourth Circuit in *Ross*, 625 F.3d at 813."); *Ross v. F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010) (same). As articulated by Judge Deborah K. Chasanow in *Awah v. Capital One Bank, N.A.,* No. CV DKC 14-1288, 2016 WL 930975, at *8 (D. Md. Mar. 11, 2016), *dismissed sub nom. Awah v. Capital One Bank*, 668 F. App'x 463 (4th Cir. 2016):

> [S]ection 1681t(b)(1)(F) preempts state statutory claims that are based on the responsibilities of those who report credit information to [credit reporting agencies ("CRAs")]. *See* 15 U.S.C. § 1681s–2(a)[] (encompassing the "[d]uty of furnishers of information to provide accurate information" which includes correcting any errors in reporting, and the duties of furnishers of information "[a]fter receiving notice...of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," which includes conducting an investigation into the dispute and correcting any errors discovered with the CRAs).

> *Davenport v. Sallie Mae, Inc.*, No. PJM-12-1475, 2013 WL 4010983, at *5 (D.Md. Aug. 2, 2013). "Congress's intent in § 1681t(b) is clear that § 1681s– 2(a)(1)(A) preempts any state law claims related to such knowing disclosures." *Alston v. Equifax Information Services, LLC, et al.*, No. GLR–13– 934, 2014 WL 580148, at *5 (D.Md. Feb. 11, 2014). Here, Plaintiff cannot establish a claim under the MCPA insofar as it is premised on Defendant's alleged false reporting to a consumer reporting agency because his claim falls squarely within § 1681t(b)(1)(F) and is preempted by the FCRA. Count II of the second amended complaint "alleges a willful breach of the responsibilities and duties contained in § 1681s-2 and 'runs into the teeth of the FCRA preemption provision.'" *Davenport*, 2013 WL 4010983, at *5 (quoting *Ross v. F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010)) (dismissing as preempted the plaintiff's MCDCA and MCPA claims premised on the defendant's reporting of inaccurate information).

Likely recognizing that her state law claims were preempted, plaintiff moved for partial summary judgment on her FDCPA and FCRA claims only, which makes sense, given that her attorney was advised multiple times that the claims were preempted (although there was no dismissal of the claims).

Moreover, and in addition to preemption of the claims, plaintiff's Maryland MCDCA and MCPA claims fail more substantively.

Judge Deborah K. Chasanow recently addressed the viability of a MCDCA claim in *Horowitz v. Fed. Ins. Co.,* No. CV DKC 15-1959, 2016 WL 25887, at *1 (D. Md. Jan. 4, 2016) noting as follows in pertinent part:

> Plaintiffs assert liability under the MCDCA (ECF No. 1 ¶¶ 30-37), which provides in relevant part: "In collecting or attempting to collect an alleged debt a collector may not...[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code, Com. Law § 14-202(8). To state a claim under this MCDCA provision, a plaintiff must allege sufficient facts to show that the defendant was a "collector," did not possess the right to collect the amount of debt sought, and attempted to collect the debt knowing that it lacked the right to do so. *See, e.g., Pugh v. Corelogic Credco, LLC*, No. DKC-13-1602, 2013 WL 5655705, at *4 (D.Md. Oct. 16, 2013).
>
> ….
>
> First, Plaintiffs allege no facts showing that the MCDCA applies to Defendant. The MCDCA's prohibitions apply to "collectors," which are defined as people "collecting or attempting to collect an alleged debt arising out of a consumer transaction." Plaintiffs do not allege facts supporting their conclusory assertion that Defendant, which was Selzer's malpractice insurance provider, funded the fee collection litigation. Rather, the alleged facts show that Defendant funded Selzer's defense of the malpractice claim, which happened to be handled by the same law firm that handled the fee collection claims. Funding a malpractice defense does not make an insurance company a debt "collector." The cases Plaintiffs cite to argue that Defendant falls under the MCDCA are inapposite because they either dealt with entities that are expressly in the business of debt collection, or did not apply the MCDCA. *See Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 731-32 (D.Md. 2011) (applying the MCDCA to a law firm that was in the business of buying consumer debt and initiating suits to collect); *Finch v. LVNV Funding, LLC*, 212 Md.App. 748, 751 (2013) (applying the MCDCA to a debt collection agency); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 88 Md.App. 672 (1991) (not applying the MCDCA). Even if Defendant were somehow properly categorized as a "collector," Plaintiffs nonetheless have not

alleged that, in this case, Defendant was "collecting or attempting to collect an alleged debt" sufficient to state a viable claim under the MCDCA.

