# EXHIBIT A-5

**DOCUMENT REDACTED**

## CONTRACT FOR SERVICES

THIS AGREEMENT (the "Agreement") is made and entered into on this 5th day of November, 2015 among **Pendrick Capital Partners II, LLC** with its principal office at 1714 Hollinwood Drive, Alexandria, Virginia 22307, ("Client") and **Ability Recovery Services LLC**, with its principal office at 284 Main Street, Dupont, PA 18641 ("Agency"), and collectively referred to herein as "parties".

Headings are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

1. <u>Services</u>. Client shall, during the term of this Agreement, transfer certain accounts to Agency for collection. Client agrees not to transfer any such account to any other collection agency while the account is in Agency's possession. Referral of accounts to Agency shall be at the Client's discretion. Client acknowledges services performed by Agency are as an independent contractor. Client will cooperate and cause its employees to cooperate with Agency in every reasonable respect to allow Agency to perform its duties under this Agreement.

2. <u>Client Responsibilities and Obligations</u>. Client will furnish Agency with all information necessary to enable Agency to perform the services under this Agreement. Client hereby warrants and guarantees that the information furnished to Agency, including, but not limited to the identity of the debtor, the debtor's eligibility for repayment exemption, the balance of the account and the payments and credits due, shall be accurate.

3. <u>Compliance with Law</u>. Agency shall use reasonable efforts to effect collections of accounts referred to it by Client. Agency agrees that it shall comply with all provisions of the Fair Debt Collection Practices Act ("FDCPA") and applicable state statutes.

4. <u>Disclaimer of Warranties</u>. Agency has not, does not and will not represent, warrant, or guarantee the collections or timing of any collections of any accounts assigned to it under this Agreement. The services shall be performed on a best efforts basis.

5. <u>Direct Payments</u>. Client shall notify Agency of all direct payments, on all referred accounts, at time of receipt to Agency. Client understands and agrees that full commissions are due and payable to Agency on such direct payments. Client further agrees to indemnify Agency as outlined below for all losses caused by Client not reporting any such direct payments.

6. <u>Escrow Account</u>. All funds collected by Agency on behalf of Client shall be deposited directly into an account and held in trust on behalf of the Client and in Client's name. Client authorizes Agency to endorse negotiable instruments made payable to Client for purposes of depositing funds in said account. Any interest earned on funds shall be retained by Agency.



Confidential - Subject to Protective Order

8. **Verification Requests**. Client acknowledges that in connection with the collection of delinquent consumer debts, the FDCPA requires that Agency provide the consumer with verification of the underlying obligation if that request is made to Agency, in writing, by the consumer within 30 days of its initial communication with the consumer. The law prohibits Agency from collecting on any obligation once a verification request is made to Agency from the consumer, until such time as said verification has been mailed by Agency to the consumer. Client acknowledges that in any situation in which it does not provide Agency with the requested verification, Agency can no longer legally attempt to collect the account. In such case, Client acknowledges that the Agency will return the account to Client.

9. **Account Return**. Agency shall return, without charge, any account placed in error.

10. **Initial Term, Renewals and Termination**. The initial term of this Agreement will be twelve (12) months ("Initial Term") commencing the date this Agreement is executed by Agency ("the "Effective Date"). This Agreement will be self-renewing for additional one-year terms unless either party delivers to the other written notice of termination at least ninety (90) days prior to the expiration of the then current term. After the Initial Term, this Agreement may be terminated by either party upon thirty (30) days prior written notice to the other without penalty. Agency may terminate this Agreement immediately (i) upon any breach of paragraph 20 of this Agreement or (ii) in the event Client breaches any other term or condition of this Agreement and fails to cure such breach within ten (10) business days after receipt of written notice from Agency. Termination notices shall be sent by certified or registered mail and shall be deemed to have been given upon receipt addressed as set forth below:

To CLIENT:

Algis Penkiunas
Managing Member
Pendrick Capital Partners II, LLC
1714 Hollinwood Drive
Alexandria, Virginia 22307

With a copy to:

To AGENCY:

Michael Conflitti
President
Ability Recovery Services, LLC
284 Main Street
Dupont, PA 18641

With a copy to:

11. **Retention of Accounts After Termination**. Any account placed with Agency prior to the effective date of termination of this Agreement will be retained by Agency, at Agency's option, for further collection.

