# EXHIBIT E

# DOCUMENT REDACTED

Kim Nanfeldt
2/22/2018

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

CRYSTAL LONG,                        *

        Plaintiff,              *

    vs.                          * Case No.:

                                 * 8:17-CV-1955-GJH

PENDRICK CAPITAL                     *

PARTNERS II, LLC, et al.,            *

        Defendants.              *

* * * * * * * * * * * * * * * * * * * * * * * * *

        The   deposition of KIM NANFELDT, Corporate

Designee, took place on Thursday, February 22, 2018,

beginning at 10:41 a.m., at the Law Offices of

Marshall, Dennehey, Warner, Coleman & Goggin, 50

Glenmaura National Boulevard, Moosic, Pennsylvania,

before Christine A. Messner, Court Stenographer and

Notary Public in and for the State of Pennsylvania.

* * * * * * * * * * * * * * * * * * * * * * * * *



Reported by:

        Christine A. Messner

COPY

Page 2

1    APPEARANCES:

2        On behalf of the Plaintiff:

3        INGMAR GOLDSON, ESQUIRE

4        The Goldson Law Office

5        1734 Elton Road, Suite 210

6        Silver Spring, Maryland 20903

7        240-780-8829

8        igoldson@goldsonlawoffice.com

9

10       On behalf of the Defendant Ability Recovery Services:

11       RONALD M. METCHO, ESQUIRE

12       Marshall, Dennehey, Warner, Coleman & Goggin

13       2000 Market Street, Suite 2300

14       Philadelphia, Pennsylvania 19103

15       215-575-2595

16       rmmetcho@mdwcg.com

17

18

19

20

21

Kim Nanfeldt
2/22/2018

Page 3

1    APPEARANCES (contd.)

2       On behalf of Pendrick Capital Partners:

3       MORGAN MARCUS, ESQUIRE

4       Sessions, Fishman, Nathan and Israel

5       120 S. LaSalle Street, Suite 1960

6       Chicago, Illinois 60603

7       312-578-0985

8       mmarcus@sessions.legal

9       (Via telephone)

10

11

12

13

14

15

16

17

18

19

20

21

Page 4

1                      I N D E X

2            DEPOSITION OF KIM NANFELDT

3                  February 22, 2018

4    EXAMINATION BY:                          PAGE:

5    Mr. Goldson ...............................5

6    Mr. Metcho ...............................32

7

8    EXHIBIT:       DESCRIPTION:              PAGE:

9    3      Verification ..........................16

10   4      Request for production ................24

11   5      Interrogatories .......................24

12   6      Fact sheet ............................25

13   7      Log ...................................26

14   8      Collection letter .....................30

15   9      Collection letter .....................30

16   10     Credit disputes .......................35

17   11     December 17, 2016 letter ..............37

18   12     January 31, 2017 letters ..............37

19

20

21

Page 5

1                    P R O C E E D I N G S

2

3                       STIPULATIONS

4

5        It was agreed by and between counsel that all

6    objections, except as to the form of the question,

7    will be reserved until the time of trial.

8        It was further agreed that the sealing and

9    filing of the deposition transcript will be waived.

10

11   Whereupon --

12                 KIM NANFELDT was called, and having

13   been duly sworn, was examined and testified as

14   follows:

15

16                 EXAMINATION BY MR. GOLDSON:

17       Q.     Hi.

18       A.     Hi.

19       Q.     Kim, can you just state your name and

20   address for the record please.

21       A.     Sure.  Kim Nanfeldt; 611 Powell Avenue,

Page 6

1    Jessup, Pennsylvania 18434.

2         Q.      Thank you.  My name is Ingmar Goldson.

3    I represent the plaintiff in the lawsuit against

4    Ability Recovery Services as you may know.  Just a

5    couple preliminary questions.  Have you ever been

6    deposed before?

7         A.      No.

8         Q.      Okay.  I'm just going to give you a

9    couple basic rules and Mr. Metcho can follow up with

10   a few rules if he pleases.  First is to make your

11   responses verbal because the court reporter cannot

12   pick up body language, head nods or anything of that

13   nature and try to stay away from answers like uh-uh

14   and just say yes or no.  If you do not understand a

15   question, please ask me to clarify.

16              MR. METCHO:  The only thing I

17         would add is conversations between you

18         and I like as we had on the phone are

19         protected by the attorney/client

20         privilege.  So if Mr. Goldson asks a

21         question that may trigger a response

Page 7

1          that includes something you and I

2          discussed in the past or something I

3          discussed with your company, you do not

4          have to provide that response.

5                  If that becomes an issue, I'll

6          make you aware of it and we can decide

7          whether or not it's privileged.  So just

8          be aware that that could come up during

9          the deposition.

10                 THE WITNESS:  Okay.

11                 MR. METCHO:  Thank you.

12    BY MR. GOLDSON:

13         Q.    All right.  Ms. Nanfeldt, first a

14    little educational background.  What's the highest

15    level of education that --

16         A.    Associate's.

17         Q.    Associate's.  Where did you get your

18    Associate's?

19         A.    Penn State.

20         Q.    Do you currently work at Ability

21    Recovery Services?

Page 8

1        A.      I do.

2        Q.      How long have you worked there?

3        A.      Eleven years.

4        Q.      What is your current -- are you on

5   salary or are you paid hourly?

6        A.      No.

7        Q.      You are paid hourly?

8        A.      And a commission, hourly plus

9   commission.

10       Q.      Okay.  Can you tell me what your pay

11  structure is?  How much do you get hourly?

12       A.      Thirteen.

13       Q.      And what's your commission rate?

14       A.      It varies.  It varies based on the

15  collections.  My annual is about $70,000 a year.

16       Q.      Okay.  What's your current position at

17  Ability Recovery Services?

18       A.      I'm the collection manager.

19       Q.      What are your duties as a collection

20  manager?

21       A.      I am in charge of the strategy to bring

Page 9

1      the revenue in.  I place the accounts in the system.

2      I do a little bit of IT work.  I work with the

3      collection staff.  I work with clients, a little bit

4      of everything.

5             Q.      How many people, how many employees

6      does Ability Recovery Service have in its collection

7      staff?

8             A.      About 30.

9             Q.      How many employees as a whole does

10     Ability Recovery Services have?

11            A.      About 37.

12            Q.      So other than the 30 collectors, who

13     are the other employees and what do they do?

14            A.      It would be clerical, they would be

15     client liaison, they would be processing,

16     administration; those types of positions.

17            Q.      How many employees at Ability Recovery

18     Services would have worked on the alleged debt of the

19     plaintiff in this matter Crystal Long?

20            A.      Four.

21            Q.      Can you tell me their names?

Kim Nanfeldt
2/22/2018

Page 10

1       A.      I'm taking it -- I can't.  I'm taking

2    an educated guess there.

3       Q.      Okay.  But you can't say who those four

4    employees were?

5       A.      Other than Mark.

6       Q.      Okay.  What -- do you know their titles

7    then, who those -- the four titles?

8       A.      It would be our clerical staff.

9       Q.      When you say clerical, what does that

10   mean?

11      A.      Their duties would be to handle

12   e-OSCARs, you know, the disputes, you know, those

13   functions, you know, outside of the collection staff,

14   requesting backup; those types of functions.

15      Q.      Who does any sort of work with e-OSCAR

16   at Ability Recovery Services?

17      A.      Currently?  There was probably a change

18   since this matter to, you know, today.

19      Q.      Yeah.  Last year.

20      A.      Shannon Saxon Price, Kathleen Turner.

21   I'd say those would be our two main ones.

Page 11

1          Q.      How are Shannon and Kathleen or how

2    were Shannon and Kathleen trained?

3          A.      They would be trained by the compliance

4    officer.

5          Q.      Who is that?

6          A.      That's Audrey Conflitti.

7          Q.      Was Ms. Conflitti involved in Crystal

8    Long's disputes?

9          A.      No.

10         Q.      Only Shannon and/or Kathleen were?

11         A.      Yes.

12         Q.      Did Shannon and Kathleen -- let me,

13   sorry.

14         A.      That's okay.

15         Q.      Let me ask about them separately.  Did

16   Shannon get training specifically on the FCRA?

17         A.      I don't know.

18         Q.      The Fair Credit Reporting Act.  Did

19   Audrey get training specifically on the FCRA?

20         A.      Yes.

21         Q.      Who trained Audrey?

1        A.      Audrey would have trained Audrey.

2   Audrey is our compliance officer.  So Audrey would go

3   out and she would, you know, seek the knowledge and

4   pass it along.

5        Q.      How long has Audrey been with Ability

6   Recovery Services?

7        A.      Since its inception, 2005.

8        Q.      Who are the owners of the Ability

9   Recovery Services?

10        A.      Michael Conflitti.

11        Q.      What's his relationship to Audrey?

12        A.      Audrey is his daughter-in-law.

13        Q.      Okay.  Does the collection staff at

14   Ability Recovery Services receive training on the

15   Fair Credit Reporting Act?

16        A.      Yes.

17        Q.      Do they receive training materials?

18        A.      Yes.

19        Q.      When do they receive that training?

20        A.      When they first start employment.  It's

21   all included in a binder that they keep at their

Page 13

1    desk.

2         Q.     Were -- now, I'm going to show you the

3    responses to the requests for production of documents

4    in this matter.  Do you recognize that document?

5         A.     Yes, I would say I do.

6         Q.     Did you organize the materials to turn

7    over to the plaintiff and respond to that document?

8         A.     I would say that would have been

9    Audrey.

10        Q.     So -- okay.  So Audrey responded to the

11   request for production of documents?

12        A.     Yes.

13        Q.     Who conducts the Fair Credit Reporting

14   Act training for the collection staff?

15        A.     Jeremy, my supervisor Jeremy Mills.

16        Q.     Was Jeremy involved with any of the

17   collection disputes for Crystal Long?

18        A.     No.

19        Q.     How often does Ability Recovery

20   Services find that it's attempting to collect a debt

21   from the wrong person?

Page 14

1          A.     I don't know.

2                 MR. METCHO:  I'm going to object

3          to the form of the question, but you can

4          answer if you are able.

5                 THE WITNESS:  I don't know the

6          answer to that.

7     BY MR. GOLDSON:

8          Q.     But it does happen?

9          A.     Occasionally.

10         Q.     Do you have any idea of what the error

11    rate is?

12         A.     I don't.

13         Q.     As a debt -- as a collection agency,

14    how much does Ability Recovery Services collect on an

15    annual basis?

16         A.     I don't know.

17         Q.     Can you estimate?

18         A.     I don't know the answer to that.  I

19    would -- that's not part of what I do there.

20         Q.     Okay.  Is Ability Recovery Services

21    indemnifying Pendrick in this matter?

Page 15

1        A.        I believe so.

2        Q.        How many accounts does Ability Recovery

3   Services collect on Pendrick's behalf?

4        A.        About 500,000.  Now, they are not all

5   collected, that's what we have in our system.

6        Q.        About 500,000 different accounts?

7        A.        Mm-mm.

8        Q.        Does Ability Recovery Services carry

9   liability insurance?

10        A.        Yes.

11        Q.        Is Pendrick named in that liability

12   insurance?

13        A.        I believe so, but I don't work with

14   those types of documents.

15        Q.        I'm going to show you this document.

16   That is a verification sent to the plaintiff by your

17   employer Ability Recovery Services.  Is that your

18   signature?

19        A.        Yes.

20              MR. GOLDSON:  I would like to mark

21        this as the next exhibit.

Kim Nanfeldt
2/22/2018

Page 16

1                    (Whereupon Exhibit 3 was marked

2           for identification.)

3     BY MR. GOLDSON:

4           Q.     The next document that I'm going to

5     show you is the response to the interrogatories.  Ms.

6     Nanfeldt, is it true that with the verification that

7     I just showed you that you verified all the responses

8     to those interrogatories are true?

9           A.     Yes.

10          Q.     Is that your testimony today?

11          A.     Yes.

12          Q.     I'd like to direct your attention to

13    interrogatory number ten, if you could just read

14    that?

15                 MR. METCHO:  That was it.  You can

16          flip it.

17    BY MR. GOLDSON:

18          Q.     You can read the question, the

19    interrogatory out for the record.

20          A.     Right here?

21          Q.     Yes.

Page 17

1          A.      In light of the allegations in the

2   complaint, please identify each incident where you

3   erroneously verified credit information relating to

4   plaintiff which should have not have been verified.

5          Q.      Okay.  You can read the response to

6   interrogatory number ten, you can read it out for the

7   record or to yourself.

8          A.      ARS objects to this interrogatory on

9   the grounds that it is confusing, vague, overbroad

10  and not calculated to lead to the discovery of

11  admissible evidence.  Subject to and without

12  having -- without waiving these objections, ARS

13  responds that it does not have any information that

14  is or may be responsive to this interrogatory as it

15  did not erroneously verify credit information related

16  to plaintiff which allegedly should not have been

17  verified.

18         Q.      Do you stand by that answer today?

19         A.      Yeah.

20         Q.      Do you still maintain that the

21  plaintiff Crystal Long owes a debt to Ability

Kim Nanfeldt
2/22/2018

Page 18

1    Recovery Services or Pendrick?

2        A.    I don't think we actually know the

3    answer to that.  I don't know.

4        Q.    When Ability Recovery Services first

5    received the account from Pendrick, at that point did

6    Ability Recovery Services deem that the plaintiff

7    Crystal Long owed that money to Ability and Pendrick?

8            MR. METCHO:  I'm going to object

9            to the form of the question.  If you

10           understand it, you can answer.

11           THE WITNESS:  I don't think we

12           really know who owes what until we get

13           to situations a little bit farther down

14           the road.  If someone tells us they

15           don't owe it, you know, then we take a

16           look at the information that we have on

17           file and take it from there.  So to say

18           whether she owed it or not when it first

19           came to our office, I don't know the

20           answer to that.

21    BY MR. GOLDSON:

Page 19

1      Q.      Okay.  Thank you.  In your response you

2   just said take it from there, what -- can you

3   describe that process?

4      A.      Sure.  In the case Crystal Long she

5   called in from a letter, she was disputing it.  We

6   put it in a disputed status and reported it to the

7   bureaus as disputed.  She didn't get any more phone

8   calls.  She didn't get any additional letters.

9            At that point, you know, she didn't

10  provide any additional information to us to state

11  that it wasn't her, so we left it in a disputed

12  status.  You know we get the e-OSCARs over with no

13  additional information, so we verified what we had on

14  the system which was unknown.

15     Q.      When you said verified as unknown, can

16  you explain what you mean by that?

17     A.      Sure.  When an e-OSCAR comes over and

18  they're saying, you know, this isn't my debt, we take

19  a look at the information that came over with the

20  file and that was loaded in our system.  In Crystal's

21  case that information was unknown.

Page 20

1          We didn't have a Social, we didn't have

2    a date of birth and that's what we reported back to

3    over to the bureaus is that information to identify

4    her as either being responsible or not responsible

5    for the debt was unknown.

6          Q.     Is it your testimony that Ability

7    Recovery Services did not respond to the disputes

8    that the reported information was accurate?

9          A.     We reported it as unknown, that was

10   accurate.

11         Q.     What was accurate?

12         A.     That the information was unknown was

13   our accurate response.  We did not know that

14   information.

15         Q.     So did Ability respond that the

16   information was accurate?

17         A.     We responded that it was unknown.

18         Q.     Okay.  All right.  I'm going to show

19   you a document that was turned over for requests for

20   production in this case.  Do you recognize that

21   document?

Page 21

1        A.     I do.

2        Q.     What is it?

3        A.     That's our activity history from

4  Crystal Long's account.

5        Q.     Okay.  And was that document created in

6  the regular course of business for Ability Recovery

7  Services?

8        A.     Yes.

9        Q.     Okay.  Sorry.

10        A.     That's okay.

11        Q.     I have one copy so let me take a quick

12  look.  I'm going to ask you a few questions about

13  that document --

14        A.     Sure.

15        Q.     -- that doesn't seem clear at this

16  point.  Here it says broken promise work was A51.

17  Can you explain what that means?

18        A.     That just means that this in our world

19  is an open queue.  Based on what happens with the

20  account, the accounts are rearranged in priority.  So

21  this was something that right here, okay?

Page 22

1        Q.      Yeah.

2        A.      Rolled out to an A51 queue.  So it's

3    just an open queue is all that is.  It just means

4    that no collector has ownership of that account and

5    wants to continue to work it.

6        Q.      Okay.  Here at May 24 it says e-OSCAR

7    verified, image added and e-OSCAR verified.  What is

8    your understanding of what that means?

9        A.      That means that the e-OSCAR dispute came

10   in and they took a look at it, they reviewed the Debt

11   Master and they verified the information that we had

12   on file.

13       Q.      Were there any other steps taken?

14       A.      Other than viewing the account?

15       Q.      Yeah.

16       A.      I don't believe so.

17       Q.      Sorry.

18       A.      That's okay.

19       Q.      Just for the record right here where it

20   says gave copy to Audrey, is that Audrey Conflitti?

21       A.      Yes.  Complaint received, added to

Page 23

1    docket, yeah.  So that would have been the complaint

2    that was received on that day, yeah.

3           Q.    Okay.  Thank you.  I see a list of

4    phone numbers here and then it says CBC skip four

5    times.  What is CBC skip?

6           A.    CBC skip, CBC Innovis is a company that

7    we use to batch our accounts out to retrieve the best

8    location information possible, meaning phone numbers

9    and addresses.  So we'll take the information that we

10   have from our client, the way the file came over and

11   we'll create a file and send it out for a batch.  CBC

12   will return information, what they consider to be

13   their best information so that we can reach out and

14   locate the consumer.

15          Q.    Okay.  So that would be you're

16   describing Ability Recovery Services' skip tracer?

17          A.    Yes.

18          Q.    Does Ability Recovery Services use any

19   other skip tracers?

