**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

_____

Crystal Long                                   *
                                               *
                    Plaintiff,                 *          Case No.: 8:17-cv-01955-GJH
                                               *
v.                                             *
                                               *
Pendrick Capital Partners II, LLC, et al.      *
                                               *
                    Defendants.                *
                                               *
_____

**<u>PLAINTIFF'S CONSOLIDATED REPLY MEMORANDUM OF LAW IN
SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT</u>**

**Table of Contents**

INTRODUCTION…………………...…………….....……………….....………1

FACTUAL BACKGROUND…………………………………………....…..……..1

ARGUMENT…………………………………………………………...………...2

**I. Ability Violated the FCRA ........................................................................ 2**

    **A. Ability Failed to Conduct a Reasonable Investigation ........................ 2**

    **B. Plaintiff Has Provided Sufficient Evidence of Actual Damages ...................... 4**

        1. Deterrence from the Credit Market Participation Amounts of Actual Damages.... 4

        2.  Plaintiff Suffered Employment Consequences Due to Inaccurate Credit Information ...................................................................................... 5

        3. Plaintiff Has Sufficiently Shown Emotional Distress............................. 5

    **C. Ability's Violations Were Willful ...................................................... 7**

**II. Defendants Violated the FDCPA ............................................................... 9**

    **A. Plaintiff Is a Consumer under the FDCPA................................................ 9**

    **B. Pendrick Is a Debt Collector under the FDCPA ...................................... 9**

    **C.  Pendrick is vicariously liable for Ability's FDCPA violations........................ 11**

    **D.  Plaintiff Makes Alternative Claims under the FDCPA ............................... 12**

    **E.  Defendants' Statements Regarding Plaintiff's Credit History Were Misleading................................................................................ 12**

    **F.  Plaintiff's Oral Dispute Rebutted Any Presumption of Validity of the Debt. 14**

**II. Defendants Defamed Plaintiff.................................................................. 14**

**IV. Defendants Violated the MCDCA ........................................................... 16**

    **A. The FCRA Does Not Preempt Plaintiff's MCDCA Claim ........................ 16**

    **B.  Defendants Violated the MCDCA ................................................ 16**

**V.  Defendants Violated the MCPA ............................................................. 17**

**VI. Plaintiff Suffered Non-Economic Damages............................................ 17**

## TABLE OF AUTHORITIES

**Cases**

*Barbato v. Greystone All., LLC*, No. CV 3:13-2748, 2017 WL 5496047, at \*9–10 (M.D. Pa. Nov. 16, 2017) ...................................................................................... 10

*Beachley v. PNC Bank, N.A.*, 2011 U.S. Dist. 94236, at \*11 (D. Md. Aug. 23, 2011) .... 15

*Belcher v. T. Rowe Price Found., Inc.*, 329 Md. 709, 734, 621 A.2d 872, 884 (1993).... 17

*Beuster v. Equifax Info. Servs.,* 435 F. Supp. 2d 471, 479 (D. Md. 2006) ................ 14, 15

*Brown v. Flowers*, 196 F. App'x 178, 182 (4th Cir. 2006) ................................................ 2

*Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078 (9th Cir. 2005) ................................... 14

*Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) ........................................................ 2

*Clark v. Absolute Collection Serv.*, 741 F.3d 487, 490-91 (4th Cir. 2014) ..................... 14

*Davenport v. Sallie Mae, Inc.*, No. CIV. PJM 12-1475, 2013 WL 4010983, at \*5 (D. Md. Aug. 2, 2013) .......................................................................................... 15

*Finley v. Ocwen Loan Servicing, LLC*, No. 1:17-CV-02561, 2018 U.S. Dist. LEXIS 59920, at \*14 (N.D. Ohio Apr. 9, 2018) ....................................................... 12

*Fontell v. Hassett,* 870 F. Supp. 2d 395, 412 (D. Md. 2012)........................................... 11

*Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 557 (6th Cir. 2012).................. 13

*Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 521 (D. Md. 2013)... 13

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ............... 5

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017)....................... 10

*Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016).............. 4, 8

*Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.*, 717 F.3d 282 (2d Cir. 2013).............. 14

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 326 (7th Cir. 2016) .......... 11

*Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004) ..................... 4, 7

*Kasalo v. Trident Asset Mgmt.*, 53 F.Supp.3d 1072 (N.D. Ill. 2014) ................................ 9

*McMahon v. LVNV Funding, LLC*, No. 12 C 1410, 2018 U.S. Dist. LEXIS 41984, at \*36 (N.D. Ill. Mar. 14, 2018) ............................................................................................ 9, 10

