**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| Crystal Long | * | |
| | * | |
| Plaintiff, | * | Case No.: 8:17-cv-01955-GJH |
| | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| Ability Recovery Services, LLC, et al. | * | |
| | * | |
| Defendants. | * | |
| | * | |

**DEFENDANT, ABILITY RECOVERY SERVICES, LLC'S REPLY BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, Ability Recovery Services, LLC ("Ability"), by and through its undersigned counsel, and submits this Reply brief in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, stating as follows:

**I.    INTRODUCTION**

Plaintiff, Crystal Long ("Long") alleges in her Amended Complaint and in her Motion for Partial Summary Judgment that Ability violated the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Practices Act ("MCDCPA"), the Maryland Consumer Protection Act ("MDCPA") and advances a claim of defamation regarding Ability's attempts to recover two debt obligations that Long allegedly did not owe. (See ECF 2). However, the record that has been established in this matter clearly shows (1) that there is no evidence that the investigations that Ability engaged in upon receiving notices from the CRAs regarding Plaintiff's disputes were not reasonable; (2) that there

1

is no evidence (and no knowledge on the part of Long) that Trusted Health Plans accessed or reviewed her credit reports prior to Long beginning her employment or at any time during her employment and (3) that no evidence has been provided to show that Plaintiff suffered any damages as a result of Ability's collection activity. It continues to be Ability's position that the record that has been established in this matter shows that there is no genuine issue of material fact regarding each of Plaintiff's claims, whereby summary judgment should be granted in favor of Ability and denied as to Plaintiff's Motion for Partial Summary Judgment on Counts I and III of her Amended Complaint.

## II.     FACTUAL BACKGROUND

Long began her employment at Trusted Health Plans in November of 2016 working as a Senior Account Manager. (See Plaintiff's Answers and Objections to Ability's Interrogatories, pages 9-10, which is attached hereto and marked as Exhibit 1). In July of 2017 Long was promoted to Acting Controller and in September of 2017 Long was promoted to Director of Health Planning. *Id.* Each of Long's promotions at Trusted Health Plans was accompanied by a salary increase. (See the transcript of the deposition of Plaintiff, pg. 47, ¶¶ 2-9 which is attached hereto and marked as Exhibit 2). Long has claimed that, prior to her beginning her employment, Trusted Health Plans required a "background check" to be performed on her to ensure that she was a suitable candidate for the Senior Account Manager position. *Id.* at pg. 16, ¶¶ 12-16. However, throughout the litigation of this matter, Long provided no evidence to show that the "background check" performed by her employer included a review of her financial background or her credit history. In fact, at her deposition, Long provided the following testimony:

> Q:     "Sure. Are you aware of your employer having a policy and procedure in place regarding the checking of your credit score?"

> A: "I don't have enough information to answer that question. What I can say is that upon hiring I filled out a document indicating that I gave them permission to do a background check."
>
> Q: "What did the background check entail?"
>
> A: "I can't speak to that. All I know is that I had to fill out information indicating that they could access my information. I provided my Social Security Number."

*Id.* at pg. 17, ¶¶ 15-22, pg. 18, ¶¶ 1-7.

Long has not provided any evidence of Trusted Health Plans reviewing her financial background or credit history, nor did she have any knowledge that her employer reviewed her financial and credit history.

> Q: "Have you ever discussed your credit history with your employer?"
>
> A: "No."
>
> Q: "Has your employer ever questioned your credit history?
>
> A: "No."
>
> Q: "Did you ever receive any feedback from this particular background investigation?"
>
> A: "Not to my knowledge. Not that I can recall."

*Id.* at pg. 23, ¶¶ 5-12, pg. 24, ¶¶ 7-13.

And yet, Long alleges in her Amended Complaint that her employment status was harmed by Ability's furnishing of tradeline information to the CRAs that was viewed by her employer – although there is no evidence of knowledge of Long's employer reviewing her credit reports or being aware of the tradeline information that was furnished by Ability to the CRAs.

