# EXHIBIT 7

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

CRYSTAL LONG,                          *

          Plaintiff,             *

  vs.                                   * Case No.:

                                  * 8:17-CV-1955-GJH

PENDRICK CAPITAL                       *

PARTNERS II, LLC, et al.,              *

          Defendants.             *

* * * * * * * * * * * * * * * * * * * * * * * * *

      The  deposition of MARK CARLSON took
place on Thursday, February 22, 2018, beginning
at 10:02 a.m., at the Law Offices of Marshall,
Dennehey, Warner, Coleman & Goggin, 50 Glenmaura
National Boulevard, Moosic, Pennsylvania, before
Christine A. Messner, Court Stenographer and Notary
Public in and for the State of Pennsylvania.

* * * * * * * * * * * * * * * * * * * * * * * * *


Reported by:

    Christine A. Messner



Page 2

APPEARANCES:

On behalf of the Plaintiff:

INGMAR GOLDSON, ESQUIRE
The Goldson Law Office
1734 Elton Road, Suite 210
Silver Spring, Maryland 20903
240-780-8829
igoldson@goldsonlawoffice.com

On behalf of the Defendant Ability Recovery Services:

RONALD M. METCHO, ESQUIRE
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, Pennsylvania 19103
215-575-2595
rmmetcho@mdwcg.com

Page 3

INDEX

DEPOSITION OF MARK CARLSON
February 22, 2018

EXAMINATION BY:                    PAGE:
Mr. Goldson ...................................4
Mr. Metcho ..................................30

EXHIBIT:     DESCRIPTION:          PAGE:

1   Data Master program information ........18
2   Debtor history report ..................19

Page 4

PROCEEDINGS

STIPULATIONS

It was agreed by and between counsel that all
objections, except as to the form of the question,
will be reserved until the time of trial.
It was further agreed that the sealing and
filing of the deposition transcript will be waived.

Whereupon --
MARK CARLSON was called, and having been
duly sworn, was examined and testified as follows:

EXAMINATION BY MR. GOLDSON:
Q.   Hi, Mark.
A.   Good morning.
Q.   Good morning.  Can you just state your
name and address for the record?
A.   Sure.  Mark Carlson; 168 York Avenue,
Duryea, PA 18642.

Page 5

Q.   Thank you.  Mark, have you ever been
deposed before?
A.   No.
Q.   Just a few baseline rules and
Mr. Metcho can add to this if you want to.
MR. METCHO:  Sure.
BY MR. GOLDSON:
Q.   But I'm just going to ask that you
allow me to finish my questions and if you start an
answer, I'll allow you to finish your answer.
A.   Perfect.
Q.   Please respond verbally because our
court reporter can't pick up head nods and other body
movements.  If you don't understand a question,
please ask me to clarify rather than, you know, start
an answer.
A.   Okay.
Q.   -- start answering a question that you
don't fully understand.
MR. GOLDSON:  Okay.  Anything
else?

**Page 6**

1      MR. METCHO: The only thing I
2 would add -- thank you for the
3 opportunity to do that -- any
4 conversations that you and I have had
5 are protected by the attorney/client
6 privilege. So if Mr. Goldson asks a
7 question regarding something we have
8 discussed in preparation for this
9 deposition for instance, that's
10 protected so you do not have to answer
11 that question. And if that comes up,
12 I'll make sure to notify both opposing
13 counsel and yourself that that may be an
14 issue.
15      THE WITNESS: Certainly.
16 BY MR. GOLDSON:
17    **Q.**   **All right. Mr. Carlson, first I would**
18 **like to go over your educational background. What's**
19 **the highest level of education you obtained?**
20    A.   I completed some college.
21    **Q.**   **Some college?**

**Page 7**

1    A.   Yes.
2    **Q.**   **Where did you go to college?**
3    A.   Lackawanna Area and Harrisburg Area
4 Community College.
5    **Q.**   **Okay. What did you study?**
6    A.   Business management.
7    **Q.**   **Business management. And do you**
8 **currently work at Ability Recovery Services?**
9    A.   Yes, I do.
10    **Q.**   **How long have you worked there?**
11    A.   I worked since August of 2016, August
12 2nd to be exact.
13    **Q.**   **Okay. Are you on salary?**
14    A.   No.
15    **Q.**   **You get an hourly wage there?**
16    A.   I do.
17    **Q.**   **Okay. What is your hourly wage?**
18    A.   Currently it is $12 per hour.
19    **Q.**   **What is your position?**
20    A.   I am now a supervisor at Ability
21 Recovery Services.

**Page 8**

1    **Q.**   **Is your title just supervisor?**
2    A.   Yes.
3    **Q.**   **Okay. When did you become supervisor?**
4    A.   Monday. February, help me, what is the
5 date, just this week.
6    **Q.**   **I would like to congratulate you on**
7 **that.**
8    A.   Thank you.
9      MR. METCHO: That would be the
10 21st, right?
11      MR. GOLDSON: No, the 20th.
12      THE WITNESS: 23rd is Friday.
13 BY MR. GOLDSON:
14    **Q.**   **Nineteenth?**
15    A.   Nineteenth, there we go.
16      MR. METCHO: It's been a long
17 week.
18      THE WITNESS: You're right.
19 BY MR. GOLDSON:
20    **Q.**   **What were you before a supervisor?**
21 **What was your position?**

**Page 9**

1    A.   I was a collector.
2    **Q.**   **Collector. And when you started in**
3 **August 2016 were you a collector?**
4    A.   Yes.
5    **Q.**   **So let's go back to when you were a**
6 **collector because that's more relevant to the**
7 **complaint at issue here.**
8    A.   Sure.
9    **Q.**   **When you were a collector, did you**
10 **answer telephones when consumers or when people**
11 **called ARS --**
12    A.   Yes.
13    **Q.**   **-- Ability Recovery Services?**
14    A.   Yes.
15    **Q.**   **About how many calls would you answer a**
16 **day?**
17    A.   Off the top of my head, I would have to
18 assume about 200.
19    **Q.**   **That's impressive. Did you make calls**
20 **as well?**
21    A.   Yes.

Mark Carlson
2/22/2018

4  (Pages 10 to 13)

Page 10

1    Q.    About how many calls would you make a
2  day?
3        A.    My answer would have been collective,
4  so somewhere around the neighborhood of 200 calls
5  collectively, receiving and making.
6    Q.    Okay.  And would you say there's about
7  an equal amount of calls made or?
8        A.    If I were to do the split, probably
9  more outbound calls than inbound calls.
10    Q.    How do you place the telephone calls?
11  Do you use a telephone or does a computer make the
12  call for you?
13        A.    The computer generates which has the
14  necessary data.  There is phone numbers in each field
15  that identifies each specific debtor that allows me
16  to select which phone number to utilize to best
17  possibly get ahold of that individual.
18    Q.    Okay.  Is that the same computer
19  program that you use to pull up an account when
20  somebody calls Ability Recovery Services?
21        A.    Same system.

