**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Crystal Long, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:17-cv-01955-GJH |
| | ) | |
| Ability Recovery Services, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PENDRICK CAPITAL PARTNERS II, LLC'S**
**MOTION FOR SUMMARY JUDGMENT**

NOW COMES defendant Pendrick Capital Partners II, LLC ("Pendrick"), and for its reply in support of its Motion for Summary Judgment, states as follows:

**I.      Introduction**

In an attempt to stave off summary judgment, plaintiff has resorted to filing a second affidavit seeking to improve upon both her deposition testimony and upon the original affidavit filed in support of her summary judgment motion.  *See* Dkt. 46-3, Exhibit C; Dkt. 63-10.[1]  This second affidavit is insufficient to save plaintiff's claims however. Pendrick is entitled to entry of summary judgment on all of plaintiff's claims, in shortest form, because (1) plaintiff has forfeited any claim against Pendrick under the FCRA by not responding to that aspect of Pendrick's Motion, (2) plaintiff's FDCPA claim fails because plaintiff has failed to show that either she or Pendrick are covered by the Act, (3) the state law claims are pre-empted and (4), Pendrick cannot be held vicariously liable under any theory for any putative violations allegedly committed by Ability.

---

[1] The second affidavit, dated May 7, 2018 was not notarized, and failed to cite to any evidence to support the statements therein.  *See* Dkt. 66, Exhibit 2; *see also* Federal Rule of Civil Procedure 56(e).

Plaintiff makes much of the "limited" questions purportedly asked at her deposition to justify her evolving testimony through that deposition and 2 affidavits. However, plaintiff's attempted explanation overlooks the fact that her own attorney neglected to ask her any questions at her deposition, and that she previously had the opportunity to file, and in fact did file, an affidavit in support of her summary judgment motion. Now, the second affidavit contradicts, at worst, and seeks to improve upon, at best, the testimony that she has previously provided in the case. However, despite her willingness to keep trying, it is well-settled that plaintiff cannot create a genuine issue of material fact sufficient to survive summary judgment simply by contradicting her own previous statements. *See, e.g., Rohrbough v. Wyeth Labs., Inc.,* 916 F.2d 970, 975 (4th Cir. 1990) (affirming district court's decision disregarding affidavit and noting that the affidavit exhibited an "effort on the part of the plaintiffs to create an issue of fact").

Beyond that, plaintiff again attempts to muddy the waters in her opposition to Pendrick's Motion by blurring the allegations as to Pendrick and Ability. Moreover, plaintiff continues to rely upon only conclusory allegations of liability as to Pendrick despite the established fact that Pendrick's sole involvement in this case involved the placing of the two defaulted accounts for collections with Ability on November 7, 2016. Plaintiff does not deny that this "activity" is the sum total of the conduct of Pendrick here.

To be clear, plaintiff has not responded whatsoever to, or attempted to rebut the argument that Pendrick has no liability, either directly or vicariously, under the FCRA.

However, plaintiff does contend in her opposition to Pendrick's Motion that Pendrick should be held vicariously liable for Ability's alleged conduct under the FDCPA, the MCDCA and the MCPA, and for defamation.

Plaintiff is wrong for the following reasons:

(a) Plaintiff is not a consumer under § 1692e(10) so that her FDCPA claim fails.

(b) Plaintiff has provided no evidence that Pendrick is a debt collector under the FDCPA.

(c) Plaintiff has provided no evidence that Pendrick is vicariously liable for Ability's alleged violations of the FDCPA.

(d) Plaintiff's claims as to Pendrick under Maryland state law, and for defamation, are clearly preempted.

(e) To the extent that plaintiff's claims as to Pendrick under Maryland state law, and for defamation are not preempted, plaintiff has provided no evidence that Pendrick can be held vicariously liable for Ability's alleged violations, and she simply fails to provide evidence to support the claims.

In sum, plaintiff's claims fail as a matter of fact and law as to Pendrick where she has no evidence that Pendrick did anything other than place two accounts with Ability for collection, and pursuant to the Contract for Services, Pendrick "authorize[d] [Ability] to report to [the] credit reporting bureaus all assigned collection account information provided under this Agreement."  *See* Dkt. 63, Ex. A, ¶ 16.

