
Neutral
As of: March 8, 2019 8:13 PM Z

# Barbato v. Greystone Alliance, LLC

United States Court of Appeals for the Third Circuit

September 6, 2018, Argued; February 22, 2019, Opinion Filed

No. 18-1042

**Reporter**
2019 U.S. App. LEXIS 5336 *; __ F.3d __; 2019 WL 847920

MARY BARBATO v. GREYSTONE ALLIANCE, LLC; TURNING POINT CAPITAL INC; CROWN ASSET MANAGEMENT LLC Crown Asset Management LLC, Appellant

**Prior History:** [*1] On Appeal from the United States District Court for the Middle District of Pennsylvania. (M.D. Pa. Civil Action No. 3-13-cv-02748). Honorable Malachy E. Mannion, U.S. District Judge.

*Barbato v. Greystone All., LLC, 2017 U.S. Dist. LEXIS 189994 (M.D. Pa., Nov. 16, 2017)*

## Case Summary

**Overview**

HOLDINGS: [1]-In an action under the *Fair Debt Collection Practices Act*, an entity that acquired debt for the purpose of collection but outsourced the actual collection activity qualified as a "debt collector" under *15 U.S.C.S. § 1692a(6)*; [2]-An appellant's only business was purchasing of debts for the purpose of collecting on those debts, and, without the collection of those debts, appellant would have ceased to exist. Therefore, the appellant fell squarely within *§ 1692a(6)*'s "principal purpose" definition; [3]-An entity which itself met the definition of "debt collector" could be held vicariously liable for unlawful collection activities carried out by another on its behalf.

**Outcome**
The court affirmed the district court's order denying reconsideration of its summary judgment decision and remanded for further proceedings.

## LexisNexis® Headnotes

Banking Law > ... > Banking & Finance > Consumer Protection > Fair Debt Collection

***HN1***[ ] **Consumer Protection, Fair Debt Collection**

The *Fair Debt Collection Practices Act* protects consumers from abusive, deceptive, or otherwise unfair debt collection practices. *15 U.S.C.S. § 1692(a)*. It applies to "debt collectors," defined alternatively as those engaged "in any business the principal purpose of which is the collection of any debts" and those "who regularly collect" debts "owed or due another." *§ 1692a(6)*.

Banking Law > ... > Banking & Finance > Consumer Protection > Fair Debt Collection

***HN2***[ ] **Consumer Protection, Fair Debt Collection**

An entity that otherwise meets the "principal purpose" definition in *15 U.S.C.S. § 1692a* cannot avoid the dictates of the *Fair Debt Collection Practices Act* merely by hiring a third party to do its collecting.

Civil Procedure > Appeals > Appellate Jurisdiction > Certified Questions

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

Civil Procedure > Appeals > Standards of Review > De Novo Review

***HN3***[ ] **Appellate Jurisdiction, Certified Questions**

When reviewing an interlocutory appeal under *28 U.S.C.S. § 1292(b)*, the United States Court of Appeals for the Third Circuit exercises plenary review over the question certified. The scope of review, however, is not limited to the question set forth in the certification motion but, rather, includes any issue fairly included within the certified order.

Civil Procedure > Judgments > Relief From Judgments > Altering & Amending Judgments

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Appeals > Standards of Review

*HN4*[ ] **Relief From Judgments, Altering & Amending Judgments**

The United States Court of Appeals for the Third Circuit reviews a denial of a motion for reconsideration for abuse of discretion, but reviews the district court's underlying legal determinations de novo and factual determinations for clear error. Summary judgment is appropriate only where there is no genuine issue as to any material fact. *Fed. R. Civ. P. 56(c)*.

Banking Law > ... > Banking & Finance > Consumer Protection > Fair Debt Collection

Governments > Legislation > Types of Statutes

Evidence > Burdens of Proof > Allocation

*HN5*[ ] **Consumer Protection, Fair Debt Collection**

Congress enacted the *Fair Debt Collection Practices Act (FDCPA)* in 1977 to eliminate abusive debt collection practices by debt collectors and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. *15 U.S.C.S. § 1692(e)*. It provides a private right of action against debt collectors who violate its provisions. *15 U.S.C.S. § 1692k*. As remedial legislation, the *FDCPA* must be broadly construed in order to give full effect to these purposes. To prevail on an *FDCPA* claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the *FDCPA* defines it, and (4) the defendant has violated a provision of the *FDCPA* in attempting to collect the debt.