*Horowitz v. Fed. Ins. Co.,* No. CV DKC 15-1959, 2016 WL 25887, at *3 (D. Md. Jan. 4, 2016), *aff'd*, 680 F. App'x 224 (4th Cir. 2017), and *motion for relief from judgment denied*, No. CV DKC 15-1959, 2017 WL 5624789 (D. Md. Nov. 22, 2017)

In addition to establishing a prima facie case, "plaintiffs must also adequately plead they are entitled to compensable damages under the MCDCA." *Allen v. Silverman Theologou, LLP*, 2015 WL 2129698, at *7 (D. Md. May 6, 2015); *see* Md. Code Ann., Com. Law § 14203 ("A collector who violates any provision of this subtitle is liable for any damage proximately caused by the violation...."). "MCDCA § 14–203 only allows recovery of damages proximately caused by its violation, 'including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.'" *Id.* "Under the MCDCA…an example of compensable proximate damages are fees improperly added to a plaintiff's debt by the collection agency…On the other hand, a plaintiff may not claim 'statutory damages ... any attorney's fees, court costs, any punitive damages, and any other relief as the court deems proper under the MCDCA." *Id.*

Here, plaintiff has failed to provide any evidence to support a claim under the MCDCA, as Pendrick is not a party "collecting or attempting to collect an alleged debt arising out of a consumer transaction," *see Fontell,* 2012 WL 1409390, *6-7 supra*, nor has plaintiff provided any evidence of compensable damages to support a MCDCA claim. On that basis, the MCDCA claim must be dismissed, and judgment should enter in favor of Pendrick.

As to the MCPA claim, like the MCDCA claim, plaintiff fails to provide any evidence whatsoever to support such a claim. As Judge Chasanow confirmed in *Pruit v. Alba Law Group, P.A.*, No. CIV.A. DKC 15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015)

To state a claim under the MCPA, Plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [her] actual injury." *Stewart,* 859 F.Supp.2d at 768 (citing *Lloyd v. Gen. Motors*

*Corp.,* 397 Md. 108, 143, 916 A.2d 257 (2007)). Under the MCPA, an "unfair or deceptive" trade practice includes "false...or misleading oral or written statement[s]...or other representations...[that have] the capacity, tendency, or effect of deceiving or misleading consumers." Md.Code Ann., Com. Law § 13–301(1). "[T]he MCPA claim, which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.' " *Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed.R.Civ.P. 9(b)). The circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison,* 176 F.3d at 784 (citations and internal quotation marks omitted).

As with the MCDCA claim, the "Maryland Court of Appeals has clarified that an individual may only bring a claim under the CPA, therefore, if she can 'establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice.'" *Willis v. Countrywide Home Loans Servicing, L.P.*, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009).

Here, as with her claim under the MCDCA, plaintiff has zero evidence to support an actual injury or loss sustained as a result of Pendrick's (or Ability's) alleged actions. Moreover, as confirmed with regard to the MCDCA claim, Pendrick is not vicariously liable for Ability's alleged torts. For those reasons, plaintiff's state law claims under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act must be dismissed with prejudice, and judgment should enter in favor of Pendrick.

## VIII.   Conclusion

For the foregoing reasons, Pendrick Capital Partners II, LLC respectfully requests that the Court find that there are no genuine issues of material fact, that Pendrick is entitled to judgment as a matter of law and, enter summary judgment in its favor.

Respectfully Submitted,

*/s/ Morgan I. Marcus*
Morgan I. Marcus
Sessions, Fishman, Nathan & Israel, LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603
Telephone:      (312) 578-0990
E-mails:          mmarcus@sessions.legal

*/s/ Patrick D. McKevitt*
Patrick D. McKevitt
Whiteford Taylor and Preston LLP
Seven Saint Paul St.
Baltimore, MD 21202
pmckevitt@wtplaw.com
*Attorneys for Pendrick Capital Partners II, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2018, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will automatically be sent to the all parties of record by operation of the Court's electronic filing system.


*/s/ Morgan I. Marcus*