Confidential - Subject to Protective Order

12. <u>Credit Bureau Reporting</u>. Client hereby authorizes Agency to report to credit reporting bureaus all assigned collection account information provided under this Agreement. Client agrees not to report to credit reporting bureaus any collection account information authorized to be reported by Agency. Client also agrees to provide Agency with the date of delinquency of all assigned collection accounts as that term is defined by the Fair Credit Reporting Act ("FCRA") and to provide assistance to Agency in the timely resolution of disputes concerning the accuracy of reported items.

13. <u>Record Keeping</u>. Each party shall maintain true and correct records pertaining to the accounts, which are subject to this Agreement. Client is obligated to maintain its original documents and will not forward its original documents to Agency. Each party, upon request and with reasonable notice, shall have the right to audit sufficiently to verify the accounting of all funds and the accuracy and appropriateness of all charges.

14. <u>Settlement Authority and Legal Action</u>. Agency shall not initiate legal action nor accept settlement of an account, outside approved settlement guidelines, without prior written authorization of the Client. Legal action will be brought in the Client's name where applicable. Authorization by client for legal action will be on a claim-by-claim basis. Client agrees to advance all court costs associated with the filing of legal action on an account placed and agrees it will be reimbursed for such costs if recovered from the debtor.

15. <u>Fees</u>. In consideration for the collection efforts of Agency, a commission shall be retained by Agency as defined in the SOW agreement. These fees will remain in force during the term of this Agreement unless a change in legislation, Client's business, postage rates or other market conditions occur which Agency, in its sole discretion, determines warrants a fee change. Agency will also have the right to adjust the fees in the event Client fails to disclose to Agency, accurate and complete information relating to Client's account receivable profile, which information, if disclosed, would have led Agency to propose a different fee or fees. In the event Agency changes the fee(s), Agency will provide Client with thirty (30) days prior written notice of the change. If any proposed fee increase is unacceptable to Client, Client may terminate the Agreement upon thirty (30) days prior written notice to Agency.

16. <u>Indemnification</u>. Agency hereby agrees to indemnify and to hold Client harmless from and against all damage, cost, loss and expense, including reasonable attorney's fees, directly resulting from Agency's collection activity under this contract; provided, however, Client agree to indemnify and hold Agency, its officers, directors, employees and agents harmless from and against all damage, cost, loss and expense, including reasonable attorney's fees resulting from errors or omissions in connection with information furnished by Client to Agency. Client further agree to indemnify and hold Agency, its officers, directors, employees and agents harmless from and against all damage, cost, loss and expense, including reasonable attorney's fees that may arise out of the acts of the agents or employees of either Client. The indemnities provided for herein shall survive the termination of this Agreement.

17. <u>Limitation of Liability</u>. NONE OF THE PARTIES WILL BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR EXEMPLARY DAMAGES, INCLUDING WITHOUT LIMITATION LOST PROFITS OR REVENUES, WHETHER FORESEEABLE OR UNFORESEEABLE, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, ARISING OUT OF THIS AGREEMENT OR THE SERVICES PROVIDED HEREUNDER. AGENCY'S LIABILITY FOR DAMAGES (IFANY) ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT WILL NOT EXCEED THE AGGREGATE FEES PAID BY CLIENT FOR THE SERVICES.

Confidential - Subject to Protective Order

18. <u>Taxes</u>. If Agency is required by law to collect any federal, state or local sales, excise or other similar tax or levies from Client with respect to an amount to be paid by Client for services provided by Agency to Client under this Agreement, then (i) Agency shall bill such tax to Client in the manner and for the amount required by law, (ii) Client shall pay such billed amount of tax to Agency, and (iii) Agency shall remit such billed amount of tax to the appropriate tax authorities as required by law; provided however, that Agency shall not bill to or otherwise attempt to collect from Client any tax with respect to which Client has provided Agency with an exemption certificate, direct pay number, or other reasonable basis for relieving Agency of its responsibility to collect such tax from Client. Client agrees to pay such taxes as invoiced and Client shall reimburse Agency for any interest, penalties or expenses Agency may incur as a result of any contest initiated by Client or any failure by Client to remit timely the taxes or levies. The parties agree that all sales related taxes levied in connection with the services are the obligation of the Client.

19. <u>Choice of Law</u>. All costs and expenses, including reasonable attorney fees incurred by either party in order to remedy any breach of this Agreement will be borne by the breaching party. This Agreement shall be construed, governed and enforced in accordance with the laws of the Commonwealth of Virginia.