20          A.    No.

21          Q.    In your response -- I'm sorry.  In your

Page 24

1    response to the interrogatories here, the first

2    interrogatory requests information for anyone who

3    knows any facts alleged in, any information, any

4    facts alleged in the complaint.  We didn't receive

5    anything about any skip tracers, do you know why?

6         A.      Was the question asked?  I don't know.

7              MR. METCHO:  I'm going to object

8         to the question on the grounds that it

9         may seek information that is protected

10        by the attorney/client privilege, but

11        you can answer if you are able.

12             THE WITNESS:  I don't know why it

13        wouldn't have been included.  I don't

14        know the answer to that.

15             MR. GOLDSON:  Okay.  That's fine.

16        I would like to mark this as Exhibit 4.

17             (Whereupon Exhibits 4 and 5 were

18        marked for identification.)

19   BY MR. GOLDSON:

20        Q.      All right.  The next document that I'm

21   going to show you is a document that I believe we

Page 25

1    received from Pendrick in this matter.

2                    MR. METCHO:  For the record, as

3               counsel for Ability, I do not recognize

4               this document, but I will allow Ms.

5               Nanfeldt to view it for purposes of

6               engaging in this deposition.

7                    THE WITNESS:  I don't recognize

8               this either.

9                    (Whereupon Exhibit 6 was marked

10              for identification.)

11   BY MR.  GOLDSON:

12        Q.    Okay.  The next document I'm going to

13   show you is a document I received from your employer

14   Ability Recovery Services.  Do you recognize that

15   document?

16        A.    No.

17        Q.    Do you know what this document states,

18   the information in this document?

19        A.    No.

20                    MR. GOLDSON:  We'll mark this as

21              the next exhibit.

1              (Whereupon Exhibit 7 was marked

2         for identification.)

3   BY MR. GOLDSON:

4         Q.    Is it Ability Recovery Services'

5   position that the plaintiff Crystal Long owes Ability

6   Recovery Services or Pendrick money from a medical

7   debt?

8         A.    I don't think we know at this point.

9         Q.    I'm going to show you two collection

10  letters sent by Ability Recovery Services sent to us

11  by your employer in response to a production of

12  documents.  Do you recognize those documents?

13        A.    Yes.

14        Q.    The first document, can you tell me

15  what that document is?

16        A.    That's a collection letter.

17        Q.    What's the balance on that letter?

18        A.    55.50 after the discount.

19        Q.    Okay.  After the dispute phone call

20  when Crystal Long called, this account did not show

21  up on her credit report.  Do you know why that is?

Kim Nanfeldt
2/22/2018

Page 27

1                    MR. METCHO:  I'm going to object

2          to the question on the grounds of form

3          and seeks speculation, speculatory

4          information.  But, Kim, you can answer

5          if you're able.

6                    THE WITNESS:  I don't recall when

7          it showed up on her credit report.

8     BY MR. GOLDSON:

9          Q.    Okay.  And the second document --

10         A.    Right.

11         Q.    -- can you describe that document?

12         A.    Well, it looks like it's the same

13    letter just a different account, discount letter

14    validation.

15         Q.    What's the balance on the account?

16         A.    843.75.

17         Q.    Do you know why this account appeared

18    on Crystal Long's credit report while this account --

19    I'm sorry.  For the record, why the account with the

20    total balance where it says your balance is $1,125,

21    why that $1,125 account showed up on the credit

Page 28

1    report and the $74 account did not show up on her

2    credit report?

3         A.    I can tell you that credit reporting is

4    part of our collection software.  Okay.  That

5    information is built in.  Okay.  It goes out to each

6    account and it creates the file based on the

7    information that comes over in the file from our

8    clients.  That information is gathered and it's

9    uploaded to each of the major bureaus.  The bureaus

10   then take the information that we've provided and

11   they find the best fit for it.

12              So we're uploading the information that

13   we have in the system.  I believe there was probably

14   a little bit more information maybe on one of the

15   accounts than the other, but you know that's how the

16   credit reporting process would work.  We upload the

17   information that we have in our system.  The credit

18   bureaus decide the best fit.

19        Q.    So is it your testimony that this $74

20   account was reported in the same fashion as the

21   $1,125 account to the credit reporting agencies?

Kim Nanfeldt
2/22/2018

Page 29

1       A.      Whatever information that would have

2    been in each respective account would have been

3    uploaded to the bureau.

4       Q.      Okay.  So the difference in reporting,

5    your testimony is that it's because of the credit

6    reporting agencies, not Ability?

7       A.      There's different information in each

8    account.  So the bureaus would have looked at each

9    one individually and made the best bet.

10      Q.      Okay.  Does Ability Recovery Services

11   generate these documents, these two collection

12   letters?

13      A.      We send a file over to our letter

14   company and they would generate them.

15      Q.      Okay.  Does Ability Recovery Services

16   generate those documents through the regular course

17   of its business?

18      A.      Yes.

19      Q.      Okay.  Thank you.

20              MR. GOLDSON:  I'd like to mark

21          these exhibits separately please.

Page 30

1                    (Whereupon Exhibits 8 and 9 were

2            marked for identification.)

3    BY MR. GOLDSON:

4            Q.      When Ability Recovery Services received

5    credit disputes from the credit reporting agencies

6    about the plaintiff's account, was Ability Recovery

7    Services' response consistent with its credit

8    reporting reinvestigation policies and procedures?

9            A.      Yes.

10           Q.      Did Ability Recovery Services

11   communicate with Pendrick about this account after it

12   received the disputes?

13           A.      No.

14           Q.      When did Ability first report

15   information about the plaintiff to the credit

16   reporting agencies?

17           A.      I don't know the exact day, but it

18   would have been more than 30 days from the placement

19   date.

20           Q.      That's the policy --

21           A.      Yes.

Page 31

1          Q.      -- more than 30 days?  When you say

2   more than 30 days, is that because Ability Recovery

3   Services sends out the information on the same day of

4   each month?

5          A.      No.  It's -- that's what the law

6   requires.  The law requires that there's a validation

7   period of 30 days.  So whatever that next credit

8   reporting cycle would fall after that 30-day period

9   is when the account would go over.

10         Q.      Thank you.  All right.  When Ability

11  reports an account or credit reporting agency, is

12  Ability telling the credit reporting agency that the

13  consumer owes that debt?

14              MR. METCHO:  I'm going to object

15          to the form of the question, but you can

16          answer it if you are able.

17              THE WITNESS:  I mean basically we

18          are saying this is the information

19          that's been provided to us and we send

20          that information over.  And based on the

21          information that's in that file, the

Page 32

1          credit bureau makes the decision if

2          there's enough information to place it

3          on the record.

4    BY MR. GOLDSON:

5          Q.     Does Ability ever make a determination

6    as to whether or not any of the consumers that it

7    pursues for debt actually owe that debt?

8          A.     I don't understand your question.

9          Q.     Does Ability ever make, ever come to

10   the conclusion through its collection process that a

11   collector, sorry, that a consumer actually owes the

12   debt that Ability Recovery Services purports that

13   that consumer owes?

14         A.     That comes from our partnership with

15   our clients and the ability, you know, to -- we

16   partner with, you know, clients that are credible and

17   that you know these people, you know, do all the

18   debts and they can provide the backup that says that

19   they do.

20         Q.     In this case with the plaintiff Crystal

21   Long, Pendrick your partner sent placement data for a

Page 33

1    Crystal Long that lived in Baltimore.  Ability sent a

2    letter to the plaintiff and that letter went to

3    Bowie, Maryland.  So where did Ability get the Bowie,

4    Maryland address?

5          A.    CBC Innovis.

6          Q.    I'm showing you here the credit

7    disputes for ACDVs, there's four of them there and

8    those are the documents that Ability Recovery

9    Services sent the plaintiff in response to the

10   request for the production of documents.  Do you

11   recognize that document?

12         A.    I don't work hands on with these, but I

13   do know that it's an e-OSCAR.

14         Q.    Okay.  Do you know how these documents

15   are generated?

16         A.    They come to us, the girls log in

17   online and pull the information down that way from

18   like a queue.

19         Q.    How does Ability Recovery Services

20   receive this document?

21         A.    Other than the girls logging in online

Page 34

1   and getting the information through, you know, their

2   website, I don't know.

3          Q.      When you say the girls log in online,

4   are you talking about into the e-OSCAR system?

5          A.      Yes.

6          Q.      Okay.  Thanks.  Can you just turn to

7   the second page.  Can you read that last sentence

8   there for the record.

9          A.      Down here?

10         Q.      Yes.

11         A.      By submitting this ACDV you certify

12   that you have received and considered all associated

13   images, you have verified the accuracy of the data in

14   compliance with its legal requirements and your

15   computer and/or manual records will be adjusted to

16   reflect any changes noted.

17         Q.      Okay.  Just for the record where it

18   says reviewed, I believe you said received.

19         A.      Sorry.  My eyes aren't what they used

20   to be.

21         Q.      All right.  So what's your

Page 35

1    understanding of that statement?

2         A.     That we have reviewed the account and

3    the information that we are reporting over is

4    correct.

5         Q.     Okay.

6              MR. GOLDSON:  I would like to go

7         ahead and mark the exhibit.

8              (Whereupon Exhibit 10 was marked

9         for identification.)

10   BY MR. GOLDSON:

11        Q.     Ms. Nanfeldt, is it your understanding

12   when you respond -- when you responded, I'm sorry,

13   when ARS, Ability Recovery Services, responded to

14   those disputes, is it your understanding that that

15   response was confirming the reporting as accurate?

16        A.     I think it was doing neither.  It was

17   saying this is the information that we have.

18        Q.     Okay.

19        A.     Or just saying that the information we

20   sent over was correct.

21        Q.     The information that you were sending

Page 36

1    is correct, it's your understanding of the

2    verification of those disputes?

3          A.     I'm saying the information as her name,

4    her address, the information that we have on file

5    that went over in that string to the credit bureaus

6    was correct.

7          Q.     Okay.  Did Ability Recovery Services

8    confirm the debt as accurate with the first ACDV?

9          A.     I don't know.

10         Q.     Did Ability Recovery Services confirm

11   that the debt is accurate for the second and third

12   disputes?

13         A.     I'm not that familiar enough with them

14   to answer that.

15         Q.     What is e-OSCAR?

16         A.     e-OSCAR is the online disputing site.

17   Consumers go there, they put their dispute in, it

18   comes to us and we answer it.

19         Q.     Next I'm showing you the consumer, the

20   plaintiff in this matter Crystal Long's dispute,

21   first dispute letter.  Do you recognize that

Page 37

1    document?

2          A.      No.

3                  MR. GOLDSON:  I'll mark that as

4          the next exhibit.

5                  (Whereupon Exhibits 11 was marked

6          for identification.)

7    BY MR. GOLDSON:

8          Q.      I'm showing you three disputes sent by

9    the plaintiff Crystal Long sent to the credit

10   reporting agencies.  Do you recognize any of those

11   documents?

12         A.      No.

13         Q.      Okay.  Thanks.

14                 MR. GOLDSON:  I would like to mark

15         those as one exhibit.

16                 (Whereupon Exhibit 12 was marked

17         for identification.)

18   BY MR. GOLDSON:

19         Q.      Ms. Nanfeldt, who at Ability uses

20   e-OSCAR?

21         A.      Shannon Price, Kathleen Turner.  At

Page 38

1    that time that would be those two.

2          Q.     Okay.  Who trained Shannon Price and

3    Kathleen Turner on the use of e-OSCAR?

4          A.     Audrey Conflitti.

5          Q.     Do you know if Audrey Conflitti used

6    any computer programs or training materials when they

7    trained?

8          A.     I don't.

9          Q.     Does Ability Recovery Services record

10   the phone calls that it makes and that it receives

11   from consumers?

12         A.     Yes.

13         Q.     Who receives those phone calls at

14   Ability Recovery Services?

15         A.     They go into our recording drive.

16         Q.     Okay.  Which employees receive the

17   calls?  When a call comes in to Ability Recovery

18   Services from a consumer that receives a letter,

19   which employees field those calls?

20         A.     All of them.

21         Q.     Okay.  All the collection employees?

Page 39

1          A.      All of the collection staff, yes.

2          Q.      Thirty of them, right?

3          A.      Yes.

4          Q.      Do any members of the collection staff

5    have the ability to stop recording?

6          A.      No.

7          Q.      Does anybody at Ability have the

8    ability to edit the calls after --

9          A.      No.

10         Q.      -- they are recorded?  That's all I

11   have.

12                 MR. METCHO:  I do have some

13          follow-up questions.  Do you mind if we

14          take a five to ten-minute break?

15                 MR. GOLDSON:  That's fine.

16                 (Whereupon a recess took place.)

17

18                      EXAMINATION

19   BY MR. METCHO:

20         Q.      So, Kim, again what is -- in November

21   of 2016, what was your position with Ability?

Page 40

1        A.      Collection manager.

2        Q.      Okay.  And when did you first become

3   aware of Crystal Long's account with Pendrick?

4        A.      I would say when the lawsuit came.

5        Q.      Okay.  Were you involved at all with

6   the specific collection of the account?

7        A.      No.

8        Q.      We did take a look at these account

9   notes earlier, correct --

10       A.      Yes.

11       Q.      -- which was marked as Exhibit 2?

12       A.      Yes.

13       Q.      You were not involved in the collection

14  of this particular account, however you are familiar

15  with the collection notes and what they report;

16  correct?

17       A.      Yes.

18       Q.      Okay.  In these notes can you tell me,

19  we're looking at the debtor activity history, when

20  was the initial collection letter sent to Ms. Long?

21       A.      November 12, 2016.

Kim Nanfeldt
2/22/2018

Page 41

1      Q.      Okay.  And was there any response to

2    that letter received in writing?

3      A.      Not that I'm aware of.

4      Q.      Okay.  When did Ability receive the

5    call from Ms. Long?

6      A.      November 22, '16.

7      Q.      Okay.  And the entry after the November

8    22 entry, what does that reflect?

9      A.      The e-OSCAR dispute.

10     Q.      Okay.  And what does that mean?

11     A.      That means that she went and -- she

12   went to the credit bureaus, the ones online and

13   disputed it.

14     Q.      Okay.  And going back to the November

15   22, '16 entry, can you just read what the entry

16   means, what it says, excuse me?

17     A.      Sure.  That's taking an account from a

18   new status to a disputed status.

19     Q.      And why would that occur?

20     A.      That would occur because she spoke to

21   someone and she relayed that information to us.

Page 42

1      Q.    Okay.  Look at this debtor activity

2  history which you are familiar with.  Did Ability

3  place any calls to Ms. Long?

4      A.    No.

5      Q.    Okay.  Other than the November 22, 2016

6  entry, did Ability receive any other calls from Ms.

7  Long?

8      A.    No.

9      Q.    Okay.  When did Ability cease

10  collection activity on the account?

11      A.    November 22, 2016.

12      Q.    What I'm going to show you now are a

13  few letters that were presented to you.  It looks

14  like Exhibit 11, 12 and then 13 and 14.  We should

15  mark these.  No, excuse me, 11 and 12 was the three

16  documents.

17            Looking at these letters, who are they

18  addressed to?

19      A.    Sir or madam.

20      Q.    On the actual mailing address.

21      A.    Equifax.

Page 43

1          Q.      Okay.  And that's on Exhibit 11.   If

2    you can take a look at Exhibit 12 the first document,

3    who is that addressed to?

4          A.      Experian.

5          Q.      The second document?

6          A.      Equifax.

7          Q.      And the third?

8          A.      TransUnion.

9          Q.      Okay.  Taking at look at these

10   documents, was Ability Recovery Services cc'd or

11   copied on any of these letters that were sent to the

12   credit bureaus?

13         A.      It doesn't appear to so.

14         Q.      Was Pendrick?

15         A.      I don't think so.

16         Q.      It's a yes or no question.

17         A.      No.

18         Q.      Okay.  Were any other entities other

19   than the specific credit bureaus?

20         A.      No.

21         Q.      Okay.  In your opinion looking at

Page 44

1    debtor history, the documents we've gone through

2    during this deposition, did Ability correctly report

3    all trade line information that was obtained and

4    received from the credit bureaus?

5         A.    Yes.

6         Q.    Okay.  Do you have any reason to

7    believe that any of the information that was reported

8    by Ability to the credit bureaus was inaccurate?

9         A.    No.

10         Q.    Do you have any reason to believe that

11   any of the information regarding the disputes that

12   was exchanged between the credit bureaus and Ability

13   was untimely?

14         A.    No.

15         Q.    Do you believe that the policies and

16   procedures that are in place regarding Ability's

17   disputes and their process are compliant with the

18   FCRA?

19         A.    Yes.

20         Q.    I have nothing further.

21               MR. GOLDSON:  And just to clarify

Page 45

1          because I don't believe I mentioned this

2          at the beginning, Ms. Nanfeldt, you are

3          testifying as the corporate designee of

4          Ability Recovery Services today,

5          correct?

6                    THE WITNESS:  Yes.

7                    MR. GOLDSON:  That's it.  Nothing

8          further.

9                    MR. METCHO:  Morgan, do you have

10         anything?

11                   MR. MARCUS:  I don't have anything

12         at this time.  But, Ron, give me a call

13         later if you have time to speak.

14                   (Whereupon the deposition was

15                        concluded at 11:59 a.m.)

16

17

18

19

20

21

Page 46

1            C E R T I F I C A T E

2

3        I, Christine Messner, a Notary Public in and

4   for Wyoming County, Pennsylvania, do hereby certify

5   that the deposition was reported in machine

6   shorthand by me, that the said witness was duly

7   sworn/affirmed by me, that the transcript was

8   prepared by me or under my supervision and

9   constitutes a complete and accurate record of same.

10

11        I further certify that I am not an attorney

12   or counsel of any parties, nor a relative or

13   employee of any attorney or counsel connected with

14   the action, nor financially interested in the

15   action.