*Meaney v. Nationstar Mortg., Inc.*, 2018 U.S. Dist. LEXIS 28364, \*35 \*D. Md. Feb. 21, 2018 .................................................................................................................... 3, 7

*Price-Richardson v. DCN Holdings, Inc.*, No. MJG-17-2038, 2018 U.S. Dist. LEXIS 24747, at \*6 (D. Md. Feb. 14, 2018) .................................................................. 12

*Rawlinson v. Law Office of William M. Rudow, LLC*, 460 F. App'x 254, 258 (4th Cir. 2012) ............................................................................................................ 9

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ......................................................... 7

*Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008) ................... 13

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ......................... 9

*Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 503 (4th Cir. 2007) ................................. 6, 7

*Tepper v. Amos Fin., LLC*, No. 15-CV-5834, 2017 WL 3446886, at \*8 (E.D. Pa. Aug. 11, 2017) ............................................................................................................. 10

*Turner v. Shenandoah Legal Group, P.C.*, 2006 WL 1685698 (E.D. Va. June 12, 2006) 14

*Velazquez v. NCO Fin. Sys.*, No. 2:11-CV-00263, 2011 U.S. Dist. LEXIS 57896, at \*14-15 (E.D. Pa. May 31, 2011) ....................................................................... 13


**Statutes**

15 U.S.C. § 1681n ........................................................................................................ 4

15 U.S.C. § 1681s-2 ..................................................................................................... 16

15 U.S.C. § 1681t(b)(1)(F) ........................................................................................... 16

15 U.S.C. § 1692a(6) .............................................................................................. 9, 10

15 U.S.C. § 1692a ........................................................................................................ 9

15 U.S.C. §1692e ......................................................................................................... 12

15 U.S.C. § 1692f ........................................................................................................ 12

15 U.S.C. § 1692g ........................................................................................................ 16

Md. Comm. Law § 14-202(8) ....................................................................................... 16

## INTRODUCTION

Defendants have presented Motions for Summary Judgment entirely lacking in substance and devoid of legal support.  Ability Recovery Services, Inc. ("Ability") repeatedly relies as a shield on "policies and procedures" that it has never produced or even described. It lobs conclusory denials and ignores Plaintiff's detailed factual foundation.  Pendrick Capital Partners II, LLC ("Pendrick"), rather than attempt to defend the false and deceptive debt collection practices alleged in the Amended Complaint, attempts to absolve itself of liability by distancing itself from Ability.

Ability can put forth no valid defense to its inaccurate credit reporting, under the Fair Credit Reporting Act ("FCRA") and state tort law, reported then repeatedly confirmed notwithstanding Plaintiff's oral and written disputes and its own admitted lack of knowledge of the validity of the debt.  Likewise, such ignorance by Ability, coupled with Plaintiff's notice, rendered its debt collection methods violative of both the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA").  The FCRA's preemption provisions provide no shield against Plaintiff's state law claims.  Nor can Pendrick, a debt collector in its own right, escape vicarious liability for Ability's action.  Plaintiff suffered numerous economic and non-economic damages, and is entitled to partial summary judgment as to her FCRA and FDCPA claims. Defendants motions, raising, at minimum, issues of fact, should be denied in their entirety.

## FACTUAL BACKGROUND

In addition to the facts set forth in Plaintiff's opening Memorandum, in Fall of 2017, Plaintiff received notice that the interest rate was increasing on her credit card.  *See* Interest Rate Notification, attached as Exh. 1 to the Second Goldson Declaration. She did not apply for

additional credit due to the inaccurate information on her report, deeming it futile and opting to avoid an unnecessary inquiry.  Declaration of Crystal Long, attached as Exh. 2 to the Second Goldson Decl., at ¶ 4-5.  ████████████████████████████████

████████████████████████████████████████████████████

████████████, attached as Exh. 3 to the Second Goldson Decl., Plaintiff's Responses to Ability's Interrogatories, attached as Exh. 4 to the Second Goldson Decl., at No. 18.  █████████████

████████████████████████████████

As a result of Defendants' action, Plaintiff has suffered emotional distress and anxiety, manifest through loss of sleep, headaches, racing pulse, and nausea.  Second Goldson Decl. Exh. 2, at ¶ 3.   Plaintiff's symptoms have arisen whenever she has been forced to confront the inaccuracy on her report.  *Id.*

In Ability's statement of facts, it asserts that Plaintiff was not aware of her employer's background check.  To the contrary, Plaintiff testified that she gave her employer permission to check her credit but did not know the specifics of its actions.  First Goldson Decl. Exh. A, at 15:1-8.