Long attempts to bolster her alleged injuries by submitting a notice of an increase of the interest rate being applied to her Chase credit card as an exhibit to her Reply in support of her Motion for Partial Summary Judgment and Opposition to Defendants' Motions for Summary

3

Judgment. (See the mint notice which is attached hereto and marked as Exhibit 3). However, Long has not provided any evidence of the date of the mint notice or of any connection between Ability's collection activity and the increase of the interest rate on her Chase card from 27.99% to 28.24% (where the card was carrying a balance of $1,407.85). *Id.* In sum, there is no way to tell if the interest rate on the Chase credit card increased because of Ability's furnishing of tradeline information to the CRAs regarding the debt at issue. Long also included as an exhibit to her Reply and Opposition a self-serving affidavit attempting to show that she suffered from anxiety, headaches and sleeplessness resulting from her reviewing her credit reports. (See the affidavit of Long which is attached hereto and marked as Exhibit 4). However, Long's attempts to show that she suffered injuries as a result of Ability's collection activity fails, as she has not provided any specific times or dates or records of when she allegedly suffered the injuries and has not provided any testimony from individuals or medical professionals to evidence the alleged harm.

### III. ARGUMENT

#### 1. Ability Did Not Violate the FCRA And Its Investigations Into Long's Disputes Were Reasonable

Contrary to Long's argument in her Reply and Opposition, Ability has sufficiently described the process it engaged in when investigating the disputes that Long made to the CRAs regarding the debt at issue. At her deposition Ability's collection manager, Kim Nanfeldt testified as follows:

Q: "Okay. Thank you. In your response you just said take it from there, what – can you describe that process?"

A: "Sure. In the case Crystal Long she called in from a letter, she was disputing it. We put it in a disputed status and reported it to the bureaus as disputed. She didn't get any more phone calls. She didn't get any additional letters."

4

> "At that point, you know, she didn't provide any additional information to us to state that it wasn't her, so we left it in a disputed status. You know we get the e-OSCARs over with no additional information, so we verified what we had on the system which was unknown."

(See the transcript of the deposition of Kim Nanfeldt, pg. 19, ¶¶ 4-14 which is attached hereto and marked as Exhibit 5).

As stated previously, an investigation constitutes a detailed inquiry or systematic examination involving some degree of careful inquiry by creditors. *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004). Upon receipt of a consumer's dispute, a furnisher's investigation must include a reasonable investigation of their records to determine whether the disputed information can be verified. A reasonable investigation can consist of verifying the name, address and social security number of the consumer. *Meaney v. Nationstar Mortg.*, 2018 U.S. D The opinion in *Phillips v. Trans Union, LLC*, 2017 U.S. Dist. LEXIS 144232 (W.D. Va. Sept. 6, 2017) also supports Ability's argument that its investigations were reasonable. Again, the Court found that the process of reviewing the substance of the dispute, checking its internal records regarding the alleged reporting error and responding accordingly was sufficient to constitute a reasonable investigation *Id.*

Ability's investigations regarding Long's disputes followed the directives from the *Meany* and *Phillips* decisions. Long notified the CRAs that she did not owe the debt, which was communicated by the CRAs to Ability as "not his/hers." Upon receipt of each notification from the CRAs, following its policies and procedures, Ability reviewed the information provided in the notice of dispute, reviewed all documentation that it had on file for the account and reported the information back to the CRAs via the sending of automated credit dispute verifications. (Exhibit 5, pg. 22, ¶¶ 9-12 ("That means that the e-Oscar dispute came in and they took a look at

it, they reviewed the Debt Master and they verified the information that we had on file.); (Exhibit 5, pg. 30, ¶¶ 4-9). By continually reporting the debt as disputed, by verifying the information it had on file with the information that was provided by the CRAs and by reporting the results back to the CRAs, Ability engaged in reasonable investigations of Long's disputes.

Also, of great importance, Long has not provided any evidence to show that Ability's investigation process was unreasonable. During the deposition of Kim Nanfeldt, two individuals at Ability who review e-OSCAR disputes were identified by name by Ms. Nanfeldt. (Exhibit 5, pg. 10, ¶¶ 20-21). Individuals were also named in Ability's supplemental answers and objections to Plaintiff's Interrogatories. (See Ability's answers and objections to Plaintiff's supplemental Interrogatories, answer to Interrogatory 9, which is attached hereto and marked as Exhibit 6). Yet, counsel for Long did not ask any follow up questions regarding these individuals nor were depositions of these individuals sought by counsel. Plaintiff's argument that Ability's investigations were not reasonable is based on a mere belief that the investigations were unreasonable. To the contrary, Ability has provided discovery responses and deposition testimony to show the reasonableness of its investigations. (*Id.* answer to Interrogatory 11). Absent sufficient evidence to show that Ability's investigations were unreasonable, summary judgment on the reasonableness of Ability's investigations should be denied as to Plaintiff and granted as to Ability.