Page 11

1    Q.    Same system?
2        A.    Yes, sir.
3    Q.    What's the name of that computer
4  program?
5        A.    The Debt Master.
6    Q.    So just to clarify when somebody calls,
7  you pull up their account using the Debt Master
8  computer program?
9        MR. METCHO:  I'm going to object
10  to the form of the question.  You can
11  answer if you are able.
12        THE WITNESS:  Can you repeat the
13  question just for clarity?
14  BY MR. GOLDSON:
15    Q.    Yeah.  When a person calls Ability
16  Recovery Services, is it your testimony that you will
17  pull up their account using the Debt Master computer
18  system?
19        A.    That information typically populates on
20  my screen.
21    Q.    Okay.  So when somebody calls, Debt

Page 12

1  Master will read the telephone number and
2  automatically populate an account?
3        A.    If the account phone number identifies
4  a number in our database, that information will
5  populate.
6    Q.    Okay.  Do you use any other computer
7  programs to access consumer account information?
8        A.    No.
9    Q.    When a consumer calls and the account
10  is pulled up and on the computer system, whether
11  automatically or whether you pull it up yourself,
12  what information is available to you?
13        MR. METCHO:  I'm going to object
14  to the form of the question, but you can
15  answer it if you are able.
16        THE WITNESS:  Once again please
17  repeat.
18  BY MR. GOLDSON:
19    Q.    When you pull up an account or when an
20  account is pulled up automatically, what information
21  is available to you about the consumer?

Page 13

1        A.    Their address, their name, phone number
2  utilized.  There may be a variety of phone numbers
3  within the system depending on the effectiveness of
4  the skip tracing system that's used.  What
5  information is available, well, for some fields may
6  show Social Security numbers, phone numbers, date of
7  births.
8    Q.    Do you know where that information
9  comes from?
10        A.    No.
11    Q.    Where Ability gets that information?
12        A.    I am not.
13    Q.    You just referenced skip tracing, can
14  you explain how Ability skip traces?
15        A.    I have no idea.
16    Q.    But it's your testimony that some of
17  the information that is populated in that program
18  comes from skip tracing?
19        A.    I've heard that terminology utilized
20  within our field.  That information is provided by a
21  client or provided by a service that is used to

Mark Carlson
2/22/2018

5 (Pages 14 to 17)

Page 14

1  identify consumer information.
2      Q.   Do you have -- do you know what that
3  service is?
4      A.   No.
5      Q.   Okay.  At this time I'm going to play
6  an audio clip.
7      A.   Sure.
8      Q.   It's a clip that Ability Recovery
9  Services sent the plaintiff that is purportedly you
10  answering a call from the plaintiff in this case
11  Crystal Long.  I'm only going to play it for
12  identification purposes so you can identify whether
13  or not it's you and that's it.  So I'll play ten
14  seconds and we'll see if you can identify that is you
15  on the call.
16     A.   Sure.
17          (Whereupon an audio clip was
18          played to the witness.)
19  BY MR. GOLDSON:
20     Q.   I saw you nod your head, that is you?
21     A.   That is me.

Page 15

1      Q.   Thank you.  I'm going to get that out
2  of the way so my computer doesn't die here.  All
3  right.  When you pick up a call, is that call
4  automatically recorded?
5      A.   By answering that, I make the
6  assumption yes --
7      Q.   Okay.
8      A.   -- because I'm never given audio
9  information.  But we advise when anybody calls in
10  that the call may be monitored or recorded.
11     Q.   Okay.
12     A.   And that's part of a mini Miranda that
13  we utilize.
14     Q.   Okay.  I think you might have partially
15  answered this next question.  Do you know how the
16  call is being recorded?
17     A.   Do I know how?
18     Q.   Yeah.
19     A.   In what sense?
20     Q.   For instance, do you know if it's the
21  Debt Master computer program that's recording or if

Page 16

1  it's some other program?
2      A.   I have no idea.
3      Q.   So can you start recording?
4      A.   No.
5      Q.   Can you stop recording?
6      A.   No.
7      Q.   Do you know whether or not Ability
8  Recovery Services has the ability to edit a call
9  after -- edit a recording after a call is completed?
10         MR. METCHO:  I'm going to object
11     to the form, but you can answer the
12     question.
13         THE WITNESS:  I've never heard of
14     that.
15  BY MR. GOLDSON:
16     Q.   So is that a no?
17     A.   That would be a no, my knowledge, no.
18         MR. GOLDSON:  Counsel, I have an
19     extra copy of this if you want it.
20         MR. METCHO:  I would like to see
21     it.  Mr. Goldson, this is the

Page 17

1  documentation that was provided in
2  discovery responses that came from
3  Pendrick, correct?
4          MR. GOLDSON:  Ability actually
5  sent that.
6          MR. METCHO:  Ability sent it, but
7  it was Pendrick's document that was sent
8  to Ability?
9          MR. GOLDSON:  I have no --
10         MR. METCHO:  I recognize the
11  document, that's okay.
12         THE WITNESS:  Is this for me?
13  BY MR. GOLDSON:
14     Q.   Yes.  Do you recognize that?
15     A.   In paper format, no.
16     Q.   Do you recognize it in any other
17  format?
18     A.   No.  I've just never seen this
19  utilized.
20     Q.   Okay.
21     A.   No.

Mark Carlson
2/22/2018

6 (Pages 18 to 21)

Page 18

1    Q.    Thank you.
2          MR. GOLDSON:  We would like to
3    mark that as a multipage exhibit.
4          (Whereupon Exhibit 1 was marked
5          for identification.)
6    BY MR. GOLDSON:
7    Q.    Mr. Carlson, do you recognize that
8    document?
9    A.    Paper version of what I would see on
10   the screen on my workstation.
11   Q.    And in the Debt Master program?
12   A.    Yes.
13   Q.    Okay.  Thanks.  So earlier when you
14   testified that you have access to the name, phone
15   numbers, Social Security numbers; is this what you
16   see on the program?
17   A.    This is the exact information I would
18   have access to seeing.
19   Q.    Do you make these account activity
20   comment notes?
21   A.    No.

Page 19

1    Q.    So none of this data was entered by
2    you?
3    A.    Allow me to look specifically to
4    ensure.  No, nothing on here indicates that I typed
5    or altered anything in this document.
6    Q.    Okay.  Thank you.
7          MR. GOLDSON:  Mark this as two
8    please.
9          (Whereupon Exhibit 2 was marked
10         for identification.)
11   BY MR. GOLDSON:
12   Q.    So sorry, just give me one second.  Are
13   you familiar with the Fair Credit Reporting Act or
14   FCRA?
15   A.    For the most part I would imagine, yes.
16   Q.    How did you become familiar with the
17   Fair Credit Reporting Act?
18   A.    Through training.
19   Q.    Through training with your current
20   employer Ability Recovery Services?
21   A.    Yes.