## II.    Plaintiff's Affidavit in her Opposition Brief Should be Disregarded

"Six circuits, including the Fourth, have held that 'a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.'" *Rohrbough by Rohrbough v. Wyeth Labs., Inc.,* 719 F. Supp. 470, 474 (N.D.W. Va. 1989), *aff'd sub nom.* 916 F.2d 970 (4th Cir. 1990) (collecting cases).  "This is so because, '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of

summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (quoting *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969)).

Plaintiff's affidavit submitted with her response to Pendrick's Motion and Ability's Motion raises factual issues that were not identified in her interrogatory responses, in her deposition testimony, or in her initial affidavit. Plaintiff was asked questions at her deposition regarding the basis for her alleged damages, and no such testimony was asserted during the deposition. Moreover, her attorney had the opportunity to ask plaintiff questions at her deposition and elected to ask none. In response to Pendrick's Motion (and Ability's Motion), plaintiff now seeks to create fact issues on her state law claims to preclude the entry of summary judgment. This Court should not allow the affidavit to stand.

Regardless, the "evidence" that plaintiff now introduces does not actually establish any damages. Plaintiff relies upon a notice that reflected that her interest rate was increasing on her Chase Bank credit card.[2]  However, plaintiff testified at her deposition that she went over the credit limit on the Chase Bank card in April 2017, which is just as likely to have caused the increase in the interest rate. *See* Dkt. 63-10, pp. 74-76; *see also* Dkt. 63-10, Exhibits 1 and 2.

Plaintiff's claimed actual damages allegedly caused by Ability's credit reporting resulting from adverse employment consequences fares no better. Plaintiff testified that she applied for her position at Trusted Health Plans in June 2016, and began working there on September 12, 2016; however, the tradeline was not reported until December 28, 2016 by Ability, well after plaintiff had started her employment. Dkt. 63-10, p. 65:5-17; Dkt. 46-3, Exhibit S, p. 7. Plaintiff testified that she executed a document with her employer giving it authority to check her credit report; however, she has introduced no evidence that her credit report was ever checked by her

---

[2] This document is inadmissible hearsay. *See* Federal Rule of Evidence 801.

employer, let alone informed any decisions made by her employer.  *Id.* p. 66:13-67:19; 76:17-77:17. Additionally, plaintiff cites to a document reflecting that she applied for a job at some point in 2017.  However, plaintiff provides no evidence that the potential employer actually reviewed her credit report in any way and made any type of decision on her application based on that report, and provides no basis as to why she was not selected for an interview.  *Id.* p. 67:20-70:10.

Finally, plaintiff contends that "[d]ue to concerns based on the ongoing credit-related litigation and the fact that neither Defendant has definitively indicated that it will no longer pursue the debt from Plaintiff, Plaintiff has not yet made new credit applications."  *See* Dkt. 66, p. 5. Ability noted in its Motion that it made requests as of June 2017 to the "CRAs to delete all tradeline information that was furnished regarding the debt, whereby all tradeline information regarding the debt was then removed from Plaintiff's credit reports."  *See* Dkt. 57-1, p. 6. Additionally, Pendrick noted in its Motion that "[a]s to plaintiff's claim under Count VI for "declaratory" and "injunctive" relief, Pendrick will stipulate that it will refrain from any collection of the accounts at issue in the lawsuit with regard to the plaintiff."  Dkt. 61, p. 3, fn. 1. Plaintiff has not challenged either of these statements, nor offered any contrary evidence.  On that basis, it is inconceivable that plaintiff has any genuine and reasonable "concerns" given that the tradelines were removed approximately a year prior to the filing of her affidavit.

## III.    Plaintiff's FDCPA Claim Fails As A Matter of Law[3] [4]

---

[3] Plaintiff has abandoned her claim under the FCRA as to Pendrick by making no response to Pendrick's motion showing that Pendrick has no liability under the FCRA.  *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 783 (D. Md. 2010) ("By her failure to address these arguments in her opposition to TCG's motion to dismiss, Davenport has abandoned this claim.")