Banking Law > ... > Banking & Finance > Consumer Protection > Fair Debt Collection

Governments > Legislation > Interpretation

*HN6*[ ] **Consumer Protection, Fair Debt Collection**

To determine whether a party is a "debt collector" under the "principal purpose" definition of *15 U.S.C.S. § 1692a*, the United States Court of Appeals for the Third Circuit looks first to the plain meaning of the statutory text. The text states that any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts is a debt collector. *15 U.S.C.S. § 1692a(6)*.

Banking Law > ... > Banking & Finance > Consumer Protection > Fair Debt Collection

*HN7*[ ] **Consumer Protection, Fair Debt Collection**

In the context of *15 U.S.C.S. § 1692a*, an entity qualifies under the definition of debt collector if the principal purpose of its business is the collection of any debts. "Principal" is defined as "most important, consequential, or influential," and "purpose" is defined as "something that one sets before himself as an object to be attained : an end or aim" and "an object, effect, or result aimed at, intended, or attained." Thus, an entity that has the "collection of any debts" as its most important aim is a debt collector under this definition. While it is true that "collection" can be defined as "the act or process of collecting," it can also be defined as "that which is collected." So defined, the focus shifts from the act of collecting to what is collected, namely, the acquired debts. As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment.

Banking Law > ... > Banking & Finance > Consumer Protection > Fair Debt Collection

Governments > Legislation > Interpretation

*HN8*[ ] **Consumer Protection, Fair Debt Collection**

Pursuant to the *Fair Debt Collection Practices Act*, in contrast to the "regularly collects" definition, where Congress explicitly used the verb "to collect" in describing the actions of those it intended the definition to cover, in the "principal purpose" definition, Congress used the noun "collection" and did not specify who must do the collecting or to whom the debt must be owed. *15 U.S.C.S. § 1692a(6)*. Thus, by its terms, the "principal purpose" definition sweeps more broadly than the "regularly collects" definition, and the court must presume that the legislature says what it means and means what it says.

Governments > Legislation > Interpretation

*HN9*[ ] **Legislation, Interpretation**

Recourse to legislative history or underlying legislative intent is unnecessary when a statute's text is clear and does not lead to an absurd result.

Banking Law > Consumer Protection > Fair Debt Collection > Liability for Violations

Torts > Vicarious Liability > Agency Relationships

*HN10*[ ] **Fair Debt Collection, Liability for Violations**

When Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules, and the United States Court of Appeals for the Third Circuit has relied on traditional agency principles in holding parties vicariously liable under the *Fair Debt Collection Practices Act*.

Banking Law > Consumer Protection > Fair Debt Collection > Liability for Violations

Torts > Vicarious Liability > Agency Relationships

*HN11*[ ] **Fair Debt Collection, Liability for Violations**

An entity which itself meets the definition of "debt collector" may be held vicariously liable for unlawful collection activities carried out by another on its behalf.

This is a fair result because an entity that is itself a debt collector—and hence subject to the *Fair Debt Collection Practices Act*—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.

**Counsel:** For Crown Asset Management LLC, Defendant-Appellant: Anthony J. Gingo, Michael J. Palumbo, Gingo Palumbo Law Group, Independence, OH; Matthew R. Rosenkoff [ARGUED], Taylor English Duma, Atlanta, GA.

For Mary Barbato, Plaintiff-Appellee: Daniel A. Edelman [ARGUED], Edelman Combs Latturner & Goodwin, Chicago, IL; Brett M. Freeman, Carlo Sabatini, Sabatini Law Firm, Dunmore, PA.

**Judges:** Before: HARDIMAN, KRAUSE, and BIBAS, Circuit Judges.

**Opinion by:** KRAUSE

## Opinion

OPINION OF THE COURT

KRAUSE, *Circuit Judge*.