20. <u>Confidentiality</u>. Client acknowledge that the systems and procedures employed by Agency in providing the services are confidential and the sole property of Agency. Client agrees not to disclose to any person or entity other than Agency any information it receives concerning the systems and procedures, Agency's business practices or other secrets or confidential information of Agency. Agency agrees not to disclose to any person or entity not affiliated with Agency any information about Client or other confidential information regarding Client's accounts, except as required to provide the services under this Agreement or as otherwise legally required. Without Agency's prior written consent, Client will not in any manner or form disclose, provide or otherwise make available to any third parties, in whole or in part, this Agreement or any term hereof. All confidential information that Agency receives from Client shall be returned to Client upon request or upon termination of this Agreement unless such return or destruction is infeasible or would be inconsistent with applicable law. It is understood by Agency, and Client that information in an intangible or electronic format can not be removed, erased or otherwise deleted from archival systems (also known as "computer or system back-ups") but that such information will continue to be protected under the confidentiality requirements contained herein. Notwithstanding anything to the contrary contained in this Agreement, Agency may retain an archival copy of any document for its permanent records to the extent required by applicable law, regulation or Agency's document retention policy.

21. <u>Insurance</u>. Agency agrees to maintain in full force and effect and at its sole expense during the term of this Agreement, errors and omissions insurance and insurance against theft by employees, and other insurance coverage that might be customarily expected in the appropriate amounts. Each Policy of insurance shall name Pendrick Capital Partners as additional insured and shall not be cancelled or amended for any cause without first giving Pendrick Capital Partners thirty (30) days prior written notice. A certificate of said insurance shall be delivered to Pendrick Capital Partners on or before the commencement of this agreement, or at least ten (10) days prior to the expiration or cancellation of any policy that is replaced.

Confidential - Subject to Protective Order

22. <u>Assignment</u>. This Agreement may only be assigned with the permission of Agency and Client.

23. <u>Addendum/Addenda</u>. This Agreement is inclusive of the below listed Addendum, which are incorporated herein by reference:

    23.1   Business Associates Agreement

24. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties and cannot be modified or amended except with the written consent of both parties. All amendments or modifications of this Agreement shall be binding upon the parties despite any lack of consideration so long as the same shall be in writing and executed by each of the parties hereto

25. <u>Non Waiver</u>. It is expressly understood and agreed that no usage of trade or other regular practice or method of dealing between the parties hereto shall be used to modify, interpret, supplement or alter in any manner the express terms of this Agreement or any part hereof. No delay or failure by either party to exercise or enforce at any time any right or provision of the Agreement shall be considered a waiver thereof or of such party's right thereafter to exercise or enforce each and every right and provision of the Agreement.

26. <u>Severability</u>. If any provision of this Agreement shall be held illegal, invalid or unenforceable, in whole or in part, such provision shall be modified to the minimum extent necessary to make it legal, valid and enforceable, and the legality, validity and enforceability of the remaining provisions are not affected thereby. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

27. <u>Force Majeure</u>. In the event that Agency shall be prevented from performing any of its obligations due under the terms of this Agreement by an act of God, by acts of war, riot, or civil commotion, by an act of State, by strikes/fire, flood or by occurrence of any other event beyond the control of Agency, Agency shall be excused from any further performance hereunder until such act no longer prevents Agency from performing hereunder.

28. <u>Non Inducement</u>. During the term of this Agreement, and for a period of one (1) year thereafter, neither Agency nor Client will, without the prior written consent of the other, either directly or indirectly, on its own behalf or in the service or on behalf of others, solicit, divert or hire away, any person employed by the other, whether or not such employee is a full-time, part-time or temporary employee and whether or not such employment is pursuant to a written agreement, is for a determined period or is at-will, provided, however, that neither party will be restricted in any general solicitation for employees or public advertising of employment opportunities not specifically directed at any such persons and provided further that the parties shall not be restricted in hiring any such person who responds to any such general solicitation or public advertisement.

29. <u>Non Compete</u>. During the term of this agreement, and for a period of one (1) year after its termination, Agency will not engage as a third party servicer or purchase debt from any client it has serviced as a result of this Agreement, nor will it cause any such debt to be purchased by any third party unless Agency has express prior consent from Pendrick Capital Partners II, LLC, its successors and/or assigns.

Confidential - Subject to Protective Order

**IN WITNESS WHEREOF**, the parties, by their duly authorized representatives, have executed this Agreement in duplicate on the date first above written.

| | | | |
|---|---|---|---|
| Client: | **Pendrick Capital Partners II, LLC** | Agency: | **Ability Recovery Services, LLC** |
| By: | *[signature]* | By: | *[signature] Michael Conflitti* |
| Name: | Peter Silva | Name: | Michael Conflitti |
| Title: | COO | Title: | President |

Confidential - Subject to Protective Order