16

17

18        _____

19              Christine Messner

20

21

Page 47

1              AL BETZ & ASSOCIATES, INC.

2                 Administrative Offices

3                     P.O. Box 665

4              Westminster, Maryland   21158

5        VOICE - (410)752-1733    FAX - (410)875-2857

6          E-mail- productiondept@albetzreporting.com

7                 www.albetzreporting.com

8

9    DATE: March 8, 2018

10   JOB NUMBER: 180222key_(1)nanfeldt_kim

11   CASE CAPTION: Crystal Long v. Pendrick Capital

12   COURT: US District Court, District of Maryland

13   CASE NUMBER: 8:17-CV-1955-GJH

14   DEPONENT: Kim Nanfeldt

15   DATE OF DEPOSITION: February 22, 2018

16   ATTORNEYS/FIRMS:

17      Ingmar Goldson, Esq. / The Goldson Law Office

18      Ronald M. Metcho, Esq. / Marshall Dennehey

19

20

21

Kim Nanfeldt
2/22/2018

Page 48

1    Dear Sir or Madam:

2

3           Bound herewith is the transcript of the

4    above-referenced deposition.  Please read the

5    transcript and sign the errata pages.  Any

6    additions or corrections should be listed on the

7    errata sheets provided.  Please remove the signed

8    completed errata sheets, and return them to the

9    address listed above for processing.

10

11          If this process has not been completed

12   within (30) thirty days from the date of this

13   letter, we will assume that the right to read the

14   deposition has been waived.  This is in accordance

15   with Rule 30(e) of the Federal Rules of Civil

16   Procedure and Rule 2-415 of the Maryland Rules of

17   Procedure.

18

19

20

21

Page 49

1               READING & SIGNING PROCEDURE

2

3               The Deposition of Mark Carlson, taken in

4    the matter, on the date, and at the time and place

5    set out on the title page hereof.

6               It was requested that the deposition be

7    taken by the reporter and that same be reduced to

8    typewritten form.

9               It was agreed by and between counsel and

10   the parties that the Deponent will read and sign

11   the transcript of said deposition.

12

13

14

15

16

17

18

19

20

21

Page 50

1                    DEPOSITION ERRATA SHEET

2    RE:  Al Betz & Associates, Inc.

3    FILE NO.:  180222key_(1)nanfeldt_kim

4    CASE CAPTION:  Crystal Long v. Pendrick Capital

5    DEPONENT:  Kim Nanfeldt

6    DEPOSITION DATE:  February 22, 2018

7                 I have read the entire transcript of my

8    Deposition taken in the captioned matter or the

9    same has been read to me.  I request that the

10   changes noted on the following errata sheet be

11   entered upon the record for the reasons indicated.

12   I have signed my name to the Errata Sheet and

13   authorize you to attach it to the original

14   transcript.

15   PAGE/LINE      CHANGE              REASON

16   _____

17   _____

18   _____

19   _____

20   SIGNATURE:_____DATE:_____

21                 Kim Nanfeldt

Kim Nanfeldt
2/22/2018

Page 51

| | PAGE/LINE | CHANGE | REASON |
|---|---|---|---|

1
2  _____
3  _____
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____

20 SIGNATURE:_____DATE:_____

21        Kim Nanfeldt

| A | | | | |
|---|---|---|---|---|

**a.m (2)** 1:13 45:15
**A51 (2)** 21:16 22:2
**ability (69)** 2:10
 6:4 7:20 8:17 9:6
 9:10,17 10:16
 12:5,8,14 13:19
 14:14,20 15:2,8
 15:17 17:21 18:4
 18:6,7 20:6,15
 21:6 23:16,18
 25:3,14 26:4,5
 26:10 29:6,10,15
 30:4,6,10,14
 31:2,10,12 32:5
 32:9,12,15 33:1
 33:3,8,19 35:13
 36:7,10 37:19
 38:9,14,17 39:5
 39:7,8,21 41:4
 42:2,6,9 43:10
 44:2,8,12 45:4
**Ability's (1)** 44:16
**able (4)** 14:4 24:11
 27:5 31:16
**above-reference...**
 48:4
**account (29)** 18:5
 21:4,20 22:4,14
 26:20 27:13,15
 27:17,18,19,21
 28:1,6,20,21
 29:2,8 30:6,11
 31:9,11 35:2
 40:3,6,8,14
 41:17 42:10
**accounts (6)** 9:1
 15:2,6 21:20
 23:7 28:15
**accuracy (1)** 34:13
**accurate (9)** 20:8
 20:10,11,13,16
 35:15 36:8,11
 46:9
**ACDV (2)** 34:11

36:8
**ACDVs (1)** 33:7
**Act (3)** 11:18
 12:15 13:14
**action (2)** 46:14,15
**activity (4)** 21:3
 40:19 42:1,10
**actual (1)** 42:20
**add (1)** 6:17
**added (2)** 22:7,21
**additional (3)** 19:8
 19:10,13
**additions (1)** 48:6
**address (5)** 5:20
 33:4 36:4 42:20
 48:9
**addressed (2)**
 42:18 43:3
**addresses (1)** 23:9
**adjusted (1)** 34:15
**administration (1)**
 9:16
**Administrative ...**
 47:2
**admissible (1)**
 17:11
**agencies (5)** 28:21
 29:6 30:5,16
 37:10
**agency (3)** 14:13
 31:11,12
**agreed (3)** 5:5,8
 49:9
**ahead (1)** 35:7
**al (3)** 1:8 47:1 50:2
**allegations (1)**
 17:1
**alleged (3)** 9:18
 24:3,4
**allegedly (1)** 17:16
**allow (1)** 25:4
**and/or (2)** 11:10
 34:15
**annual (2)** 8:15
 14:15

**answer (13)** 14:4,6
 14:18 17:18 18:3
 18:10,20 24:11
 24:14 27:4 31:16
 36:14,18
**answers (1)** 6:13
**anybody (1)** 39:7
**appear (1)** 43:13
**APPEARANCE...**
 2:1 3:1
**appeared (1)**
 27:17
**ARS (3)** 17:8,12
 35:13
**asked (1)** 24:6
**asks (1)** 6:20
**Associate's (3)**
 7:16,17,18
**associated (1)**
 34:12
**Associates (2)** 47:1
 50:2
**assume (1)** 48:13
**attach (1)** 50:13
**attempting (1)**
 13:20
**attention (1)** 16:12
**attorney (2)** 46:11
 46:13
**attorney/client (2)**
 6:19 24:10
**ATTORNEYS/...**
 47:16
**Audrey (16)** 11:6
 11:19,21 12:1,1
 12:2,2,5,11,12
 13:9,10 22:20,20
 38:4,5
**authorize (1)**
 50:13
**Avenue (1)** 5:21
**aware (4)** 7:6,8
 40:3 41:3

| B | | | | |
|---|---|---|---|---|

**back (2)** 20:2
 41:14
**background (1)**
 7:14
**backup (2)** 10:14
 32:18
**balance (4)** 26:17
 27:15,20,20
**Baltimore (1)** 33:1
**based (4)** 8:14
 21:19 28:6 31:20
**basic (1)** 6:9
**basically (1)** 31:17
**basis (1)** 14:15
**batch (2)** 23:7,11
**beginning (2)** 1:13
 45:2
**behalf (4)** 2:2,10
 3:2 15:3
**believe (10)** 15:1
 15:13 22:16
 24:21 28:13
 34:18 44:7,10,15
 45:1
**best (5)** 23:7,13
 28:11,18 29:9
**bet (1)** 29:9
**Betz (2)** 47:1 50:2
**binder (1)** 12:21
**birth (1)** 20:2
**bit (4)** 9:2,3 18:13
 28:14
**body (1)** 6:12
**Boulevard (1)**
 1:15
**Bound (1)** 48:3
**Bowie (2)** 33:3,3
**Box (1)** 47:3
**break (1)** 39:14
**bring (1)** 8:21
**broken (1)** 21:16
**built (1)** 28:5
**bureau (2)** 29:3
 32:1
**bureaus (13)** 19:7

20:3 28:9,9,18
 29:8 36:5 41:12
 43:12,19 44:4,8
 44:12
**business (2)** 21:6
 29:17

| C | | | | |
|---|---|---|---|---|

**C (3)** 5:1 46:1,1
**calculated (1)**
 17:10
**call (4)** 26:19
 38:17 41:5 45:12
**called (3)** 5:12
 19:5 26:20
**calls (8)** 19:8
 38:10,13,17,19
 39:8 42:3,6
**Capital (4)** 1:7 3:2
 47:11 50:4
**CAPTION (2)**
 47:11 50:4
**captioned (1)** 50:8
**Carlson (1)** 49:3
**carry (1)** 15:8
**case (8)** 1:5 19:4
 19:21 20:20
 32:20 47:11,13
 50:4
**CBC (6)** 23:4,5,6,6
 23:11 33:5
**cc'd (1)** 43:10
**cease (1)** 42:9
**certify (3)** 34:11
 46:4,11
**change (3)** 10:17
 50:15 51:1
**changes (2)** 34:16
 50:10
**charge (1)** 8:21
**Chicago (1)** 3:6
**Christine (4)** 1:16
 1:21 46:3,19
**Civil (1)** 48:15
**clarify (2)** 6:15

44:21
clear (1) 21:15
clerical (3) 9:14
    10:8,9
client (2) 9:15
    23:10
clients (4) 9:3 28:8
    32:15,16
Coleman (2) 1:14
    2:12
collect (3) 13:20
    14:14 15:3
collected (1) 15:5
collection (25)
    4:14,15 8:18,19
    9:3,6 10:13
    12:13 13:14,17
    14:13 26:9,16
    28:4 29:11 32:10
    38:21 39:1,4
    40:1,6,13,15,20
    42:10
collections (1)
    8:15
collector (2) 22:4
    32:11
collectors (1) 9:12
come (3) 7:8 32:9
    33:16
comes (5) 19:17
    28:7 32:14 36:18
    38:17
commission (3)
    8:8,9,13
communicate (1)
    30:11
company (3) 7:3
    23:6 29:14
complaint (4) 17:2
    22:21 23:1 24:4
complete (1) 46:9
completed (2) 48:8
    48:11
compliance (3)
    11:3 12:2 34:14

compliant (1)
    44:17
computer (2)
    34:15 38:6
concluded (1)
    45:15
conclusion (1)
    32:10
conducts (1) 13:13
confirm (2) 36:8
    36:10
confirming (1)
    35:15
Conflitti (6) 11:6,7
    12:10 22:20 38:4
    38:5
confusing (1) 17:9
connected (1)
    46:13
consider (1) 23:12
considered (1)
    34:12
consistent (1) 30:7
constitutes (1)
    46:9
consumer (6)
    23:14 31:13
    32:11,13 36:19
    38:18
consumers (3)
    32:6 36:17 38:11
contd (1) 3:1
continue (1) 22:5
conversations (1)
    6:17
copied (1) 43:11
copy (2) 21:11
    22:20
corporate (2) 1:11
    45:3
correct (7) 35:4,20
    36:1,6 40:9,16
    45:5
corrections (1)
    48:6

correctly (1) 44:2
counsel (5) 5:5
    25:3 46:12,13
    49:9
County (1) 46:4
couple (2) 6:5,9
course (2) 21:6
    29:16
court (5) 1:1,16
    6:11 47:12,12
create (1) 23:11
created (1) 21:5
creates (1) 28:6
credible (1) 32:16
credit (33) 4:16
    11:18 12:15
    13:13 17:3,15
    26:21 27:7,18,21
    28:2,3,16,17,21
    29:5 30:5,5,7,15
    31:7,11,12 32:1
    33:6 36:5 37:9
    41:12 43:12,19
    44:4,8,12
Crystal (18) 1:3
    9:19 11:7 13:17
    17:21 18:7 19:4
    21:4 26:5,20
    27:18 32:20 33:1
    36:20 37:9 40:3
    47:11 50:4
Crystal's (1) 19:20
current (2) 8:4,16
currently (2) 7:20
    10:17
cycle (1) 31:8

_____

**D**

D (2) 4:1 5:1
data (2) 32:21
    34:13
date (9) 20:2 30:19
    47:9,15 48:12
    49:4 50:6,20
    51:20

daughter-in-law...
    12:12
day (3) 23:2 30:17
    31:3
days (5) 30:18
    31:1,2,7 48:12
Dear (1) 48:1
debt (14) 9:18
    13:20 14:13
    17:21 19:18 20:5
    22:10 26:7 31:13
    32:7,7,12 36:8
    36:11
debtor (3) 40:19
    42:1 44:1
debts (1) 32:18
December (1) 4:17
decide (2) 7:6
    28:18
decision (1) 32:1
deem (1) 18:6
Defendant (1)
    2:10
Defendants (1) 1:9
Dennehey (3) 1:14
    2:12 47:18
Deponent (3)
    47:14 49:10 50:5
deposed (1) 6:6
deposition (17)
    1:11 4:2 5:9 7:9
    25:6 44:2 45:14
    46:5 47:15 48:4
    48:14 49:3,6,11
    50:1,6,8
describe (2) 19:3
    27:11
describing (1)
    23:16
DESCRIPTION...
    4:8
designee (2) 1:12
    45:3
desk (1) 13:1
determination (1)

32:5
difference (1) 29:4
different (3) 15:6
    27:13 29:7
direct (1) 16:12
discount (2) 26:18
    27:13
discovery (1)
    17:10
discussed (2) 7:2,3
dispute (6) 22:9
    26:19 36:17,20
    36:21 41:9
disputed (5) 19:6
    19:7,11 41:13,18
disputes (14) 4:16
    10:12 11:8 13:17
    20:7 30:5,12
    33:7 35:14 36:2
    36:12 37:8 44:11
    44:17
disputing (2) 19:5
    36:16
District (4) 1:1,2
    47:12,12
docket (1) 23:1
document (25)
    13:4,7 15:15
    16:4 20:19,21
    21:5,13 24:20,21
    25:4,12,13,15,17
    25:18 26:14,15
    27:9,11 33:11,20
    37:1 43:2,5
documents (14)
    13:3,11 15:14
    26:12,12 29:11
    29:16 33:8,10,14
    37:11 42:16
    43:10 44:1
doing (1) 35:16
drive (1) 38:15
duly (2) 5:13 46:6
duties (2) 8:19
    10:11

| E | ESQUIRE (3) 2:3 | 19:20 22:12 | 34:3 | I |
|---|---|---|---|---|
| **E (5)** 4:1 5:1,1 46:1,1 | 2:11 3:3 | 23:10,11 28:6,7 | **give (2)** 6:8 45:12 | **idea (1)** 14:10 |
| **E-mail- (1)** 47:6 | **estimate (1)** 14:17 | 29:13 31:21 36:4 | **Glenmaura (1)** | **identification (8)** |
| **e-OSCAR (12)** | **et (1)** 1:8 | 50:3 | 1:15 | 16:2 24:18 25:10 |
| 10:15 19:17 22:6 | **evidence (1)** 17:11 | **filing (1)** 5:9 | **go (5)** 12:2 31:9 | 26:2 30:2 35:9 |
| 22:7,9 33:13 | **exact (1)** 30:17 | **financially (1)** | 35:6 36:17 38:15 | 37:6,17 |
| 34:4 36:15,16 | **EXAMINATIO...** | 46:14 | **goes (1)** 28:5 | **identify (2)** 17:2 |
| 37:20 38:3 41:9 | 4:4 5:16 39:18 | **find (2)** 13:20 | **Goggin (1)** 1:14 | 20:3 |
| **e-OSCARs (2)** | **examined (1)** 5:13 | 28:11 | 2:12 | **igoldson@golds...** |
| 10:12 19:12 | **exchanged (1)** | **fine (2)** 24:15 | **going (16)** 6:8 13:2 | 2:8 |
| **earlier (1)** 40:9 | 44:12 | 39:15 | 14:2 15:15 16:4 | **II (1)** 1:8 |
| **edit (1)** 39:8 | **excuse (2)** 41:16 | **first (12)** 6:10 7:13 | 18:8 20:18 21:12 | **Illinois (1)** 3:6 |
| **educated (1)** 10:2 | 42:15 | 12:20 18:4,18 | 24:7,21 25:12 | **image (1)** 22:7 |
| **education (1)** 7:15 | **exhibit (16)** 4:8 | 24:1 26:14 30:14 | 26:9 27:1 31:14 | **images (1)** 34:13 |
| **educational (1)** | 15:21 16:1 24:16 | 36:8,21 40:2 | 41:14 42:12 | **inaccurate (1)** |
| 7:14 | 25:9,21 26:1 | 43:2 | **Goldson (32)** 2:3,4 | 44:8 |
| **either (2)** 20:4 | 35:7,8 37:4,15 | **Fishman (1)** 3:4 | 4:5 5:16 6:2,20 | **inception (1)** 12:7 |
| 25:8 | 37:16 40:11 | **fit (2)** 28:11,18 | 7:12 14:7 15:20 | **incident (1)** 17:2 |
| **Eleven (1)** 8:3 | 42:14 43:1,2 | **five (1)** 39:14 | 16:3,17 18:21 | **included (2)** 12:21 |
| **Elton (1)** 2:5 | **exhibits (4)** 24:17 | **flip (1)** 16:16 | 24:15,19 25:11 | 24:13 |
| **employee (1)** | 29:21 30:1 37:5 | **follow (1)** 6:9 | 25:20 26:3 27:8 | **includes (1)** 7:1 |
| 46:13 | **Experian (1)** 43:4 | **follow-up (1)** | 29:20 30:3 32:4 | **indemnifying (1)** |
| **employees (8)** 9:5 | **explain (2)** 19:16 | 39:13 | 35:6,10 37:3,7 | 14:21 |
| 9:9,13,17 10:4 | 21:17 | **following (1)** | 37:14,18 39:15 | **indicated (1)** |
| 38:16,19,21 | **eyes (1)** 34:19 | 50:10 | 44:21 45:7 47:17 | 50:11 |
| **employer (3)** | | **follows (1)** 5:14 | 47:17 | **individually (1)** |
| 15:17 25:13 | **F** | **form (6)** 5:6 14:3 | **grounds (3)** 17:9 | 29:9 |
| 26:11 | **F (1)** 46:1 | 18:9 27:2 31:15 | 24:8 27:2 | **information (50)** |
| **employment (1)** | **Fact (1)** 4:12 | 49:8 | **guess (1)** 10:2 | 17:3,13,15 18:16 |
| 12:20 | **facts (2)** 24:3,4 | **four (5)** 9:20 10:3 | | 19:10,13,19,21 |
| **engaging (1)** 25:6 | **Fair (3)** 11:18 | 10:7 23:4 33:7 | **H** | 20:3,8,12,14,16 |
| **entered (1)** 50:11 | 12:15 13:13 | **functions (2)** | **handle (1)** 10:11 | 22:11 23:8,9,12 |
| **entire (1)** 50:7 | **fall (1)** 31:8 | 10:13,14 | **hands (1)** 33:12 | 23:13 24:2,3,9 |
| **entities (1)** 43:18 | **familiar (3)** 36:13 | **further (4)** 5:8 | **happen (1)** 14:8 | 25:18 27:4 28:5 |
| **entry (5)** 41:7,8,15 | 40:14 42:2 | 44:20 45:8 46:11 | **happens (1)** 21:19 | 28:7,8,10,12,14 |
| 41:15 42:6 | **farther (1)** 18:13 | | **head (1)** 6:12 | 28:17 29:1,7 |
| **Equifax (2)** 42:21 | **fashion (1)** 28:20 | **G** | **hereof (1)** 49:5 | 30:15 31:3,18,20 |
| 43:6 | **FAX (1)** 47:5 | **G (1)** 5:1 | **herewith (1)** 48:3 | 31:21 32:2 33:17 |
| **errata (6)** 48:5,7,8 | **FCRA (3)** 11:16 | **gathered (1)** 28:8 | **Hi (2)** 5:17,18 | 34:1 35:3,17,19 |
| 50:1,10,12 | 11:19 44:18 | **generate (3)** 29:11 | **highest (1)** 7:14 | 35:21 36:3,4 |
| **erroneously (2)** | **February (4)** 1:12 | 29:14,16 | **history (4)** 21:3 | 41:21 44:3,7,11 |
| 17:3,15 | 4:3 47:15 50:6 | **generated (1)** | 40:19 42:2 44:1 | **Ingmar (3)** 2:3 6:2 |
| **error (1)** 14:10 | **Federal (1)** 48:15 | 33:15 | **hourly (4)** 8:5,7,8 | 47:17 |
| **Esq (2)** 47:17,18 | **field (1)** 38:19 | **getting (1)** 34:1 | 8:11 | **initial (1)** 40:20 |
| | **file (11)** 18:17 | **girls (3)** 33:16,21 | | **Innovis (2)** 23:6 |