## ARGUMENT

### I. Ability Violated the FCRA

#### A. Ability Failed to Conduct a Reasonable Investigation

Ability's primary argument for the reasonableness of its investigation is its repeated insistence on that reasonableness.  Such "'conclusory statements, without specific evidentiary support,'" [are] insufficient to create a genuine issue of fact."  *Brown v. Flowers*, 196 F. App'x 178, 182 (4th Cir. 2006) (quoting *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)).  Summary judgment *may* be based on "depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c).  Even with all of these categories available, nowhere in its Memorandum, affidavit, or in any discovery has Ability described what those reasonable policies and procedures are.  If, as here, the policies and procedures themselves are unreasonable—or nonexistent—purported compliance provides no immunity.  Ability attempts to hold Plaintiff responsible for its own lack of candor.  The Court should not countenance such perverse efforts and, based on information that was produced, the Court should presume that the investigation procedures are not only unreasonable but nonexistent.  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2002) ("Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction").

Likewise, Ability's repeated suggestions that Plaintiff has cited no evidence in support of her position seem to be based on a brief that exists only in Ability's imagination.  To the contrary, Plaintiff stated: that Ability's representative stated that Ability did not know at any time during the debt collection and credit reporting process whether Plaintiff owed the debt, that the ACDVs provided Plaintiff's date of birth and Social Security number but led Ability to verify the account nonetheless and that Ability never contacted Pendrick to confirm the debtor information.  First Goldson Decl. Exh. E, at 30:10-13; Pendrick Opp. at 1.  Ability's own brief states that "[a] reasonable investigation can consist of verifying the name, address and social security number of the consumer."  Ability Opp. At 10-11 (citing *Meaney v. Nationstar Mortg., Inc.*, 2018 U.S. Dist. LEXIS 28364, *35 *D. Md. Feb. 21, 2018).  Yet Ability did *not* verify that information here.  Indeed, both Pendrick and Ability have admitted that Ability never contacted

Pendrick to confirm the debt, a simple step held by courts to be a necessary—though not always sufficient—step in the investigation process. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004) (finding insufficient an investigation that did not involve contacting the debt holder); *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (requiring verification of debt by debt collector before confirming reporting as accurate). By Ability's own admission, both the facts and law the support summary judgment. Its smoke and mirrors argument to obscure its lack of investigation should carry no weight.

### B. Plaintiff Has Provided Sufficient Evidence of Actual Damages

Ability makes much of Plaintiff's purported lack of actual damages based largely on its own limited questioning at Plaintiff's deposition. The factual reality, however, provides a significantly more robust view of Plaintiff's damages than the skeletal facts set forth by Ability. As an initial matter, Plaintiff need not show the extent but only the existence of actual damages for liability to attach under the negligence prong of the FCRA. Notably, even if Plaintiff cannot show damages, she may still prevail, even at the summary judgment stage, on her FCRA claim on the basis of willful violations. 15 U.S.C. § 1681n.

#### 1. Deterrence from the Credit Market Participation Amounts of Actual Damages

As an initial matter, Plaintiff *did*, in fact, suffer concrete credit damage, in the form of an increased interest rate on one of her credit cards. Second Goldson Decl. Exh. 1. To the extent that she did not suffer further measurable credit damages, however, Plaintiff testified that the reason she was not denied credit is because she was aware of the inaccurate information on her credit report. First Goldson Decl. Exh. A, at 35:19-36:7, 37:9-11, Second Goldson Decl. Exh. 2,

at ¶ 4.  Believing a denial likely, Plaintiff chose not to subject herself to further damage to her credit with a futile inquiry.[1]  *Id.*

The Ninth Circuit has held that such avoidance of the credit market due to an inaccurate report amounts to damage.    There, the Court held that "absent some authority stating that a denial of credit, and not mere credit inaccuracies, are necessary for recovery under FCRA, the issue of causation should have been left for a fact finder to determine."  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  The Court further held that "failure to comply with § 1681e(b) is actionable even absent a denial of credit."  *Id.*  Here, as there, a credit denial should not be dispositive of Plaintiff's damages and should, at minimum, raise a question of fact.

### 2.  Plaintiff Suffered Employment Consequences Due to Inaccurate Credit Information

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ Second Goldson Decl. Exh. 3; Second Goldson Decl. Exh. 4, at No. 18.   Moreover, Plaintiff's promotion with her current employer occurred *after* Ability has stated that it removed the tradeline from her account.

### 3. Plaintiff Has Sufficiently Shown Emotional Distress

"Actual damages may include not only economic damages, but also damages for humiliation and mental distress."  *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 500 (4th Cir.