### 2. Long Has Not Provided Sufficient Evidence To Maintain a Claim for A Negligent Violation of the FCRA Against Ability

Under the FCRA, a plaintiff can only claim actual damages for negligent violations of the FCRA. *See* 15 U.S.C. § 1681o. A failure to establish actual damages warrants summary judgment in favor of a defendant. *Davenport v. Sallie Mae, Inc.*, 124 F.Supp. 3d 574, *581 (D. Md. June 5, 2015) citing *Spector v. Experian Info. Servs. Inc.*, 321 F. Supp. 2d 348, 356 (D.

6

Conn. 2004). Again, the record in this matter does not show that Long suffered any actual damages as a result of Ability's furnishing of tradeline information or investigating the disputes regarding the debt. Plaintiff has provided a self-serving affidavit where she attempts to argue that she suffered from anxiety, headaches and sleeplessness as a result of reviewing her credit report. (Exhibit 4). However, the information in both the self-serving affidavit and to Long's discovery responses regarding her alleged damages do not provide any specific information or support to show when Long actually suffered from anxiety, headaches or sleeplessness.

No documentation, information or testimony has been offered by Long to show that she had been either denied credit or offered unfavorable financing terms during the applicable time period. Long testified at her deposition that she did not lose any credit opportunities during the applicable time period because she did not apply for credit during that time. (Exhibit 2, pg. 36, ¶¶ 2-7, "At that point I can't say that I applied for any credit, but I didn't go out of my way to make any decisions relating to my credit at that time because I believed that it was something small that we'd eventually get past and it wouldn't be an issue."). Long's own testimony that she viewed the furnished tradeline information as "something small" that "wouldn't be an issue" is indicative of her not suffering from any actual damages as a result of Ability's activity.

Also, as stated previously, during the course of her employment at Trusted Health Plans, Long received two (2) promotions which came with increases in her salary. (Exhibit 1, pgs. 9-10). There is no evidence that Long's credit history or Ability's actions negatively impacted her employment status. To the contrary, during the time period in which Ability was furnishing tradeline information to the credit bureaus, Long excelled at her job and was rewarded for her efforts.

Long has failed to provide any evidence showing that the alleged increase in the interest rate associated with her Chase credit card resulted from Ability's collection activity. The document provided by Long (Exhibit 3) does not have a date and does not provide any reasoning as to why the interest rate increased. Long has not supplemented this document to show a correlation between the rise in the interest rate and Ability's actions.

Long's reliance on the opinion in *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) is misplaced. In *Guimond*, Court reversed the District Court's ruling of summary judgment in favor of Trans Union regarding a claim pursuant to § 1681e(b) finding that the focus in determining whether a violation occurred should not have relied on plaintiff's alleged damages but, instead, on the procedures that Trans Union had in place to protect inaccuracies in reported information. *Id.* at *1334. *Guimond* differs from the current matter in that it involved looking at the procedures employed by a CRA and then specifically considering plaintiff's damages in regard to a FCRA violation. Ability is not a CRA, nor did Long advance a § 1681e(b) claim against Ability. Moreover, the Court in *Guimond* did not make a ruling on plaintiffs alleged damages. As such, Long's reliance on *Guimond* in this instance is not appropriate.

Plaintiff has failed to provide any evidence that she was harmed or suffered damages as a result of Ability's collection activity, whereby Summary Judgment should be granted in favor of Ability regarding Plaintiff's claim of a negligent violation of the FCRA.

### 3. Long Has Not Provided Sufficient Evidence Of Emotional Distress

Long alleges that she suffered emotional distress as a result of Ability's alleged furnishing of inaccurate tradeline information. Long has not provided any evidence of emotional

8

distress or events that occurred as a result of Ability's activities that would lead to her suffering from emotional distress.