Page 20

1    Q.    Did you receive any training materials?
2    A.    They are kept in binders at our
3    station.
4    Q.    When was there a training specific to
5    the Fair Credit Reporting Act that you received at
6    Ability Recovery Services?
7    A.    We have all received training at
8    Ability Recovery Services that identifies each layer
9    of your job, what specific role that you have, access
10   to the specific documents, fair credit reporting
11   practices, what's required for you to adhere to.
12   Q.    Is it your understanding that Ability
13   Recovery Services has no choice but to report an
14   account that it is collecting?
15         MR. METCHO:  I'm going to object
16   to the form of the question.  I'm also
17   going to object to the question on the
18   basis of attorney/client privilege, but
19   you can answer if you are able.
20         THE WITNESS:  Okay.
21   BY MR. GOLDSON:

Page 21

1    Q.    Would you like me to repeat that?
2    A.    Please.
3    Q.    Is it your understanding that Ability
4    Recovery Service has no choice but to report the
5    accounts that it is collecting to credit reporting
6    agencies?
7    A.    That I don't know.
8    Q.    Are you saying you don't know whether
9    or not Ability Recovery Services is required to
10   report?
11   A.    I don't know what that process entails.
12   Q.    Do you know when Ability Recovery
13   Services reports accounts to a credit reporting
14   agency?
15   A.    I do not.
16   Q.    Are you familiar with the Fair Debt
17   Collection Practices Act?
18   A.    I heard the terminology.
19   Q.    Did you receive any training on the
20   Fair Debt Collection Practices Act?
21   A.    I imagine I received training for my

Page 22

1    role.
2        Q.    Did you receive any training
3    materials --
4        A.    I couldn't recall.
5        Q.    Let me just finish the question for the
6    record.  Did you receive any training materials for
7    the Fair Debt Practices Collection Act?
8        A.    I couldn't recall.
9        Q.    Do you know what a trade line is?
10       A.    No.
11       Q.    What would you call the information
12   that Ability Recovery Services reports to the credit
13   reporting agencies?
14       A.    What would I call the information that
15   Ability Recovery Services reports to?
16       Q.    Credit reporting agencies.  Credit
17   reporting agencies are Experian, Equifax, TransUnion,
18   those are the three major ones.
19       A.    What they report to them?
20       Q.    Yes.
21       A.    I wouldn't know what the terminology

Page 23

1    is, no, I wouldn't.
2        Q.    For the purposes of this deposition I'm
3    going to call that a trade line.
4        A.    That's what's reported to the credit
5    reporting agency, that's what it's referred to it as?
6        Q.    Yes.
7        A.    Okay.
8        Q.    As far as you know can Ability Recovery
9    Services request that a credit reporting agency
10   delete a trade line?
11       A.    Delete a trade line, how so?  I don't
12   understand.
13       Q.    Okay.
14       A.    Delete in what fashion, like?
15       Q.    Delete, to make disappear.
16       A.    Just to say remove this?
17       Q.    Yes.
18       A.    Not that I'm aware of.
19       Q.    Do you have the ability to determine
20   whether or not Ability Recovery Services -- or I'm
21   sorry, let me repeat the question.

Page 24

1        Do you have the ability to determine
2    for Ability Recovery Services that a caller does not
3    in fact owe the money that the caller is calling
4    about?
5        A.    Do I have a way to report that?
6        Q.    Do you have the ability to determine
7    for your employer that this caller does not owe the
8    money?
9        A.    No.
10       Q.    Okay.  If you don't have that ability,
11   who at Ability Recovery Services does have that
12   ability to determine that?
13       A.    That I don't know.
14       Q.    Okay.  Do you remember the call with
15   Crystal Long?
16       A.    I do.
17       Q.    You do.  Do you recall that she called
18   for two accounts?
19       A.    No, I don't recall.
20       Q.    Okay.
21       A.    I would be going based on guessed

Page 25

1    memory.  I don't think I can specifically.  If you
2    can help me recall, perhaps that would be something.
3        Q.    Okay.  I'll just show you two
4    collection letters that Ability Recovery Services
5    sent to Crystal Long.
6        A.    Okay.
7        Q.    And these are the accounts that she was
8    calling for.  Actually let me just, to make it easier
9    this is the front of the pages.
10       A.    Okay.
11       Q.    So do you recall the plaintiff Crystal
12   Long calling you about both of these accounts?
13       A.    I recall her calling me about her
14   concern on receiving information from us or how I
15   believe it is we're on her credit report.
16       Q.    Okay.  For the record, one of these
17   collection letters from Ability Recovery Services
18   reflects a balance of $74 and the other collection
19   letter shows a balance of $1,125.  So when Crystal
20   Long called you, were you able to resolve either of
21   these accounts?

Mark Carlson
2/22/2018

8 (Pages 26 to 29)

Page 26

1   A.   How so?
2   Q.   By making the status of the account not
3   collectible or determining she does not owe the
4   money.
5   A.   She called in to dispute the account
6   and it was placed under a dispute.
7   Q.   Were both accounts placed under a
8   dispute?
9   A.   That I don't recall.
10   Q.   Do you recall disputing both of these
11   accounts the same way?
12   A.   I don't dispute any accounts any
13   differently.
14   Q.   Okay.
15   A.   There's only one streamline process of
16   disputing an account.
17   Q.   Okay.  How does that work?
18   A.   If the individual says I dispute the
19   validity of the account, I usually advise them
20   proactively review the credit report and dispute it
21   with the credit reporting agencies.  I would label it

Page 27

1   as a disputed account that you're contesting the
2   validity of the balance or whatever the specific
3   reason and just simply notate that within the
4   field and then proactively encourage them to dispute
5   with the bureaus as well.
6   Q.   Okay.
7   A.   So this information is then sent off to
8   whoever reviews that, I don't know, it's beyond me.
9   Q.   At Ability Recovery Services, when you
10   say sent off, you mean --
11   A.   I hit enter and once I close the -- I
12   apologize I interrupted you.  I close the data, I
13   just send off and it deletes it off of my screen.
14   Q.   Okay.  So with your position as a
15   collector you didn't have the ability to make a
16   determination for Ability Recovery Services that a
17   caller does not owe the money --
18   A.   No.
19   Q.   -- and therefore she will not be
20   pursued with any more calls or letters?
21   A.   It's not my job.

Page 28

1   Q.   Okay.  Is that a part of your job now
2   as a supervisor?
3   A.   No.
4   Q.   Have you ever encountered any errors
5   regarding whom an account belongs to?
6   MR. METCHO:  I'm going to object
7   to the form of the question.  You can
8   answer if you are able.
9   THE WITNESS:  How so?
10   BY MR. GOLDSON:
11   Q.   Let me try to.
12   A.   If I may.
13   Q.   Sure.
14   A.   Someone will call in and say I have a
15   letter for an old tenant, they no longer live here,
16   so we'll mark it as a bad address and simply close it
17   as such, if that would help provide an example.
18   Q.   Have you ever encountered any errors in
19   the sense that a collection letter was sent to
20   somebody who doesn't actually owe that money?
21   A.   That, I'm not aware of that.

Page 29

1   Q.   Okay.  If a consumer calls and they
2   dispute personal data information, do you have the
3   ability to change the personal data information that
4   Ability Recovery Services has in its system?
5   A.   No.
6   Q.   Do you know who does have that ability
7   at Ability Recovery Services?
8   A.   I do not.
9   Q.   Do you recall telling Crystal Long in
10   the phone call that she no longer had to pay the
11   smaller balance of $74?
12   A.   No longer had to pay, I don't recall
13   that.
14   Q.   Do you know how Ability Recovery
15   Services' credit reporting process works after you
16   get a dispute call like the one from Crystal Long?
17   A.   No.
18   Q.   As a collector what is your
19   understanding of your duty under the Fair Credit
20   Reporting Act?
21   A.   In terms of what?