[4] Pendrick incorporates by reference Ability's arguments with regard to the merits of plaintiff's claims under the FCRA, the claim for defamation, and the claims predicated upon alleged violations of the MCDCA and the MCPA.

In response to Pendrick's Motion, plaintiff again relies upon conclusory allegations of liability as to Pendrick without any factual support that Pendrick (1) is a debt collector under the FDCPA, or (2) is vicariously liable for the alleged acts of Ability.

A.   Plaintiff is not a Consumer Under Section 1692e(10).

Plaintiff relies now on *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 F. App'x 254 (4th Cir. 2012) to assert that plaintiff, broadly, is a consumer under any section of the FDCPA, and contends that the 4th Circuit has rejected the non-debtor defense. *See* Dkt. 66, p. 9. Plaintiff is wrong.

Plaintiff's argument has superficial appeal, as the *Rawlinson* Court noted that "absent a limitation in the substantive provisions of the FDCPA, any aggrieved party, not just a debtor, may bring an action under the statute." *Id.* at 257. The *Rawlinson* Court goes on to note that "[a]lthough § 1692e does not explicitly apply to 'any person,' it broadly prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Id.* However, such a cursory review ignores the critical reference in *Rawlinson* that "[o]f course, some, but not all, of the *subsections* of § 1692e do limit themselves to conduct directed at a "consumer." *See, e.g.,*15 U.S.C. § 1692e(11)." *Id.* (emphasis in original).

Indeed, other courts within the 4th Circuit have similarly interpreted such limitations as noted in *Rawlinson.  See Johnson v. PMAB, LLC*, No. 3:11-CV-111, 2012 WL 1379843, at *2 (W.D.N.C. Apr. 20, 2012) ("While the Fourth Circuit did not reach the issue of whether a non-consumer could maintain an action under Section 1692c(c), its opinion in *Rawlinson* suggests that it would agree with those courts that have held that a non-consumer may not. Twice, the circuit emphasized that a limitation in the substantive provisions of the FDCPA could change the more general rule that any person may maintain an action.").

6

Here, plaintiff specifically brings her action under § 1692e of the FDCPA. Section 1692e(10) of the FDCPA provides the following:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
>> (10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning *a consumer*.

15 U.S.C § 1692e(10)(emphasis added).

The reference to "concerning a consumer" is clearly the type of limitation contemplated by the *Rawlinson* Court. If Congress intended every section of the FDCPA to apply to non-debtors, they would have drafted the language of the act accordingly. Here, as acknowledged by *Rawlinson*, the protections afforded by § 1692e(10) are expressly limited to "consumers". Under the circumstances of this case, where plaintiff states that she is not obligated to pay any money owed to Pendrick, plaintiff is not a consumer and has no recourse under § 1692e(10) of the FDCPA. *Webb v. Law Offices of Ira T. Nevel, LLC*, 2016 WL 946962, *4 (N.D. Ill. 2016) ("In short: because Webb did not owe a debt, she is not a 'consumer' under the FDCPA").

B.  Pendrick is Not a Debt Collector Subject to the FDCPA.

An obvious predicate to holding Pendrick liable under the FDCPA is that Pendrick must be a debt collector.[5]  To meet her burden of establishing this essential element, plaintiff's entire argument hinges upon Pendrick's discovery responses, which state, in pertinent part, as follows:

> 17. Please state whether or not it is a normal business practice for Pendrick place the medical debts that it purchases for collection with collection agencies.

---

[5] A debt collector is statutorily defined as "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

RESPONSE: PCP II objects to this Interrogatory as ill-defined, vague, overly broad, excessive in time and scope, irrelevant and seeking potentially confidential consumer information not relevant to the allegations in the Complaint and not proportional to the needs of the case. Subject to and expressly reserving these objections, PCP II places all debts that it purchases for collection with agencies.

22. Do you purchase debts that are not delinquent at the time of purchase? If so, how often?

RESPONSE: PCP II objects to this Interrogatory as ill-defined, vague, overly broad, and excessive in time and scope. Subject to and expressly reserving these objections, PCP II does not purchase any debts that are not already delinquent.