*HN1*[ ] The *Fair Debt Collection Practices Act ("FDCPA")* protects consumers from abusive, deceptive, or otherwise unfair debt collection practices. *15 U.S.C. § 1692(a)*. It applies to "debt collectors," defined alternatively as those engaged "in any business the principal purpose of which is the collection of any debts" and those "who regularly collect[]" debts "owed or due another." *Id. § 1692a(6)*. This appeal concerns only the first definition and requires us to determine whether an entity that acquires debt for the "purpose of . . . collection" but outsources the actual **[*2]** collection activity qualifies as a "debt collector." The District Court held that it does, and we agree: *HN2*[ ] an entity that otherwise meets the "principal purpose" definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting. We therefore will affirm.

### I. Background

#### A. Factual Background

Appellant Crown Asset Management ("Crown") is a purchaser of charged-off receivables, that is, accounts on which a consumer has stopped paying the debt

owed. When Crown purchases an account, it determines if the debtor has filed for bankruptcy or is deceased. If neither is the case, Crown does not collect on the account itself; rather, it refers the charged-off receivable to a third-party servicer for collection or it hires a debt collection law firm to file a collection lawsuit on its behalf. Although Crown does not contact consumers directly, it principally derives revenue from liquidating the consumer debt it has acquired.

In this case, Appellee Mary Barbato obtained a consumer credit card from GE Electric Capital Corporation and GE Money Bank (collectively "GE") in 2007. She made her last payment on the account in November 2010, leaving an outstanding balance. GE **[*3]** subsequently charged off that balance and, after a number of sales and assignments, Crown purchased Barbato's debt. Pursuant to its standing service agreement with collection agency Turning Point Capital, Inc. ("Turning Point"), Crown then referred that debt to Turning Point for collection.

Crown's service agreement with Turning Point explained that Crown was seeking "to procure certain collection services" from Turning Point, and Turning Point was agreeing to "undertake collection on each Account placed" with it by Crown. App. 376. In addition, the agreement said that Crown had the "sole and absolute discretion," App. 378, as to which accounts it would forward, that Crown's obligation to pay Turning Point was contingent upon Turning Point's success, and that Crown could establish settlement guidelines from which Turning Point would have to obtain permission in order to deviate.

Pursuant to this agreement, Turning Point sent Barbato a collection letter in February 2013, identifying itself as a "National Debt Collection Agency" and Crown as its client. Turning Point also called Barbato and left her two voicemail messages. For its part, Crown did not have any direct communication with **[*4]** Barbato regarding her account, nor did it review or approve the letter sent to her by Turning Point. When Barbato filed for bankruptcy, however, Crown recalled Barbato's account from Turning Point and subsequently closed it.

### B. Procedural Background

Several months later, after Turning Point was absorbed by Greystone Alliance, LLC ("Greystone"), Barbato filed a state court complaint against Greystone, alleging that it had violated the FDCPA. And after Greystone removed the action to federal court, Barbato filed an amended complaint in which she added Turning Point and Crown as defendants and alleged that each was a "debt collector" as defined by the FDCPA.[1] Turning Point was served but never answered. Barbato eventually dismissed both Turning Point and Greystone from the action, leaving only Crown as a defendant.

Barbato and Crown subsequently filed cross-motions for summary judgment on, among other issues, the question whether Crown was a debt collector. Barbato did not argue that Crown satisfied the "regularly collects" definition, i.e., that it "regularly collect[ed]" debts "owed or due another." *15 U.S.C. § 1692a(6)*. Rather, she argued that Crown was a "debt collector" because: (1) it purchased debts when **[*5]** they were in default, which, under then-controlling precedent, was a prerequisite to being considered a "debt collector" as opposed to a "creditor"[2]—statuses we had deemed mutually exclusive under *§ 1692a(6)*, see *F.T.C. v. Check Inv'rs, Inc., 502 F.3d 159, 171 (3d Cir. 2007)*— and (2) it satisfied the statute's "principal purpose" definition because the principal purpose of its business was the collection of those defaulted debts, even if it hired third-party debt collectors to do the collecting. *15 U.S.C. § 1692a(6)*; App. 209-10 (citing *Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403-04 (3d Cir. 2000))*. Crown countered that, regardless of the default status of the debt, Barbato could not prove it fit the "principal purpose" definition because it took no collection action towards her and its principal purpose was not the collection of debt but, rather, its acquisition.