33:5
**insurance (2)** 15:9
  15:12
**interested (1)**
  46:14
**interrogatories (...**
  4:11 16:5,8 24:1
**interrogatory (6)**
  16:13,19 17:6,8
  17:14 24:2
**involved (4)** 11:7
  13:16 40:5,13
**Israel (1)** 3:4
**issue (1)** 7:5

**J**

**January (1)** 4:18
**Jeremy (3)** 13:15
  13:15,16
**Jessup (1)** 6:1
**JOB (1)** 47:10

**K**

**Kathleen (7)** 10:20
  11:1,2,10,12
  37:21 38:3
**keep (1)** 12:21
**Kim (11)** 1:11 4:2
  5:12,19,21 27:4
  39:20 47:14 50:5
  50:21 51:21
**know (41)** 6:4 10:6
  10:12,12,13,18
  11:17 12:3 14:1
  14:5,16,18 18:2
  18:3,12,15,19
  19:9,12,18 20:13
  24:5,6,12,14
  25:17 26:8,21
  27:17 28:15
  30:17 32:15,16
  32:17,17 33:13
  33:14 34:1,2
  36:9 38:5
**knowledge (1)**

12:3
**knows (1)** 24:3

**L**

**language (1)** 6:12
**LaSalle (1)** 3:5
**law (5)** 1:13 2:4
  31:5,6 47:17
**lawsuit (2)** 6:3
  40:4
**lead (1)** 17:10
**left (1)** 19:11
**legal (1)** 34:14
**letter (16)** 4:14,15
  4:17 19:5 26:16
  26:17 27:13,13
  29:13 33:2,2
  36:21 38:18
  40:20 41:2 48:13
**letters (7)** 4:18
  19:8 26:10 29:12
  42:13,17 43:11
**level (1)** 7:15
**liability (2)** 15:9
  15:11
**liaison (1)** 9:15
**light (1)** 17:1
**line (1)** 44:3
**list (1)** 23:3
**listed (2)** 48:6,9
**little (5)** 7:14 9:2,3
  18:13 28:14
**lived (1)** 33:1
**LLC (1)** 1:8
**loaded (1)** 19:20
**locate (1)** 23:14
**location (1)** 23:8
**log (3)** 4:13 33:16
  34:3
**logging (1)** 33:21
**long (19)** 1:3 8:2
  9:19 12:5 13:17
  17:21 18:7 19:4
  26:5,20 32:21
  33:1 37:9 40:20

41:5 42:3,7
  47:11 50:4
**Long's (5)** 11:8
  21:4 27:18 36:20
  40:3
**look (8)** 18:16
  19:19 21:12
  22:10 40:8 42:1
  43:2,9
**looked (1)** 29:8
**looking (3)** 40:19
  42:17 43:21
**looks (2)** 27:12
  42:13

**M**

**M (2)** 2:11 47:18
**machine (1)** 46:5
**madam (2)** 42:19
  48:1
**mailing (1)** 42:20
**main (1)** 10:21
**maintain (1)** 17:20
**major (1)** 28:9
**manager (3)** 8:18
  8:20 40:1
**manual (1)** 34:15
**March (1)** 47:9
**MARCUS (2)** 3:3
  45:11
**mark (10)** 10:5
  15:20 24:16
  25:20 29:20 35:7
  37:3,14 42:15
  49:3
**marked (9)** 16:1
  24:18 25:9 26:1
  30:2 35:8 37:5
  37:16 40:11
**Market (1)** 2:13
**Marshall (3)** 1:14
  2:12 47:18
**Maryland (7)** 1:2
  2:6 33:3,4 47:4
  47:12 48:16

**Master (1)** 22:11
**materials (3)**
  12:17 13:6 38:6
**matter (8)** 9:19
  10:18 13:4 14:21
  25:1 36:20 49:4
  50:8
**mean (4)** 10:10
  19:16 31:17
  41:10
**meaning (1)** 23:8
**means (7)** 21:17
  21:18 22:3,8,9
  41:11,16
**medical (1)** 26:6
**members (1)** 39:4
**mentioned (1)**
  45:1
**Messner (4)** 1:16
  1:21 46:3,19
**Metcho (16)** 2:11
  4:6 6:9,16 7:11
  14:2 16:15 18:8
  24:7 25:2 27:1
  31:14 39:12,19
  45:9 47:18
**Michael (1)** 12:10
**Mills (1)** 13:15
**mind (1)** 39:13
**Mm-mm (1)** 15:7
**mmarcus@sessi...**
  3:8
**money (2)** 18:7
  26:6
**month (1)** 31:4
**Moosic (1)** 1:15
**Morgan (2)** 3:3
  45:9

**N**

**N (2)** 4:1 5:1
**name (4)** 5:19 6:2
  36:3 50:12
**named (1)** 15:11
**names (1)** 9:21

**Nanfeldt (14)** 1:11
  4:2 5:12,21 7:13
  16:6 25:5 35:11
  37:19 45:2 47:14
  50:5,21 51:21
**Nathan (1)** 3:4
**National (1)** 1:15
**nature (1)** 6:13
**neither (1)** 35:16
**new (1)** 41:18
**nods (1)** 6:12
**Notary (2)** 1:17
  46:3
**noted (2)** 34:16
  50:10
**notes (3)** 40:9,15
  40:18
**November (7)**
  39:20 40:21 41:6
  41:7,14 42:5,11
**number (4)** 16:13
  17:6 47:10,13
**numbers (2)** 23:4
  23:8

**O**

**O (1)** 5:1
**object (5)** 14:2
  18:8 24:7 27:1
  31:14
**objections (2)** 5:6
  17:12
**objects (1)** 17:8
**obtained (1)** 44:3
**Occasionally (1)**
  14:9
**occur (2)** 41:19,20
**office (3)** 2:4 18:19
  47:17
**officer (2)** 11:4
  12:2
**Offices (2)** 1:13
  47:2
**okay (57)** 6:8 7:10
  8:10,16 10:3,6

11:14 12:13
13:10 14:20 17:5
19:1 20:18 21:5
21:9,10,21 22:6
22:18 23:3,15
24:15 25:12
26:19 27:9 28:4
28:5 29:4,10,15
29:19 33:14 34:6
34:17 35:5,18
36:7 37:13 38:2
38:16,21 40:2,5
40:18 41:1,4,7
41:10,14 42:1,5
42:9 43:1,9,18
43:21 44:6
**ones (2)** 10:21
41:12
**online (5)** 33:17,21
34:3 36:16 41:12
**open (2)** 21:19
22:3
**opinion (1)** 43:21
**organize (1)** 13:6
**original (1)** 50:13
**outside (1)** 10:13
**overbroad (1)**
17:9
**owe (2)** 18:15 32:7
**owed (2)** 18:7,18
**owes (6)** 17:21
18:12 26:5 31:13
32:11,13
**owners (1)** 12:8
**ownership (1)**
22:4

___

**P**

**P (1)** 5:1
**P.O (1)** 47:3
**page (4)** 4:4,8 34:7
49:5
**PAGE/LINE (2)**
50:15 51:1
**pages (1)** 48:5

**paid (2)** 8:5,7
**part (2)** 14:19 28:4
**particular (1)**
40:14
**parties (2)** 46:12
49:10
**partner (2)** 32:16
32:21
**Partners (2)** 1:8
3:2
**partnership (1)**
32:14
**pass (1)** 12:4
**pay (1)** 8:10
**Pendrick (15)** 1:7
3:2 14:21 15:11
18:1,5,7 25:1
26:6 30:11 32:21
40:3 43:14 47:11
50:4
**Pendrick's (1)**
15:3
**Penn (1)** 7:19
**Pennsylvania (5)**
1:15,17 2:14 6:1
46:4
**people (2)** 9:5
32:17
**period (2)** 31:7,8
**person (1)** 13:21
**Philadelphia (1)**
2:14
**phone (7)** 6:18
19:7 23:4,8
26:19 38:10,13
**pick (1)** 6:12
**place (7)** 1:12 9:1
32:2 39:16 42:3
44:16 49:4
**placement (2)**
30:18 32:21
**plaintiff (17)** 1:4
2:2 6:3 9:19 13:7
15:16 17:4,16,21
18:6 26:5 30:15

32:20 33:2,9
36:20 37:9
**plaintiff's (1)** 30:6
**please (6)** 5:20
6:15 17:2 29:21
48:4,7
**pleases (1)** 6:10
**plus (1)** 8:8
**point (4)** 18:5 19:9
21:16 26:8
**policies (2)** 30:8
44:15
**policy (1)** 30:20
**position (3)** 8:16
26:5 39:21
**positions (1)** 9:16
**possible (1)** 23:8
**Powell (1)** 5:21
**preliminary (1)**
6:5
**prepared (1)** 46:8
**presented (1)**
42:13
**Price (3)** 10:20
37:21 38:2
**priority (1)** 21:20
**privilege (2)** 6:20
24:10
**privileged (1)** 7:7
**probably (2)**
10:17 28:13
**Procedure (3)**
48:16,17 49:1
**procedures (2)**
30:8 44:16
**process (5)** 19:3
28:16 32:10
44:17 48:11
**processing (2)**
9:15 48:9
**production (6)**
4:10 13:3,11
20:20 26:11
33:10
**productiondept...**

47:6
**programs (1)** 38:6
**promise (1)** 21:16
**protected (2)** 6:19
24:9
**provide (3)** 7:4
19:10 32:18
**provided (3)** 28:10
31:19 48:7
**Public (2)** 1:17
46:3
**pull (1)** 33:17
**purports (1)** 32:12
**purposes (1)** 25:5
**pursues (1)** 32:7
**put (2)** 19:6 36:17

___

**Q**

**question (12)** 5:6
6:15,21 14:3
16:18 18:9 24:6
24:8 27:2 31:15
32:8 43:16
**questions (3)** 6:5
21:12 39:13
**queue (4)** 21:19
22:2,3 33:18
**quick (1)** 21:11

___

**R**

**R (2)** 5:1 46:1
**rate (2)** 8:13 14:11
**reach (1)** 23:13
**read (11)** 16:13,18
17:5,6 34:7
41:15 48:4,13
49:10 50:7,9
**READING (1)**
49:1
**really (1)** 18:12
**rearranged (1)**
21:20
**reason (4)** 44:6,10
50:15 51:1
**reasons (1)** 50:11

**recall (1)** 27:6
**receive (8)** 12:14
12:17,19 24:4
33:20 38:16 41:4
42:6
**received (11)** 18:5
22:21 23:2 25:1
25:13 30:4,12
34:12,18 41:2
44:4
**receives (3)** 38:10
38:13,18
**recess (1)** 39:16
**recognize (9)** 13:4
20:20 25:3,7,14
26:12 33:11
36:21 37:10
**record (12)** 5:20
16:19 17:7 22:19
25:2 27:19 32:3
34:8,17 38:9
46:9 50:11
**recorded (1)** 39:10
**recording (2)**
38:15 39:5
**records (1)** 34:15
**Recovery (45)**
2:10 6:4 7:21
8:17 9:6,10,17
10:16 12:6,9,14
14:3 14:14,20
15:2,8,17 18:1,4
18:6 20:7 21:6
23:16,18 25:14
26:4,6,10 29:10
29:15 30:4,6,10
31:2 32:12 33:8
33:19 35:13 36:7
36:10 38:9,14,17
43:10 45:4
**reduced (1)** 49:7
**reflect (2)** 34:16
41:8
**regarding (2)**
44:11,16

Page 57

**regular (2)** 21:6
29:16
**reinvestigation (1)**
30:8
**related (1)** 17:15
**relating (1)** 17:3
**relationship (1)**
12:11
**relative (1)** 46:12
**relayed (1)** 41:21
**remove (1)** 48:7
**report (8)** 26:21
27:7,18 28:1,2
30:14 40:15 44:2
**reported (8)** 1:20
19:6 20:2,8,9
28:20 44:7 46:5
**reporter (2)** 6:11
49:7
**reporting (17)**
11:18 12:15
13:13 28:3,16,21
29:4,6 30:5,8,16
31:8,11,12 35:3
35:15 37:10
**reports (1)** 31:11
**represent (1)** 6:3
**request (4)** 4:10
13:11 33:10 50:9
**requested (1)** 49:6
**requesting (1)**
10:14
**requests (3)** 13:3
20:19 24:2
**requirements (1)**
34:14
**requires (2)** 31:6,6
**reserved (1)** 5:7
**respective (1)** 29:2
**respond (4)** 13:7
20:7,15 35:12
**responded (4)**
13:10 20:17
35:12,13
**responds (1)** 17:13

**response (13)** 6:21
7:4 16:5 17:5
19:1 20:13 23:21
24:1 26:11 30:7
33:9 35:15 41:1
**responses (3)** 6:11
13:3 16:7
**responsible (2)**
20:4,4
**responsive (1)**
17:14
**retrieve (1)** 23:7
**return (2)** 23:12
48:8
**revenue (1)** 9:1
**reviewed (3)** 22:10
34:18 35:2
**right (11)** 7:13
16:20 20:18
21:21 22:19
24:20 27:10
31:10 34:21 39:2
48:13
**rmmetcho@md...**
2:16
**road (2)** 2:5 18:14
**Rolled (1)** 22:2
**Ron (1)** 45:12
**Ronald (2)** 2:11
47:18
**Rule (2)** 48:15,16
**rules (4)** 6:9,10
48:15,16

___ S ___
**S (2)** 3:5 5:1
**salary (1)** 8:5
**Saxon (1)** 10:20
**saying (5)** 19:18
31:18 35:17,19
36:3
**says (8)** 21:16 22:6
22:20 23:4 27:20
32:18 34:18
41:16

**sealing (1)** 5:8
**second (4)** 27:9
34:7 36:11 43:5
**see (1)** 23:3
**seek (2)** 12:3 24:9
**seeks (1)** 27:3
**send (3)** 23:11
29:13 31:19
**sending (1)** 35:21
**sends (1)** 31:3
**sent (11)** 15:16
26:10,10 32:21
33:1,9 35:20
37:8,9 40:20
43:11
**sentence (1)** 34:7
**separately (2)**
11:15 29:21
**Service (1)** 9:6
**Services (41)** 2:10
6:4 7:21 8:17
9:10,18 10:16
12:6,9,14 13:20
14:14,20 15:3,8
15:17 18:1,4,6
20:7 21:7 23:18
25:14 26:6,10
29:10,15 30:4,10
31:3 32:12 33:9
33:19 35:13 36:7
36:10 38:9,14,18
43:10 45:4
**Services' (3)** 23:16
26:4 30:7
**Sessions (1)** 3:4
**set (1)** 49:5
**Shannon (8)** 10:20
11:1,2,10,12,16
37:21 38:2
**sheet (4)** 4:12 50:1
50:10,12
**sheets (2)** 48:7,8
**shorthand (1)**
46:6
**show (10)** 13:2