---

[1] Due to concerns based on the ongoing credit-related litigation and the fact that neither Defendant has definitively indicated that it will no longer pursue the debt from Plaintiff, Pl has not yet made new credit applications.  Second Goldson Decl. Exh. 2, at ¶ 5.

2007).  Thus, whether or not Plaintiff actually suffered any employment consequences from Ability's reporting, she reasonably feared such consequences.  Plaintiff testified that she gave her employer permission to access her credit information, and has stated that she believes they can exercise that authority at any time, potentially putting her job in jeopardy.  First Goldson Decl. Exh. A, at 15:1-3, 48:20-49:3; Second Goldson Decl. Exh. 4, at No. 4.  Where she had provided her employer with the right to review her credit, and where her job involved a position of trust dependent on the maintenance of good credit, she reasonably feared adverse consequences from the inaccurate information Ability reported.  In any event, the reasonableness of Plaintiff's fear would be a question for a jury.

Ability rests its insistence that Plaintiff suffered no emotional distress damages on its own limited questioning on the subject at her deposition.  Ability specifically asked her when the *last time* she suffered sleeplessness.  First Goldson Decl. Exh. A,  at 57:1-3.  Plaintiff responded that it had been the previous night.  *Id.* at 57:4-5.  Though that response alone may indicate Plaintiff's ongoing anxiety regarding the debt, when Ability asked when she had experienced it prior to that time, Plaintiff indicated that it "depends on how frequently I think about this."  *Id.* at 57:7-8.  Such a response does not, as Ability might suggest, demonstrate a lack of damages but rather the persistence of emotional distress arising from Defendants' action.  At the deposition, as in its brief, Ability ignored Plaintiff's response and moved on to other topics immediately.  *Id.* Plaintiff's affidavit, however, indicates numerous manifestations of emotional distress, including loss of sleep, nausea, racing pulse, and headaches caused by her distress at Defendants' actions over the last six months.  Moreover, her interrogatory responses to Pendrick and Experian, served on all parties, listed two witnesses with knowledge of Plaintiff's emotional state.  *See* Additional Responses to Pendrick's Interrogatories, attached as Exh. 5 to the Second Goldson

Decl., at No. 7; Responses to Experian's Interrogatories, attached as Exh. 6 to the Second

Goldson Decl, at No. 5.   Ability took no steps to depose either of them.

The absence of medical evidence, on its own, cannot be dispositive of the existence of

emotional distress.  *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 503 (4th Cir. 2007) (medical

evidence is one of several factors that may corroborate emotional distress damages).  *See also*

*Meaney v. Nationstar Mortg.*, Civil Action No. TDC-16-2959, 2018 U.S. Dist. LEXIS 28364, at

*47-48 (D. Md. Feb. 21, 2018) ("An award of emotional distress damages may be based on the

plaintiff's testimony and does not necessarily require medical evidence.")  At minimum, a

question of fact remains as to the existence and extent of Plaintiff's emotional distress damages.

*See Sloane*, 510 F.3d  at 506 (determinations of emotional distress damages "depend a great deal

upon the specific facts of each case").

### C. Ability's Violations Were Willful

The Supreme Court has explicitly considered and ruled on the standard for recklessness

in *Safeco*, holding that willfulness include reckless behavior "entailing an unjustifiably high risk

of harm that is either known or so obvious that it should be known."  *Safeco Ins. Co. of Am. v.*

*Burr*, 551 U.S. 47, 69 (2007).   Ability, however, ignores that standard, instead citing a "knowing

and intentional" standard from a 1993 Fifth Circuit opinion and bandying conclusory denials of

guilt.

Ability likewise finds no quarter in its argument that it relied on a reasonable

interpretation of the FCRA where it gives no indication of what its reasonable interpretation was.

To the contrary, numerous courts have held that the investigation undertaken by Ability was

entirely *un*reasonable.  *See, e.g., Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th

Cir. 2004). Plaintiff has been clear it its position that Ability should have known that the debt did

not belong to Plaintiff based on Ability's own evidence.  Ability had the information that indicated that the debt did not match Plaintiff's identifiers and ignored that information in its credit reporting.  Such behavior epitomizes willfulness under the *Safeco* standard.  While Ability claims to have reported its "findings" to the CRAs, it gives no indication of what those findings were.  Its representative, however, indicated that it "found" that it did not know whether Plaintiff owed the debt. Pendrick specifically stated that Ability never contacted it to seek more information, a fact Ability's representative confirmed.  Pendrick Opp. at 1; First Goldson Decl. Exh. E, at 30:10-13.  The "procedures" Ability describes are the epitome of buck-passing, leaving to the CRAs the determination of whether or not Ability's own erroneous information should be reported.  The FCRA, by its terms, does not allow furnisher to escape their own duty. *Hinkle*, 827 F.3d at 1303.