Long's recitation of the opinion in *Sloane v. Equifax Info. Servs.*, 510 F.3d 495 (4th Cir. 2007) is inaccurate. In *Sloane*, the plaintiff had her identity stolen by a woman with a similar name. *Id.* at *498. By the time plaintiff recognized that another person was utilizing her credit, plaintiff's personal credit had been severely damaged, leading to denials of several loans associated with the purchase of homes and automobiles. *Id.* Although plaintiff made various disputes and deletion requests to Equifax, some of the inaccurate tradeline information remained on her credit report, diminishing her credit score. *Id.* The harm associated with the information that remained on her credit report caused marital discord between plaintiff and her husband, which caused plaintiff to suffer from emotional distress. *Id.* at *499. Plaintiff continued to be denied credit from multiple banks. *Id.* In the Court's opinion, it specifically stated that Equifax did not deny that plaintiff suffered emotional distress or that plaintiff failed to produce sufficient evidence to sustain an award for emotional distress. *Id.* at *502. The Court also found that the repeated denials of credit over a twenty-one (21) month period contributed to plaintiff's emotional distress. *Id.* at *503. Here, Ability is contesting that Long suffered emotional distress and is also contesting whether Long has provided sufficient evidence of her alleged actual damages. Also, Long admitted several times at her deposition that she was not denied credit during the applicable time period, as she did not seek to obtain credit during this time. The distinctions in the *Sloane* opinion from the current matter are great, and are an indicator of Long not suffering from emotional distress as a result of Ability's activities because Long has not shown that she was denied any credit opportunities or suffered any emotional distress. Long even admitted in her deposition that she believed that Ability's furnishing of alleged inaccurate

tradeline information was "something small." (Exhibit 2, pg. 36, ¶¶ 2-7). This is hardly the type of activity that can lead to an individual suffering from emotional distress.

Long has failed to provide any evidence that she suffered emotional distress or that there were any events, including denials of credit or lost credit opportunities, which led her to suffer emotional distress. Summary judgment should be granted in favor of Ability and denied as to Long regarding Long's emotional distress claim.

### 4. Ability's Activities Were Not Willful

To be found in willful noncompliance, a defendant such as Ability must have knowingly and intentionally committed an act in conscious disregard for the rights of others. *Stevenson v. TRW, Inc.*, 987 F.2d 288, *293 (5th Cir. 1993). The defendant must act with a "culpable state of mind." *Vecchione v. Bay Area Credit Serv.,* 2014 U.S. Dist. LEXIS 169982, *9 (M.D. N.C. Dec. 9, 2014). From the first conversation that Ability had with Long regarding the debt obligations at issue, Ability noted in its records that the account was disputed. (See the transcript of the deposition of Mark Carlson, pg. 26, ¶¶ 5-6, which is attached hereto and marked as Exhibit 7). When Ability first received notice from the CRAs that Long was disputing the debt, Ability's representatives reviewed the disputes, analyzed the information in its file, compared it to the information provided in the disputes and timely reported the findings of its investigations back to the CRAs. (Exhibit 5, pg. 22, ¶¶ 9-12, pg. 30, ¶¶ 4-9pg. 35, ¶¶ 2-4). Ability's process of reviewing Long's disputes did not involve any knowing or intentional acts that were in conscious disregard for Long or her account. Of great importance, Long has not provided any evidence to

show that Ability's investigative procedures or activities in investigating her disputes was willful.

### 5. Long's Has Not Made a Distinction Between Her FDCPA Claims

In her response in opposition to Ability's Motion for Summary Judgment, Long states that if Ability did not violate Section 1692e of the FDCPA, then she can press a violation of Section 1692f. (See ECF 66, pg. 12). However, this assertion ignores the fact that Section 1692f of the FDCPA is in place to cover debt collection practices that are not expressly addressed in other sections of the statute. *Finley v. Ocwen Loan Servicing, LLC*, 2018 U.S. LEXIS 59920, *13 (N.D. Ohio Apr. 9, 2018) citing *Sexton v. Bank of New York Mellon*, 2016 U.S. Dist. LEXIS 98435, *8 (E.D. Ky. Jul. 28, 2016) citing *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio Mar. 22, 2007). Long has not provided any evidence of a distinction between her § 1692e claim and her § 1692f claim against Ability, simply alleging that Ability violated both sections by making alleged misleading statements regarding the debt that was reported to the CRAs. Long's FDCPA claims are identical and there is no genuine dispute as to any material fact regarding Long's § 1692f claim against Ability whereby summary judgment on the claim should be granted in favor of Ability and denied as to Long. As such, summary judgment should be granted in favor of Ability and denied as to Long in regard to Long's §§ 1692e and 1692f claims.