Mark Carlson
2/22/2018

9 (Pages 30 to 33)

Page 30

1    MR. METCHO: I'm going to object
2 to the question in terms of it could
3 potentially seek information that's
4 protected by the attorney/client
5 privilege. But you can answer the
6 question if you are able to.
7    THE WITNESS: I'm not sure what
8 you mean.
9 BY MR. GOLDSON:
10    Q.   Okay. Let me rephrase. Earlier you
11 testified that you received Fair Credit Reporting Act
12 training. What did that training entail?
13    A.   That I couldn't recall off the top of
14 my head to be quite honest with you. The Fair Credit
15 Reporting Act as far as the information that -- I'm
16 drawing a blank to be quite honest.
17    Q.   Okay. That's fine. I have nothing
18 further.
19
20    EXAMINATION BY MR. METCHO:
21    Q.   I would like to ask you a couple

Page 31

1 follow-up questions. You testified in November of
2 2016 you were a collector with Ability?
3    A.   Yes.
4    Q.   Okay. And you also testified as per
5 the questions of counsel for plaintiff that you did
6 recall having a conversation with the plaintiff in
7 this matter Crystal Long?
8    A.   Yes.
9    Q.   And did you receive that call or did
10 you place that call?
11    A.   I received that call.
12    Q.   Okay. And just in a general sense in a
13 summary, what was discussed during that call?
14    A.   She was concerned about information
15 that had appeared on her credit report or letters
16 that she received from us stating that she owed a
17 balance.
18    Q.   And did you make any recommendations to
19 Ms. Long during that conversation?
20    A.   I did.
21    Q.   What was your recommendation?

Page 32

1    A.   I advised her to dispute her -- what
2 she received or what she had identified with the
3 credit reporting agencies.
4    Q.   And as a result of that call, did you
5 take any steps regarding notifying your company
6 Ability that Ms. Long disputed the account?
7    A.   I followed procedure.
8    Q.   What was the procedure?
9    A.   I labeled the account as a dispute that
10 she had identified that she wasn't agreeing with, you
11 know, what we have in our office and labeled it as
12 such and closed the file.
13    Q.   Did you place any calls to Ms. Long at
14 any point?
15    A.   No.
16    Q.   Did you receive any other calls from
17 Ms. Long other than the one that you received in
18 November of 2016?
19    A.   No.
20    Q.   Did you send any letters to Ms. Long?
21    A.   No.

Page 33

1    Q.   Are you aware of any other individuals
2 at Ability having any other conversation with
3 Ms. Long?
4    A.   No.
5    Q.   Are you aware of any other individuals
6 at Ability placing any calls to Ms. Long?
7    A.   No.
8    Q.   Are you aware of Ms. Long sending any
9 letters to Ability disputing the debt or requesting
10 validation of the debt?
11    A.   No.
12    Q.   I have nothing further.
13    MR. GOLDSON: I have nothing
14 further either. Thank you.
15    (Whereupon the deposition was
16 concluded at 10:31 a.m.)
17
18
19
20
21

Page 34

1    CERTIFICATE
2
3       I, Christine Messner, a Notary Public in and
4    for Wyoming County, Pennsylvania, do hereby certify
5    that the deposition was reported in machine
6    shorthand by me, that the said witness was duly
7    sworn/affirmed by me, that the transcript was
8    prepared by me or under my supervision and
9    constitutes a complete and accurate record of same.
10
11      I further certify that I am not an attorney
12   or counsel of any parties, nor a relative or
13   employee of any attorney or counsel connected with
14   the action, nor financially interested in the
15   action.
16
17
18   _____
19       Christine Messner
20
21

Page 35

1       AL BETZ & ASSOCIATES, INC.
2          Administrative Offices
3            P.O. Box 665
4         Westminster, Maryland  21158
5     VOICE - (410)752-1733   FAX - (410)875-2857
6     E-mail- productiondept@albetzreporting.com
7         www.albetzreporting.com
8
9    DATE: March 8, 2018
10   JOB NUMBER: 180222key_(1)carlson_mark
11   CASE CAPTION: Crystal Long v. Pendrick Capital
12   COURT: US District Court, District of Maryland
13   CASE NUMBER: 8:17-CV-1955-GJH
14   DEPONENT: Mark Carlson
15   DATE OF DEPOSITION: February 22, 2018
16   ATTORNEYS/FIRMS:
17     Ingmar Goldson, Esq. / The Goldson Law Office
18     Ronald M. Metcho, Esq. / Marshall Dennehey
19
20
21

Page 36

1    Dear Sir or Madam:
2
3       Bound herewith is the transcript of the
4    above-referenced deposition.  Please read the
5    transcript and sign the errata pages.  Any
6    additions or corrections should be listed on the
7    errata sheets provided.  Please remove the signed
8    completed errata sheets, and return them to the
9    address listed above for processing.
10
11      If this process has not been completed
12   within (30) thirty days from the date of this
13   letter, we will assume that the right to read the
14   deposition has been waived.  This is in accordance
15   with Rule 30(e) of the Federal Rules of Civil
16   Procedure and Rule 2-415 of the Maryland Rules of
17   Procedure.
18
19
20
21

Page 37

1       READING & SIGNING PROCEDURE
2
3       The Deposition of Mark Carlson, taken in
4    the matter, on the date, and at the time and place
5    set out on the title page hereof.
6       It was requested that the deposition be
7    taken by the reporter and that same be reduced to
8    typewritten form.
9       It was agreed by and between counsel and
10   the parties that the Deponent will read and sign
11   the transcript of said deposition.
12
13
14
15
16
17
18
19
20
21

Mark Carlson
2/22/2018

11 (Pages 38 to 39)

---

Page 38

1      DEPOSITION ERRATA SHEET
2   RE:  Al Betz & Associates, Inc.
3   FILE NO.:  180222key_(1)carlson_mark
4   CASE CAPTION:  Crystal Long v. Pendrick Capital
5   DEPONENT:  Mark Carlson
6   DEPOSITION DATE:  February 22, 2018
7        I have read the entire transcript of my
8   Deposition taken in the captioned matter or the
9   same has been read to me.  I request that the
10  changes noted on the following errata sheet be
11  entered upon the record for the reasons indicated.
12  I have signed my name to the Errata Sheet and
13  authorize you to attach it to the original
14  transcript.
15  PAGE/LINE     CHANGE        REASON
16  _____
17  _____
18  _____
19  _____
20  SIGNATURE:_____DATE:_____
21       Mark Carlson

---

Page 39

1   PAGE/LINE     CHANGE        REASON
2   _____
3   _____
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  SIGNATURE:_____DATE:_____
21       Mark Carlson

---

Mark Carlson
2/22/2018

Page 40

**A**

a.m (2) 1:13 33:16
ability (47) 2:10
  7:8,20 9:13
  10:20 11:15
  13:11,14 14:8
  16:7,8 17:4,6,8
  19:20 20:6,8,12
  21:3,9,12 22:12
  22:15 23:8,19,20
  24:1,2,6,10,11
  24:12 25:4,17
  27:9,15,16 29:3
  29:4,6,7,14 31:2
  32:6 33:2,6,9
able (6) 11:11
  12:15 20:19
  25:20 28:8 30:6
above-reference...
  36:4
access (4) 12:7
  18:14,18 20:9
account (19) 10:19
  11:7,17 12:2,3,7
  12:9,19,20 18:19
  20:14 26:2,5,16
  26:19 27:1 28:5
  32:6,9
accounts (9) 21:5
  21:13 24:18 25:7
  25:12,21 26:7,11
  26:12
accurate (1) 34:9
Act (9) 19:13,17
  20:5 21:17,20
  22:7 29:20 30:11
  30:15
action (2) 34:14,15
activity (1) 18:19
add (2) 5:5 6:2
additions (1) 36:6
address (4) 4:19
  13:1 28:16 36:9
adhere (1) 20:11
Administrative ...