23. What is the principal purpose of your business?

RESPONSE: PCP II objects to this Interrogatory as ill-defined, vague, overly broad, excessive in time and scope, and to the extent it seeks a legal conclusion. Subject to and expressly reserving these objections, PCP II purchases accounts from physician groups, hospitals and ambulance companies.

24. Do you resell debt accounts that you acquire?

RESPONSE: PCP II objects to this Interrogatory as ill-defined, vague, overly broad, and excessive in time and scope. Subject to and expressly reserving these objections, PCP II does not resell accounts that it acquires.

11. Admit that it is a normal business practice for Pendrick to place the medical debts that it purchases for collection with collection agencies.

ANSWER: Admit.

Plaintiff contends that, by these responses, Pendrick "by its own admission…falls within the first prong of the definition." Dkt. 66, p. 10. Plaintiff is wrong, and Pendrick has made no such admission.[6]

In *McMahon v. LVNV Funding, LLC*, No. 12 C 1410, 2018 WL 1316736, *13 (N.D. Ill. Mar. 14, 2018), the Court analyzed whether LVNV could be considered a debt collector under the first and second prong of § 1692a(6). Given that LVNV was the named plaintiff in numerous

---

[6] Plaintiff appears to concede that prong 2 of § 1692a(6) is entirely inapplicable given that Pendrick owns the debts at issue.

collection actions filed in the Circuit Court of Cook County, that it interacted with consumers by filing collection lawsuits against them, and that LVNV described the character of its business as 'consumer debt collection' in an Application for Registration filed in Massachusetts, the Court found that LVNV may be debt collector under prong 2 of the definition of a debt collector contained in § 1692a(6). *Id.* at *13-*14. The *McMahon* Court expressly reserved deciding whether an entity can be a "debt collector" under prong 1 without interacting with consumers. *Id.*

Unlike LVNV, which apparently collects its own debt by filing collection lawsuits, Pendrick does not satisfy either prong of the debt collector definition because it does not itself *collect* the debt that it purchases. Rather, Pendrick operates like an original creditor because it has licensed debt collectors collect the debts owed to it. Pendrick cannot be both a creditor and debt collector under the Act – as those terms are mutually exclusive. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 359 (6th Cir.2012); *FTC v. Check Investors, Inc.,* 502 F.3d 159, 173 (3d Cir. 2007).

Plaintiff relies on *Barbato v. Greystone All., LLC*, No. CV 3:13-2748, 2017 WL 5496047, at *3 (M.D. Pa. Nov. 16, 2017), a case currently on appeal to the 3rd Circuit, to support an argument that Pendrick is a debt collector. That decision is curious, as the Court in *Barbato* noted that "[o]ther circuits, namely, the Fourth (i.e., *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135 (4th Cir. 2016)) and Eleventh Circuits, held that under the FDCPA, a purchaser of charged-off receivables is not a debt collector simply because it acquired the defaulted debts."

And as noted by the 4th Circuit in *Henson*, "[a]pplying these allegations to the definition of debt collector in § 1692a(6), it is apparent that Santander does not fall within the first or third

definitions of debt collector. The complaint does not allege, nor do the plaintiffs argue, that Santander's *principal business* was to collect debt, alleging instead that Santander was a consumer finance company." *Id.* at 137 (emphasis in original) (cert. granted, 137 S. Ct. 810, 196 L. Ed. 2d 595 (2017), and aff'd, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017)). Like Santander, Pendrick does not itself "*use* any instrumentality of interstate commerce or the mails" for the principal purpose of which is the collection of any debts.  (emphasis added).

Plaintiff also cites to *Tepper v. Amos Fin., LLC*, No. 15-CV-5834, 2017 WL 3446886, at *8 (E.D. Pa. Aug. 11, 2017), which *like Barbato*, has been appealed (which plaintiff fails to note).  Regardless, and of particular import to this case, is the fact that in *Tepper*, unlike here, the defendant, Amos Financial LLC directly sent plaintiff multiple letters after it purchased the account and communicated directly with the plaintiff by phone. *Id.* at *4-5.  While the *Tepper* Court's analysis of the first prong was extremely abbreviated, it noted that its determination was based upon the fact that Amos' "business focuses exclusively on acquiring and servicing non-performing and semi-performing loans." *Id*. at *8.  Here, unlike in *Tepper*, and more similarly to *Henson* or *Kasalo*, Pendrick does not collect or service its debt, and has no communication with any consumers and does not operate as a debt collector.