Siding with Barbato on these issues, the District Court held that Crown was "acting as [a] 'debt collector'" because: (1) it acquired debts like Barbato's when they were in default and (2) the summary judgment record supported that Crown's "principal purpose" was the "collection of 'any debts.'" *Barbato v. Greystone All., LLC, No. 3:13-CV-2748, 2017 U.S. Dist. LEXIS 48175,*

---

[1] Although of limited relevance for this appeal, the specific conduct that Barbato alleged violated the FDCPA was (1) that Turning Point left her voicemail messages without disclosing that the calls were from a debt collector, as required under *15 U.S.C. § 1692e(11)*, and (2) that Turning Point's letter neglected to inform her how to properly exercise her validation rights, as required under *15 U.S.C. § 1692g*. Barbato purported to bring this latter claim on behalf of a putative class of Pennsylvania residents.

[2] The statute defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." *15 U.S.C. § 1692a(4)*.

2017 WL 1193731, at *10 (M.D. Pa. Mar. 30, 2017). As to the second ground, the Court found little difference between collecting on charged-off receivables and referring charged-off receivables [*6] to third-party independent servicers for collection. Instead, given that Crown purchased debt, that ninety to ninety-five percent of that debt came from consumers, and that Crown referred all of that debt out for collection, the District Court concluded that "Crown's principal purpose is to acquire accounts in 'default' for the purpose of collection." Id. The District Court nevertheless denied Barbato's motion for summary judgment, holding that she had not established that Crown was vicariously liable for Turning Point's conduct because (1) in the District Court's view, vicarious liability could be imputed to Crown in these circumstances only if the agent too was a "debt collector," and (2) the evidence in the record was insufficient to hold that Turning Point was a debt collector under the FDCPA. The Court granted the parties leave to file renewed motions for summary judgment to address Turning Point's status as a debt collector.

While these proceedings continued in the District Court, however, the Supreme Court issued a decision that prompted Crown to seek reconsideration of the District Court's ruling that it was a "debt collector." In *Henson v. Santander, Consumer USA Inc.*, in interpreting [*7] the "regularly collects" definition and deciding whether the entity there "regularly collect[ed] . . . debts owed or due another," 15 U.S.C. § 1692a(6), the Supreme Court held that it was irrelevant whether the debt acquired and sought to be collected was in default; instead, it held "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another,'" 137 S. Ct. 1718, 1721, 1724, 198 L. Ed. 2d 177 (2017). Construing that language to apply to § 1692a(6) generally, Crown urged that it could no longer be considered a debt collector, even under the "principal purpose" definition, because it too was collecting debts on its own behalf and not for another. The District Court disagreed, holding that *Henson* pertained only to the "regularly collects" definition of "debt collector" and did not affect its holding that Crown was a debt collector under the "principal purpose" definition. See Barbato v. Greystone All., LLC, No. CV 3:13-2748, 2017 U.S. Dist. LEXIS 189994 , 2017 WL 5496047, at *1, *9-*10 (M.D. Pa. Nov. 16, 2017).

Nevertheless, the District Court certified its decision for interlocutory appeal and presented a controlling question of law to this Court: "whether *Henson* requires a finding that Crown is not a debt collector in this case when it was a third-party buyer of the debt, and the [*8] debt was in default at the time it purchased it." App. 34. Crown then filed a petition for permission to file the interlocutory appeal and to appeal the District Court's denial of its motion for reconsideration, which we granted.

## II. Jurisdiction and Applicable Standards

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(b). HN3[↑] When reviewing an interlocutory appeal under 28 U.S.C. § 1292(b), we exercise plenary review over the question certified. Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 621 F.3d 296, 301 (3d Cir. 2010). The scope of our review, however, is not limited to the question set forth in the certification motion but, rather, includes any issue fairly included within the certified order. See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court.").