15:15 16:5 20:18
24:21 25:13 26:9
26:20 28:1 42:12
**showed (3)** 16:7
27:7,21
**showing (3)** 33:6
36:19 37:8
**sign (2)** 48:5 49:10
**signature (3)**
15:18 50:20
51:20
**signed (2)** 48:7
50:12
**SIGNING (1)** 49:1
**Silver (1)** 2:6
**Sir (2)** 42:19 48:1
**site (1)** 36:16
**situations (1)**
18:13
**skip (6)** 23:4,5,6
23:16,19 24:5
**Social (1)** 20:1
**software (1)** 28:4
**sorry (8)** 11:13
21:9 22:17 23:21
27:19 32:11
34:19 35:12
**sort (1)** 10:15
**speak (1)** 45:13
**specific (2)** 40:6
43:19
**specifically (2)**
11:16,19
**speculation (1)**
27:3
**speculatory (1)**
27:3
**spoke (1)** 41:20
**Spring (1)** 2:6
**staff (8)** 9:3,7 10:8
10:13 12:13
13:14 39:1,4
**stand (1)** 17:18
**start (1)** 12:20
**state (4)** 1:17 5:19

7:19 19:10
**statement (1)** 35:1
**states (2)** 1:1
25:17
**status (4)** 19:6,12
41:18,18
**stay (1)** 6:13
**Stenographer (1)**
1:16
**steps (1)** 22:13
**STIPULATION...**
5:3
**stop (1)** 39:5
**strategy (1)** 8:21
**Street (2)** 2:13 3:5
3:5
**string (1)** 36:5
**structure (1)** 8:11
**Subject (1)** 17:11
**submitting (1)**
34:11
**Suite (3)** 2:5,13
3:5
**supervision (1)**
46:8
**supervisor (1)**
13:15
**Sure (5)** 5:21 19:4
19:17 21:14
41:17
**sworn (1)** 5:13
**sworn/affirmed ...**
46:7
**system (7)** 9:1
15:5 19:14,20
28:13,17 34:4

___ T ___
**T (2)** 46:1,1
**take (10)** 18:15,17
19:2,18 21:11
23:9 28:10 39:14
40:8 43:2
**taken (2)** 22:13
49:3,7 50:8
**talking (1)** 34:4

telephone (1) 3:9
tell (5) 8:10 9:21
  26:14 28:3 40:18
telling (1) 31:12
tells (1) 18:14
ten (2) 16:13 17:6
ten-minute (1)
  39:14
testified (1) 5:13
testifying (1) 45:3
testimony (4)
  16:10 20:6 28:19
  29:5
Thank (6) 6:2 7:11
  19:1 23:3 29:19
  31:10
Thanks (2) 34:6
  37:13
thing (1) 6:16
think (5) 18:2,11
  26:8 35:16 43:15
third (2) 36:11
  43:7
Thirteen (1) 8:12
thirty (2) 39:2
  48:12
three (2) 37:8
  42:15
Thursday (1) 1:12
time (5) 5:7 38:1
  45:12,13 49:4
times (1) 23:5
title (1) 49:5
titles (2) 10:6,7
today (4) 10:18
  16:10 17:18 45:4
total (1) 27:20
tracer (1) 23:16
tracers (2) 23:19
  24:5
trade (1) 44:3
trained (6) 11:2,3
  11:21 12:1 38:2
  38:7
training (7) 11:16

11:19 12:14,17
  12:19 13:14 38:6
transcript (7) 5:9
  46:7 48:3,5
  49:11 50:7,14
TransUnion (1)
  43:8
trial (1) 5:7
trigger (1) 6:21
true (2) 16:6,8
try (1) 6:13
turn (2) 13:6 34:6
turned (1) 20:19
Turner (3) 10:20
  37:21 38:3
two (4) 10:21 26:9
  29:11 38:1
types (3) 9:16
  10:14 15:14
typewritten (1)
  49:8

U
uh-uh (1) 6:13
understand (3)
  6:14 18:10 32:8
understanding (5)
  22:8 35:1,11,14
  36:1
UNITED (1) 1:1
unknown (7)
  19:14,15,21 20:5
  20:9,12,17
untimely (1) 44:13
upload (1) 28:16
uploaded (2) 28:9
  29:3
uploading (1)
  28:12
use (3) 23:7,18
  38:3
uses (1) 37:19

V
v (2) 47:11 50:4

vague (1) 17:9
validation (2)
  27:14 31:6
varies (2) 8:14,14
verbal (1) 6:11
verification (4)
  4:9 15:16 16:6
  36:2
verified (10) 16:7
  17:3,4,17 19:13
  19:15 22:7,7,11
  34:13
verify (1) 17:15
view (1) 25:5
viewing (1) 22:14
VOICE (1) 47:5
vs (1) 1:5

W
waived (2) 5:9
  48:14
waiving (1) 17:12
wants (1) 22:5
Warner (2) 1:14
  2:12
wasn't (1) 19:11
way (2) 23:10
  33:17
we'll (3) 23:9,11
  25:20
we're (2) 28:12
  40:19
we've (2) 28:10
  44:1
website (1) 34:2
went (4) 33:2 36:5
  41:11,12
Westminster (1)
  47:4
witness (9) 7:10
  14:5 18:11 24:12
  25:7 27:6 31:17
  45:6 46:6
work (10) 7:20 9:2
  9:2,3 10:15

15:13 21:16 22:5
  28:16 33:12
worked (2) 8:2
  9:18
world (1) 21:18
wouldn't (1) 24:13
writing (1) 41:2
wrong (1) 13:21
www.albetzrepo...
  47:7
Wyoming (1) 46:4

X
X (1) 4:1

Y
yeah (6) 10:19
  17:19 22:1,15
  23:1,2
year (2) 8:15
  10:19
years (1) 8:3

Z

0

1
1)nanfeldt_kim ...
  47:10 50:3
1,125 (3) 27:20,21
  28:21
10 (2) 4:16 35:8
10:41 (1) 1:13
11 (5) 4:17 37:5
  42:14,15 43:1
11:59 (1) 45:15
12 (6) 4:18 37:16
  40:21 42:14,15
  43:2
120 (1) 3:5
13 (1) 42:14
14 (1) 42:14
16 (3) 4:9 41:6,15
17 (1) 4:17
1734 (1) 2:5

180222key (2)
  47:10 50:3
18434 (1) 6:1
19103 (1) 2:14
1960 (1) 3:5

2
2 (1) 40:11
2-415 (1) 48:16
2000 (1) 2:13
2005 (1) 12:7
2016 (5) 4:17
  39:21 40:21 42:5
  42:11
2017 (1) 4:18
2018 (5) 1:12 4:3
  47:9,15 50:6
20903 (1) 2:6
210 (1) 2:5
21158 (1) 47:4
215-575-2595 (1)
  2:15
22 (9) 1:12 4:3
  41:6,8,15 42:5
  42:11 47:15 50:6
2300 (1) 2:13
24 (3) 4:10,11 22:6
240-780-8829 (1)
  2:7
25 (1) 4:12
26 (1) 4:13

3
3 (2) 4:9 16:1
30 (9) 4:14,15 9:8
  9:12 30:18 31:1
  31:2,7 48:12
30-day (1) 31:8
30(e) (1) 48:15
31 (1) 4:18
312-578-0985 (1)
  3:7
32 (1) 4:6
35 (1) 4:16
37 (3) 4:17,18 9:11

| 4 |
|---|
| **4 (3)** 4:10 24:16,17 |
| **410)752-1733 (1)** 47:5 |
| **410)875-2857 (1)** 47:5 |

| 5 |
|---|
| **5 (3)** 4:5,11 24:17 |
| **50 (1)** 1:14 |
| **500,000 (2)** 15:4,6 |
| **55.50 (1)** 26:18 |

| 6 |
|---|
| **6 (2)** 4:12 25:9 |
| **60603 (1)** 3:6 |
| **611 (1)** 5:21 |
| **665 (1)** 47:3 |

| 7 |
|---|
| **7 (2)** 4:13 26:1 |
| **70,000 (1)** 8:15 |
| **74 (2)** 28:1,19 |

| 8 |
|---|
| **8 (3)** 4:14 30:1 47:9 |
| **8:17-CV-1955-...** 1:6 47:13 |
| **843.75 (1)** 27:16 |

| 9 |
|---|
| **9 (2)** 4:15 30:1 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRYSTAL LONG, | Civil Action No. |
| Plaintiff, | |
| V. | 8:17-cv-01955-GJH |
| PENDRICK CAPITAL PARTNERS II, LLC, | |
| ABILITY RECOVERY SERVICES, LLC, | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| AND | |
| EQUIFAX INFORMATION SERVICES, LLC, | |
| Defendants. | |

## VERIFICATION

I, Kim Nanfeldt, an authorized representative of Defendant, Ability Recovery Services, LLC, verify that the facts set forth in Ability Recovery Services, LLC's Second Supplemental Answers and Objections to Plaintiff, Crystal Long's First Interrogatories are true to the best of my knowledge, information and belief.

_____
KIM NANFELDT

Date: 2-12-18

EXHIBIT
3
2/22/18 cAm
PENGAD 800-631-6989

EXHIBIT
4
2/22/18 CAM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRYSTAL LONG,

               Plaintiff,

    V.

PENDRICK CAPITAL PARTNERS II,
LLC,

ABILITY RECOVERY SERVICES,
LLC,

EXPERIAN INFORMATION
SOLUTIONS, INC.,

    AND

EQUIFAX INFORMATION SERVICES,
LLC,

               Defendants.

Civil Action No.

8:17-cv-01955-GJH

**DEFENDANT, ABILITY RECOVERY SERVICES, LLC'S SECOND SUPPLEMENTAL
RESPONSES AND OBJECTIONS TO PLAINTIFF, CRYSTAL LONG'S FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS AND OTHER TANGIBLE THINGS**

    Defendant, Ability Recovery Services, LLC ("ARS"), by and through its

attorneys, Marshall Dennehey Warner Coleman & Goggin, P.C., hereby submits the

following Second Supplemental Responses and Objections to Plaintiff, Crystal

Long's ("Plaintiff") First Request for Production of Documents and Other Tangible

Things directed to ARS, stating as follows:

## PRELIMINARY STATEMENT

    As to each and every request contained in Plaintiff's Request for Production,

ARS states the following:

1.     These responses are made pursuant to the Federal Rules of Civil Procedure and are based upon information presently known by ARS.   It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions.  ARS reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these responses as warranted thereby.   These responses are made in a good faith effort to supply as much information and specification as is presently known, but shall not prejudice ARS in relation to further discovery, research or analysis.

2.     Each response herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

3.     ARS' identification of documents and/or providing information herein shall not be construed as an admission of ARS that any such document and/or information is either relevant or admissible for any purpose, including trial, in the above-referenced matter.

4.     No incidental or implied admissions are intended by the responses made herein.  The fact that ARS has answered or objected to any Request is not an admission that ARS admits the existence of any "facts" set forth or assumed by such request.

2

## GENERAL OBJECTIONS

1.   ARS objects to all Requests that attempt to require it to provide information and/or documentation not within its possession, custody, or control, or within the possession, custody, or control of any of its representatives, employees, agents, or attorneys.

2.   The absence of an objection that a Request is irrelevant is not intended to be a waiver of that objection and ARS reserves the right to object on relevancy grounds at any stage of these proceedings.

3.   ARS has responded to these Requests to the extent of its current knowledge and available information. However, ARS' discovery and investigation in preparation for trial of this matter has not been completed as of the date of these responses, and therefore, ARS does not purport to state anything more than the information presently known to or discovered by it. ARS specifically reserves the right to supplement, modify, or amend its responses or to present additional information at a later date.

4.   ARS has based its responses upon the assumption that Plaintiff and did not intend to seek information protected against discovery by the attorney-client privilege or the attorney work product doctrine. To the extent any Request or any part thereof is intended to elicit such information, ARS objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

5.   ARS objects to the Requests which attempt to require it to identify "all" persons with knowledge and documents on the grounds that such Requests are unduly burdensome, oppressive, and overbroad.

3

6.   ARS objects to these Requests to the extent they utilize the word "identify" in such a manner as to render the Request unduly burdensome, oppressive and overbroad.

7.   ARS objects to these Requests on the grounds that they are unduly burdensome and oppressive to the extent that the Requests require ARS to state specific facts, documents conversations, agreements and personal knowledge upon which ARS bases a denial of an abstract, vague, general and incomprehensible assertion by ARS.   In many cases, it is difficult, if not impossible, to prove a negative or a nonexistence, particularly when ARS is given no specific facts to refute.   Accordingly, ARS reserves its right to introduce any additional information when and if Plaintiff makes specific supported assertions.

8.   Referencing   and   expressly   incorporating   each   of   these   general objections, ARS hereby responds as follows:

**DEFENDANT, ABILITY RECOVERY SERVICES, LLC'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND OTHER TANGIBLE THINGS**

1.   All documents relating to any amount you claim that plaintiff owes or owed you.

**RESPONSE:**

**ARS has provided counsel for Plaintiff with its redacted account notes regarding its attempts to recover a debt obligation owed by Crystal Long to co-Defendant, Pendrick Capital Partners II, LLC ("Pendrick").**

4

2.     All records of communications between plaintiff and you, including all documents, records of telephonic communications, collection logs, court notices, court filings, log books or other records from November 17, 2016 to the present. This includes but is not limited to any oral communications, statements, demands, notices or other correspondence from any source.

**RESPONSE:**

**Objection.   ARS objects to this Request on the grounds that it is vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it has provided counsel for Plaintiff with its redacted account notes regarding its attempts to recover a debt obligation owed by Crystal Long to co-Defendant, Pendrick.**

3.     All records of communications between you and any consumer reporting agency regarding plaintiff, including all furnisher data, reinvestigation documents, records of telephonic communications, AUD's, CDV [Consumer Dispute Verification] and ACDV [CDV response] and UDF [Universal Data Form], and notices of blocking sent pursuant to 15 U.S.C. § 1681c-2(b), and notices of modification, suppression or deletion sent pursuant to 15 U.S.C. § 1681i(a)(5)(A).

**RESPONSE:**

**ARS has provided counsel for Plaintiff with a copy of the automated credit dispute verifications in its possession regarding the account at issue.**

4.     All records of communication between you and Pendrick with any of the Plaintiff's personal identifiers.  Please include any and all placement data that resulted in your pursuit of the Plaintiff for the alleged debt.

**RESPONSE:**

**ARS has provided counsel for Plaintiff with a copy of the documentation that it received from co-Defendant, Pendrick, upon its placement of the account with ARS for collection.**

5.   All contracts between you and Pendrick that contain or mention any agency

relationship, or that allow Ability to collect any debts on behalf of Pendrick.

**RESPONSE:**

**Objection. ARS objects to this Request on the grounds that it is irrelevant, vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it has provided counsel for Plaintiff with a redacted copy of its contract between it and Pendrick during the applicable time period.**

6.   All documents containing the current names addresses and telephone

numbers of persons who communicated with plaintiff, worked on any aspect of the

collection account associated with Plaintiff, or communicated with any consumer

reporting agency regarding Plaintiff's account.   Defendant may produce a list of

witnesses with names, addresses and telephone numbers in lieu of the documents

requested.

**RESPONSE:**

**Objection.   ARS objects to this Request on the grounds that it is irrelevant, vague, overbroad and not calculated to lead to the discovery of admissible evidence.**

7.   All documents which you contend support your right to collect or report any

amounts due from the Plaintiff.

**RESPONSE:**

> **Objection.   ARS objects to this Request on the grounds that it is irrelevant, vague, overbroad and not calculated to lead to the discovery of admissible evidence.   Subject to and without waiving these objections, ARS responds that it has provided counsel for Plaintiff with a copy of the documentation that it received from co-Defendant, Pendrick, upon its placement of the account with ARS for collection and a redacted copy of the contract between ARS and Pendrick.**

8.      All computerized data relating to Plaintiff, Plaintiff's debt, Placement data for

the account associated with the Plaintiff, and collection efforts.

**RESPONSE:**

> **ARS has provided counsel for Plaintiff with its redacted account notes regarding its attempts to recover a debt obligation owed by Crystal Long to co-Defendant, Pendrick and a copy of the documentation that it received from co-Defendant, Pendrick, upon its placement of the account with ARS for collection.**

9.      All historical, archived or electronic record of any Metro Tape Data involving

the Plaintiff.

**RESPONSE:**

**None.**

10.      All records of information received from public record vendors, skip tracers,

or consumer reporting agencies relating in any way to Plaintiff.

**RESPONSE:**

> **ARS has provided counsel for Plaintiff with a copy of the automated credit dispute verification in its possession regarding the account at issue.**

7

11.   Documents stating the meaning or definition of any codes, shorthand, terms or abbreviations appearing in any of the requested documents.

**RESPONSE:**

**Upon a request from counsel for Plaintiff, counsel for ARS will explain any codes, shorthand, terms or abbreviations utilized in ARS' account notes regarding ARS' attempts to recover the account at issue.**

12.   All documents relating to the policies and procedures, if any, that are applied to you to any account (or consumer debt) when the debtor disputes an account directly with you.

**RESPONSE:**

**Objection.  ARS objects to this Request on the grounds that it is irrelevant, over broad, unduly vague and not calculated to lead to the discovery of admissible evidence.  ARS further objects to this Request on the grounds that it seeks production of documentation which is, or may be, confidential and/or proprietary in nature, the production of which would place ARS at a competitive disadvantage in its industry.**

13.   All documents relating to policies and procedures for responding to disputes that you receive from a credit reporting agency regarding any information that you furnished to a credit reporting agency.