Ability's reliance on the fact that Plaintiff initially disputed the debt verbally rather than in writing also cannot withstand scrutiny.  The dispute put Ability on notice of the potential inaccuracy of its information, yet it took no steps to confirm that Plaintiff was the correct debtor before reporting it on her credit.  Even assuming, however, that that notice was not sufficient, Ability's refusal to alter Plaintiff's report even *after* receiving disputes through the credit bureaus belies such rationalization.  Indeed, in an ever-shifting series of excuses, Ability appears to claim that these disputes, complete with Plaintiff's date of birth and Social Security number, did not give a sufficient basis for finding inaccuracy.  Ability Opp. at 11.  The law simply does not support such a position.  *Johnson*, 357 F.3d at 430-31.

Where, as here, Ability has offered no valid legal or factual basis for its position, summary judgment is appropriate in favor of Plaintiff and should be denied as to Ability.

8

## II. Defendants Violated the FDCPA

### A. Plaintiff Is a Consumer under the FDCPA

Pendrick's argument that Plaintiff falls outside the scope of the FDCPA runs counter to both law and logic. The FDCPA defines a consumer as "any natural person obligated or *allegedly obligated* to pay any debt." 15 U.S.C.A. § 1692a (emphasis added). In the case at bar, the Plaintiff was clearly allegedly obligated to pay a debt. The Fourth Circuit has resounding rejected this "non-debtor" defense. *See Rawlinson v. Law Office of William M. Rudow, LLC*, 460 F. App'x 254, 258 (4th Cir. 2012) (where defendant sought to collect from plaintiff, "the district court erred in holding that non-debtors, or those with no financial interest in the collateral at issue, may not bring suit under the FDCPA.")

### B. Pendrick Is a Debt Collector under the FDCPA

The FDCPA provides two alternative definitions for debt collector: any person who uses any instrumentality of interstate commerce or the mails [1] in any business the principal purpose of which is the collection of any debts, *or* [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Pendrick's argument that it is not a debt collector relies almost entirely on the outlier opinion in *Kasalo v. Trident Asset Mgmt.*, 53 F.Supp.3d 1072 (N.D. Ill. 2014).[2] Not only does that case hold no precedential value here, it has been rejected even in its own district. *See McMahon v. LVNV Funding, LLC*, No. 12 C 1410, 2018 U.S. Dist. LEXIS 41984, at *36 (N.D. Ill. Mar. 14, 2018) ("The Court is skeptical of the reasoning of these decisions, which are

---

[2] *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) likewise provides no support to Pendrick.  There, the Court analyzed a creditor's status as a "debt collector" under the second prong of the definition, while the Plaintiff argues here that Pendrick is a debt collector under the *first* prong.

insufficiently attentive to the fact that the definition of "debt collector" in 15 U.S.C. § 1692a(6) has two distinct prongs."). Indeed, the Supreme Court in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) specifically noted the "alternative definition[s]" of § 1692a(6) and its consideration only of the second.

Pendrick, by its own admission, however, falls under the first prong of the definition. Indeed, Pendrick has stated that the primary purpose of its business is the collection of debts, through the purchase of delinquent debts and subsequent placement of *all* of those debts with collection agencies. First Goldson Decl. Exh. D, at Interrogatory Nos. 17, 22-24 and Request for Admission No. 11. Pendrick has also admitted that the act of placing debts with a collection agency is an attempt to collect a debt. Pendrick Opp. at 11.

The vast majority of courts to consider this issue have determined that activity such as Pendrick's places it squarely within the bounds of the FDCPA. *See, e.g., McMahon*, 2018 U.S. Dist. LEXIS 41984, at *37 ("If, for example, all or an overwhelming majority of a business's revenue is derived from acquiring distressed debt and collecting it, then surely that business's 'principal purpose' is 'the collection of any debts.'"); *Barbato v. Greystone All., LLC*, No. CV 3:13-2748, 2017 WL 5496047, at *9–10 (M.D. Pa. Nov. 16, 2017) ("his court declines to expand *Henson* and hold that Crown is not a "debt collector" even though it bought plaintiff's account after it was defaulted and Crown fits the principal purpose definition in § 1692a(6)."); *Tepper v. Amos Fin., LLC*, No. 15-CV-5834, 2017 WL 3446886, at *8 (E.D. Pa. Aug. 11, 2017) ("While the second definition is limited to 'debts owed ... another,' the first definition applies to 'any debts,' provided only that the entity's principal purpose is the collection of such debt.") The fact that Pendrick outsources the actual collection carries no weight. *McMahon*, 2018 U.S. Dist. LEXIS 41984, at *37. ("The Court fails to see why it should matter if the debt buyer hires a

third party to actually collect its debt, i.e., to be the one who interacts with the debtor to obtain

payment. If the collection of debts is precisely what sustains the business, unaided by any other

significant sources of revenue, then the 'collection of ... debts' must be the business's 'primary

purpose.'")