### 6. Ability Did Not Defame Long

Regarding inaccurate credit reporting, a claim for defamation requires a showing that the alleged furnishing of inaccurate information was done with malice or willful intent. *See Jackson v. Warning*, 2016 U.S. LEXIS 172589, *25 (D. Md. Dec. 13, 2016); *Beuster v. Equifax Information Services*, 435 F. Supp. 2d 471 (D. Md. Jun. 15, 2006). From the outset, when

11

Ability had its first and only conversation with Long, Ability noted in its internal records and with the CRAs (after waiting for a 30-day period to furnish any tradeline information to the CRAs to give Long the opportunity to provide Ability with documentation showing that she did not owe the debt) that the debt was disputed. (Exhibit 2, pg. 19, ¶¶ 4-14). Long has not provided any evidence to show that Ability knowingly furnished false tradeline information to the CRAs or did so with reckless disregard for whether the information was false. Ability did not receive any additional information or documentation from Long to show that she did not owe the debt and at all times the debt was reported to the CRAs under a disputed status. (*Id.*, pg. 19, ¶¶ 4-14). Ability's actions and its policies and procedures that were followed through the process show that there was no malice or willful intent on the part of Ability in furnishing the information, which is evidenced through the debt being reported under a disputed status at all times. Thus, summary judgment should be granted in favor of Ability in regard to Long's defamation claim.

### 7. Ability Did Not Violate The MCDCA

Long infers in her response to Ability's Motion for Summary Judgment that Ability allegedly chose to not take steps to acknowledge that the debt that it was reporting to the CRAs was not disputed. (*See* ECF 66, pg. 20). However, it is clear that, from the outset, Ability noted in both its internal records and to the CRAs that Long had verbally disputed the debt. As put forth in its Motion for Summary Judgment, Ability notes that to state a claim under § 14-202(8), Long must show that Ability did not possess the right to collect the amount of the debt sought and that Ability attempted to collect the debt knowing that it lacked the right to do so. *Price v. Murdy*, 2018 U.S. Dist. LEXIS 55887, \*\*27-28 (D. Md. Mar. 30, 2018) citing *Lewis v. McCabe, Weisberg & Conway, LLC*, 2014 U.S. Dist. LEXIS 106220, 2014, \*6 (D. Md. Aug. 4, 2014); *Lembach v. Bierman*, 528 F.App'x 297, 304 (4th Cir. 2013) (quoting *Shah v. Collecto, Inc.*, 2005

U.S. Dist. LEXIS 19938, *11 (D. Md. Sept. 12, 2005)); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F.Supp.2d 492, 511 (D.Md. 2004). Long has not provided any evidence to show that Ability did not have the right to collect the debts or that it did not have actual knowledge or showed a reckless disregard of knowing that it was not able to collect the debt. At no time did Long provide Ability with documentation showing that she was not responsible for the debt.

However, the record does show that Ability followed its policies and procedures in providing Long with initial letters containing the disclosures required under § 1692g(a) and informing Long of her right to contact the CRAs to dispute the debts. Again, at no time did Long provide Ability with any additional documentation or information showing that she was not responsible for the debt. There is no evidence to show that Ability did not have knowledge that it did not have a right to collect the debt and Ability did not have actual knowledge or a reckless disregard of any aspect of the debt. As such, summary judgment should be granted in favor of Ability in regard to Long's MCDCA claim.

## IV. <u>CONCLUSION</u>

WHEREFORE, Defendant, Ability Recovery Services, LLC respectfully requests that this Honorable Court grant its Motion for Summary Judgment, granting summary judgment in its favor regarding all Counts in Plaintiff's Amended Complaint and denying Plaintiff's Motion for Partial Summary Judgment, denying summary judgment in favor of Plaintiff on Counts I and III of her Amended Complaint.

[*Intentionally Left Blank*]

                **STRADLEY RONON STEVENS & YOUNG**

By:   */s/ Thomas F. Lucchesi*
      Thomas F. Lucchesi, Esquire
      1250 Connecticut Ave, NW, Suite 500
      Washington, DC 20036
      (202) 507-6401/(202) 822 0140 (fax)
      tlucchesi@stradley.com
      Attorneys for Defendant
      Ability Recovery Services, LLC


                **MARGOLIS EDELSTEIN**

By:   */s/ Ronald M. Metcho*
      RONALD M. METCHO
      220 Penn Avenue, Suite 305
      Scranton, PA 18503
      (570) 220-2091
      rmetcho@margolisedelstein.com
      Attorneys for Defendant
      Ability Recovery Services, LLC

Dated:  May 21, 2018

**CERTIFICATE OF SERVICE**

I, Thomas F. Lucchesi, hereby certify that the foregoing Reply Brief and exhibits were filed electronically through the Court's ECF system and were served electronically through the Court's ECF system upon all counsel of record.

*/s/ Thomas F. Lucchesi*
Thomas F. Lucchesi