35:2
advise (2) 15:9
  26:19
advised (1) 32:1
agencies (6) 21:6
  22:13,16,17
  26:21 32:3
agency (3) 21:14
  23:5,9
agreed (3) 4:5,8
  37:9
agreeing (1) 32:10
ahold (1) 10:17
al (3) 1:8 35:1 38:2
allow (3) 5:9,10
  19:3
allows (1) 10:15
altered (1) 19:5
amount (1) 10:7
answer (13) 5:10
  5:10,16 6:10
  9:10,15 10:3
  11:11 12:15
  16:11 20:19 28:8
  30:5
answered (1)
  15:15
answering (3)
  5:18 14:10 15:5
anybody (1) 15:9
apologize (1)
  27:12
APPEARANCE...
  2:1
appeared (1)
  31:15
Area (2) 7:3,3
ARS (1) 9:11
asks (1) 6:6
Associates (2) 35:1
  38:2
assume (2) 9:18
  36:13
assumption (1)
  15:6

attach (1) 38:13
attorney (2) 34:11
  34:13
attorney/client (3)
  6:5 20:18 30:4
ATTORNEYS/...
  35:16
audio (3) 14:6,17
  15:8
August (3) 7:11,11
  9:3
authorize (1)
  38:13
automatically (4)
  12:2,11,20 15:4
available (3) 12:12
  12:21 13:5
Avenue (1) 4:20
aware (5) 23:18
  28:21 33:1,5,8

**B**

back (1) 9:5
background (1)
  6:18
bad (1) 28:16
balance (5) 25:18
  25:19 27:2 29:11
  31:17
based (1) 24:21
baseline (1) 5:4
basis (1) 20:18
beginning (1) 1:12
behalf (2) 2:2,10
believe (1) 25:15
belongs (1) 28:5
best (1) 10:16
Betz (2) 35:1 38:2
beyond (1) 27:8
binders (1) 20:2
births (1) 13:7
blank (1) 30:16
body (1) 5:13
Boulevard (1)
  1:15

Bound (1) 36:3
Box (1) 35:3
bureaus (1) 27:5
Business (2) 7:6,7

**C**

C (3) 4:1 34:1,1
call (21) 10:12
  14:10,15 15:3,3
  15:10,16 16:8,9
  22:11,14 23:3
  24:14 28:14
  29:10,16 31:9,10
  31:11,13 32:4
called (5) 4:12
  9:11 24:17 25:20
  26:5
caller (4) 24:2,3,7
  27:17
calling (4) 24:3
  25:8,12,13
calls (19) 9:15,19
  10:1,4,7,9,9,10
  10:20 11:6,15,21
  12:9 15:9 27:20
  29:1 32:13,16
  33:6
Capital (3) 1:7
  35:11 38:4
CAPTION (2)
  35:11 38:4
captioned (1) 38:8
Carlson (11) 1:11
  3:2 4:12,20 6:17
  18:7 35:14 37:3
  38:5,21 39:21
case (5) 1:5 14:10
  35:11,13 38:4
Certainly (1) 6:15
certify (2) 34:4,11
change (3) 29:3
  38:15 39:1
changes (1) 38:10
choice (2) 20:13
  21:4

Christine (4) 1:16
  1:21 34:3,19
Civil (1) 36:15
clarify (2) 5:15
  11:6
clarity (1) 11:13
client (1) 13:21
clip (3) 14:6,8,17
close (3) 27:11,12
  28:16
closed (1) 32:12
Coleman (2) 1:14
  2:12
collectible (1) 26:3
collecting (2)
  20:14 21:5
collection (7)
  21:17,20 22:7
  25:4,17,18 28:19
collective (1) 10:3
collectively (1)
  10:5
collector (8) 9:1,2
  9:3,6,9 27:15
  29:18 31:2
college (4) 6:20,21
  7:2,4
comes (3) 6:11
  13:9,18
comment (1)
  18:20
Community (1)
  7:4
company (1) 32:5
complaint (1) 9:7
complete (1) 34:9
completed (4) 6:20
  16:9 36:8,11
computer (10)
  10:11,13,18 11:3
  11:8,17 12:6,10
  15:2,21
concern (1) 25:14
concerned (1)
  31:14

concluded (1)
33:16
congratulate (1)
8:6
connected (1)
34:13
constitutes (1)
34:9
consumer (5) 12:7
12:9,21 14:1
29:1
consumers (1)
9:10
contesting (1) 27:1
conversation (3)
31:6,19 33:2
conversations (1)
6:4
copy (1) 16:19
correct (1) 17:3
corrections (1)
36:6
counsel (7) 4:5
6:13 16:18 31:5
34:12,13 37:9
County (1) 34:4
couple (1) 30:21
court (5) 1:1,16
5:13 35:12,12
credit (20) 19:13
19:17 20:5,10
21:5,13 22:12,16
22:16 23:4,9
25:15 26:20,21
29:15,19 30:11
30:14 31:15 32:3
Crystal (11) 1:3
14:11 24:15 25:5
25:11,19 29:9,16
31:7 35:11 38:4
current (1) 19:19
currently (2) 7:8
7:18

**D**

D (2) 3:1 4:1
data (6) 3:10
10:14 19:1 27:12
29:2,3
database (1) 12:4
date (9) 8:5 13:6
35:9,15 36:12
37:4 38:6,20
39:20
day (2) 9:16 10:2
days (1) 36:12
Dear (1) 36:1
debt (11) 11:5,7
11:17,21 15:21
18:11 21:16,20
22:7 33:9,10
debtor (2) 3:11
10:15
Defendant (1)
2:10
Defendants (1) 1:9
delete (4) 23:10,11
23:14,15
deletes (1) 27:13
Dennehey (3) 1:14
2:12 35:18
depending (1)
13:3
Deponent (3)
35:14 37:10 38:5
deposed (1) 5:2
deposition (16)
1:11 3:2 4:9 6:9
23:2 33:15 34:5
35:15 36:4,14
37:3,6,11 38:1,6
38:8
DESCRIPTION...
3:8
determination (1)
27:16
determine (4)
23:19 24:1,6,12
determining (1)
26:3

die (1) 15:2
differently (1)
26:13
disappear (1)
23:15
discovery (1) 17:2
discussed (2) 6:8
31:13
dispute (11) 26:5,6
26:8,12,18,20
27:4 29:2,16
32:1,9
disputed (2) 27:1
32:6
disputing (3)
26:10,16 33:9
District (4) 1:1,2
35:12,12
document (4) 17:7
17:11 18:8 19:5
documentation (...
17:1
documents (1)
20:10
drawing (1) 30:16
duly (2) 4:13 34:6
Duryea (1) 4:21
duty (1) 29:19