C. Plaintiff has Provided No Evidence that Pendrick is Vicariously Liable for Ability's Alleged Acts.

As show above, Pendrick is not even subject to the FDCPA.  Beyond that, plaintiff's FDCPA claim against Pendrick fails because plaintiff has provided this Court with zero evidence as to why Pendrick could be liable for Ability's alleged credit reporting of the account at issue. Plaintiff relies upon *Fontell v. Hassett*, 870 F. Supp. 2d 395, 412 (D. Md. 2012) to support her vicarious liability claim, but, yet again, fails to cite the full extent of the Court's decision.  The *Fontell* Court notes in full:

> A debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA. On the other hand, if the client is not a debt collector subject to liability under the FDCPA itself, then its decision to hire an attorney to engage in debt collection practices on its behalf would not be predicated on evading FDCPA liability, and imputing liability under those circumstances would not further the interests of the Act. Here, the client is a homeowner association that is clearly not a debt collector under the FDCPA because it is not a third party attempting to collect a debt but is instead the primary creditor to whom Plaintiff owed the debt. *See* 15 U.S.C. § 1692a(6). As a result, the homeowner association is not subject to FDCPA liability, and it would be improper to hold it vicariously liable for the alleged FDCPA violations of its attorneys.

*Id.*

Plaintiff conveniently picks and chooses which section is relevant to her claim; however, where, as here, the client is not a debt collector, no vicarious liability can be imputed to Pendrick.

Plaintiff relies upon Pendrick's statement that it "maintains rigorous requirements for its retained collection agencies provided for in its Agency Audit Procedure and the Pendrick Capital Partners Agency Requirements and Standard Operating Procedure dated January 25, 2016". This statement is of no consequence though, for as made clear in Pendrick's Motion, pursuant to the Contract for Services, Pendrick "authorize[d] [Ability] to report to credit reporting bureaus all assigned collection account information provided under this Agreement." *See* Dkt. 63, Ex. A, ¶ 16. Moreover, pursuant to Pendrick's Agency Requirements and Standard Operating Procedures, dated January 25, 2016, Pendrick "granted the authority to its agencies to report the accounts placed with them for collections." *Id.* ¶ 18. While Pendrick maintains robust requirements for its agencies, that does not mean that Pendrick generally exercised or exercises ***control*** of Ability's credit reporting of accounts. Fatal to the claim here, plaintiff has provided no evidence that Pendrick exercised any control over the reporting of her account by Ability to permit imposition of such vicarious liability.

11

On that basis, Pendrick is not directly or vicariously subject to any liability under the FDCPA, and that claim, as to Pendrick, should be dismissed with prejudice.[7]

## IV.    Plaintiff has Failed to Provide Any Evidence to Support Her Claim for Defamation, and the Claim is Preempted as to Pendrick

Plaintiff points to no evidence of any statement made by Pendrick *to anyone*. As identified in Pendrick's Motion, Ability was acting as an independent contractor, and is not an employee of Pendrick. Nor does plaintiff provide any evidence that Pendrick ratified Ability's alleged acts. As such, plaintiff relies entirely upon conclusory allegations of vicarious liability to prop up her claim as to Pendrick solely predicated upon credit reporting by Ability. However, plaintiff fails to cite to any case law whatsoever to impose tort liability on Pendrick under these circumstances. Indeed, plaintiff simply ignores the case law from this very district cited in Pendrick's Motion. *See Fontell v. Hassett*, No. 10-CV-01472-AW, 2012 WL 1409390, at *6 (D. Md. Apr. 20, 2012) (J. Alexander Williams, Jr.) ("An employer is vicariously liable for the torts of its employee when the employee is acting within the scope of a master-servant relationship….This rule does not apply, however, where an employer's independent contractor commits the torts."). "An independent contractor is one 'who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result.'" *Id.*

Beyond these issues, the defamation claim is clearly preempted by the FCRA claim to the extent that liability as to Pendrick is predicated upon liability as to Ability. There is simply no basis, based upon the factual record, to imply actual malice exhibited by Ability in the credit