HN4[↑] "We review a denial of a motion for reconsideration for abuse of discretion, but we review the District Court's underlying legal determinations"—its denial of summary judgment to Crown in this case—"de novo and factual determinations for clear error." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010). Summary judgment is appropriate only where there is no genuine issue as to any material fact. [*9] Fed. R. Civ. P. 56(c).

## III. Discussion

On appeal, Crown contends that it does not qualify as a "debt collector" under the "principal purpose" definition for three reasons: First, the Supreme Court's decision in *Henson* undermined our prior precedent that would render it a debt collector. Second, its principal purpose is the acquisition—not the collection—of debt, and a faithful interpretation of the statute requires that we distinguish between the two. And third, the legislative history demonstrates that Congress intended to regulate the proverbial "repo man," not a "passive debt owner" like Crown. Appellant Br. 32. We begin with a brief overview of the FDCPA and, with that context for Crown's arguments, address—and reject—each in turn.

## A. The FDCPA

*HN5*[ ] Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *15 U.S.C. § 1692(e)*. It provides a private right of action against debt collectors who violate its provisions. *15 U.S.C. § 1692k*; *see also Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)*. "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013)*.

"To prevail **[*10]** on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc., 898 F.3d 351, 358 (3d Cir. 2018)* (quoting *Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014))*. The only element at issue in this case is the second—whether Crown qualifies as a "debt collector."

As noted, the statute defines "debt collector" as any person (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition), or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition).³ *15 U.S.C. § 1692a(6)*. The statute thus provides two separate paths to establishing an entity's status as a "debt collector." See *Henson, 137 S. Ct. at 1721*.

As we recently had occasion to remark, the debt collection industry has changed since Congress enacted the FDCPA in 1977, and the simple creditor-debt collector duo has been complicated by the advent and growth of debt buying. See *Tepper v. Amos Fin., LLC, 898 F.3d 364, 366 (3d Cir. 2018)*. With the **[*11]** proliferation of debt buying have come questions about the boundaries of the statute's definitions.

In *Henson v. Santander*, the Supreme Court clarified the "regularly collects" definition. There, Santander Bank purchased loans once they were already in default and sought to collect on them. *137 S. Ct. at 1720*. Focusing on the plain language of the statutory definition at issue, the Court held that a third-party buyer of debt that seeks to collect debt owed to it does not fit the second definition because it does not "regularly seek to collect debts 'owed . . . another.'" *Id. at 1721*. It rejected the petitioners' arguments that either the origin of the debt or the default status of the debt had any bearing on that analysis. As to the debt's origin, it reasoned that the statutory language did not suggest that "whether the owner originated the debt or came by it only through a later purchase" was relevant. *Id.* The Court similarly saw no basis in the text for concluding that an entity that obtains debts after default automatically qualifies as a "debt collector" under the definition. See *id. at 1724*. "All that matters," the Court concluded, "is whether the target of the lawsuit regularly seeks to collect debts for its own account **[*12]** or does so for 'another.'" *Id. at 1721*. Relevant for our purposes, the Court explicitly declined to address whether such debt buyers could nevertheless qualify as debt collectors under the "principal purpose" definition. *Id.*

## B. *Henson* and Third Circuit Precedent

Crown's primary argument on appeal is that *Henson* abrogated our prior precedent such that it no longer qualifies as a "debt collector" under the statute. Crown contends this is so for two reasons: first, because *Henson* renders it a creditor, not a debt collector, and the two statuses are mutually exclusive; and second, because *Henson* rejected the so-called "default" test on which we relied, thereby undermining "the very foundation" of our prior caselaw. Appellant Br. 30. Crown overstates the effect of *Henson*.