**RESPONSE:**

**Objection.  ARS objects to this Request on the grounds that it is irrelevant, over broad, unduly vague and not calculated to lead to the discovery of admissible evidence.  ARS further objects to this Request on the grounds that it seeks production of documentation which is, or may be, confidential and/or proprietary in nature, the production of which would place ARS at a competitive disadvantage in its industry.**

14.   All documents relating to policies and procedures to investigate the accuracy and validity of the information that you receive from skip tracers.

**RESPONSE:**

**Objection.  ARS objects to this Request on the grounds that it is irrelevant, over broad, unduly vague and not calculated to lead to the discovery of admissible evidence.**

15.   All other documentary evidence that relates to the Plaintiff's claims against you in this case.

**RESPONSE:**

**Objection.  ARS objects to this Request on the grounds that it is vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it has provided counsel for Plaintiff with its redacted account notes regarding its attempts to recover a debt obligation owed by Crystal Long to co-Defendant, Pendrick.**

16.   All documents and/or correspondence in defendant's or its attorney's possession that refers to or relates to any fact(s) which may be relevant in this case excluding letters between defendant and its attorney, or attorney work product.

**RESPONSE:**

**Objection.  ARS objects to this Request on the grounds that it is vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it has provided counsel for Plaintiff with its redacted account notes regarding its attempts to recover a debt obligation owed by Crystal Long to co-Defendant, Pendrick.**

17.   All other documentary evidence that relates to your defenses or affirmative
defenses.

**RESPONSE:**

**ARS refers Plaintiff to its Answer to Plaintiff's Complaint with Affirmative Defenses which was filed on July 28, 2017 at ECF 17.**

18.   All exhibits that you intend to or may introduce at trial.

**RESPONSE:**

**At the present time ARS has not made any decisions regarding exhibits that it intends or may introduce at the trial of this matter.  ARS reserves the right to update its response to this Request, as discovery in this matter is ongoing.**

19.   All manuals, tests, video tapes, books or other documents pertaining to the
training and supervision of defendant's employees or agents as to compliance with
the Fair Credit Reporting Act.

**RESPONSE:**

**Objection.  ARS objects to this Request on the grounds that it is irrelevant, over broad, unduly vague and not calculated to lead to the discovery of admissible evidence.  ARS objects to this Request on the grounds that it seeks production of documentation which is, or may be, confidential and/or proprietary in nature, the production of which would place ARS at a competitive disadvantage in its industry.  ARS further objects to this Request on the grounds that it seeks the production of documentation which is, or may be, subject to the attorney/client privilege and/or the attorney work product doctrine.**

20.   All cost/benefit analysis regarding expenditures necessary for compliance with the Fair Credit Reporting Act.

**RESPONSE:**

**Objection. ARS objects to this Request on the grounds that it is confusing, irrelevant, vague, over broad and not calculated to lead to the discovery of admissible evidence.**

21.   All documents showing lawsuits, motions or other actions against defendant for violations of the Fair Credit Reporting Act.

**RESPONSE:**

**Objection.   ARS objects to this Request on the grounds that it is irrelevant, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible or relevant evidence and is intended to harass and oppress ARS.   See Dewey v. Associates Collectors, Inc., 927 F.Supp. 1172, 1175 (W.D. Wis. 1996); Powell v. Computer Credit, Inc., 975 F. Supp 1034, 1039 (S.D. Ohio 1997)("the Court should consider the debt collector's noncompliance as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance"); and Anderson v. Frederick J. Hann and Associates, 361 F. Supp. 2d 1379, 1384 (N.D. Ga. 2005)(declining to consider FDCPA violations unrelated to the present action); Cusumano v. NRB, Inc., 1998 U.S. Dist. LEXIS 15418, *4-*7, Case No. 96 C 6876 (N.D. Ill. Sept. 22, 1998) (denying motion to compel production of information about other litigation concerning collection practices)(citing to Byes v. Credit Bureau Enters., 1995 U.S. Dist. LEXIS 13559, *2 Civil Action No. 95-239 SECTION "I" (4) (E.D. La. Sept. 8, 1995)) and Richard v. Oak Tree Group, Inc., 2008 U.S. Dist. LEXIS 95002, *20, Case No. 1:06-cv-362 (W.D. Mich. Nov. 21, 2008) (finding the reasoning in Dewey persuasive and concluding that the "frequency and persistence of non-compliance" does not include a debt collector's action with respect to non-parties).   Additionally, F.R.E. 404 clearly states, "evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . ."   The fact that ARS may have faced lawsuits in the past or may be involved in other lawsuits presently is clearly character evidence and nothing more and thus, is neither relevant nor admissible and is unduly burdensome in light of the claims asserted. Also, the information sought by Plaintiff in this Request is equally available to Plaintiff in the public domain.**

11

MARSHAL DENNEHEY WARNER
COLEMAN & GOGGIN, P.C.

By: _____

RONALD M. METCHO
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2595 / (215) 575-2765 (f)
rmmetcho@mdwcg.com
Attorneys for Defendant
Ability Recovery Services, LLC

Dated: _____2-12-18_____

12



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRYSTAL LONG,<br><br>            Plaintiff,<br><br>       V.<br><br>PENDRICK CAPITAL PARTNERS II,<br>LLC,<br><br>ABILITY RECOVERY SERVICES,<br>LLC,<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br><br>       AND<br><br>EQUIFAX INFORMATION SERVICES,<br>LLC,<br><br>            Defendants. | Civil Action No.<br><br>8:17-cv-01955-GJH |

### DEFENDANT, ABILITY RECOVERY SERVICES, LLC'S SECOND SUPPLEMENTAL ANSWERS AND OBJECTIONS TO PLAINTIFF, CRYSTAL LONG'S FIRST INTERROGATORIES

Defendant, Ability Recovery Services, LLC ("ARS"), by and through its attorneys, Marshall Dennehey Warne, Coleman & Goggin, P.C., hereby submits the following Second Supplemental Answers and Objections to Plaintiff, Crystal Long's First Interrogatories addressed to ARS, stating as follows:

### PRELIMINARY STATEMENT

As to each and every request contained in Plaintiff's First Interrogatories, ARS states the following:

1.     These responses are made pursuant to the Federal Rules of Civil Procedure and are based upon information presently known by ARS.   It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions.   ARS reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these responses as warranted thereby.   These responses are made in a good faith effort to supply as much information and specification as is presently known, but shall not prejudice ARS in relation to further discovery, research or analysis.

2.     Each response herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

3.     ARS' identification of documents and/or providing information herein shall not be construed as an admission of ARS that any such document and/or information is either relevant or admissible for any purpose, including trial, in the above-referenced matter.

4.     No incidental or implied admissions are intended by the responses made herein.   The fact that ARS has answered or objected to any Request is not an admission that ARS admits the existence of any "facts" set forth or assumed by such request.

## GENERAL OBJECTIONS

1.     ARS objects to all Interrogatories that attempt to require it to provide information and/or documentation not within its possession, custody, or control, or within the possession, custody, or control of any of its representatives, employees, agents, or attorneys.

2.     The absence of an objection that an Interrogatory is irrelevant is not intended to be a waiver of that objection and ARS reserves the right to object on relevancy grounds at any stage of these proceedings.

3.     ARS has responded to these Interrogatories to the extent of its current knowledge and available information.  However, ARS' discovery and investigation in preparation for trial of this matter has not been completed as of the date of these responses, and therefore, ARS does not purport to state anything more than the information presently known to or discovered by it.  ARS specifically reserves the right to supplement, modify, or amend its responses or to present additional information at a later date.

4.     ARS has based its responses upon the assumption that Plaintiff and did not intend to seek information protected against discovery by the attorney-client privilege or the attorney work product doctrine.  To the extent any Request or any part thereof is intended to elicit such information, ARS objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

5.     ARS objects to the Interrogatories which attempt to require it to identify "all" persons with knowledge and documents on the grounds that such Requests are unduly burdensome, oppressive, and overbroad.

6.     ARS objects to these Interrogatories to the extent they utilize the word "identify" in such a manner as to render the Request unduly burdensome, oppressive and overbroad.

7.     ARS objects to these Interrogatories on the grounds that they are unduly burdensome and oppressive to the extent that the Interrogatories require ARS to state specific facts, documents conversations, agreements and personal knowledge upon which ARS bases a denial of an abstract, vague, general and incomprehensible assertion by ARS.   In many cases, it is difficult, if not impossible, to prove a negative or a nonexistence, particularly when ARS is given no specific facts to refute.  Accordingly, ARS reserves its right to introduce any additional information when and if Plaintiff makes specific supported assertions.

8.     Referencing and expressly incorporating each of these general objections, ARS hereby responds as follows:

## DEFENDANT, ACCOUNT RESOLUTION SERVICES, LLC'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES

1. Identify all persons who are likely to have personal knowledge of any fact alleged in the Complaint, and any defense alleged in your Answer, and state the subject matter of the personal knowledge possessed by each such person – including any of your employees who, in any way, handled or supervised any matters in connection with Plaintiff's disputes to you, your credit reporting or furnishings about Consumer, and any of your communications with Consumer or any credit reporting agency regarding Plaintiff.

ANSWER:

**Objection. ARS objects to this Interrogatory on the grounds that it is vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that Plaintiff, Crystal Long, a representative of Plaintiff's employer from September 2016 through May 2017 with access to the employer's employee handbook and guidelines, Kim Nanfeldt of ARS, Mark Carlson of ARS, a representative of co-Defendant, Pendrick Capital Partners II, LLC ("Pendrick"), a representative of co-Defendant, Experian Information Solutions, Inc. ("Experian") and a representative of co-Defendant, Equifax Information Services, LLC ("Equifax") have personal knowledge of the facts alleged in Plaintiff's Complaint and ARS' defenses.**

2. Identify any persons or entities whom you contend are persons needed for just adjudication within the meaning of Fed. R. Civ. P. 19, but who have not been named by Plaintiff.

ANSWER:

**Objection. ARS objects to this Interrogatory on the grounds that it is vague, overbroad and not calculated to lead to the discovery of admissible evidence.**

3. If any person covered on an insurance business might by liable to satisfy part of all of a judgment that might be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, identify that person, state the applicable policy limits of any insurance agreement under which the person might be liable, and describe any question or challenge raised by the person relating to coverage for this action (Standard General Interrogatory No. 5)

ANSWER:

**ARS does not have any information which is, or may be, responsive to this Interrogatory, as it is effectively self insured against Plaintiff's claims in her Complaint.**

4. For each witness you have retained or specially employed to provide expert testimony in this case, or employed by you whose duties regularly involve giving expert testimony and whom you expect to testify at trial, provide a complete statement of the opinions to be expressed and the basis and reasons therefore.

**ANSWER:**

At the present time ARS has not made any decisions regarding expert witnesses that it may utilize in this matter. ARS reserves the right to update its response to this Interrogatory, as discovery in this matter is ongoing.

5. Please state the full name, address, job title, occupation and name and address of the present employer of each person answering or assisting in answering these interrogatories on your behalf.

**ANSWER:**

Kim Nanfeldt -- Collection Manager at ARS.

6. Itemize and show how you calculate any debt owed by Plaintiff to Pendrick by Ability.

**ANSWER:**

Objection. ARS objects to this Interrogatory on the grounds that it is vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it relied on the information provided by co-Defendant, Pendrick, when determining the amount of the debt at issue that it sought to recover from Plaintiff.

7. Identify by name, publisher, publisher's address, vendor and vendor's address, any commercial software which you use to maintain, bill, collect, or report any information relating to your consumer accounts or application information relating to your consumer accounts.

**ANSWER:**

Comtronic Systems - Debtmaster Professional

8. Please identify the date, recipient, and content (as recorded by Metro or Metro 2 data) of each occurrence during the preceding five years in which you reported to credit data regarding Plaintiff. If you have reported such data, state whether such reportings were made pursuant to an express or written authorization by you for the relevant consumer reporting agency to report that data.

**ANSWER:**

**On December 28, 2016 ARS reported to the credit bureaus "Unknown SSN & D/O/B." On February 24, 2017 and May 24, 2017, after engaging in reasonable investigations, ARS furnished information to the credit bureaus regarding Plaintiff's account being deemed accurate. On June 12, 2017 ARS notified the credit bureaus to delete all tradeline information regarding the account at issue.**

9. Identify by name, home address, telephone number, and date of birth, each individual employed by Ability in the preceding 5 years who supervised reinvestigations of credit data reported to any consumer reporting agency for you. Include in you answer a description of the individual's job title and the dates of employment of the individual.

**ANSWER:**

**Cassandra Groshek, Collection Representative, from February 15, 2017 to the present;**

**Shannon Saxon Price, Clerical Employee, from April 26, 2016 to the present; and**

**Susan Cooper, Clerical Employee, from April 24, 2017 to December 1, 2017.**

**All three individuals supervised reinvestigations of credit data reported to consumer reporting agencies during the applicable time period.**

10.        In light of the allegations in the Complaint, please identify each incident where you erroneously verified credit information relating to Plaintiff which should not have been verified.

**ANSWER:**

Objection.  ARS objects  to this Interrogatory on the grounds that it is confusing, vague, overbroad and not calculated to lead to the discovery of admissible evidence.  Subject to and  without waiving these objections, ARS responds that it does not have any information that is, or may be, responsive to this Interrogatory, as it did not erroneously verify credit information related to Plaintiff which allegedly should not have been verified.

11.            In light of the allegations in the Complaint, please identify each action taken by you in verifying the credit information relating to Plaintiff upon notification of each dispute from either the consumer directly, or from a credit reporting agency.

**ANSWER:**

Objection.  ARS objects to this Interrogatory on the grounds that it is confusing, vague, overbroad and not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, ARS responds that it investigated disputes received by Plaintiff by reviewing Plaintiff's disputes, the documentation in its possession, the documents in Pendrick's possession and conversations with Pendrick to determine that the information that was being furnished to the credit bureaus was accurate.

12.            Please explain and describe Ability's actions to assess or identify the risks and potential for harm to consumers arising from inaccurate credit reporting by Ability.

**ANSWER:**

Objection.  ARS objects to this Interrogatory on the grounds that it is confusing, vague, overbroad and not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, ARS responds that it does not have any information in its possession which is, or may be, responsive to this Interrogatory.

13.         Describe every step taken by you to investigate Consumer's dispute of your account and consumer credit data which was reported to the national consumer reporting agencies—including the identity, home address, telephone number, social security number and date of birth of witnesses interviewed and persons conducting the investigation; documents requested and reviewed, communications with the national consumer reporting agencies, description of any computer systems queried or other investigative means employed. Please include reference to the matter in which the data in this case was investigated, Ability's understanding as to how it continued to be placed in Consumer's credit files and reports and whether Ability took any steps to have that information removed or altered so as to prevent said data from being incorrectly attributed to Consumer.

**ANSWER:**

**Objection. ARS objects to this Interrogatory on the grounds that it is confusing, vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it investigated disputes received by Plaintiff by reviewing Plaintiff's disputes, the documentation in its possession, the documents in Pendrick's possession and conversations with Pendrick to determine that the information that was being furnished to the credit bureaus was accurate.**

14.   Identify the date, time, matter, purpose and individuals responsible for each incident in which Ability obtained access to Long's consumer credit or any consumer report at any time during the preceding 3 years.

**ANSWER:**

**Objection. ARS objects to this Interrogatory on the grounds that it is confusing, vague, overbroad and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, ARS responds that it does not possess any information that is, or may be, responsive to this Interrogatory, as it did not access Plaintiff's credit reports at any time during the preceding three years.**

15.   Identify the true creditor of any account which Ability reported in association with Consumer's personal identifiers—including but not limited to the holder of the account or securitization trust which owned the credit obligation— and the nature of any relationship between Ability and that creditor.

**ANSWER:**

**Objection.   ARS objects to this Interrogatory on the grounds that it is confusing, vague, overbroad and not calculated to lead to the discovery of admissible evidence.   Subject to and without waiving these objections, ARS responds that it attempted to recover a valid and delinquent debt owed by Crystal Long to co-Defendant, Pendrick.**

16.   Identify by description, author, date of creation any documents which have been requested by the Plaintiff, but which have been withheld on the basis of trade secret, confidentiality or privilege.

**ANSWER:**

**ARS'   applicable   policies   and   procedures   regarding   disputes,   any policies or procedures received from the credit bureaus and skip tracing, to the extent that such documents exist and ARS' training and supervisory materials.**

17.   Identify—including Case number, venue, parties, amount of any settlement or judgment paid by Ability—every lawsuit in which you were alleged to have improperly reported or reinvestigated credit reporting data relating to a consumer report.

**ANSWER:**

**Objection.   ARS objects to this Interrogatory in that it is irrelevant, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible or relevant evidence and is intended to harass and oppress ARS. See Dewey v. Associates Collectors, Inc., 927 F.Supp. 1172, 1175 (W.D. Wis. 1996); Powell v. Computer Credit, Inc., 975 F. Supp 1034, 1039 (S.D. Ohio 1997)("the Court should consider the debt collector's noncompliance as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance"; and Anderson v. Frederick J. Hann and Associates, 361 F. Supp. 2d 1379, 1384 (N.D. Ga. 2005)(declining to consider FDCPA violations unrelated to the present action); Cusumano v. NRB, Inc., 1998 U.S. Dist. LEXIS 15418, *4-*7, Case No. 96 C 6876 (N.D. Ill. Sept. 22, 1998) (denying motion to compel production of information about other**

litigation concerning collection practices)(citing to <u>Byes v. Credit Bureau Enters.</u>, 1995 U.S. Dist. LEXIS 13559, *2 Civil Action No. 95-239 SECTION "I" (4) (E.D. La. Sept. 8, 1995)) and <u>Richard v. Oak Tree Group, Inc.</u>, 2008 U.S. Dist. LEXIS 95002, *20, Case No. 1:06-cv-362 (W.D. Mich. Nov. 21, 2008) (finding the reasoning in <u>Dewey</u> persuasive and concluding that the "frequency and persistence of non-compliance" does not include a debt collector's action with respect to non-parties). Additionally, F.R.E. 404 clearly states, "evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . ." The fact that ARS may have faced lawsuits in the past or may be involved in other lawsuits presently is clearly character evidence and nothing more and thus, is neither relevant nor admissible and is unduly burdensome in light of the claims asserted. Also, the information sought by Plaintiff in this Interrogatory is equally available to Plaintiff in the public domain.