Based on both law and Pendrick's own admissions, its status as a debt collector under the

FDCPA cannot reasonably be disputed.

### C.  Pendrick is vicariously liable for Ability's FDCPA violations

As a collector in its own right, Pendrick falls into a special category for purposes of

vicarious liability under the FDCPA.  Though the structure reveals much about Pendrick's intent,

it cannot simply hire another debt collector to insulate itself from FDCPA liability. This Court

has determined that "[a] debt collector should not be able to hire an attorney to engage in illegal

debt collection practices on its behalf as a means of avoiding liability under the FDCPA." *Fontell*

*v. Hassett,* 870 F. Supp. 2d 395, 412 (D. Md. 2012). *See also Janetos v. Fulton Friedman &*

*Gullace, LLP*, 825 F.3d 317, 326 (7th Cir. 2016) (one debt collector may be vicariously liable for

the actions of another that it hires).  The argument that Pendrick had nothing to do with Ability's

violative behavior may be the basis of a claim that Pendrick has against Ability, but it certainly is

no defense to Plaintiff's claims against Pendrick.

Even assuming Pendrick's can escape an automatic finding of vicarious liability,

however, it again dooms itself with its own admissions. Though purporting to have no control

over Abiity's credit reporting activities, it claims that it "maintains rigorous requirements for its

retained collection agencies provided for in its Agency Audit Procedure and the Pendrick Capital

Partners Agency Requirements and Standard Operating Procedure dated January 25, 2016" and

"maintains procedures for its agencies to avoid errors in collection on accounts, including where

11

disputes are lodged, or wrong parties are reached." Pendrick Opp. at 8, 15.  Debt collector

Pendrick cannot, therefore, escape liability for the actions of its debt collector agent.

### D.  Plaintiff Makes Alternative Claims under the FDCPA

With its attempt to secure summary judgment on Plaintiff's Section 1692f claim, Ability

paints itself into a corner.  "Section 1692f 'serves a backstop function, catching those 'unfair

practices' which somehow manage to slip by §§ 1692d& 1692e." *Finley v. Ocwen Loan*

*Servicing, LLC*, No. 1:17-CV-02561, 2018 U.S. Dist. LEXIS 59920, at *14 (N.D. Ohio Apr. 9,

2018).  In other words, if the conduct violates Section 1692e, the Section 1692f claim is

unnecessary, but if it does not violate Section 1692e, then the Section 1692f claim comes into

play.  While FDCPA violations may be multiple and complementary, or, as here, alternative, "[a]

plaintiff is only required to prove one violation of the FDCPA to trigger liability."  *Price-*

*Richardson v. DCN Holdings, Inc.*, No. MJG-17-2038, 2018 U.S. Dist. LEXIS 24747, at *6 (D.

Md. Feb. 14, 2018).  Accordingly, even assuming Defendants' violation of Section 1692e

precluded a violation of Section 1692f, liability under the FDCPA would still attach.

### E.  Defendants' Statements Regarding Plaintiff's Credit History Were Misleading

Defendants' assertion that its credit reporting was not misleading is as puzzling as it is

erroneous.  Plaintiff did not owe the debt at issue.  Her identifiers did not match it.  She never

visited the medical practice that gave rise to the original debt.  Yet Defendants reported to the

CRAs that she *did* owe the debt.  It is difficult to imagine a situation where information provided

to third parties would be more misleading.  *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d

142, 148 (4th Cir. 2008) ("a credit report is not accurate under [the] FCRA if it provides

information in such a manner as to create a materially misleading impression," whether through

omissions or affirmative misrepresentations).   Whether or not Defendants knew the information

was misleading at the time they reported it—which they did—has no relevance under the strict

liability standard of the FDCPA.  *Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d

514, 521 (D. Md. 2013).

Defendants also cannot use the presence of a verification notice as a shield where it

attempted to collect from the wrong person.  Under the strict liability standard of the FDCPA,

whether or not Defendants knew Plaintiff did not owe the debt, "an attempt to collect a debt from

a non-debtor constitutes a 'false misrepresentation' as to the character or status of the debt in

violation of 1692e . . . . .  [T]he crucial inquiry was whether the collector led the plaintiffs to

believe that they were obligated to pay a debt that they did not owe" *Velazquez v. NCO Fin.*

*Sys.*, No. 2:11-CV-00263, 2011 U.S. Dist. LEXIS 57896, at *14-15 (E.D. Pa. May 31, 2011).