**E**

E (5) 3:1 4:1,1
34:1,1
E-mail- (1) 35:6
earlier (2) 18:13
30:10
easier (1) 25:8
edit (2) 16:8,9
education (1) 6:19
educational (1)
6:18
effectiveness (1)
13:3
either (2) 25:20
33:14
Elton (1) 2:5

employee (1)
34:13
employer (2)
19:20 24:7
encountered (2)
28:4,18
encourage (1) 27:4
ensure (1) 19:4
entail (1) 30:12
entails (1) 21:11
enter (1) 27:11
entered (2) 19:1
38:11
entire (1) 38:7
equal (1) 10:7
Equifax (1) 22:17
errata (6) 36:5,7,8
38:1,10,12
errors (2) 28:4,18
Esq (2) 35:17,18
ESQUIRE (2) 2:3
2:11
et (1) 1:8
exact (2) 7:12
18:17
EXAMINATIO...
3:4 4:15 30:20
examined (1) 4:13
example (1) 28:17
exhibit (4) 3:8
18:3,4 19:9
Experian (1)
22:17
explain (1) 13:14
extra (1) 16:19

**F**

F (1) 34:1
fact (1) 24:3
fair (10) 19:13,17
20:5,10 21:16,20
22:7 29:19 30:11
30:14
familiar (3) 19:13
19:16 21:16

far (2) 23:8 30:15
fashion (1) 23:14
FAX (1) 35:5
FCRA (1) 19:14
February (5) 1:12
3:3 8:4 35:15
38:6
Federal (1) 36:15
field (3) 10:14
13:20 27:4
fields (1) 13:5
file (2) 32:12 38:3
filing (1) 4:9
financially (1)
34:14
fine (1) 30:17
finish (3) 5:9,10
22:5
first (1) 6:17
follow-up (1) 31:1
followed (1) 32:7
following (1)
38:10
follows (1) 4:13
form (7) 4:6 11:10
12:14 16:11
20:16 28:7 37:8
format (2) 17:15
17:17
Friday (1) 8:12
front (1) 25:9
fully (1) 5:19
further (5) 4:8
30:18 33:12,14
34:11

**G**

G (1) 4:1
general (1) 31:12
generates (1)
10:13
give (1) 19:12
given (1) 15:8
Glenmaura (1)
1:14

Mark Carlson
2/22/2018

Page 42

**go (4)** 6:18 7:2
  8:15 9:5
**Goggin (2)** 1:14
  2:12
**going (13)** 5:8 11:9
  12:13 14:5,11
  15:1 16:10 20:15
  20:17 23:3 24:21
  28:6 30:1
**Goldson (30)** 2:3,4
  3:5 4:15 5:7,20
  6:6,16 8:11,13
  8:19 11:14 12:18
  14:19 16:15,18
  16:21 17:4,9,13
  18:2,6 19:7,11
  20:21 28:10 30:9
  33:13 35:17,17
**Good (2)** 4:17,18
**guessed (1)** 24:21

**H**

**Harrisburg (1)**
  7:3
**head (4)** 5:13 9:17
  14:20 30:14
**heard (3)** 13:19
  16:13 21:18
**help (3)** 8:4 25:2
  28:17
**hereof (1)** 37:5
**herewith (1)** 36:3
**Hi (1)** 4:16
**highest (1)** 6:19
**history (1)** 3:11
**hit (1)** 27:11
**honest (2)** 30:14
  30:16
**hour (1)** 7:18
**hourly (2)** 7:15,17

**I**

**idea (2)** 13:15 16:2
**identification (3)**
  14:12 18:5 19:10

**identified (2)** 32:2
  32:10
**identifies (3)**
  10:15 12:3 20:8
**identify (3)** 14:1
  14:12,14
**igoldson@golds...**
  2:8
**II (1)** 1:8
**imagine (2)** 19:15
  21:21
**impressive (1)**
  9:19
**inbound (1)** 10:9
**indicated (1)**
  38:11
**indicates (1)** 19:4
**individual (2)**
  10:17 26:18
**individuals (2)**
  33:1,5
**information (23)**
  3:10 11:19 12:4
  12:7,12,20 13:5
  13:8,11,17,20
  14:1 15:9 18:17
  22:11,14 25:14
  27:7 29:2,3 30:3
  30:15 31:14
**Ingmar (2)** 2:3
  35:17
**instance (2)** 6:9
  15:20
**interested (1)**
  34:14
**interrupted (1)**
  27:12
**issue (2)** 6:14 9:7

**J**

**job (4)** 20:9 27:21
  28:1 35:10

**K**

**kept (1)** 20:2

**know (19)** 5:15
  13:8 14:2 15:15
  15:17,20 16:7
  21:7,8,11,12
  22:9,21 23:8
  24:13 27:8 29:6
  29:14 32:11
**knowledge (1)**
  16:17

**L**

**label (1)** 26:21
**labeled (2)** 32:9,11
**Lackawanna (1)**
  7:3
**Law (3)** 1:13 2:4
  35:17
**layer (1)** 20:8
**let's (1)** 9:5
**letter (4)** 25:19
  28:15,19 36:13
**letters (6)** 25:4,17
  27:20 31:15
  32:20 33:9
**level (1)** 6:19
**line (4)** 22:9 23:3
  23:10,11
**listed (2)** 36:6,9
**live (1)** 28:15
**LLC (1)** 1:8
**long (21)** 1:3 7:10
  8:16 14:11 24:15
  25:5,12,20 29:9
  29:16 31:7,19
  32:6,13,17,20
  33:3,6,8 35:11
  38:4
**longer (3)** 28:15
  29:10,12
**look (1)** 19:3

**M**

**M (2)** 2:11 35:18
**machine (1)** 34:5
**Madam (1)** 36:1

**major (1)** 22:18
**making (2)** 10:5
  26:2
**management (2)**
  7:6,7
**March (1)** 35:9
**mark (14)** 1:11 3:2
  4:12,16,20 5:1
  18:3 19:7 28:16
  35:14 37:3 38:5
  38:21 39:21
**marked (2)** 18:4
  19:9
**Market (1)** 2:13
**Marshall (3)** 1:13
  2:12 35:18
**Maryland (5)** 1:2
  2:6 35:4,12
  36:16
**Master (7)** 3:10
  11:5,7,17 12:1
  15:21 18:11
**materials (3)** 20:1
  22:3,6
**matter (3)** 31:7
  37:4 38:8
**mean (2)** 27:10
  30:8
**memory (1)** 25:1
**Messner (4)** 1:16
  1:21 34:3,19
**Metcho (18)** 2:11
  3:6 5:5,6 6:1 8:9
  8:16 11:9 12:13
  16:10,20 17:6,10
  20:15 28:6 30:1
  30:20 35:18
**mini (1)** 15:12
**Miranda (1)** 15:12
**Monday (1)** 8:4
**money (5)** 24:3,8
  26:4 27:17 28:20
**monitored (1)**
  15:10
**Moosic (1)** 1:15