---

[7] Plaintiff also accuses the "Defendants" of making misleading statements in her Response brief. *See* Dkt. 66, pp. 12-13. Again, plaintiff appears to be blending allegations as to both Ability and Pendrick. To be clear, Pendrick never reported the debt at issue, never spoke with the plaintiff, never sent any mail to the plaintiff, and never received any correspondence from the plaintiff. It is entirely unclear what "misleading" statement was allegedly made to her by Pendrick.

reporting of the account.  Upon being made aware of the discrepancy, the tradelines were removed (and have been removed for nearly a year since the date of this brief).[8]  For those reasons, plaintiff's claim for defamation must be dismissed with prejudice.

## V.      Plaintiff has Failed to Provide Any Evidence to Support Her Claims under Maryland State Law, and the Claim are Preempted as to Pendrick

As with plaintiff's claim for defamation, plaintiff's claims under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act both fail for the same reasons. Like the defamation claim, with regard to her MCDCA claim and MCPA claim, plaintiff fails to meaningfully respond to any of the case law cited in Pendrick's brief, and relies entirely upon conclusory allegations of liability and seeks to create a fact question to survive summary judgment on these claims.  That simply is not enough.

Here, plaintiff's MCDCA claim and MCPA claim are predicated entirely upon Ability's credit reporting of the account at issue, the plaintiff's disputes related to the tradelines, and the investigations related to the dispute.  That falls squarely within the teeth of the preemption provisions of the FCRA.  *See Awah v. Capital One Bank, N.A.,* No. CV DKC 14-1288, 2016 WL 930975, at *8 (D. Md. Mar. 11, 2016), *dismissed sub nom. Awah v. Capital One Bank*, 668 F. App'x 463 (4th Cir. 2016).  Without citing to any case law, plaintiff contends that the claim relates to reporting that occurred prior to Plaintiff's disputes (*see* p. 16); however, the preemption provisions of the FCRA broadly preempt claims premised on the reporting of allegedly

---

[8] Plaintiff's contention that the alleged act occurred prior to her dispute, and thus falls outside the preemption provided under 15 U.S.C. § 1681h(e) is simply incorrect - which makes sense, given that plaintiff did not cite to any case law to support such a position.  The claim relates to Ability's credit reporting of the account at issue – and on that basis it is preempted. *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *13 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007).

inaccurate information.   Both claims are clearly preempted, and should be dismissed with prejudice on that basis.

Moreover, plaintiff fails to remotely address the fact that she has provided no admissible evidence to support claims under the MCDCA and MCPA, which both require that plaintiff establish that Pendrick is a debt collector and that plaintiff is entitled to compensatory damages. Plaintiff has done neither.[9]   For that reason, the Maryland state law claims should be dismissed with prejudice.

**VI.     Conclusion**

For the foregoing reasons, Pendrick Capital Partners II, LLC respectfully requests that the Court find that there are no genuine issues of material fact, that Pendrick is entitled to judgment as a matter of law and, enter summary judgment in its favor.

Respectfully Submitted,

*/s/ Morgan I. Marcus*
Morgan I. Marcus
Sessions, Fishman, Nathan & Israel, LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603
Telephone:     (312) 578-0990
E-mails:        mmarcus@sessions.legal
*Admitted Pro Hac Vice*

Patrick D. McKevitt
Whiteford Taylor and Preston LLP
Seven Saint Paul St.
Baltimore, MD 21202
pmckevitt@wtplaw.com
*Attorneys for Pendrick Capital Partners II, LLC*

---

[9] Plaintiff's attempt to create a fact issue by contending that she "has not had the opportunity to testify fully on the distress she suffered, nor have the two corroborating witnesses she identified" is absurd.  Plaintiff sat for a deposition and her attorney chose not to ask her questions.  Plaintiff could have subpoenaed her witnesses (or provided affidavits) but elected not to.  Plaintiff's attempts to recreate the record should not be entertained by this Court.

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2018, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will automatically be sent to the all parties of record by operation of the Court's electronic filing system.

*/s/ Morgan I. Marcus*