We need not dwell on Crown's first argument because our recent decision in *Tepper v. Amos* forecloses it. In *Tepper*, the defendant was a company whose "sole business [wa]s purchasing debts entered into by third

---

³ The statute also provides two other definitions of "debt collector," neither of which is relevant here: "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts" and "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *15 U.S.C. § 1692a(6)*. Excluded from the definition's reach are, among others, a creditor's officers and employees who collect debts for the creditor, an entity collecting a debt it originated, and an entity collecting a debt it obtained that was not in default at the time of purchase. *Id. §§ 1692a(6)(A)*, *(F)*.

parties and attempting to collect them." *898 F.3d at 369*. The defendant claimed that because it met the statutory definition of creditor—it was trying to collect debts it owned and was thus an entity "to whom [the] debt is owed"—it could not **[*13]** also be a debt collector. *Id. at 371* (quoting *15 U.S.C. § 1692a(4)*). Like Crown, the defendant based this argument on Third Circuit precedent that characterized the two statuses as "mutually exclusive." *Id.* (citing *Check Inv'rs, 502 F.3d at 173*); *see also Pollice, 225 F.3d at 403*. Until *Henson*, as we explained, we relied on the "default" test to determine whether an entity was a creditor or a debt collector: either the entity obtained the debt before default and was a creditor or it acquired the debt afterwards and was a debt collector. *Tepper, 898 F.3d at 366-67*. Given the binary nature of default status, an entity could be only one or the other. But, we observed, *Henson* rejected the "default" test, *id. at 367*, and with it, the basis for treating the terms "debt collector" and "creditor" as mutually exclusive. Following the Supreme Court's direction to hew more closely to the statutory definitions, we concluded that "an entity that satisfies both [definitions] is within the Act's reach." *Id. at 371*. The same is true here.

As to Crown's second argument about *Henson*'s overall effect on our caselaw, it simply proves too much. While it is no doubt true that *Henson* abrogated the default test on which we relied to distinguish between creditors and debt collectors and that it clarified the scope of the "regularly collects" **[*14]** definition of debt collector, *Henson* did not address the other prong of *§ 1692a(6)*—the wholly separate "principal purpose" definition. To the contrary, the Court conducted a close textual analysis of the "regularly collects" definition, deriving from that portion of the statute—which requires the entity to "collect" debt "owed or due another"—that "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *137 S. Ct. at 1721*. That requirement, however, does not appear in the "principal purpose" definition, and the Supreme Court went out of its way in *Henson* to say that it was not opining on whether debt buyers could also qualify as debt collectors under that prong of *§ 1692a(6)*. *See id.*

But we have previously opined on this question—and in similar circumstances. In *Pollice v. National Tax Funding, L.P.*, a debt buyer, National Tax Funding L.P. ("NTF"), purchased delinquent municipal tax and utility claims from the government. *225 F.3d at 385*. Like Crown, NTF had no direct contact with debtors; rather, it outsourced all of its collection activities to others. *Id. at 386*. We concluded that NTF was a debt collector both because it purchased debt in default—a fact *Henson* has **[*15]** since rendered irrelevant—*and also* because "there [was] no question that the 'principal purpose' of NTF's business is the 'collection of any debts,' namely, defaulted obligations which it purchases from municipalities." *Id. at 404*. The fact that someone else did the actual collecting did not deter us from concluding that NTF was a "debt collector" given that "NTF exist[ed] *solely* for the purpose of holding claims for delinquent taxes and municipal obligations." *Id. at 404 n.27* (emphasis added). True, *Pollice* predated *Henson*, but for the reasons we explain below, we continue to find its logic persuasive.

## C. Statutory Interpretation

*HN6*[ ] To determine whether Crown is a "debt collector" under the "principal purpose" definition, we look first to the plain meaning of the statutory text. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 257 (3d Cir. 2013)*. The text states that "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" is a "debt collector." *15 U.S.C. § 1692a(6)*. Focusing on the word "collection," which it defines as "the act or process of collecting," Crown argues that the "principal purpose" definition applies only to those that engage in "overt acts of collection" by interacting with consumers—not **[*16]** entities like Crown that purchase debt and outsource the collection. Appellant Br. 25, 31, 33.