18. Please state, explain and describe the contents of each and every CDV [Consumer Dispute Verification] and ACDV [CDV response] and UDF [Universal Data Form] you received, sent or possessed, at any time, which bore any of plaintiff's personal identifiers.

**ANSWER:**

On December 28, 2016 ARS reported to the credit bureaus "Unknown SSN & D/O/B." On February 24, 2017 and May 24, 2017, after engaging in reasonable investigations, ARS furnished information to the credit bureaus regarding the account at issue being deemed accurate. On June 12, 2017 ARS directed the credit bureaus to delete all tradeline information regarding the account at issue.

19. Please state, explain and describe all of the information or data that you received from Pendrick that resulted in you attempting to collect money from the Plaintiff.

**ANSWER:**

Counsel for ARS has provided counsel for Plaintiff with the placement file that it received from Pendrick regarding Plaintiff's account.

20. For each paragraph of plaintiff's Complaint (as amended) for which you deny the allegations, please explain and describe any facts which you believe ma support each denial.

**ANSWER:**

**ARS refers Plaintiff to its Answer to Plaintiff's Complaint, which was filed on July 28, 2017 at ECF 17.**

21. Please state the dates and exact contents of each reporting, which bore any of plaintiff's personal identifiers, you made to any consumer reporting agency(ies) (as defined by 15 U.S.C. 1681a) to which you subscribe(ed).

**ANSWER:**

**On December 28, 2016 ARS notified the credit bureaus "Unknown SSN & D/O/B." On February 24, 2017 and May 24, 2017, after engaging in reasonable investigations, ARS furnished information to the credit bureaus regarding Plaintiff's account being deemed accurate. On June 12, 2017 ARS notified the credit bureaus to delete all tradeline information regarding the account at issue.**

22. Please explain and describe your specific allocation, in percentages and/or dollar amounts, of your resources committed to reinvestigation of consumer disputes complaining that your credit account(s) were created by or otherwise resulted from application fraud in the past 5 years.

**ANSWER:**

**Objection. ARS objects to this interrogatory on the grounds that it is confusing, irrelevant, unintelligible, vague, overbroad and not calculated to lead to the discovery of admissible evidence.**

23. Please state your net income for each of the preceding eight (8) quarters.

ANSWER:

Objection. ARS objects to this interrogatory on the grounds that it is irrelevant, vague, overbroad and not calculated to lead to the discovery of admissible evidence. By way of further response, the information sought in this Interrogatory is irrelevant, as this matter was not filed as a class action lawsuit.

MARSHAL DENNEHEY WARNER
COLEMAN & GOGGIN, P.C.

By: _____

RONALD M. METCHO
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2595 / (215) 575-2765 (f)
rmmetcho@mdwcg.com
Attorneys for Defendant
Ability Recovery Services, LLC

Dated: _2 · 12 · 18_

# FACT SHEET



EXHIBIT
6
2/22/18 CAM

| | | | |
|---|---|---|---|
| CRS #: | DF6612 | Client #: | MCTWNP-B |
| Name: | LONG, CRYSTAL | | EMCARE-RANDALL EMERGENCY P |
| Address: | 5126 SEKOTS RD | Acct #: | 09364750542381960346 |
| City/State: | BALTIMORE, MD 21207 | Regarding: | |
| Home Phone: | (443) 627-3774 | Amt Refered: | 1125.00 |
| Work Phone: | (000) 000-0000 | Current Bal: | 1125.00 |
| Soc Sec No: | 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 | Comm Rate: | 37.00000% |
| Employer: | | Costs: | 0.00 |
| | | Ck Chg/Fee: | 0.00 |
| Status: | 81  CC REVIEW | | |
| Coll Unit: | HA1  HARVARD | | |
| Date Last: | 08/26/14 | Date Received: | 04/01/16 |
| Activity Code: | NU NOT USED | | |
| Field1 | 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 | | |
| Field2 | 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 | | |
| Field3 | 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 | | |

Mobile Phone:   (000) 000-0000          Email Optin:   No
Email Address:
--- Comaker Info ---

| | | | |
|---|---|---|---|
| Type: | G - EMPLOYER | Master #: | DF6612-2 |
| Name: | DEPT OF CORRECTIONS | | |
| Address: | | Status: | 10  ACTIVE DEBTOR |
| | | Employer: | |
| City, St: | 00 | SS#: | 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 |
| Phone (H) (000) 000-0000 (W) (000) 000-0000 | | Birthday: | 00/00/00 |
| Comment: | | | |

Mobile Phone:   (000) 000-0000          Email Optin:   No
Email Address:

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| ----------PAYMENTS---------- | | | | -----------TRANSACTIONS----------- | | | | |
|---|---|---|---|---|---|---|---|---|
| --Date-- | Amount | Code | Rate | --DATE-- | TIME | AC/RC | ----COMMENT---- | ID |
| 04/01/16 | 0.00 | 97 | | 11/28/16 | 19:00 | CC/CC | SKIP-1 | RAM |
| | | | | 06/12/17 | 12:21 | CC/CC | SKIP-2 | RAM |
| | | | | 06/15/17 | 15:56 | CC/CC | VIEW ONLY | AAL |
| | | | | 06/15/17 | 15:57 | CS/10 | | AAL |
| | | | | 06/15/17 | 15:58 | CC/CC | | AAL |
| | | | | | | PER SUIT AT ABILITY AND PCPII | | |
| | | | | 06/15/17 | 16:07 | CC/CC | | AAL |
| | | | | | | NOTIFIED HARVARD TO CLOSE | | |
| | | | | 06/15/17 | 16:28 | CC/CC | VIEW ONLY | AAL |
| | | | | 06/15/17 | 16:29 | CC/CC | VIEW ONLY | AAL |
| | | | | 06/15/17 | 16:31 | CC/CC | VIEW ONLY | AAL |
| | | | | 06/15/17 | 16:46 | CC/CC | VIEW ONLY | MTC |
| | | | | 06/15/17 | 16:59 | CC/CC | VIEW ONLY | MTC |
| | | | | 06/16/17 | 16:44 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/14/17 | 14:10 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/18/17 | 16:54 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/18/17 | 16:56 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/19/17 | 10:37 | CC/CC | VIEW ONLY | AAL |

DF6612   LONG, CRYSTAL                                          Page 2

| ----------PAYMENTS---------------- | | | | --------------TRANSACTIONS---------------- | | | | |
|---|---|---|---|---|---|---|---|---|
| --Date-- | Amount | Code | Rate | --DATE-- | TIME | AC/RC | ----COMMENT------ | ID |
| | | | | 07/19/17 | 10:39 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/19/17 | 11:04 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/19/17 | 11:20 | CC/CC | VIEW ONLY | AAL |
| | | | | 07/20/17 | 15:39 | CC/CC | VIEW ONLY | AAL |

Date Printed:   Jul. 20, 2017

Confidential - Subject to Protective Order                 PCP II 002

EXHIBIT
PENGAD 800-631-6989

BALTIMORE          MD  21207          000000

```
0000000000  0000000000000000000 0 0    00000007003129
01DF6612     LONG    :   CRYSTAL    5126 SEKOTS RD
90DF6612     MCTWNPB0000007003130040620166INSURANCE INFORMATION
91DF6612     MCTWNPB000007003130                      INSURANCE INFO FOR ACCOUNT# 0936475054238196O346
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB000007003130Insurance Name:        CRYSTAL LONG
91DF6612     MCTWNPB00000007003130Insurance Address:    5126 SEKOTS RD
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB00000007003130Insurance City, St:   GWYNN OAK MD 21207
91DF6612     MCTWNPB00000007003130Insured Policy No:
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB00000007003130Billed WORR Date: 11/27/14
91DF6612     MCTWNPB00000007003130Date of Service:  / /
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB00000007003130Diagnosis Code 1: 49390
92DF6612     MCTWNPB00000007003130
90DF6612     MCTWNPB00000007003130040620016RT1 PAYOR TRANSACTION HISTORY
91DF6612     MCTWNPB00000007003130       RT1 PAYOR TRANSACTION HISTORY FOR ACCOUNT# 0936475054238196O346
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB00000007003130Payor0 #: PER
91DF6612     MCTWNPB00000007003130Payor1 #: COL
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB00000007003130DATE       CODE EXPL MESSAGE
91DF6612     MCTWNPB00000007003301. .        Bad address at time of list. Now blanked.............
91DF6612     MCTWNPB00000007003130
91DF6612     MCTWNPB00000007003130DATE    CODE PROV FORM PAYOR PAYMENT  BALANCE  DESCRIPTION
91DF6612     MCTWNPB00000007003130 . .          0.00   0.00
92DF6612     MCTWNPB00000007003130
31DF6612     MCTWNPBEMCARE-RANDALL EMERGENCY PHYS.0936475054238196O346000007003130000011250000000000000000
33DF6612              00E20PHY GROUP            000007003130
33DF6612              01E20PHY ADDR1             000007003130
33DF6612              02E20PHY CSZ              000007003130
33DF6612              03E20Frm Credit  EMCARE-RANDALL EME        000007003130.
33DF6612              04E20Creditor  PENDRICK CAPITAL P       000007003130
```

LONG - 0009

```
33DF6612
33DF6612      05E2OBM BN            00000700313O
33DF6612      06E2ONCOMAST          00000700313O
33DF6612      07E2OUNUSED           00000700313O
33DF6612      08E2OUNUSED           00000700313O
32DF6612      09E2OUNUSED           00000700313O
50DF6612   MCTWNPB09364750542381960346000007003130COMMENT: PER ONLY, NO PAY   PAT SSN:         RTI ID: 112714777711TWN
51DF6612   MCTWNPB09364750542381960346000007003130  LONG CRYSTAL                    0000000000   000   000007
52DF6612   MCTWNPB09364750542381960346000007003130LONG     CRYSTAL  5126 SEKOTS RD                00        BALTIMORE
55DF6612   MCTWNPB09364750542381960346000007003130049390    0000000000000000000000000000         0000000000000000
```

LONG - 0010

LONG - 0011

0450720406620016MD 0000004012016

NU H

00000000004436273774   0000000000   10AS10N 0 0 00000

0000000000000000000000000082620140404062016 0.00037.000

LONG - 0012

PAT PHONE: 443.627.3774      PAT REL: SELF      ORIG PLACE DATE: 11/28/14      COMPANY: E

'003130
000000000000000000000000000000000000000000000000000000000000
VID21207  00    443-627-370  00000007003130
000000000000000000000000000000000

**Ability Recovery Services LLC**

EXHIBIT
8
2/22/18 CPM

P.O. Box 4262
Scranton, PA 18505
Tel: 855.207.1892

CRYSTAL LONG
12706 FAIRWOOD PKWY
BOWIE MD 20720-6304

| | |
|---|---|
| Account #: | 4022446 |
| Balance Due: | $74.00 |
| Former Creditor: | EMCARE-RANDALL EMERGENCY PHYS. |
| Creditor: | Pendrick Capital Partners II |
| Client Ref#: | 09364750542381955437 |

November 14, 2016

Dear CRYSTAL LONG,

Our office has been retained by Pendrick Capital Partners II who has purchased your account from EMCARE-RANDALL EMERGENCY PHYS. to collect the above overdue account. This is an opportunity for you to resolve this debt. If this matter has been overlooked, please be aware that it is still legally owed. Payment via check by phone, certified funds, funds transfer or credit card in full will cease all collection activity.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt I valid. If you notify this office in writing within 30 days from receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor. If you notify this office in writing within the thirty-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office.

At this time we are offering a 25% discount on the amount you owe. If we receive the discounted amount within 30 days, you will have no further obligation to us regarding the delinquent account.

WATCH----

| Your Balance | Discount Percent | Discounted Amount Due |
|:---:|:---:|:---:|
| $74.00 | 25% | $55.50 |

In order to ensure proper crediting and handling of your account, payment must be made payable to Ability Recovery Services, LLC and remitted to this office.

Be further advised that our client has instructed this office to make a direct report to a credit reporting agency should this debt go unresolved.

Sincerely,

ADAM RUSSELL
Account Representative
(855) 207-1892x502

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

*** Detach Lower Portion And Return With Payment ***

Y1C7876NE9

PO BOX 505
LINDEN MI 48451-0505
RETURN SERVICE REQUESTED

IF YOU WISH TO PAY BY CREDIT CARD, CIRCLE ONE AND FILL IN THE INFORMATION BELOW.

MasterCard   VISA   DISCOVER

| CARD NUMBER | | EXP. DATE |
|---|---|---|
| CARD HOLDER NAME | | CVV |
| SIGNATURE | | AMOUNT PAID |

November 14, 2016

0020020024000012052000726030000—Y1C7876NE9 495

CRYSTAL LONG
12706 FAIRWOOD PKWY
BOWIE MD 20720-6304



Pay online at www.abilityrecoveryservices.com

Reference #:  09364750542381955437
Balance Due:  $74.00

ABILITY RECOVERY SERVICES LLC
PO BOX 4262
SCRANTON PA 18505-6262



Long v. Pendrick - Plaintiff Production -- 0001

**Ability Recovery Services LLC**

P.O. Box 4262
Scranton, PA 18505
Tel: 855.207.1892

EXHIBIT
9
2/22/18 CAM

CRYSTAL LONG
12706 FAIRWOOD PKWY
BOWIE MD 20720-6304

| | |
|---|---|
| Account #: | 4022448 |
| Balance Due: | $1,125.00 |
| Former Creditor: | EMCARE-RANDALL EMERGENCY PHYS. |
| Creditor: | Pendrick Capital Partners II |
| Client Ref#: | 09364750542381960346 |

November 14, 2016

Dear CRYSTAL LONG,

Our office has been retained by Pendrick Capital Partners II who has purchased your account from EMCARE-RANDALL EMERGENCY PHYS. to collect the above overdue account. This is an opportunity for you to resolve this debt. If this matter has been overlooked, please be aware that it is still legally owed. Payment via check by phone, certified funds, funds transfer or credit card in full will cease all collection activity.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt I valid. If you notify this office in writing within 30 days from receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor. If you notify this office in writing within the thirty-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office.

At this time we are offering a 25% discount on the amount you owe. If we receive the discounted amount within 30 days, you will have no further obligation to us regarding the delinquent account.

WATCH-----

| Your Balance | Discount Percent | Discounted Amount Due |
|---|---|---|
| $1,125.00 | 25% | $843.75 |

In order to ensure proper crediting and handling of your account, payment must be made payable to Ability Recovery Services, LLC and remitted to this office.

Be further advised that our client has instructed this office to make a direct report to a credit reporting agency should this debt go unresolved.

Sincerely,

ADAM RUSSELL
Account Representative
(855) 207-1892x502

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*** Detach Lower Portion And Return With Payment ***

Y1C78704F7

PO BOX 505
LINDEN MI 48451-0505
RETURN SERVICE REQUESTED

IF YOU WISH TO PAY BY CREDIT CARD, CIRCLE ONE AND FILL IN THE INFORMATION BELOW.

VISA   DISCOVER

CARD NUMBER                                      EXP. DATE

CARD HOLDER NAME                                 CVV

SIGNATURE                          AMOUNT PAID

November 14, 2016

Pay online at www.abilityrecoveryservices.com

Reference #:   09364750542381960346
Balance Due:  $1,125.00

CRYSTAL LONG
12706 FAIRWOOD PKWY
BOWIE MD 20720-6304



ABILITY RECOVERY SERVICES LLC
PO BOX 4262
SCRANTON PA 18505-6262



| Reseller: | | Date Received: 02-10-2017 |
| --- | --- | --- |
| 1550 Peachtree St Atlanta,GA 30309 | | Control #: ████████ 8035 |
| FAX #: | | FCRA Response Due Date: 03-01-2017 |
| Account Number: ████ 48N1 | | Response Date: 02-24-2017 |
| Subscriber Code: ABILITY RECOVERY SERVICES, LLC/496YC05897 | | Response Code: 01:Account information accurate as of date reported |

On the lines below, S indicates the Response element is the Same as in the Request, D indicates it is Different, and U indicates it is Unknown.

| Request Data | | | Verify/Info Response Data | |
| --- | --- | --- | --- | --- |
| First Name: | CRYSTAL | S | First Name: | CRYSTAL |
| Middle Name: | M | U | Middle Name: | |
| Last Name: | LONG | S | Last Name: | LONG |
| Generation Code: | | U | Generation Code: | |
| Address: | 12706 FAIRWOOD PKWY,BOWIE,MD,20720 | S | Address: | |
| Prev First Name: | CRYTSAL | U | Prev First Name: | |
| Prev Middle Name: | | U | Prev Middle Name: | |
| Prev Last Name: | LONG | U | Prev Last Name: | |
| Prev Generation Code: | | | Prev Generation Code: | |
| Prev. Address: | 8725 CONTEE RD APT 403,LAUREL,MD,20708 | U | Prev. Address: | |
| SSN: | ████-9930 | X | U | SSN: | |
| DOB: | ███ 1980 | X | U | DOB: | |
| Telephone Number: | (301)461-3613 | U | Telephone Number: | |
| 2nd Prev. Address: | 10419 GLEN SPRING LN,BOWIE,MD,20720 | | | | |

| Consumer States/Comments: | |
| --- | --- |
| Dispute Code 1: | 001:Not his/hers. Provide or confirm complete ID. |
| Dispute Code 2: | |
| FCRA Relevant Information: | |

| Account Status | Pay. Rate | MOP | Cond./Comm. Status | Date Opened | Balance | Amount Past Due | High Cr./Org. | Credit Limit | Original Charge-Off Amount |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 93 | | CO | | 11-07-2016 | $1125 | | $1125 | | |

| Account Type | Interes t Type | Post. Type | Term Dur. | Freq. | Date of Account Information | Date Closed | Date of Last Payment | Sch. Payment | ECOA | CII | FCRA DOFD |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 48 | | | | | 12-28-2016 | | | | 1 | | 09-25-2014 |

| Compliance Condition Code | SCC | Original Cr. Name | | Original Cr. Class | Spec. Payment Ind. | Deferred Start Date | Balloon Date | Balloon Amount |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| XB | | EMCARE RANDALL EMERGENCY PHYS | | 02 | | | | |

| Agency ID | Sec. Marketing Agency Account # | Mortgage ID | | Actual Payment | Portfolio Indicator | Purchased from/Sold to | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | |

| Remarks: | | | | DF Contact #: | |
| --- | --- | --- | --- | --- | --- |



EXHIBIT
10
2/22/18 CAM

PERGUD 800-631-6989

LONG - 0001

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

**Account History – Response**

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

**Associated Consumer 1:**

Name:

Address:

SSN:          DOB:

Telephone Number:

ECOA/Consumer Information Indicator: /

**Associated Consumer 2:**

Name:

Address:

SSN:          DOB:

Telephone Number:

ECOA/Consumer Information Indicator: /

**Images Information**

Associated Images:   Yes   Image Access Indicators:   #1   Yes   #2   #3   #4   #5

Submitted By: CASSANDRA GROSHEK          Tel#: (855) 207-1892          Date: 02-24-2017

By submitting this ACDV, you certify that you have reviewed and considered all associated images, you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect any changes noted.