*See also Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 557 (6th Cir. 2012) ("it is

immaterial whether FNBO *knew* its statements were false or misleading at the time it sought

payment").

The facts in question are likewise immune to charges of "misinterpretation" or "naked

assertions."[3]  During Plaintiff's call with Ability, which took place prior to any credit reporting,

she asked, "You're telling me that these particular items of debt collection have been sent to my

credit report, is that what's you're saying, which is why you're going to dispute them?"  First

Goldson Decl. Exh. H, at 5:55.  Ability's representative responded with, "Correct."  *Id.* at 6:19.

Nor did Plaintiff misinterpret the testimony of Kim Nanfelt, who said, not once, but three times

that Ability has never known whether the debt belongs to Plaintiff.  First Goldson Decl. Exh. E,

at 18:11-20, 26:4-8, 35:16-36:6.  Notably, Ability provides no alternative interpretation for either

---

[3] Though Ability would prefer to ignore the detailed facts spelled out by Plaintiff in her Motion,
cases that rely on lack of sufficient factual support have no bearing on the case at bar.

13

Plaintiff's phone conversation or of Ms. Nanfelt's testimony.  Where the words in question are unambiguous and, more significantly, where Ability provides no contradictory interpretation, suggestions of misinterpretation ring hollow.

### F.  Plaintiff's Oral Dispute Rebutted Any Presumption of Validity of the Debt

The absence of written dispute in November 2017 is equally irrelevant for the FDCPA claims made.  Though Plaintiff could only request verification in writing, her oral dispute was sufficient to overcome any presumption of validity of the debt.  *Clark v. Absolute Collection Serv.*, 741 F.3d 487, 490-91 (4th Cir. 2014) (disputes need not be in writing to trigger liability under portions of the FDCPA); *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078 (9th Cir. 2005) (the purpose of the FDCPA "is further advanced by an interpretation that allows such response to be in either written or oral form"); *Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.*, 717 F.3d 282 (2d Cir. 2013) (same); *Turner v. Shenandoah Legal Group, P.C.*, 2006 WL 1685698 (E.D. Va. June 12, 2006) (same).  Indeed, Ability itself deemed the dispute sufficient to cease all collection efforts on one of the two debts it held.  Moreover, as discussed, even assuming Defendants' initial reporting could be excusable, purported lack of notice provides no defense to their continued reporting after Plaintiff's CRA dispute letters.

### II. Defendants Defamed Plaintiff

The plain language of FCRA §1681h(e) states that state defamation claims are not preempted in cases where "… false information [is] furnished with malice or willful intent to injure consumer." 15 U.S.C. § 1681h(e). *See also Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 479 (D. Md. 2006) (applying Section 1681h(e) to analysis of defamation claim); *Davenport v. Sallie Mae, Inc*., No. CIV. PJM 12-1475, 2013 WL 4010983, at *5 (D. Md. Aug. 2,

2013) (same).  As Ability correctly states, Plaintiff must show reckless disregard for the truth of

its statements to rise to the level of actual malice required to thwart preemption.  *Beachley v.*

*PNC Bank, N.A.*, 2011 U.S. Dist. 94236, at *11 (D. Md. Aug. 23, 2011).

 In the case at bar, as discussed above, the Plaintiff has provided ample evidence of such

malice.  Specifically, no later than Plaintiff's November 21, 2017 phone call, Defendants,

directly or indirectly, were on notice that the debt did not belong to Plaintiff, yet they took no

steps to confirm the accuracy of their information before reporting the information to the CRAs.

Plaintiff's written disputes through the CRAs also failed to provoke any action by Defendants to

remove the inaccurate and defamatory information from Plaintiff's report.  This Court had

trouble even contemplating the level of willfulness exhibited by Ability, highlighting the

significance of the violation here. *Beuster*, 435 F. Supp. 2d at 477 ("As a practical matter, it is

difficult to allege that a furnisher of information entertained doubts as to the truth of a

publication such that it acted with reckless disregard of the truth—i.e., acted with malice—before

receiving notice of a dispute.")

 Moreover, the conduct at issue here falls outside the scope of the FCRA, which only

applies to conduct arising after the receipt of a credit dispute. Here, Plaintiff provided evidence

that Ability furnished false information about the Plaintiff to the CRAs prior to her written

dispute without knowing whether or not she even owed that debt but on notice that she did not.