**morning (2)** 4:17
  4:18
**movements (1)**
  5:14
**multipage (1)** 18:3

**N**

**N (2)** 3:1 4:1
**name (5)** 4:19 11:3
  13:1 18:14 38:12
**National (1)** 1:15
**necessary (1)**
  10:14
**neighborhood (1)**
  10:4
**never (3)** 15:8
  16:13 17:18
**Nineteenth (2)**
  8:14,15
**nod (1)** 14:20
**nods (1)** 5:13
**Notary (2)** 1:16
  34:3
**notate (1)** 27:3
**noted (1)** 38:10
**notes (1)** 18:20
**notify (1)** 6:12
**notifying (1)** 32:5
**November (2)**
  31:1 32:18
**number (7)** 10:16
  12:1,3,4 13:1
  35:10,13
**numbers (6)** 10:14
  13:2,6,6 18:15
  18:15

**O**

**O (1)** 4:1
**object (7)** 11:9
  12:13 16:10
  20:15,17 28:6
  30:1
**objections (1)** 4:6
**obtained (1)** 6:19

Mark Carlson
2/22/2018

Page 43

**office (3)** 2:4 32:11 35:17
**Offices (2)** 1:13 35:2
**okay (38)** 5:17,20 7:5,13,17 8:3 10:6,18 11:21 12:6 14:5 15:7 15:11,14 17:11 17:20 18:13 19:6 20:20 23:7,13 24:10,14,20 25:3 25:6,10,16 26:14 26:17 27:6,14 28:1 29:1 30:10 30:17 31:4,12
**old (1)** 28:15
**once (2)** 12:16 27:11
**ones (1)** 22:18
**opportunity (1)** 6:3
**opposing (1)** 6:12
**original (1)** 38:13
**outbound (1)** 10:9
**owe (5)** 24:3,7 26:3 27:17 28:20
**owed (1)** 31:16

**P**

**P (1)** 4:1
**P.O (1)** 35:3
**PA (1)** 4:21
**page (3)** 3:4,8 37:5
**PAGE/LINE (2)** 38:15 39:1
**pages (2)** 25:9 36:5
**paper (2)** 17:15 18:9
**part (3)** 15:12 19:15 28:1
**partially (1)** 15:14
**parties (2)** 34:12 37:10

**PARTNERS (1)** 1:8
**pay (2)** 29:10,12
**Pendrick (4)** 1:7 17:3 35:11 38:4
**Pendrick's (1)** 17:7
**Pennsylvania (4)** 1:15,17 2:14 34:4
**people (1)** 9:10
**Perfect (1)** 5:11
**person (1)** 11:15
**personal (2)** 29:2 29:3
**Philadelphia (1)** 2:14
**phone (8)** 10:14,16 12:3 13:1,2,6 18:14 29:10
**pick (2)** 5:13 15:3
**place (5)** 1:12 10:10 31:10 32:13 37:4
**placed (2)** 26:6,7
**placing (1)** 33:6
**plaintiff (7)** 1:4 2:2 14:9,10 25:11 31:5,6
**play (3)** 14:5,11,13
**played (1)** 14:18
**please (7)** 5:12,15 12:16 19:8 21:2 36:4,7
**point (1)** 32:14
**populate (2)** 12:2 12:5
**populated (1)** 13:17
**populates (1)** 11:19
**position (3)** 7:19 8:21 27:14
**possibly (1)** 10:17
**potentially (1)**

30:3
**practices (4)** 20:11 21:17,20 22:7
**preparation (1)** 6:8
**prepared (1)** 34:8
**privilege (3)** 6:6 20:18 30:5
**proactively (2)** 26:20 27:4
**probably (1)** 10:8
**procedure (5)** 32:7 32:8 36:16,17 37:1
**process (4)** 21:11 26:15 29:15 36:11
**processing (1)** 36:9
**productiondept...** 35:6
**program (9)** 3:10 10:19 11:4,8 13:17 15:21 16:1 18:11,16
**programs (1)** 12:7
**protected (3)** 6:5 6:10 30:4
**provide (1)** 28:17
**provided (4)** 13:20 13:21 17:1 36:7
**Public (2)** 1:17 34:3
**pull (5)** 10:19 11:7 11:17 12:11,19
**pulled (2)** 12:10 12:20
**purportedly (1)** 14:9
**purposes (2)** 14:12 23:2
**pursued (1)** 27:20

**Q**

**question (17)** 4:6

5:14,18 6:7,11 11:10,13 12:14 15:15 16:12 20:16,17 22:5 23:21 28:7 30:2 30:6
**questions (3)** 5:9 31:1,5
**quite (2)** 30:14,16

**R**

**R (2)** 4:1 34:1
**read (6)** 12:1 36:4 36:13 37:10 38:7 38:9
**READING (1)** 37:1
**reason (3)** 27:3 38:15 39:1
**reasons (1)** 38:11
**recall (13)** 22:4,8 24:17,19 25:2,11 25:13 26:9,10 29:9,12 30:13 31:6
**receive (6)** 20:1 21:19 22:2,6 31:9 32:16
**received (8)** 20:5,7 21:21 30:11 31:11,16 32:2,17
**receiving (2)** 10:5 25:14
**recognize (4)** 17:10,14,16 18:7
**recommendatio...** 31:21
**recommendatio...** 31:18
**record (5)** 4:19 22:6 25:16 34:9 38:11
**recorded (3)** 15:4 15:10,16
**recording (4)**

15:21 16:3,5,9
**Recovery (28)** 2:10 7:8,21 9:13 10:20 11:16 14:8 16:8 19:20 20:6 20:8,13 21:4,9 21:12 22:12,15 23:8,20 24:2,11 25:4,17 27:9,16 29:4,7,14
**reduced (1)** 37:7
**referenced (1)** 13:13
**referred (1)** 23:5
**reflects (1)** 25:18
**regarding (3)** 6:7 28:5 32:5
**relative (1)** 34:12
**relevant (1)** 9:6
**remember (1)** 24:14
**remove (2)** 23:16 36:7
**repeat (4)** 11:12 12:17 21:1 23:21
**rephrase (1)** 30:10
**report (9)** 3:11 20:13 21:4,10 22:19 24:5 25:15 26:20 31:15
**reported (3)** 1:20 23:4 34:5
**reporter (2)** 5:13 37:7
**reporting (17)** 19:13,17 20:5,10 21:5,13 22:13,16 22:17 23:5,9 26:21 29:15,20 30:11,15 32:3
**reports (3)** 21:13 22:12,15
**request (2)** 23:9 38:9
**requested (1)** 37:6

requesting (1) 33:9
required (2) 20:11 21:9
reserved (1) 4:7
resolve (1) 25:20
respond (1) 5:12
responses (1) 17:2
result (1) 32:4
return (1) 36:8
review (1) 26:20
reviews (1) 27:8
right (5) 6:17 8:10 8:18 15:3 36:13
rmmetcho@md... 2:16
Road (1) 2:5
role (2) 20:9 22:1
Ronald (2) 2:11 35:18
Rule (2) 36:15,16
rules (3) 5:4 36:15 36:16