As much as Crown might wish that it were otherwise, nothing suggests that the definition is so limited. *HN7*[ ] An entity qualifies under the definition if the "principal purpose" of its "business" is the "collection of any debts." "Principal" is defined as "most important, consequential, or influential," *Principal*, Webster's Third New International Dictionary 1802 (1976) ("Webster's Third"), and "purpose" is defined as "something that one sets before himself as an object to be attained : an end or aim" and "an object, effect, or result aimed at, intended, or attained," *id.* at 1847. Thus, an entity that has the "collection of any debts" as its "most important" "aim" is a debt collector under this definition. While it is true that "collection" can be defined as "the act or process of collecting," it can also be defined as "that which is collected." *Collection*, Random House Dictionary of the English Language 290 (1973). So defined, the focus shifts from the *act* of collecting to *what* is collected, namely, the acquired debts. As long

as a business's *raison d'être* is obtaining payment on the debts that it acquires, **[*17]** it is a debt collector. Who actually obtains the payment or how they do so is of no moment.

The statutory context of the "principal purpose" definition casts further doubt on Crown's argument that Congress meant to limit it to only those entities that actively collect from consumers. *See Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011)* ("If the plain language fails to express Congress' intent unequivocally . . . we will examine the surrounding words and provisions in their context.") (citing *Tavarez v. Klingensmith, 372 F.3d 188, 190 (3d Cir. 2004))*. HN8[↑] In contrast to the "regularly collects" definition, where Congress explicitly used the verb "to collect" in describing the actions of those it intended the definition to cover, in the "principal purpose" definition, Congress used the noun "collection" and did not specify who must do the collecting or to whom the debt must be owed.[4] *15 U.S.C. § 1692a(6)*; *see also Tepper, 898 F.3d at 370*. Thus, by its terms, the "principal purpose" definition sweeps more broadly than the "regularly collects" definition, and we must presume that the "legislature says . . . what it means and means . . . what it says." *Henson, 137 S. Ct. at 1725* (quoting *Dodd v. United States, 545 U.S. 353, 357, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005))*.

In a plain language argument of its own, Crown retorts that to find that it qualifies under the "principal purpose" definition even though it outsources its collection activities **[*18]** would be to read the word "indirectly" into the statute where it does not appear. This is especially problematic, Crown contends, because the "regularly collects" definition does specify that an entity can collect "directly or indirectly," while Congress omitted this qualifier from the "principal purpose" definition.

We are unpersuaded. Again, the fact that the "regularly collects" definition employs a verb and the "principal purpose" definition employs a noun is critical. In the "regularly collects" definition, the "directly or indirectly" qualification is necessary because one could reasonably interpret "collect" to refer to only direct efforts to collect—it is, after all, "a verb that requires action." Appellant Reply Br. 15 (citation omitted).

The "principal purpose" definition, however, needs no such qualification. "Collection" by its very definition may be indirect, and that is the type of collection in which Crown engages: it buys consumer debt and hires debt collectors to collect on it.[5] The existence of a middleman does not change the essential nature—the "principal purpose"—of Crown's business. As Barbato points out, Crown could buy debt for the charitable purpose of forgiving **[*19]** it, or it could buy debt for the purpose of reselling it to unrelated parties at a profit. In both of those cases, the entity's "principal purpose" would not be collection. But Crown does neither of those things. Indeed, the record reflects that Crown's only business is the purchasing of debts for the purpose of collecting on those debts, and, as Crown candidly acknowledged at oral argument, without the collection of those debts, Crown would cease to exist. In short, Crown falls squarely within *§ 1692a(6)*'s "principal purpose" definition.

### D. Crown's Purpose and Legislative History Argument

Finally, Crown argues that the legislative history of the FDCPA demonstrates that Congress did not intend for the statutory definition of "debt collector" to apply to a "passive debt owner" like itself but only to a repo man who was personally hounding debtors to hand over the money they owe. Appellant Br. 32. This argument is flawed in two respects.

First, it proves too much. There is no doubt that "[d]isruptive dinnertime calls, downright deceit, and more besides drew Congress's eye to the debt collection industry." *Henson, 137 S. Ct. at 1720*. But even if the purpose of the statute was to reach repo men, that purpose is furthered **[*20]** by recognizing Crown as a debt collector under *§ 1692a(6)*. Unlike a

---

[4] At both oral argument and in its supplemental briefing, Crown argued that the word "collection" is a verb. It is not. It is a noun. *See Collection*, Webster's Third at 444 (denoting with the abbreviation "*n*" that the word being defined is a noun).