LONG - 0002

TransUnion LLC
2 Baldwin Place/Crum Lynne, PA 19022

FAX #:

Account Number: ___ 48N1
Subscriber Code: ABILITY RECOVERY SERVICES, LLC/2DFY001

Date Received: 02-08-2017
Control #: ___ 1001

FCRA Response Due Date: 03-02-2017

Response Date: 02-24-2017
Response Code: 01:Account information accurate as of date reported

On the lines below, S indicates the Response element is the Same as in the Request; D indicates it is Different, and U indicates it is Unknown.

| Request Data | | | Response Data | |
|---|---|---|---|---|
| First Name: | CRYSTAL | S | First Name: | CRYSTAL |
| Middle Name: | M | U | Middle Name: | |
| Last Name: | LONG | S | Last Name: | LONG |
| Generation Code: | | | Generation Code: | |
| Address: | 12706 FAIRWOOD PKWY, BOWIE, MD, 20720-6304 | S | Address: | |
| Prev First Name: | CRYSTAL | S | Prev First Name: | |
| Prev Middle Name: | | | Prev Middle Name: | |
| Prev Last Name: | LONG | S | Prev Last Name: | |
| Prev Generation Code: | | | Prev Generation Code: | |
| Prev. Address: | 7931 ECHOLS AVE, GLENARDEN, MD, 20706-1707 | U | Prev. Address: | |
| SSN: | ___ 9930 | U | SSN: | |
| DOB: | ___ 1980 | U | DOB: | |
| Telephone Number: | (240)-464-8476 | | Telephone Number: | |

2nd Prev. Address: 8725 CONTEE RD APT 403, LAUREL, MD, 20708-1901

Consumer States/Comments:
Dispute Code 1: 001:Not his/hers. Provide or confirm complete ID.

Dispute Code 2:

FCRA Relevant Information:

| Account Status | Pay. Rate | MOP | Cond./Comm. Status | Date Opened | Balance | Amount Past Due | High Cr./Org. | Credit Limit | Original Charge-Off Amount |
|---|---|---|---|---|---|---|---|---|---|
| 93 | | | | 11-07-2016 | $1125 | $1125 | $1125 | | |

| Account Type | Interest Type | Port. Type | Term Dur. | Freq. | Date of Account Information | Date Closed | Date of Last Payment | Sch. Payment | ECOA | CII | FCRA DOFD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 48 | | O | | | 12-28-2016 | | | | 1 | | 09-25-2014 |

| Compliance Condition Code | SCC | Original Cr. Name | | | | Original Cr. Class | Spec. Payment Ind. | Deferred Start Date | Balloon Date | Balloon Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| XB | | BMCARE RANDALL EMERGENCY PHYS | | | | 02 | | | | |

| Agency ID | Sec. Marketing Agency Account # | Mortgage ID | Actual Payment | Portfolio Indicator | Purchased from/Sold to |
|---|---|---|---|---|---|
| | | | | | |

Remarks:                                                                                     DF Contact #:

LONG - 0003

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

**Account History - Response**

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

**Associated Consumer 1**

Name:

Address:

SSN:                    DOB:

Telephone Number:

ECOA/Consumer Information Indicator: 1

**Associated Consumer 2**

Name:

Address:

SSN:                    DOB:

Telephone Number:

ECOA/Consumer Information Indicator: 1

**Image Information**

| Associated Images: | Yes | Image Access Indicators: | #1 | Yes | #2 | #3 | #4 | #5 |
|---|---|---|---|---|---|---|---|---|

Submitted By: SHANNON SAXON-PRICE                    Tel#: (855) 207-1892                    Date: 02-24-2017

By submitting this ACDV, you certify that you have reviewed and considered all associated images, you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect any changes noted.

LONG - 0004

| | |
|---|---|
| Equifax<br>1550 Peachtree St/Atlanta, GA 30309 | Date Received: 05-22-2017<br>Control #: ████████0035 |
| | FCRA Response Due Date: 06-08-2017 |
| FAX #: | Response Date: 05-24-2017 |
| Account Number: ██████48N1 | Response Code: 01: Account information accurate as of date reported |
| Subscriber Code: ABILITY RECOVERY SERVICES, LLC/496YC05897 | |

On the lines below, S indicates the Response element is the Same as in the Request; D indicates it is Different; and U indicates it is Unknown.

| Request Data | | Response Data | |
|---|---|---|---|
| First Name: | CRYSTAL | S | First Name: | CRYSTAL |
| Middle Name: | M | U | Middle Name: | |
| Last Name: | LONG | S | Last Name: | LONG |
| Generation Code: | | U | Generation Code: | |
| Address: | 12706 FAIRWOOD PKWY, BOWIE, MD, 20720 | S | Address: | 12706 FAIRWOOD PKWY, BOWIE, MD, 20720 |
| Prev First Name: | CRYTSAL | U | Prev First Name: | |
| Prev Middle Name: | | U | Prev Middle Name: | |
| Prev Last Name: | LONG | U | Prev Last Name: | |
| Prev Generation Code: | | | Prev Generation Code: | |
| Prev. Address: | 8725 CONTEE RD APT 403, LAUREL, MD, 20708 | U | Prev. Address: | |
| SSN: | ████9930 | U | SSN: | |
| DOB: | ████1980 | D | DOB: | |
| Telephone Number: | (301) 464-3613 | | Telephone Number: | (301) 420-0814 |
| 2nd Prev. Address: | 10419 GLEN SPRING LN, BOWIE, MD, 20720 | | | |

| Consumer States/Comments: | |
|---|---|
| Dispute Code 1: | 001: Not his/hers. Provide or confirm complete ID. |
| Dispute Code 2: | |
| FCRA Relevant<br>Information: | |

| Account Status | Pay. Rate | MOP | Cond./Comm. Status | Date Opened | Balance | Amount Past Due | High Cr./Org. | Credit Limit | Original Charge-Off Amount |
|---|---|---|---|---|---|---|---|---|---|
| 93 | | CH | | 11-07-2016 | $1125 | | $1125 | | |

| Account Type | Interest I Type | Port. Type | Term Dur. | Freq. | Date of Account Information | Date Closed | Date of Last Payment | Sch. Payment | ECOA | CII | FCRA DOFD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 48 | | | | | 02-24-2017 | | | | 1 | | 09-25-2014 |

| Compliance Condition Code | SCC | Original Cr. Name | | Original Cr. Class | Spec. Payment Ind. | Deferred Start Date | Balloon Date | Balloon Amount |
|---|---|---|---|---|---|---|---|---|
| XB | | EMCARE RANDALL EMERGENCY PHYS | | 02 | | | | |

| Agency ID | Sec. Marketing Agency Account # | Mortgage ID | | Actual Payment | Portfolio Indicator | Purchased from/Sold to |
|---|---|---|---|---|---|---|
| | | | | | | |

| Remarks: | DF Contact #: |
|---|---|

LONG - 0005

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

**Account History – Response**

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

**Associated Consumer 1**

Name:

Address:

SSN:                    DOB:

Telephone Number:

ECOA/Consumer Information Indicator: /

**Associated Consumer 2**

Name:

Address:

SSN:                    DOB:

Telephone Number:

ECOA/Consumer Information Indicator: /

| Images Information | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Associated Images: | Yes | Image Access Indicator: | #1 | Yes | #2 | #3 | #4 | #5 | | |

Submitted By: Sue Cooper          Tel#: (570) 207-1892          Date: 05-24-2017

By submitting this ACDV, you certify that you have reviewed and considered all associated images, you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect any changes noted.

| | | |
|---|---|---|
| Experian | Date Received: 05-24-2017 | |
| 601 Experian Pkwy/Allen, TX 75013 | Control #: ████████0001 | |
| FAX #: | FCRA Response Due Date: 06-02-2017 | |
| Account Number: ██████48M1 | Response Date: 05-24-2017 | |
| Subscriber Code: ABILITY RECOVERY SERVICES, LLC/1934712 | Response Code: 01:Account information accurate as of date reported | |

On the lines below, S indicates the Response element is the Same as in the Request; D indicates it is Different, and U indicates it is Unknown.

| Original Data | | | Verified and/or Corrected Data | |
|---|---|---|---|---|
| First Name: | CRYSTAL | S | First Name: | CRYSTAL |
| Middle Name: | | | Middle Name: | |
| Last Name: | LONG | S | Last Name: | LONG |
| Generation Code: | | | Generation Code: | |
| Address: | 12706 FAIRWOOD PKWY, BOWIE, MD, 20720 | S | Address: | 12706 FAIRWOOD PKWY, BOWIE, MD, 20720 |
| Prev First Name: | | | Prev First Name: | |
| Prev Middle Name: | | | Prev Middle Name: | |
| Prev Last Name: | | | Prev Last Name: | |
| Prev Generation Code: | | | Prev Generation Code: | |
| Prev. Address: | | | Prev. Address: | |
| SSN: | ████-9930 | U | SSN: | |
| DOB: | ████1980 | D | DOB: | |
| Telephone Number: | | | Telephone Number: | (301) 420-0814 |
| 2nd Prev. Address: | | | | |
| Consumer States/Comments: | | | | |
| Dispute Code 1: | 001:Not his/hers. Provide or confirm complete ID. | | | |
| Dispute Code 2: | | | | |
| FCRA Relevant Information: | | | | |

| Account Status | Pay. Rate | MOP | Cond./Comm. Status | Date Opened | Balance | Amount Past Due | High Cr./Org. | Credit Limit | Original Charge-Off Amount |
|---|---|---|---|---|---|---|---|---|---|
| 93 | | | / COLL ACCT | 11-07-2016 | $1125 | $1125 | $1125 | | |

| Account Type | Interest Type | Port. Type | Term Dur. | Freq. | Date of Account Information | Date Closed | Date of Last Payment | Sch. Payment | ECOA | CII | FCRA DOFD |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 48 | | 001 | | | 12-28-2016 | | | | 1 | | |

| Compliance Condition Code | SCC | Original Cr. Name | | | | | Original Cr. Class | Spec. Payment Ind. | Deferred Start Date | Balloon Date | Balloon Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| XB | | EMCARE-RANDALL EMERGENCY PHYS. | | | | | 02 | | | | |

| Agency ID | Sec. Marketing Agency Account # | Mortgage ID | | Actual Payment | Portfolio Indicator | Purchased from/Sold to |
|---|---|---|---|---|---|---|
| | | | | | | |

| Remarks: | DF Contact #: |
|---|---|
| | |

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 | | | | | | | | | | | | |
| 2016 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2015 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2014 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2013 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2012 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2011 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2010 | - | - | - | - | - | - | - | - | - | - | - | - |

**Account History - Response**

| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |
| 2010 | | | | | | | | | | | | |

| Associated Consumer 1 | | | | Associated Consumer 2 | | | |
|---|---|---|---|---|---|---|---|
| Name: | | | | Name: | | | |
| Address: | | | | Address: | | | |
| SSN: | | DOB: | | SSN: | | DOB: | |
| Telephone Number: | | | | Telephone Number: | | | |
| HCOA/Consumer Information Indicator: / | | | | ECOA/Consumer Information Indicator: / | | | |

| Images Information | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Associated Images: | Yes | Image Access Indicators: | #1 | Yes | #2 | | #3 | | #4 | #5 |

Submitted By:  Sue Cooper                          Toll#:  (570) 207-1892                    Date:  05-24-2017

By submitting this ACDV, you certify that you have reviewed and considered all associated images, you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect any changes noted.

# CRYSTAL M. LONG

December 17, 2016

Complaint Department

Equifax Information Services LLC

P.O. Box 740256

Atlanta, GA 30348

Dear Sir or Madam:

I am writing to dispute the following information in my file. I am disputing the error on my credit report relating to a collections from Ability Recovery Services LLC for EMCARE-RANDALL EMERGENCY PHYS in the amount of $1,125 that does not belong to me. I received a letter dated November 14, 2016 from Ability Recovery Services indicating that they had received this debt and that unless I notified their office within 30 days after receiving this notice to dispute the validity of this debt or any portion thereof their office would assume this debt be valid.

I then called the number on the letter and spoke to one of their representatives (within the 30 days that the letter was written) to notify them that their records were incorrect and this bill did not belong to me. The representative then stated the date of birth for the parties receiving service which did not agree to mine. Then the date of service, I then indicated that I have never received service at any time in life from EMCARE-RANDAL EMERGENCY PHYS. With the this new information, they said that they were going to make note on their file stating that Crystal Long, at 12706 Fairwood Parkway, Bowie Md, 20720, was not the correct person and this would not be reported to my credit report. I am gathering by the fact that I am now writing this letter this did not happen.

So I am requesting that you investigate this error and delete this collections account promptly from my credit report. I have enclosed is the original letter I received dated November 14, 2016.

Sincerely yours,

Crystal M. Long

12706 Fairwood Parkway, Bowie MD 20720





Crystal Long
12706 Fairwood Pkwy
Bowie, MD 20720

January 31, 2017

Experian
P.O. Box 4000
701 Experian Parkway
Allen, Texas 75013

## DISPUTE OF INACCURATE INFORMATION AND REQUEST FOR A REINVESTIGATION

**FULL NAME:** Crystal Long

**CURRENT ADDRESS:** 12706 Fairwood Pkwy

**DATE OF BIRTH:** March 13, 1980

**TELEPHONE NUMBER:** 301-464-3643

**SOCIAL SECURITY NUMBER:** 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

**SPOUSE'S NAME:** Not Married

**DISPUTE:**   Creditor: Ability Recovery Services LLC

Inaccurate Information: The balance of $1,125 is not mine, that whole trade line is reporting in error. I spoke with Ability Recovery Services, and told them I did not recognize the account. Thy said that Pendrick Capital Partners sent it for collections, for services rendered September 2014. I was never there. The date of birth was not my date of birth. This whole trade line needs to be deleted.

PLEASE CORRECT THE INFORMATION AS SOON AS POSSIBLE

X _____     Date: _____1/31/17_____
Crystal Long

Confidential

Crystal Long
12706 Fairwood Pkwy
Bowie, MD 20720

January 31, 2017

Equifax
P.O. Box 740256
Atlanta, GA 30374

## DISPUTE OF INACCURATE INFORMATION AND REQUEST FOR A REINVESTIGATION

**FULL NAME:** Crystal Long

**CURRENT ADDRESS:** 12706 Fairwood Pkwy

**DATE OF BIRTH:** March 13, 1980

**TELEPHONE NUMBER:** 301-464-3643

**SOCIAL SECURITY NUMBER:** 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

**SPOUSE'S NAME:** Not Married

**DISPUTE:**   Creditor: Ability Recovery Services LLC

Inaccurate Information: The balance of $1,125 is not mine, that whole trade line is reporting in error. I spoke with Ability Recovery Services, and told them I did not recognize the account. Thy said that Pendrick Capital Partners sent it for collections, for services rendered September 2014. I was never there. The date of birth was not my date of birth. This whole trade line needs to be deleted.

PLEASE CORRECT THE INFORMATION AS SOON AS POSSIBLE

X _____          Date: ___1/31/17___
Crystal Long

Confidential

Crystal Long
12706 Fairwood Pkwy
Bowie, MD 20720

January 31, 2017

TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19022-2000

## DISPUTE OF INACCURATE INFORMATION AND REQUEST FOR A REINVESTIGATION

**FULL NAME:** Crystal Long

**CURRENT ADDRESS:** 12706 Fairwood Pkwy

**DATE OF BIRTH:** March 13, 1980

**TELEPHONE NUMBER:** 301-464-3643

**SOCIAL SECURITY NUMBER:** 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

**SPOUSE'S NAME:** Not Married

**DISPUTE:**   Creditor: Ability Recovery Services LLC

Inaccurate Information: The balance of $1,125 is not mine, that whole trade line is reporting in error. I spoke with Ability Recovery Services, and told them I did not recognize the account. Thy said that Pendrick Capital Partners sent it for collections, for services rendered September 2014. I was never there. The date of birth was not my date of birth. This whole trade line needs to be deleted.

PLEASE CORRECT THE INFORMATION AS SOON AS POSSIBLE

X _____          Date: ___1/31/17___
Crystal Long