 Summary judgment for Defendants is, therefore, inappropriate here.[4]

---

[4] Plaintiff's legal strategy as to which claims to focus on for her Motion for Partial Summary
Judgment are irrelevant here and should not be the subject of speculation.

**IV. Defendants Violated the MCDCA**

**A. The FCRA Does Not Preempt Plaintiff's MCDCA Claim**

FCRA preemption applies only the conduct otherwise regulated by 15 U.S.C. § 1681s-2.

15 U.S.C. § 1681t(b)(1)(F).  Plaintiff's MCDCA claim, however, relates to reporting that

occurred prior to Plaintiff's credit disputes and to communications, both by mail and phone, not

covered by the FCRA.  Pendrick's preemption argument, as well as the case law it cites, have no

relevance here.

**B.  Defendants Violated the MCDCA**

Ability correctly states that an MCDCA arises where a debt collector attempted to collect

a debt knowing that it did not have the right to do so.  Md. Comm. Law § 14-202(8).  Plaintiff

has shown, however, that Ability had precisely that knowledge.  Indeed, it had enough

knowledge from Plaintiff's verbal dispute to eliminate one of the two debts from the very same

original source prior to any credit reporting.  Yet it chose not to apply that same knowledge to

the debt it subsequently reported on Plaintiff's credit.   Just as the Section 1692g disclaimer

provides no shield in the FDCPA context, neither does it provide a blanket license under the

MCDCA to attempt to collect debts it should already know, based on direct notice from Plaintiff,

are mistaken.  None of the information provided by Pendrick, other than a common name,

matched Plaintiff's.  The letters were nothing more than a fishing expedition undertaken instead

of additional legwork to determine whether the correct debtor.  Though Ability claims that the

record "does not show that Ability had knowledge that it did not have a right to collect the

debts," its own representative's testimony states otherwise three separate times.  First Goldson

Decl. Exh. E, at 18:11-20, 26:4-8, 35:16-36:6.  At minimum, the question of knowledge is

factual, and Defendants' Motions should be denied.

## V.  Defendants Violated the MCPA

Defendants misapprehend the misleading nature of the behavior at issue in Plaintiff's MCDCA claim. Plaintiff does not allege that Ability's representative told her Ability would not report the debt.  Rather, she alleges that he told her he had no choice but to report it.  First Goldson Decl. Exh. E, at 5:55-6:23.   The law paints a very different picture than that put forward by Ability: not only does Ability have no obligation to report any debt, ever, but it *cannot* report inaccurate information.  Ability's suggestion that its information was not misleading cannot withstand even the barest scrutiny.

In addition, the MCPA provides a separate violation based on violation of the MCDCA. As set forth above, to the extent Defendants' violation of the MCDCA is not readily apparent, it is an issue of fact. Defendants' motions for summary judgment on the MCPA claim should, therefore, be denied. [5]

## VI. Plaintiff Suffered Non-Economic Damages

"[D]amages resulting from harm psychological in nature may be obtained, independent of physiological harm, provided the cause and effect of psychological harm are established. *Belcher v. T. Rowe Price Found., Inc.*, 329 Md. 709, 734, 621 A.2d 872, 884 (1993).  As discussed above, Plaintiff's affidavit establishes not only the causal connection between Defendants' actions and Plaintiff's emotional distress but the numerous physical manifestations of that distress.  Plaintiff has not had the opportunity testify fully on the distress she suffered, nor have the two corroborating witnesses she identified.  The extent of Plaintiff's damages is quintessentially a factual issue and should not be subject to determination at summary judgment.

---

[5] Pendrick's preemption argument as to the MCPA claim fails for the same reasons.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that her Motion for Partial

Summary Judgment be granted as to her FCRA and FDCPA claims and that Defendants'

Motions for Summary Judgment be denied.

Dated:  Washington, DC                          Respectfully submitted,
            May 7, 2018


                                        */s/ Courtney L. Weiner*
                                         Courtney L. Weiner (#19463)
                                        Law Office of Courtney Weiner PLLC
                                        1629 K Street NW, Suite 300
                                        Washington, DC 20006
                                        PH: 202-827-9980
                                        cw@courtneyweinerlaw.com


                                        Ingmar Goldson
                                        The Goldson Law Office
                                        1734 Elton Road, Suite 210
                                        Silver Spring, MD 20903
                                        Phone: 240-780-8829
                                        igoldson@goldsonlawoffice.com


                                        *Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 7, 2018, a copy of the foregoing Memorandum of Law and all exhibits, were served via ECF and U.S. Mail to all counsel of record.

*<u>/s/ Courtney L. Weiner</u>*