**S**

S (1) 4:1
salary (1) 7:13
saw (1) 14:20
saying (1) 21:8
says (1) 26:18
screen (3) 11:20 18:10 27:13
sealing (1) 4:8
second (1) 19:12
seconds (1) 14:14
Security (2) 13:6 18:15
see (4) 14:14 16:20 18:9,16
seeing (1) 18:18
seek (1) 30:3
seen (1) 17:18
select (1) 10:16
send (2) 27:13 32:20

sending (1) 33:8
sense (3) 15:19 28:19 31:12
sent (8) 14:9 17:5 17:6,7 25:5 27:7 27:10 28:19
service (3) 13:21 14:3 21:4
Services (26) 2:10 7:8,21 9:13 10:20 11:16 14:9 16:8 19:20 20:6 20:8,13 21:9,13 22:12,15 23:9,20 24:2,11 25:4,17 27:9,16 29:4,7
Services' (1) 29:15
set (1) 37:5
sheet (3) 38:1,10 38:12
sheets (2) 36:7,8
shorthand (1) 34:6
show (2) 13:6 25:3
shows (1) 25:19
sign (2) 36:5 37:10
SIGNATURE (2) 38:20 39:20
signed (2) 36:7 38:12
SIGNING (1) 37:1
Silver (1) 2:6
simply (2) 27:3 28:16
sir (2) 11:2 36:1
skip (4) 13:4,13,14 13:18
smaller (1) 29:11
Social (2) 13:6 18:15
somebody (4) 10:20 11:6,21 28:20
sorry (2) 19:12 23:21

specific (5) 10:15 20:4,9,10 27:2
specifically (2) 19:3 25:1
split (1) 10:8
Spring (1) 2:6
start (4) 5:9,15,18 16:3
started (1) 9:2
state (2) 1:17 4:18
STATES (1) 1:1
stating (1) 31:16
station (1) 20:3
status (1) 26:2
Stenographer (1) 1:16
steps (1) 32:5
STIPULATION... 4:3
stop (1) 16:5
streamline (1) 26:15
Street (1) 2:13
study (1) 7:5
Suite (2) 2:5,13
summary (1) 31:13
supervision (1) 34:8
supervisor (5) 7:20 8:1,3,20 28:2
sure (8) 4:20 5:6 6:12 9:8 14:7,16 28:13 30:7
sworn (1) 4:13
sworn/affirmed ... 34:7
system (7) 10:21 11:1,18 12:10 13:3,4 29:4

**T**

T (2) 34:1,1
take (1) 32:5

taken (3) 37:3,7 38:8
telephone (3) 10:10,11 12:1
telephones (1) 9:10
telling (1) 29:9
ten (1) 14:13
tenant (1) 28:15
terminology (3) 13:19 21:18 22:21
terms (2) 29:21 30:2
testified (5) 4:13 18:14 30:11 31:1 31:4
testimony (2) 11:16 13:16
thank (7) 5:1 6:2 8:8 15:1 18:1 19:6 33:14
Thanks (1) 18:13
thing (1) 6:1
think (2) 15:14 25:1
thirty (1) 36:12
three (1) 22:18
Thursday (1) 1:12
time (3) 4:7 14:5 37:4
title (2) 8:1 37:5
top (2) 9:17 30:13
traces (1) 13:14
tracing (3) 13:4,13 13:18
trade (4) 22:9 23:3 23:10,11
training (11) 19:18,19 20:1,4 20:7 21:19,21 22:2,6 30:12,12
transcript (7) 4:9 34:7 36:3,5 37:11 38:7,14

TransUnion (1) 22:17
trial (1) 4:7
try (1) 28:11
two (3) 19:7 24:18 25:3
typed (1) 19:4
typewritten (1) 37:8
typically (1) 11:19

**U**

understand (3) 5:14,19 23:12
understanding (3) 20:12 21:3 29:19
UNITED (1) 1:1
use (3) 10:11,19 12:6
usually (1) 26:19
utilize (2) 10:16 15:13
utilized (3) 13:2 13:19 17:19

**V**

v (2) 35:11 38:4
validation (1) 33:10
validity (2) 26:19 27:2
variety (1) 13:2
verbally (1) 5:12
version (1) 18:9
VOICE (1) 35:5
vs (1) 1:5

**W**

wage (2) 7:15,17
waived (2) 4:9 36:14
want (2) 5:5 16:19
Warner (2) 1:14 2:12
wasn't (1) 32:10

Mark Carlson
2/22/2018

Page 45

**way (3)** 15:2 24:5
26:11
**we'll (2)** 14:14
28:16
**we're (1)** 25:15
**week (2)** 8:5,17
**Westminster (1)**
35:4
**witness (12)** 6:15
8:12,18 11:12
12:16 14:18
16:13 17:12
20:20 28:9 30:7
34:6
**work (2)** 7:8 26:17
**worked (2)** 7:10
7:11
**works (1)** 29:15
**workstation (1)**
18:10
**wouldn't (2)** 22:21
23:1
**www.albetzrepo...**
35:7
**Wyoming (1)** 34:4

_____ **X** _____
**X (1)** 3:1

_____ **Y** _____
**Yeah (2)** 11:15
15:18
**York (1)** 4:20

_____ **Z** _____

_____ **0** _____

_____ **1** _____
**1 (2)** 3:10 18:4
**1)carlson_mark...**
35:10 38:3
**1,125 (1)** 25:19
**10:02 (1)** 1:13
**10:31 (1)** 33:16
**12 (1)** 7:18

**168 (1)** 4:20
**1734 (1)** 2:5
**18 (1)** 3:10
**180222key (2)**
35:10 38:3
**18642 (1)** 4:21
**19 (1)** 3:11
**19103 (1)** 2:14

_____ **2** _____
**2 (2)** 3:11 19:9
**2-415 (1)** 36:16
**200 (2)** 9:18 10:4
**2000 (1)** 2:13
**2016 (4)** 7:11 9:3
31:2 32:18
**2018 (5)** 1:12 3:3
35:9,15 38:6
**20903 (1)** 2:6
**20th (1)** 8:11
**210 (1)** 2:5
**21158 (1)** 35:4
**215-575-2595 (1)**
2:15
**21st (1)** 8:10
**22 (4)** 1:12 3:3
35:15 38:6
**2300 (1)** 2:13
**23rd (1)** 8:12
**240-780-8829 (1)**
2:7
**2nd (1)** 7:12

_____ **3** _____
**30 (2)** 3:6 36:12
**30(e) (1)** 36:15

_____ **4** _____
**4 (1)** 3:5
**410)752-1733 (1)**
35:5
**410)875-2857 (1)**
35:5

_____ **5** _____
**50 (1)** 1:14

_____ **6** _____
**665 (1)** 35:3

_____ **7** _____
**74 (2)** 25:18 29:11

_____ **8** _____
**8 (1)** 35:9
**8:17-CV-1955-...**
1:6 35:13