[5] Although not addressed by the District Court or the focus of the parties' arguments on appeal, Barbato has suggested that Crown itself collects debt because it is the named plaintiff in many collection lawsuits. Because Crown's litigation efforts did not give rise to this appeal and we conclude that Crown otherwise satisfies the "principal purpose" definition, we need not address this argument. We note, however, that Crown's answer to it—that its litigation efforts are irrelevant because its counsel, not Crown itself, does the collecting by, for example, drafting the pleadings—is in tension with our precedent, *e.g., Pollice, 225 F.3d at 404-05* (recognizing that a debt collector may be held vicariously liable for the conduct of its attorneys), and squarely refuted by our holding today.

traditional creditor, such as a bank or a retail outlet that has its own incentive to cultivate good will among its customers and for which debt collection is one of perhaps many parts of its business, an independent debt collector like Crown has only one need for consumers: for them to pay their debts. As market-based incentives go, that makes it far more like a repo man than a creditor and gives it every incentive to hire the most effective repo man to boot.

Second, while the Supreme Court acknowledged in *Henson* that "[e]veryone agrees that the term embraces the repo man," *id.*, the language on which Congress settled sweeps more broadly to include "*any* business the principal purpose of which is the collection of any debts," 15 U.S.C. § 1692a(6) (emphasis added), without regard to whether that entity delegates its collecting activities. The statute is clear, and Crown's argument fails for this reason as well: **HN9**[ ] "[R]ecourse to legislative history or underlying legislative intent is unnecessary when a statute's text is clear and does not lead to an absurd result." *In re Phila. Newspapers, LLC, 599 F.3d 298, 317 (3d Cir. 2010)* (quoting *Hay Grp., Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 406 (3d Cir. 2004))*.

### E. Issues for Remand

Of course, our holding that Crown is a debt collector does **[*21]** not answer the ultimate question of liability, which turns here on principles of vicarious liability. As the District Court recognized, **HN10**[ ] "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules," *Barbato, 2017 U.S. Dist. LEXIS 48175, 2017 WL 1193731, at \*12* (quoting *Meyer v. Holley, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003))*, and we have relied on traditional agency principles in holding parties vicariously liable under the FDCPA, *see Pollice, 225 F.3d at 404-05*, as have other Courts of Appeals in the context of analogous remedial statutes, *see, e.g.*, *Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998)* (applying agency principles to determine vicarious liability under the Fair Credit Reporting Act).

As Crown's ultimate liability for the acts of Turning Point was not the question certified in this interlocutory appeal nor the focus of the parties' briefing, we will leave that issue for the District Court's consideration in the first instance. By way of guidance on remand, however, we offer two brief observations. First, to the extent Crown argues that the District Court was obligated to find that Crown exerted actual control over Turning Point in order to be held vicariously liable, Crown misunderstands the tenets of agency law and our precedent. *See Meyer, 537 U.S. at 285-86* (explaining that the principal-agent relationship requires **[*22]** that the principal either control "*or [have] the right to direct or control*" the agent) (emphasis added); *see also Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317, 326 (7th Cir. 2016)* (interpreting *Pollice* to mean that vicarious liability need not be based "on a showing of actual control over the specific activity alleged to violate the [FDCPA]").

Second, in inviting further development of the record on Turning Point's own status as a "debt collector," the District Court assumed that Crown could not be held vicariously liable for the acts of an agent under the FDCPA unless the agent qualified as a "debt collector" in its own right. *Barbato, 2017 U.S. Dist. LEXIS 48175, 2017 WL 1193731, at \*13*. But our case law imposes no such requirement; to the contrary, we have focused on whether the *principal* qualifies as a debt collector because **HN11**[ ] "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Pollice, 225 F.3d at 404*. And as we explained in *Pollice*, and we reinforce today, this is "a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Id. at 405*.

### IV. Conclusion

For the foregoing reasons, we will **[*23]** affirm the District Court's order denying reconsideration of its summary judgment decision and will remand for further proceedings consistent with this opinion.

End of Document